## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

HESAI TECHNOLOGY CO., LTD,

    9th Floor, Building L2-B
    1588 Zhuguang Road, Qingpu District
    Shanghai, China 201702

HESAI INC.,

    3500 W. Bayshore Road
    Palo Alto, CA 94303

           *Plaintiffs*,

           v.

U.S. DEPARTMENT OF DEFENSE,

    1400 Defense Pentagon
    Washington, D.C. 20301

LLOYD J. AUSTIN III, in his official capacity as
SECRETARY OF DEFENSE,

    1000 Defense Pentagon
    Washington, D.C. 20301

LAURA D. TAYLOR-KALE, in her official capacity as
ASSISTANT SECRETARY OF DEFENSE
FOR INDUSTRIAL BASE POLICY,

    3050 Defense Pentagon
    Washington, D.C. 20301

           *Defendants.*

---

Civ. Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc., by and through their attorneys, allege

and state as follows:

1.      This lawsuit seeks relief from Defendants' unlawful efforts to tar Plaintiffs as a "Chinese military company," a designation that has no legal or factual basis and that has inflicted significant economic and reputational harm on them.

2.      Plaintiffs are part of the Hesai Group, a NASDAQ-listed company with operations around the world, including in the United States.  The Hesai Group is the world's leading manufacturer of Light Detection and Ranging ("LiDAR") technology for commercial—primarily automotive—uses.  Unlike cameras or radar, LiDAR uses laser pulses to create a real-time, highly accurate 3D representation of physical surroundings, enabling autonomous systems to navigate complex environments in a wide variety of driving conditions.  Based on the company's proven track record of responsible development, private-sector automobile manufacturers from around the globe trust the Hesai Group to provide the safest and most reliable LiDAR technology for intelligent self-driving and driver-assisting systems in modern commercial and passenger vehicles.

3.      The Hesai Group has U.S.-educated leadership, a demonstrated commitment to transparency in its financials and corporate management, an independently certified record of data security, cybersecurity, and data privacy, and a major international customer base that includes most of the major producers of, and contributors to, commercial and passenger vehicles.  The Hesai Group is majority-owned by U.S. and other international shareholders and is managed and controlled by its private Board and founders.  No Chinese governmental or military entity has sought to exert influence or control over the Hesai Group's management, strategy, or research-and-development operations.  Since inception, the Hesai Group has designed and made products solely for commercial and civilian uses.

4.      Nevertheless, in January 2024, Defendants abruptly placed Hesai Technology Co., Ltd. and its subsidiaries (collectively, "Hesai") on a list of "Entities Identified as Chinese Military

Companies Operating in the United States in accordance with Section 1260H of the William M. ('Mac') Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)" ("1260H List" or the "List").

5.      Defendants afforded Hesai no warning, no explanation, and no opportunity to defend itself prior to the listing.

6.      As this Court has repeatedly made clear, U.S. law imposes enforceable limits on Defendants' authority to designate companies they believe are tied to the Chinese military—limits that Defendants once again transgressed here.  *See, e.g., Xiaomi Corp. v. Department of Def.,* No. CV 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021); *Luokung Tech. Corp. v. Department of Def.,* 538 F. Supp. 3d 174 (D.D.C. 2021).

7.      Hesai is not owned or controlled, directly or indirectly, by the Chinese government or the Chinese military.  Nor does Hesai otherwise meet the statutory definition of a "Chinese military company."  On the contrary, Hesai has made deliberate efforts to operate independently of any governmental control or military influence, Chinese or otherwise.  Defendants simply have no legal or factual basis to place Hesai on the 1260H List.

8.      In a good-faith effort to cooperate with the U.S. government and avoid litigation, over two months ago Hesai explained to Defendants that there is no factual or legal basis for Hesai to be on the 1260H List and asked to be removed.  Hesai also sought the justification for Hesai's addition to the 1260H List and the evidence on which Defendants relied.  Three weeks ago, Hesai even shared a draft of this complaint with Defendants, in an effort to resolve this matter out of court.  To date, however, Defendants have declined even to provide the basis for Hesai's listing—let alone to offer any evidence to Hesai—and have provided no substantive response to Hesai's request to be removed from the 1260H List.

9.     Hesai's placement on the 1260H List has caused Plaintiffs to suffer serious reputational injury, a significant drop in stock price, and lost business opportunities.  Indeed, these severe consequences appear to be the whole point of the List, which has the purpose of "naming and shaming" foreign entities purportedly associated with the Chinese military.[1]  As several members of Congress recently made clear, Plaintiffs "have been blacklisted by the U.S. government" via their placement on the 1260H List.[2]

10.     Hesai's ongoing harms, along with Defendants' failure to correct their egregious mistake, have forced Hesai to seek an order (i) requiring Defendants to inform Hesai of the basis for its addition to the 1260H List; (ii) setting aside that listing decision as arbitrary and capricious (including because it is based on false or misleading information), in excess of statutory authority, contrary to constitutional right and power, and otherwise contrary to law; (iii) remanding to the Department of Defense ("Department") with instructions to remove Hesai from the 1260H List; or, in the alternative, (iv) declaring Section 1260H unconstitutional.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and § 2201 (the Declaratory Judgment Act).

---

[1] Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021), https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors ("Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237[.]").

[2] Letter from Rep. Ashley Hinson to Adena Friedman (Apr. 11, 2024) ("Hinson Letter") at 1, *available at* https://mcusercontent.com/ffedde7e54b71a41a9505fff1/files/567c1355-c421-5287-60d0-eab9e37a7306/Hinson_Letter_to_Nasdaq_04.11.24_64_.pdf.

12.     This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment Act); 5 U.S.C. §§ 701-706 (the Administrative Procedure Act); and the Court's inherent equitable power.

13.     Venue is proper under 28 U.S.C. § 1391(b) and (e) because this is a civil action in which Defendants are federal agencies and federal officers acting in their official capacities, a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia, and Defendants reside in this district.

## PARTIES

14.     Plaintiff Hesai Technology Co., Ltd. is wholly owned by Hesai Hong Kong Limited, which in turn is wholly owned by Hesai Group, a NASDAQ-traded holding company incorporated under the laws of the Cayman Islands.  The Hesai Group has a global footprint:  it is headquartered in Shanghai, with multiple offices in the United States, Germany, Japan, and South Korea, and has customers spanning over 40 countries.  The company develops, manufactures, and sells LiDAR technology for use in commercial and passenger vehicles.  Since February 9, 2023, the Hesai Group has been listed on NASDAQ under the ticker symbol HSAI.

15.     Plaintiff Hesai Inc., a wholly owned subsidiary of Hesai Technology Co., Ltd., was incorporated as a California corporation in October 2017.  As the Hesai Group's primary sales platform in the United States, Hesai Inc. employs over a dozen workers at locations in Palo Alto, California, and Detroit, Michigan.

16.     Defendant Department of Defense is an executive agency of the United States within the meaning of 5 U.S.C. § 551(1) that is charged with coordinating and supervising all agencies and functions of the government directly related to national security and the United States Armed Forces.  Section 1260H of the William M. ("Mac") Thornberry National Defense

Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965 ("Section 1260H"), directs the Department to (1) identify and maintain a list of Chinese military companies, and (2) delete from that list, on an ongoing basis and based on the latest information available, any entities that no longer fall within the statutory definition of a Chinese military company.

17. Defendant Lloyd J. Austin III is the Secretary of Defense. In this capacity, he oversees the Department's functions, including the listing of entities as Chinese military companies under Section 1260H. He is sued in his official capacity.

18. Defendant Laura D. Taylor-Kale is the Assistant Secretary of Defense for Industrial Base Policy. In this capacity, she manages the process for the Department's placement of entities on the Section 1260H List and the process for the Department's removal of entities from the 1260H List. She is sued in her official capacity.

## FACTS

### I. Hesai's Technology

19. LiDAR, or Light Detection and Ranging, is a method for determining the distance of an object or surface via lasers. Its primary application is in autonomous vehicles or Advanced Driver Assistance Systems, where LiDAR allows the vehicle system to create a three-dimensional picture to facilitate safe maneuvering and avoid crashes.

20. Hesai operates in, and leads, the automotive LiDAR industry with a 47% share of the global market as of 2022.[3] Hesai's share of the global market for robotic cars (*i.e.*, "robotaxis")

---

[3] Hesai, *Forbes: Hesai Dominates The Automotive LiDAR Market*, July 26, 2023, https://www.hesaitech.com/hesai-dominates-the-automotive-lidar-market/.

that year was even higher, at 67%.[4]  Indeed, 12 of the world's top 15 autonomous driving companies have used Hesai's technology as their primary LiDAR solution.[5]

21.     Given that global reach, Hesai has established offices around the world, including in the United States.  Reflecting its client relationships with the American automotive industry, Hesai's U.S. subsidiary, Hesai Inc., employs over a dozen workers at locations in Palo Alto, California, and Detroit, Michigan.  Additionally, Hesai has been in advanced discussions to build a manufacturing facility in the United States—plans that are unfortunately now on hold due to the company's erroneous and unlawful addition to the 1260H List.

22.     Hesai's competitors include both U.S. and Chinese LiDAR companies.  Hesai's market position can be attributed to its strengths in innovation and safety, which are the result of the company's deep commitment to research and development.

23.     Hesai's LiDAR products do not capture personally identifiable information such as human facial features, biometric data, or license plates, as shown below in the sample of an actual image taken with Hesai's LiDAR:

---

[4] Hesai, *Hesai Ranks No. 1 in Global Automotive Lidar for the 2nd Year in a Row*, July 25, 2023, https://www.hesaitech.com/hesai-ranks-no-1-in-global-automotive-lidar-for-the-2nd-year-in-a-row/.

[5] Hesai Group, Form F-1 filed with the U.S. Securities and Exchange Commission on Jan. 17, 2023, at 112, https://investor.hesaitech.com/static-files/a52326dc-263e-4565-b9d9-3c765859f49f.



24.     Hesai's LiDAR products also do not—and indeed cannot—store or wirelessly transmit any point cloud images they generate, ensuring data security.  Hesai's products do not have wireless, cellular, or Bluetooth capabilities.  Nor can Hesai's LiDAR store information through a cloud or be controlled remotely.  Rather, Hesai's LiDAR transmits image data to the vehicle's onboard computer via a one-way secure cable, ensuring the data cannot be accessed outside of the vehicle in which it operates.  All images and other data are owned, stored, and controlled by the vehicle owner or manufacturer.  Neither Hesai nor any third party has access to those images and data.

25.     These safeguards of Hesai's technology have been certified through a cybersecurity report by TÜV Rheinland, an international authoritative third-party testing and certification institution in Germany, and through a teardown report by Dekra, the world's largest independent expert organization in the testing, inspection, and certification sector.[6]

---

[6] Hesai, *Hesai's Lidars Get Top Marks for Data Security*, Nov. 6, 2023, https://investor.hesaitech.com/news-releases/news-release-details/hesais-lidars-get-top-marks-data-security.

26.     Hesai is also the first LiDAR company to have obtained TÜV Rheinland's ISO/SAE 21434 cybersecurity certification, a standard that covers the entire product lifecycle from conceptualization through development, production, operation, and disposal.[7]

## II.     Hesai's Independence From Military And Governmental Control

27.     Because Hesai sells to the commercial and consumer market, Hesai's technology has never been designed for, evaluated for, or validated to military specifications.  In fact, the U.S. Department of Commerce's Bureau of Industry and Security has given Hesai's technology the classification of EAR99—meaning that it falls into the same category as most commercial and consumer goods and does not require a license for exports in most situations.[8]

28.     Contrary to rumors spread by Hesai's competitors, Hesai does not manufacture any military vehicles (and in fact, does not manufacture any vehicles of any kind).

29.     Although Hesai, like any other technology company, cannot fully control what its end-users do with its technology (including unauthorized use or third-party resale), Hesai does not supply its products for any military uses.

30.     In fact, in recent years Hesai has taken aggressive steps to further strengthen its sales-compliance framework.  For example, prior to its addition to the 1260H List, Hesai implemented, with the assistance of U.S. counsel, a carefully designed customer-screening process to ensure that Hesai does not sell its products to any entities on the Military End User List, the

---

[7] Hesai, *Hesai's Pandar128 Becomes the World's First Lidar to Obtain ISO/SAE 21434 Cybersecurity Certification*, Oct. 31, 2023, https://www.hesaitech.com/hesais-pandar128-becomes-the-worlds-first-lidar-to-obtain-iso-sae-21434-cybersecurity-certification/.

[8] U.S. Department of Commerce, Bureau of Industry and Security, Office of Exporter Services, *Frequently Asked Questions to Export Licensing Requirements* at 5-6, 11 (revised Nov. 2018), https://www.bis.doc.gov/index.php/documents/pdfs/286-licensing-faq/file#:~:text=EAR99%20is%20a%20classification%20designation,%2C%E2%80%9D%20is%20a%20shipment%20designation.

Entity List, or the Specially Designated Nationals and Blocked Persons List, or to any entities subject to U.S., E.U., U.K., or U.N. blocking measures.

31.     Hesai's leadership is also fully committed to independence from government control from any country, including China.  Hesai's founders maintain a 23% ownership stake in the company and hold super-voting shares which confer 75% of the voting power and control over the company's strategic decisions.  Neither the Chinese government nor the People's Liberation Army has any "golden" share or veto right over the company's decision-making.

32.     The only benefits (such as tax breaks) the company accepts from the governments of the United States, China, and other countries are those generally available to any technology company, foreign or domestic.

## III.     Statutory And Regulatory Background

33.     The 1260H List follows Defendants' prior attempts—some of which were enjoined by this Court—to designate companies for their purported connection to the Chinese government or military.

34.     One set of prior attempts was under Section 1237 of the National Defense Authorization Act of 1999, as amended, which mandates that the Secretary of Defense make a list of certain "Communist Chinese military companies" ("CCMC") and "make additions or deletions to the list . . . on an ongoing basis based on the latest information available."  50 U.S.C. § 1701 note, Pub. L. No. 105-261, § 1237, 112 Stat. 1920, 2160 (1998), *as amended by* Pub. L. No. 106-398, § 1233, 114 Stat. 1654 (2000), and Pub. L. No. 108-375, § 1237, 118 Stat. 1811, 2089 (2004) ("Section 1237").  The Secretary must list a company pursuant to that authority if it "is owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of

the People's Republic of China" or "owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China," among other requirements.

35.     In 2021, this Court twice held that, in placing certain companies on the Section 1237 List, the Department failed to "adequately explain[] the basis for its decision," acted "in violation of the Department of Defense's limited grant of statutory authority," and "lack[ed] the substantial evidentiary support required" under the Administrative Procedure Act ("APA"). *Xiaomi Corp.*, 2021 WL 950144, at *4-8; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 ("The Department of Defense's CCMC designation process as to Luokong was flawed and failed to adhere to several different APA requirements.").  The Court also noted "serious concerns" about whether the Department had afforded the designated companies "constitutional due process." *Xiaomi Corp.*, 2021 WL 950144, at *8 n.8; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 n.13.

36.     This Court thus enjoined the listings under Section 1237 of two companies:  Xiaomi Corporation and Luokung Tech. Corp.  *See Xiaomi Corp.*, 2021 WL 950144, at *13; *Luokung Tech. Corp.*, 538 F. Supp. 3d at 195-196.  The Department did not appeal, and subsequently removed both entities from the Section 1237 List.

37.     In January 2021—the same month the Department added Xiaomi and Luokung to the Section 1237 List—Congress enacted the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1237, 134 Stat. 3388, 3965 (2021), which provides the authority for the List at issue in this action.  Specifically, Section 1260H of that Act directs the Secretary of Defense to "identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company" ("CMC").  Sec. 1260H(a).

38.     As commenters have explained, Section 1260H shares some similarities with Section 1237, but is narrower in that it reflects a "particular[] concern[] about the Chinese military and its operations in the United States, rather than the Chinese state more broadly."[9]  Congress directed this "more precise" designation strategy through "Section 1260H's narrow and tailored language," including a "new definition of a CMC [that] is significantly narrower than the old definition of CCMCs under Section 1237."[10]

39.     To that end, Section 1260H provides an express statutory definition of a "Chinese military company" that consists of two distinct prongs.

40.     *First,* Section 1260H(d)(1)(B)(i)(I) defines a Chinese military company as "an entity that is . . . directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party."  "The term 'People's Liberation Army' means the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate."  Sec. 1260H(d)(3).

41.     *Second*, Section 1260H(d)(1)(B)(i)(II) defines a Chinese military company as an entity "identified as a military-civil fusion contributor to the Chinese defense industrial base." Section 1260H(d)(2), in turn, defines a "military-civil fusion contributor" as:

(A)     Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

---

[9] Brunner & Weinstein, *supra* note 1.

[10] *Id.*

(B)     Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C)     Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D)     Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E)     Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F)     Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G)     Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H)     Any other entities the Secretary determines is appropriate.

42.     Section 1260H(b)(1) directs the Secretary of Defense to submit the list of designated Chinese military companies to Congress in an annual report.  Section 1260H(b)(2) provides that, "[c]oncurrent with th[at] submission . . . , the Secretary shall publish the unclassified portion of such list in the Federal Register."

43.     Section 1260H(b)(3) provides that the Secretary of Defense "shall make additions or deletions" to the 1260H List "on an ongoing basis based on the latest information available."

44.     On June 28, 2021, Defendants published the 1260H List, designating various entities as "Chinese military companies" for the first time.  86 Fed. Reg. 33,994, 33,994 (June 28, 2021).  Hesai did not appear on that List.

45.     At the same time that Defendants published the first 1260H List, Defendants "removed the designation of 'Communist Chinese military companies' from entities previously listed as such in accordance with Section 1237[.]"  86 Fed. Reg. at  33,994. "There are currently no entities designated as Communist Chinese military companies" under Section 1237.  *Id.*

## IV.    Defendants Add Hesai To The 1260H List Without Any Basis In Law Or Fact, Decline To Provide Hesai With Any Evidence Underlying The Erroneous Designation, And Fail To Remove Hesai From The List

46.     On January 31, 2024, two days after receiving political pressure for its unexplained delay in publishing the annual update to its 1260H List for 2023,[11] the Department released an updated 1260H List via press release.[12]

47.     On that List, the Department designated Hesai Technology Co., Ltd. as a "Chinese military compan[y]," and noted that, for all listed entities, the Department intended for "Subsidiaries [to be] Listed with Parent Companies."[13]

48.     The Department provided Hesai no prior warning, notice, or opportunity to be heard regarding Hesai's inclusion on the 1260H List.

---

[11] Press Release, Ted Budd, *Budd, Colleagues Press DoD on Failure to Publish List of Chinese Military Companies Operating in the United States* (Jan. 29, 2024), https://www.budd.senate.gov/2024/01/29/budd-colleagues-press-dod-on-failure-to-publish-list-of-chinese-military-companies-operating-in-the-united-states/.

[12] Press Release, U.S. Department of Defense*, DOD Releases List of People's Republic of China (PRC) Military Companies in Accordance With Section 1260H of the National Defense Authorization Act for Fiscal Year 2021* (Jan. 31, 2024), https://www.defense.gov/News/Releases/Release/Article/3661985/dod-releases-list-of-peoples-republic-of-china-prc-military-companies-in-accord/.

[13] U.S. Department of Defense, *Entities Identified as Chinese Military Companies Operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)*, https://media.defense.gov/2024/Jan/31/2003384819/-1/-1/0/1260H-LIST.pdf (last visited May 9, 2024).

49.     The Department has provided no explanation, publicly or otherwise, that would allow Hesai, its investors, its customers, or anyone else to understand the basis of the Department's decision.   Notably, despite calls for the Department to be transparent about its "process for determining how [it] develops, updates, and publishes" the 1260H List,[14] the Department has provided neither Hesai nor the wider public with such information.   Instead, on April 2, 2024, the Department published in the Federal Register a "Notice of Chinese military companies," stating without elaboration that "[t]he Secretary of Defense has determined" that the entities listed in the Department's January 31 press release, including Hesai, "qualify as 'Chinese military companies' in accordance with Section 1260H[.]"  89 Fed. Reg. 22,698, 22,698 (April, 2, 2024).

50.     In a good-faith effort to cooperate with the Department and avoid litigation, on March 8, 2024, counsel for Hesai submitted to Defendant Taylor-Kale and other Department officials a detailed letter and a sworn declaration from Hesai's CEO.   On April 12, 2024, counsel for Hesai submitted to Defendant Taylor-Kale and other Department officials correspondence further rebutting unsubstantiated reporting perpetuating false rumors that Hesai makes military vehicles.  These submissions (i) provided the "most recent information available" and the "latest information available" establishing that Hesai is not a "Chinese military company," Sec. 1260H(a), (b)(3); (ii) requested that the Department provide the legal and factual basis on which it relied to designate Hesai as a "Chinese military company"; and (iii) requested that the Department remove Hesai from the 1260H List.

51.     Counsel for Hesai repeatedly has expressed to Defendant Taylor-Kale and other Department officials Hesai's desire to cooperate with Defendants to resolve this matter promptly outside of litigation.  Counsel for Hesai also has explained, however, that in light of the ongoing

---

[14] *See* Press Release, Ted Budd, *supra* note 11.

harm the company is suffering, Hesai would need to pursue legal remedies if Defendants remained unwilling to work with the company to remove it from the List.  On April 22, 2024, counsel for Hesai sent Defendant Taylor-Kale and other Department officials a draft of this complaint and reiterated the company's preference to resolve the matter administratively.

52.     It has now been several months since Defendants placed Hesai on the 1260H List without prior warning or explanation, over two months since counsel for Hesai explained that Hesai is not a "Chinese military company" and asked the basis for Hesai's listing, and three weeks since counsel for Hesai shared its draft complaint in the hope of resolving the matter outside of litigation.  To date, however, Defendants still have not produced the basis for the listing or offered any substantive response to Hesai's removal request, necessitating this action.

53.     Notably, Hesai's listing follows a sustained, malicious lobbying campaign by Hesai's competitors to falsely smear Hesai as a Chinese military company.  For example, the "Lidar Coalition," a group made up mostly of Hesai's U.S. LiDAR competitors, has openly stoked fears of and lobbied against Chinese LiDAR companies—especially Hesai.[15]  One of Hesai's chief U.S. competitors, Ouster, spent over $800,000 on lobbying in 2023 alone.[16]  This commercially driven campaign also led to baseless letters from senators representing Florida, the home state of another of Hesai's main competitors (Luminar).  Mainstream media outlets have recognized that such purported national-security concerns raised over companies like Hesai may be nothing more

---

[15] *See, e.g.*, Velodyne Lidar, *Velodyne Lidar Founding Member of Lidar Coalition to Enhance Roadway Safety*, June 9, 2022, https://velodynelidar.com/blog/velodyne-lidar-founding-member-of-lidar-coalition-to-enhance-roadway-safety/.

[16] Open Secrets, *Client Profile: Ouster, Inc.*, https://www.opensecrets.org/federal-lobbying/clients/summary?cycle=2023&id=D000096601 (last visited May 9, 2024).

than a "self-interested attempt to handicap overseas rivals" by the "struggling" U.S. LiDAR industry.[17]

54.     Because the Department has provided no reasoned basis for its decision to place Hesai on the 1260H List, it is unclear what information, if any, the Department relied upon in erroneously determining that Hesai is a "Chinese military company."

55.     To the extent that the Department may have relied on misleading statements originally provided by Hesai's competitors without independently verifying the accuracy or relevance of that information—*e.g.*, unsubstantiated reporting perpetuating false rumors that Hesai makes military vehicles, when in fact Hesai does not make any vehicles of any kind—that alone is a basis for holding that the Department acted in violation of its statutory responsibilities.  *See City of New Orleans v. SEC*, 969 F.2d 1163, 1167 (D.C. Cir. 1992) ("[A]n agency's reliance on a report or study without ascertaining the accuracy of the data contained in the study or the methodology used to collect the data is arbitrary." (internal quotation marks omitted)).

56.     In addition, to the extent the Department may continue to rely on outdated information instead of the "latest information available," Sec. 1260H(b)(3)—such as the post-listing letters and declaration Hesai submitted to the Department—that, too, constitutes an independent violation of the Department's statutory mandate.

## V.     <u>Hesai's Erroneous Listing</u>

57.     Defendants erred in adding Hesai to, and failing to remove Hesai from, the 1260H List because Hesai is not a "Chinese military company" under either prong of the statutory

---

[17] Bloomberg, *Fears of Chinese Self-Driving Car Tech Are on the Rise*, July 26, 2023, https://www.bloomberg.com/news/newsletters/2023-07-26/fears-of-chinese-self-driving-car-tech-are-on-the-rise.

definition:  (a) it is neither owned nor controlled by, nor is an agent of, the Chinese military; and (b) it is not a military-civil fusion contributor to the Chinese defense industrial base.

### a. Hesai is neither owned nor controlled by, nor an agent of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.

58.     The Department had no basis to determine that Hesai is directly, indirectly, or beneficially owned by, controlled by, or an agent of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.

59.     *"Owned."*  As a matter of corporate law, "ownership" may be established by demonstrating an entity's 50% or greater stake in a company, as a 50% ownership generally indicates the authority or ability to establish or direct a company's general policies or day-to-day operations.

60.     The federal government has applied this consistent understanding in related contexts.  For example, the Department of Treasury's Office of Foreign Assets Control ("OFAC")—which had been responsible for administering prohibitions on investments in Communist Chinese Military Companies designated under Section 1237—uses a "50 Percent Rule" to determine ownership.[18]  The 50 Percent Rule provides that blocked persons "are considered to have an interest in all property and interests in property of an entity in which such blocked persons own, whether individually or in the aggregate, directly or indirectly, a 50 percent or greater interest."[19]

---

[18] *See* U.S. Department of Treasury, Office of Foreign Assets Control, *Chinese Military Companies Sanctions*, *FAQ*, https://ofac.treasury.gov/faqs/topic/5671 (last updated June 1, 2022).

[19] *See* U.S. Department of Treasury, *Revised Guidance on Entities Owned By Persons Whose Property and Interests in Property Are Blocked*, Aug. 13, 2014, https://ofac.treasury.gov/media/6186/download?inline.

61.    OFAC has also employed this standard in the context of the Iranian Transactions and Sanctions Regulations, which provide that an entity is "'owned or controlled' by" a U.S. person if the U.S. person "(i) [h]olds a 50 percent or greater equity interest by vote or value in the entity; (ii) [h]olds a majority of seats on the board of directors of the entity; or (iii) [o]therwise controls the actions, policies, or personnel decisions of the entity."[20]

62.    Against this regulatory backdrop, this Court has observed that it is "debatable if any one person 'owns' [a] company" that "is a large, publicly traded corporation" of which the largest shareholder owns less than 50% of the shares. *Xiaomi Corp.*, 2021 WL 950144, at *6 n.4.

63.    Hesai is wholly owned by Hesai Group, which is a publicly listed company on NASDAQ.  There is no evidence that a majority, or even a substantial portion, of its shares are directly, indirectly, or beneficially owned by entities that have any relationship to the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.  Hesai's three private founders own a substantial share—23%—of Hesai Group.  The rest of the shares are owned by institutional, retail, and other commercial investors, including from the United States and other Western countries.

64.    *"Controlled."*  Similarly, a company is generally "controlled by" a person or entity when, even absent 50% ownership, the person or entity has the ability to significantly influence the operation of a company or control its day-to-day operations through, for instance, the election or appointment of more than half of an entity's governing board.

65.    As the Court explained in the Section 1237 litigation, the Board of Directors of a company "'control[s]' the company" when the Board acts "subject to the direction of its controlling shareholders." *Xiaomi Corp.*, 2021 WL 950144, at *6 n.4.

---

[20] 31 C.F.R. § 560.215(b)(1).

66.     That interpretation is consistent with OFAC's definition of control in the Iranian Transactions and Sanctions Regulations referenced above, in which "control[]" is established by holding a majority of seats on the board of directors or similar indicia of actual control.[21]

67.     As a U.S. publicly traded company, Hesai Group is responsible to its Board, which does not include any person with a relationship to the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party. Hesai's founders—private businesspeople with no relationship to the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party—hold super-voting shares, affording them 75% dominant control over Hesai.  Neither the Chinese government nor the Chinese military has any "golden" share or veto right over Hesai's actions.

68.     *"Agent."*  While Section 1260H does not define the term "agent," courts interpreting the same term in the context of other statutes regulating "agent[s] of a foreign government" have held that there must be—at the very least—an agreement by the agent to act on behalf, or subject to the control, of the foreign government. *E.g., United States v. Rafiekian,* 991 F.3d 529, 538-539 (4th Cir. 2021).

69.     Neither Hesai nor its U.S.-educated leadership is an "agent" of the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.  Hesai and its founders have no such agency agreement, and are not subject in any way to control by those institutions.

70.     Instead, as noted, Hesai has made deliberate efforts to operate independently of any governmental control or military influence, Chinese or otherwise.  Hesai does not accept any non-

---

[21] *Id.*

generally available subsidies or other money from any government, including the Chinese government.  Hesai does not sell or provide its technology to any military entity, Chinese or otherwise.  And Hesai engages in a carefully designed screening process to prevent sales to any entity on the Military End User List, the Entity List, or the Specially Designated Nationals and Blocked Persons List, or to any entity subject to U.S., E.U., U.K., and U.N. blocking measures.

**b.  Hesai is not a "military-civil fusion contributor to the Chinese defense industrial base."**

71.     Hesai also does not fall under the second eligibility prong for the 1260H List, because it is not a "military-civil fusion contributor to the Chinese defense industrial base" under Section 1260H(d)(1)(B)(i)(II).

72.     As an initial matter, Hesai is not any sort of contributor "to the Chinese defense industrial base."  That term, which is not defined in the statute or regulation, must have meaning independent of "military-civil fusion contributor."  *See, e.g.*, *Duncan v. Walker,* 533 U.S. 167, 174 (2001) (explaining "duty" to "give effect, if possible, to every clause and word of a statute" so no term is rendered "superfluous").  Because Hesai does not supply its technology either to the Chinese military or for a military end-use by the Chinese military, Defendants have no basis to conclude that Hesai contributes "to the Chinese defense industrial base."

73.     Beyond that, Hesai does not fall within the seven statutorily enumerated examples of what constitutes a "military-civil fusion contributor," either, as it is not:

a.      "knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus," Sec. 1260H(d)(2)(A);

b.      "affiliated with the Chinese Ministry of Industry and Information Technology, including [through] research partnerships and projects," Sec. 1260H(d)(2)(B);

    c.      "receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense," Sec. 1260H(d)(2)(C);

    d.      "defined as a 'defense enterprise' by the State Council of the People's Republic of China," Sec. 1260H(d)(2)(D);

    e.      "residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone," Sec. 1260H(d)(2)(E);

    f.      "awarded with receipt of military production licenses by the Government of China," Sec. 1260H(d)(2)(F); or

    g.      "advertis[ing] on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China," Sec. 1260H(d)(2)(G).

74.    Nor does Section 1260H(d)(2)(H)'s grant of residual authority to the Department to designate any other entity "the Secretary determines is appropriate" provide a basis for identifying Hesai as a "military-civil fusion contributor," for several reasons.

75.    *First*, that residual authority must be construed in light of the term it is defining, "military-civil fusion contributor." Courts have understood the term "[c]ontribute" to mean "lend assistance or aid to a common purpose" and to require proof of an "active role" in the conduct or effect that the statute is targeting. *See, e.g.*, *Hinds Inv., L.P. v. Angioli,* 654 F.3d 846, 850-851 (9th Cir. 2011). Accordingly, for an entity to be a "military-civil fusion contributor," the entity must take an active role in some way—whether it be in the form of providing technology, services, expertise, or assistance—that furthers the Chinese government's military-civil fusion strategy.

76.    *Second*, that interpretation is supported by the canon that a residual clause "should be read to give effect to the terms" preceding it and "should itself be controlled and defined by reference to the enumerated categories . . . recited just before it." *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 115 (2001).

77.    Each of the enumerated examples preceding the 1260H residual clause falls into one of two clear categories.

78.    The first set of examples listed in Section 1260H(d)(2) describe entities that provide or attempt to provide assistance to the Chinese government's military-civil fusion strategy.  *See* Sec. 1260H(d)(2)(D) ("entities or subsidiaries defined as a 'defense enterprise' by the State Council of the People's Republic of China"), (E) ("[e]ntities residing in or affiliated with a military-civil fusion enterprise zone"), (G) ("[e]ntities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China").

79.    The second set of examples listed in Section 1260H(d)(2) describe entities that are in a mutually beneficial relationship with the Chinese military, such that they can be expected to play an active role in the military-civil fusion strategy.  *See* Section 1260H(d)(2)(A) ("knowingly receiving assistance" from the Chinese government or Chinese Communist Party through efforts "initiated under the Chinese military industrial planning apparatus"), (B) ("affiliated with the Chinese Ministry of Industry and Information Technology"), (C) ("receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense"), (E) ("receiving assistance from the Government of China through [a military-civil fusion] enterprise zone"), (F) ("awarded with receipt of military production licenses" from Chinese government).  Notably, in this context, the phrase "affiliated with" refers to "a company effectively controlled by another or associated with others under common ownership or control."  *Xiaomi Corp.*, 2021 WL 950144, at *6 (holding that "[t]he overwhelming weight of authority," including Department regulations, "supports this definition") (citing, *inter alia,* 32 C.F.R. § 232.3 (Defense regulation stating that an "affiliate" is "any person that controls, is controlled by, or is under common control with another person")).

23

80.     Thus, consistent with these two categories, the Department may designate an entity as a "military-civil fusion contributor" under Section 1260H(d)(2)(H)'s residual clause only if the entity is (i) actively furthering the Chinese government's military-civil fusion strategy or (ii) receiving some amount of assistance, direction, or guidance from the Chinese government that furthers China's military-civil fusion strategy.

81.     *Third*, the two categories of examples enumerated in Section 1260H(d)(2) must inform the scope of the Secretary's residual discretion so as to provide the "intelligible principle" necessary under the current understanding of the constitutional nondelegation doctrine. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). Indeed, the constitutional avoidance canon requires that Section 1260H(d)(2)(H) be construed narrowly to avoid the nondelegation issue. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (describing this "cardinal principle" of statutory interpretation).

82.     Hesai does not provide or attempt to provide assistance to the Chinese government's military-civil fusion strategy, and is not in any form of mutually beneficial relationship with the Chinese military. As noted, far from assisting the Chinese government's military-civil fusion strategy, Hesai is a wholly owned subsidiary of a U.S.-traded public company that has taken deliberate steps to ensure that (i) it does not receive assistance, financial or otherwise, from any arm of the Chinese military; (ii) its leadership is unaffiliated with the Chinese military (or any arm of the Chinese government); and (iii) its products are not sold, and may not be resold, to the Chinese military.

83.     In sum, neither Section 1260H(d)(2) as a whole, nor Section 1260H(d)(2)(H)'s residual clause, provides any authority for Defendants to identify Hesai as a "military-civil fusion contributor."

## VI. Defendants' Actions Have Inflicted, And Threaten To Inflict, Substantial Harm On Plaintiffs And The U.S. Public

84.     Defendants' actions have inflicted immediate, severe, and ongoing harms on Plaintiffs and, if not enjoined, threaten future harms as well.

85.     Hesai has suffered serious reputational injury because of the stigma caused by its placement on the 1260H List, consistent with that List's "naming and shaming" purpose.[22]  The company and its executives have been subject to sustained and damaging press attention that now falsely describes Hesai as an entity that is "helping" and "aiding" the Chinese military.[23]

86.     Defendants' actions caused the Hesai Group's share price to fall over 30% in a single day following the listing.[24]  Today, the share price remains well below its historical value, at a time when the values of other NASDAQ-listed technology companies have been surging.

87.     Moreover, the listing prompted members of Congress to send a letter to NASDAQ expressing their "concern[] to see companies included on U.S. stock exchanges that are also designated on the Section 1260H List."[25]  A press release announcing the letter cites Hesai as the "prime example" of a "Chinese Military company" that "shouldn't be listed on U.S. stock

---

[22] Brunner & Weinstein, *supra* note 1 ("Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237[.]").

[23] Idrees Ali et al., *Pentagon calls out Chinese companies it says are helping Beijing's military*, REUTERS (Feb. 1, 2024), https://www.reuters.com/technology/pentagon-adds-companies-chinese-military-list-us-official-says-2024-01-31/; Bloomberg News, *US Accuses Chinese Memory Chipmaker, AI Firms of Aiding PLA*, BLOOMBERG (Feb. 1, 2024), https://www.bloomberg.com/news/articles/2024-02-01/us-accuses-chinese-memory-chipmaker-ai-firms-of-aiding-military.

[24] Chris Wack, *Hesai Group Shares Drop 30% After Addition to 'Chinese Military Companies' List*, MARKETSCREENER, Feb. 1, 2024, https://www.marketscreener.com/quote/stock/HESAI-GROUP-150491008/news/Hesai-Group-Shares-Drop-30-After-Addition-to-Chinese-Military-Companies-List-45867848/.

[25] Hinson Letter, *supra* note 2, at 1.

exchanges."[26]  The letter even urges NASDAQ to "consider delisting Hesai (HSAI) from the stock exchange given their listing on the Section 1260H List[,]" and warns that allowing Hesai's shares to continue to trade on the exchange "contradicts the federal government's effort[s]" to "blacklist[]" the company.[27]

88.     Hesai has lost business opportunities in the months since the listing.   The company's continued placement on the List has jeopardized ongoing contract negotiations and disrupted existing and potential customer relationships at a particularly sensitive time for the industry, when automobile companies are making crucial decisions about the technology to be used in future models.

89.     Because of the listing and its impact on Hesai's customer relationships, Hesai has been forced to pause advanced plans to establish a manufacturing facility in the United States.

90.     Although Hesai has no current or future plans to bid on Department contracts, the listing also imposes a legal prohibition on Hesai, by prohibiting the Department both from directly contracting with Hesai and from entering into contracts with third parties for "goods or services that include goods or services produced or developed by" Hesai.  *See* Section 805 of the National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31 § 805, 137 Stat. 136, 315.

91.     Every day it remains on the 1260H List, Hesai is suffering these and other significant harms.

92.     Beyond the harm to Hesai, the listing threatens the public interest.  Higher levels of vehicle autonomy offered through Advanced Driver Assistance Systems and Autonomous

---

[26] Press Release, Ashley Hinson*, Hinson Leads Effort to Delist Chinese Military Companies from U.S. Stock Exchanges* (Apr. 16, 2024), https://hinson.house.gov/media/press-releases/hinson-leads-effort-delist-chinese-military-companies-us-stock-exchanges.

[27] Hinson Letter, *supra* note 2, at 1-2.

Mobility solutions—achieved through LiDAR technology—can help save lives and reduce injuries caused by vehicle crashes.[28]  Hesai is the LiDAR industry leader because the established and certified safety of its technology is far superior to, and more reliable than, its competitors' unproven products.[29]  Until corrected, Hesai's continued presence on a blacklist of Chinese military companies—which has caused U.S. and other customers to be wary of future business with Hesai—risks leaving the U.S. public with only unsafe, unreliable, and unsuitable alternatives at a time when LiDAR technology is becoming increasingly critical to the future of the American automotive industry.

93.    Hesai's placement on the List also harms free and fair competition in the LiDAR market.  Through 2030, the global Advanced Driver Assistance Systems market is expected to have a compound annual growth rate of 93.8%, and the Autonomous Mobility market is expected to have a compound annual growth rate of 73.6%.[30]  Hesai is one of a few companies that can ship LiDAR products in volume to automotive original-equipment manufacturers in the Advanced Driver Assistance Systems market.[31]  Hampering a major supplier and innovator in the LiDAR space will increase costs, reduce choices crucial to consumer safety, and impede technological advancement.  U.S. consumers will ultimately bear those consequences in the form of higher prices and inferior products.

---

[28] Hesai Group, Form F-1 filed with the U.S. Securities and Exchange Commission on February 2, 2023, at 105, https://investor.hesaitech.com/static-files/49abeb3c-f2a9-4644-b23c-affe556a5d0d.

[29] Hesai, *Hesai Acts as Group Leader for ISO Automotive Lidar Working Group*, June 23, 2022, https://www.hesaitech.com/hesai-acts-as-group-leader-for-iso-automotive-lidar-working-group/.

[30] Hesai Group, Form F-1, *supra* note 25, at 3.

[31] *Id.* at 117.

94.     In short, American competition will be harmed—and American roads will be more dangerous—if Defendants continue to arbitrarily and unlawfully target Hesai's technology in this manner.

## STATEMENT OF CLAIMS FOR RELIEF

95.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

96.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

97.     The APA also provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

98.     The APA further provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be, among other things, "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2).

99.     The Department is an "agency" whose final actions are reviewable under the APA.

100.    The January 31, 2024 listing constitutes "final agency action" subject to judicial review because it consummates the agency's decision-making process with respect to Hesai's placement on the 1260H List.

101.    The APA additionally requires the "reviewing court" to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); *see also id.* § 551(13) ("'agency action' includes … failure to act").  The Secretary of Defense's statutory duty to "make … deletions to the most recent list … on an ongoing basis based on the latest information available," Sec. 1260H(b)(3), constitutes agency action that Plaintiffs have requested and Defendants have withheld.

## COUNT I

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: ACTION IN EXCESS OF STATUTORY AUTHORITY, CONTRARY TO REQUIRED PROCEDURE, AND OTHERWISE NOT IN ACCORDANCE WITH LAW

### Against All Defendants

102.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

103.    Defendants acted in excess of statutory authority, contrary to required procedure, and otherwise contrary to law in at least two respects.

104.    *First*, in placing Hesai on the Section 1260H List, Defendants ignored or misconstrued the statutory criteria for an entity to be designated a "Chinese military company."

105.    As explained above, Hesai is not directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.

106.    Hesai also could not properly be identified as a "military-civil fusion contributor to the Chinese defense industrial base" under Section 1260H(d)(1)(B)(i)(II).

107.    For one, Hesai is not a contributor to the Chinese defense industrial base.  Hesai

does not supply its technology either directly to the Chinese military or for military end-use by the

Chinese military.  Hesai is solely a LiDAR supplier for commercial and passenger vehicles.

108.    For another, Hesai does not fall within the seven enumerated examples of what

constitutes a "military-civil fusion contributor," given that:

   a.   Hesai does not knowingly receive assistance from the Government
        of China or the Chinese Communist Party through science and
        technology efforts initiated under the Chinese military industrial
        planning apparatus;

   b.   Hesai is not affiliated with the Chinese Ministry of Industry and
        Information Technology, including research partnerships and
        projects;

   c.   Hesai does not receive assistance, operational direction or policy
        guidance from the State Administration for Science, Technology
        and Industry for National Defense;

   d.   Neither Hesai nor any subsidiary is defined as a "defense enterprise"
        by the State Council of the People's Republic of China;

   e.   Hesai neither resides in nor is affiliated with a military-civil fusion
        enterprise zone, and it does not receive assistance from the
        Government of China through any such enterprise zone;

   f.   Hesai has not been awarded military production licenses by the
        Government of China, such as a Weapons and Equipment Research
        and Production Unit Classified Qualification Permit, Weapons and
        Equipment Research and Production Certificate, Weapons and
        Equipment Quality Management System Certificate, or Equipment
        Manufacturing Unit Qualification; and

   g.   Hesai does not advertise on national, provincial, or non-
        governmental military equipment procurement platforms in the
        People's Republic of China.

109.    Further, and as explained above, the Secretary of Defense could not properly

determine that it is "appropriate" to identify Hesai as a "military-civil fusion contributor" under

the residual clause of Section 1260H(d)(2)(H) because Hesai (i) does not provide or attempt to

provide assistance to the Chinese government's military-civil fusion strategy and (ii) is not in any form of mutually beneficial relationship with the Chinese military.  On the contrary, Hesai has made deliberate efforts to operate independently of any governmental control and military influence, Chinese or otherwise.

110.   *Second*, Defendants acted in excess of statutory authority, contrary to required procedure, and otherwise contrary to law because in "identify[ing]" Hesai as a "Chinese military company," Defendants have not "based" their decision "on the most recent information available," in violation of Section 1260H(a).

111.   Defendants' actions have caused, and will continue to cause, ongoing harm to Plaintiffs.  Plaintiffs have no adequate alternative to review under the APA.

## COUNT II

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: ARBITRARY AND CAPRICIOUS AGENCY ACTION

### Against All Defendants

112.   Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

113.   Defendants acted in an arbitrary and capricious manner, and thus violated the APA, in several respects.

114.   *First*, Defendants failed to adequately explain the basis of the Department's decision to designate Hesai a Chinese military company under Section 1260H.  *See Xiaomi Corp.*, 2021 WL 950144, at *4 ("Reasoned decision-making requires that an agency 'articulate a satisfactory explanation for its action' with a 'rational connection between the facts found and the choice made.'") (quoting *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983)).  In fact, to date Defendants have provided no explanation whatsoever—either publicly or to Plaintiffs privately—for the Department's decision.

115.    *Second*, Defendants lack substantial evidence that Hesai meets the statutory definition of a Chinese military company.  *See Center for Auto Safety v. Federal Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992) ("An agency action is arbitrary and capricious if it rests upon a factual premise that is unsupported by substantial evidence.").

116.    *Third*, in identifying Hesai as a Chinese military company, Defendants have failed to examine the relevant data and factors establishing that Hesai is not a Chinese military company, including information submitted by Hesai to Defendants.  *See District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 56-59 (D.C. Cir. 2015) (explaining that "agencies do *not* have free rein to use inaccurate data" and "cannot *ignore* new and better data," and if agency "fails to examine the relevant data … it has failed to comply with the APA").  Instead, Defendants acted arbitrarily in relying on false or misleading information.  *See City of New Orleans*, 969 F.2d at 1167 ("[A]n agency's reliance on a report or study without ascertaining the accuracy of the data contained in the study or the methodology used to collect the data is arbitrary.") (internal quotation marks omitted).

117.    *Fourth*, Defendants failed to consider any of the readily available and reasonable alternatives to adding Hesai to the 1260H List without notice or an opportunity to respond.  *See, e.g.*, *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 111 (D.D.C. 2020) ("An agency's failure to 'consider significant alternatives to the course [it] ultimately cho[se],' is a telltale sign that its decision-making process cannot 'be regarded as rational.'" (alterations in original) (quoting *Allied Local & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 80 (D.C. Cir. 2000))).  For example, Defendants could have engaged Hesai regarding any potential concerns, to give Hesai a chance to dispel them

before taking this damaging action.  As noted, however, Defendants failed to give Hesai any notice that it faced potential designation as a Chinese military company or an opportunity to respond, all the while ignoring the substantial submissions that Hesai has presented to the government.

118.    *Fifth*, Defendants acted arbitrarily and capriciously by singling out Hesai (along with a few dozen other companies outside the LiDAR industry) for disfavored treatment— following a sustained, malicious lobbying campaign by Hesai's competitors to falsely smear the company as associated with the Chinese military.  *See XP Vehicles, Inc. v. Department of Energy*, 118 F. Supp. 3d 38, 78-79 (D.D.C. 2015) ("An agency also acts arbitrarily and capriciously if it fails to 'treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'" (quoting *Independent Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996)).  To Hesai's knowledge, it is the only LiDAR manufacturer on the 1260H List and the only company on the 1260H List whose shares are traded publicly on a U.S. stock exchange.  Singling out only Hesai and a few other companies for disfavored treatment—especially without any valid explanation—epitomizes arbitrary agency action.

119.    *Finally*, given that Defendants have not yet shared the basis of their decision to add Hesai to the 1260H List or the evidence Defendants relied on, Plaintiffs may raise additional grounds for relief after review of the administrative record.

120.    Defendants' actions have caused, and will continue to cause, ongoing harm to Plaintiffs.  Plaintiffs have no adequate alternative to review under the APA.

## COUNT III

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT:
## AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED

### Against All Defendants

121.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

122.    The Secretary of Defense has a duty under Section 1260H(b)(3) to "make … deletions to the most recent list" of Chinese military companies "on an ongoing basis based on the latest information available."  *See, e.g.*, *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 41 (D.D.C. 1999) ("When a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command." (alteration and citation omitted)).

123.    On March 8, 2024, and April 12, 2024, Hesai provided Defendants evidence establishing that Hesai does not meet the statutory definition of a Chinese military company.  The letters and declaration from Hesai's CEO constitute "the latest information available" to the Department.

124.    Defendants have not removed Hesai from the 1260H List, in violation of their statutory duty to take such action on an ongoing basis in reliance on the information they received.

125.    Defendants' failure to remove Hesai from the 1260H List has caused, and will continue to cause, ongoing harm to Plaintiffs.  Plaintiffs have no adequate alternative to review under the APA.

## COUNT IV

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: ACTION CONTRARY TO CONSTITUTIONAL RIGHT, POWER, PRIVILEGE, OR IMMUNITY

### Against All Defendants

126.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

127.    The Fifth Amendment to the U.S. Constitution provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. V.  The Supreme Court and the D.C. Circuit have "held that the Due Process Clause of the Fifth Amendment contains an equal protection component" that prevents the federal government from withholding equal protection of the laws, including through "arbitrary and irrational classifications."  *Azam v. District of Columbia Taxicab Comm'n*, 46 F. Supp. 3d 38, 48 & n.9 (D.D.C. 2014).

128.    Hesai is entitled to the protections of the Due Process Clause in light of its substantial connections with the United States, including the presence of its wholly owned U.S. subsidiary, Plaintiff Hesai Inc., and its listing on NASDAQ.  *See Northern Sec. Co. v. United States*, 24 S. Ct. 436, 444 (1904) ("Corporations are persons within the meaning of the constitutional provision forbidding the deprivation of property without due process of law, as well as a denial of the equal protection of the laws."); *National Council of Resistance of Iran v. Department of State*, 251 F.3d 192, 203 (D.C. Cir. 2001) (foreign organizations that have "entered the territory of the United States and established substantial connections with this country . . . are entitled to the protections of the Constitution"); *see also Ralls Corp. v. Committee on Foreign Inv. in the U.S.,* 758 F.3d 296, 312-321 (D.C. Cir. 2014) (entities have procedural due process rights even in context of national security determinations).

129.    Hesai—including Plaintiff Hesai Inc., a California-incorporated company—has constitutionally protected property and liberty interests in the United States, including (i) existing investments from U.S. investors, as well as the anticipated return on those investments; (ii) its right to raise capital and conduct its business in the United States, free of arbitrary and unlawful government action; (iii) contractual arrangements with existing U.S. customers; (iv) its right to bid on future contracts with the U.S. government; and (v) its reputation and professional goodwill.

130.    Defendants have acted contrary to constitutional right, power, privilege, or immunity by violating the Due Process Clause of the Fifth Amendment in at least two respects.

131.    *First*, Hesai received no notice of its designation as a Chinese military corporation under Section 1260H before that designation was issued publicly on January 31, 2024; Hesai still has not received any explanation of the basis for Defendants' decision or notice of any material on which Defendants relied; and Hesai has not received any meaningful opportunity to rebut whatever evidence the government relied on in making its decision.  *See, e.g.*, *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003) ("[W]e have held on several occasions that government stigmatization that broadly precludes individuals or corporations from a chosen trade or business deprives them of liberty in violation of the Due Process Clause.").

132.    *Second*, Defendants have acted contrary to constitutional right, power, privilege, or immunity by depriving Hesai of equal protection of the laws.  Hesai's designation as a Chinese military company violates Hesai's right to equal protection because Hesai has unjustly been treated differently from similarly situated companies.  Even if Defendants believed Hesai could properly fall within an overly broad conception of entities eligible for placement on the Section 1260H List, the Defense Secretary would still not be empowered to pick and choose only certain disfavored companies to be added to the List.  Nevertheless, Defendants have declined to add many other

similarly situated Chinese companies to the Section 1260H List. In fact, the Department has identified a total of only a few dozen companies falling within the statutory definition of a "Chinese military company."

133.     Defendants' actions have denied Hesai its constitutional rights and caused Plaintiffs significant and ongoing harm.

## COUNT V

## VIOLATION OF THE CONSTITUTIONAL NON-DELEGATION DOCTRINE

### Against All Defendants

134.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

135.     Article I of the U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." Implicit in that exclusive "assignment of power to Congress is a bar on its further delegation." *Gundy v. United States,* 139 S. Ct. 2116, 2123 (2019) (plurality) (alteration in original). This rule is "mandate[d]" by "the integrity and maintenance of the system of government ordained by the Constitution." *Mistretta,* 488 U.S. at 371-372 (quoting *Field v. Clark,* 143 U.S. 649, 692 (1892)).

136.     Whenever Congress grants another branch decision-making authority, it must "lay down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Mistretta,* 488 U.S. at 372 (alteration omitted) (quoting *J.W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 406 (1928)). A Congressional grant of decision-making authority without such an intelligible principle to guide the exercise of the conferred discretion is a constitutionally "forbidden delegation of legislative power." *Id.* (quoting *J.W. Hampton,* 276 U.S. at 409).

137.    As explained above, Section 1260H(d)(2)(H) should be construed to limit the Secretary of Defense's discretion to identify an entity as a "military-civil fusion contributor" only if the entity (i) provides or attempts to provide assistance to the Chinese government's military-civil fusion strategy or (ii) is in a mutually beneficial relationship with the Chinese military.

138.    To the extent that Section 1260H(d)(2)(H) does *not* limit the Secretary of Defense's discretion to designate an entity as a "military-civil fusion contributor" in that manner, however, Congress has failed to supply an intelligible principle to guide the Secretary of Defense's discretion under Section 1260H(d)(2)(H).  In that case, Section 1260H unconstitutionally delegates Congress's legislative power in violation of Article I of the Constitution and the non-delegation doctrine.

139.    Defendants' actions have denied Hesai its constitutional rights and caused Plaintiffs significant and ongoing harm.

**COUNT VI**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT:
VOID FOR VAGUENESS**

**Against All Defendants**

140.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

141.    "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  "This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment," and "requires the invalidation of laws that are impermissibly vague."  *Id.*  The doctrine applies to "civil matter[s]"

involving cross-border transactions, *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018), and "[e]ven when speech is not at issue," *Fox Television Stations, Inc.*, 567 U.S. at 253.

142.   The void-for-vagueness doctrine "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes."  *Dimaya*, 584 U.S. at 156.  Additionally, "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way."  *Fox Television Stations, Inc.*, 567 U.S. at 253.   "[T]he doctrine is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not."  *Dimaya*, 584 U.S. at 156.

143.   As explained above, Section 1260H(d)(2)(H) should be construed to limit the Secretary of Defense's discretion to identify an entity as a "military-civil fusion contributor" only if the entity (i) provides or attempts to provide assistance to the Chinese government's military-civil fusion strategy or (ii) is in a mutually beneficial relationship with the Chinese defense industry.  Similarly, as explained, contributing "to the Chinese defense industrial base" should be construed to require affirmative contributions directly to the Chinese military or for a military end-use by the Chinese military.

144.   To the extent that the words "appropriate," "Chinese defense industrial base," and other terms are left to the Secretary of Defense's discretion, however, they are unconstitutionally vague.

145.   Defendants' actions have denied Hesai its constitutional rights and caused Plaintiffs significant and ongoing harm.

## PRAYER FOR RELIEF

For those reasons, Plaintiffs respectfully request that this Court:

(1)    declare that Defendants' placement of Hesai on the 1260H List is unauthorized by, and contrary to, Section 1260H;

(2)     declare that Defendants acted arbitrarily, capriciously, and otherwise contrary to law when they added Hesai to the 1260H List;

(3)     declare that Defendants acted contrary to Hesai's constitutional rights, including under the Due Process Clause of the Fifth Amendment and Article I of the U.S. Constitution, in placing Hesai on the 1260H List;

(4)     hold unlawful and set aside Hesai's designation as a Chinese military company;

(5)     order Defendants immediately to produce the basis of their decisions to add Hesai to the 1260H List and to decline to act on Hesai's request to be removed from the 1260H List, and whatever evidence Defendants relied on in making those decisions, in the form of the administrative record;

(6)     order Defendants to remove Hesai from the 1260H List based on the latest information available;

(7)     declare Section 1260H unconstitutional and enjoin Defendants from taking any actions to enforce it, including from continuing to identify Hesai as a Chinese military company;

(8)     award Plaintiffs their costs and reasonable attorney fees; and

(9)     grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ James E. Tysse

Dated:  May 13, 2024

James E. Tysse
   D.C. Bar No. 978722
Caroline L. Wolverton
   D.C. Bar No. 496433
Lide E. Paterno
   D.C. Bar. No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jtysse@akingump.com

Zhen He Tan
   *Pro hac vice pending*
AKIN GUMP STRAUSS HAUER & FELD LLP
100 Pine Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 765-9500
Facsimile:  (415) 765-9501

*Counsel to Plaintiffs Hesai Technology
Co., Ltd. and Hesai Inc.*