**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HESAI TECHNOLOGY CO., LTD, *et al.*,

       *Plaintiffs*,

v.

U.S. DEPARTMENT OF DEFENSE, *et al.*

       *Defendants*.

Civ. Action No. 1:24-cv-01381-PLF

**<u>DECLARATION OF JAMES E. TYSSE IN SUPPORT OF PLAINTIFFS'</u>**
**<u>MOTION TO COMPLETE OR, IN THE ALTERNATIVE,</u>**
**<u>SUPPLEMENT THE ADMINISTRATIVE RECORD</u>**

I, James Tysse, hereby declare the following:

1.      I am a Partner at the law firm of Akin Gump Strauss Hauer & Feld LLP, counsel for Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc.  I have personal knowledge of the facts set forth below, and if called as a witness, I could and would testify competently to them.

2.      On March 8, 2024, Akin, on behalf of Hesai, submitted to Defendant Taylor-Kale and other Department of Defense officials a letter and sworn declaration from Hesai's CEO providing information about the company's operations, explaining that the Department's designation of Hesai as a "Chinese military company" was erroneous, requesting the administrative record underlying the Department's decision, and requesting that the Department remove Hesai from the list of designated companies.  A copy of the letter and sworn declaration are attached as Exhibits A and B respectively.

3.      On March 12, 2024, Defendant Taylor-Kale responded by e-mail, confirming receipt of the letter and sworn declaration and stating that the Department would "consider" those materials.  Defendant Taylor-Kale further stated that a copy of the administrative record could only be provided pursuant to a Freedom of Information Act (FOIA) request.  A copy of that email is attached as Exhibit C.

4.      On March 13, 2024, Akin, on behalf of Hesai, submitted a FOIA request for the administrative record.  On March 15, 2024, I received an "interim response," stating that the Department would "not be able to respond within FOIA's 20-day statutory time period" and that my request has been "placed in [the Department's] complex processing queue" behind "approximately 3,178 open requests."  A copy of that interim response is attached as Exhibit D.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 3rd day of July, 2024 in Washington, DC.

_/s/_     James E. Tysse

James E. Tysse

# EXHIBIT A

Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006

T    +1 202.887.4000
F    +1 202.887.4288
akingump.com



**James E. Tysse**
+1 202.887.4571/fax: +1 202.887.4288
jtysse@akingump.com

**CONFIDENTIAL**
March 8, 2024

**VIA E-MAIL TO ALL RECIPIENTS**

Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
United States Department of Defense
3050 Defense Pentagon
Washington, D.C. 20301

Re:    **Hesai Technology Co., Ltd.'s Erroneous And Improper Designation As A "Chinese Military Company"**

Dear Assistant Secretary Taylor-Kale:

On behalf of Hesai Technology Co., Ltd. ("Hesai"), I am writing regarding the Department of Defense's harmful and erroneous January 31, 2024 inclusion of Hesai on the list of "Entities Identified as Chinese Military Companies Operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)" ("1260H List" or the "List").[1]  Hesai requests both prompt notice of the Department's reasons for including Hesai on the 1260H List and, given the lack of any basis for that action, prompt removal from the List.

Regarding notice, Hesai received no warning or opportunity to be heard before being added to the 1260H List.  More than a month since publishing the List, the Department has provided neither a reasoned basis for its decision to include Hesai nor any specific and articulable facts supporting that decision.  Hesai requests the purported basis for the Department's action without delay so that it may assess whether the Department's listing decision was based on "the most recent information available," as Section 1260H(a) requires, or instead on faulty, inaccurate, or otherwise insufficient information.

As for removal, under Section 1260H(b)(3), the Department must make, on an "ongoing basis," "deletions" from its "most recent list" based on "the latest information available."  As demonstrated below and in the appended declaration of Hesai's CEO, there was and is no factual or legal basis for Hesai to be designated as a "Chinese military company."  Unless that error is promptly corrected, Hesai will have no choice but to pursue a judicial determination that the Department has acted contrary to Section 1260H, the Administrative Procedure Act, and the U.S. Constitution.

---

[1] https://media.defense.gov/2024/Jan/31/2003384819/-1/-1/0/1260H-LIST.PDF.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 2

## I.    BACKGROUND

### a.   Hesai's Founding and Growth in the United States

Hesai was started in San Jose, California in 2013 by three American-educated entrepreneurs.  To honor the company's American roots, the company's founders chose the name Hesai, a phonetic translation of "Jose" in Chinese.

Hesai is a publicly traded, privately controlled company.  Since February 9, 2023, Hesai has been publicly listed on NASDAQ: HSAI.  Hesai's major shareholders include companies and institutional investors in the United States, Germany, and other Western nations.  Hesai's founders maintain a 23% ownership stake in the company and hold super-voting shares which provide 75% of the voting power and control over the company's strategic decisions.  Neither the Chinese government nor the People's Liberation Army has any "golden" share or veto right over the company's decisionmaking.  As detailed further below and in the appended declaration, Hesai does not receive sovereign money or government benefits (beyond the treatment generally available to other technology companies, foreign and domestic), and does not sell or provide its technology to any military entity (Chinese or otherwise).

As a NASDAQ-listed company, Hesai's financials and its corporate leadership are open and transparent.  At the time of its IPO, Hesai's due diligence was led by Goldman Sachs, Morgan Stanley, and Credit Suisse (UBS).  Hesai utilizes Skadden Arps as its general corporate counsel and Deloitte, a PCAOB-approved outside auditing firm, to ensure that U.S. financial regulators have a continued level of transparency into the company's finances.

Hesai has sold its technology to over one thousand customers in the United States and around the world, including most major producers of, or contributors to, commercial and passenger vehicles, such as General Motors, Amazon's Zoox, Aurora, Nvidia, Nuro, and many more.[2]

Given that global reach, Hesai has established offices around the world.  Reflecting its client relationships with the American automotive industry, Hesai's U.S. subsidiary, Hesai Inc., employs over a dozen workers at locations in Palo Alto, California, and Detroit, Michigan.  Additionally, Hesai has been in advanced discussions to build a manufacturing facility in the United States—plans that are unfortunately now on hold due to the company's erroneous addition to the 1260H List.

---

[2] *See, e.g.*, Hesai Group, Form F-1, Registration Statement under the Securities Act of 1933, at 112 n.1 (Jan. 17, 2023), https://investor.hesaitech.com/static-files/a52326dc-263e-4565-b9d9-3c765859f49f; Nikkei Asia, *China extends lead in lidar tech crucial to self-driving cars*, Jan. 8, 2024, https://asia.nikkei.com/Business/Automobiles/China-extends-lead-in-lidar-tech-crucial-to-self-driving-cars (describing customers).



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 3

### b.   Hesai's Technology: Designed to Ensure Data Security and Privacy

LiDAR, or Light Detection and Ranging, is a method for determining the distance of an object or surface via lasers. Its primary application is in autonomous vehicles or Advanced Driver Assistance Systems (ADAS), where LiDAR allows the vehicle system to create a three-dimensional picture to facilitate safe maneuvering and avoid crashes.

Hesai operates in, and leads, the LiDAR industry with a 47% share of the global market.[3] Hesai's share of the global market for robotic cars (*i.e.*, "robotaxis") is even higher, at 67%.[4] Indeed, 12 of the world's top 15 autonomous driving companies have used Hesai's technology as their primary LiDAR solution.[5]

Hesai's competitors include both U.S. and Chinese LiDAR companies. Hesai's market position can be attributed to its strengths in innovation and safety, which are the result of the company's deep commitment to research and development. Hesai's LiDAR technology offers best-in-class performance and quality, and has been fully certified to international automotive safety standards.

Notably, Hesai's LiDAR products do not—and indeed cannot—store or wirelessly transmit any images or information, ensuring data security. Hesai's products do not have wireless, cellular, or Bluetooth capabilities. Nor can Hesai's LiDAR store information through a cloud or be controlled remotely. Rather, akin to a camera, Hesai's LiDAR images and other data are collected and then transmitted by a secure cable to the vehicle's onboard computer, and all images and other data are owned, stored, and controlled by the vehicle owner or manufacturer. Neither Hesai nor any third party has access to those images and data. In light of these and other safeguards, Hesai is the first LiDAR company to have been certified to international cybersecurity engineering standards for road vehicles by TÜV Rheinland, an international authoritative third-party testing and certification institution in Germany.[6] Hesai's technology features have also been certified through a separate cybersecurity report by TÜV Rheinland and a teardown report by Dekra, the world's largest independent expert organization in the testing, inspection, and certification sector.[7]

---

[3]   Hesai, *Forbes: Hesai Dominates The Automotive LiDAR Market*, July 26, 2023, https://www.hesaitech.com/hesai-dominates-the-automotive-lidar-market/.

[4] Hesai, *Hesai Ranks No. 1 in Global Automotive Lidar for the 2nd Year in a Row*, July 25, 2023, https://www.hesaitech.com/hesai-ranks-no-1-in-global-automotive-lidar-for-the-2nd-year-in-a-row/.

[5] Hesai Group, Form F-1, Registration Statement under the Securities Act of 1933, at 112 (Jan. 17, 2023), https://investor.hesaitech.com/static-files/a52326dc-263e-4565-b9d9-3c765859f49f.

[6] Hesai, *Hesai Becomes the First Lidar Company to Obtain ISO/SAE 21434 Automotive Cybersecurity Management Certification,* May 15, 2023, https://www.hesaitech.com/hesai-becomes-the-first-lidar-company-to-obtain-iso-sae-21434-automotive-cybersecurity-management-certification/.

[7] Hesai, *Hesai's Lidars Get Top Marks for Data Security*, Nov. 7, 2023, https://www.hesaitech.com/hesais-lidars-get-top-marks-for-data-security/.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 4

The infographic below explains how all data from Hesai's LiDAR products are securely transmitted only to the vehicle to which the product is attached:



Further, Hesai's LiDAR products do not capture personally identifiable information such as human facial features, biometric data, or license plates, as shown below in the sample of an actual image taken with Hesai's LiDAR:



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 5



**c.    Hesai's Commitment to Freedom from State or Military Involvement**

Because Hesai sells to the consumer market, Hesai's technology has never been designed for, evaluated for, or validated to military specifications. In fact, the U.S. Department of Commerce's Bureau of Industry and Security has given Hesai's technology the classification of EAR99—meaning that it falls into the same category as most commercial and consumer goods and does not require a license for exports in most situations.[8]

Hesai's leadership is commited to doing everything within its power to ensure that its technology cannot be transferred to military entities (Chinese or otherwise). Beyond not selling to the Chinese government or the People's Liberation Army, in recent years Hesai has taken aggressive steps to strengthen its sales-compliance framework more broadly. For example, well before its addition to the 1260H List, Hesai implemented, with the assistance of U.S. counsel, a robust customer screening process to ensure that it does not sell its products to any entities on U.S. restricted parties lists or to any military end-user. As noted above, Hesai's leadership is fully committed to independence from government control from any country, including China. And the only benefits (such as tax breaks) the company accepts from the governments of the United States, China, and other countries are those generally available to any technology company, foreign or domestic.

---

[8] U.S. Department of Commerce, Bureau of Industry and Security, Office of Exporter Services, *Frequently Asked Questions to Export Licensing Requirements* at 5-6, 11 (revised Nov. 2018), https://www.bis.doc.gov/index.php/documents/pdfs/286-licensing-faq/file#:~:text=EAR99%20is%20a%20 classification%20designation,%2C%E2%80%9D%20is%20a%20shipment%20designation.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 6

### d. Hesai's Surprise Addition to the 1260H List

On January 31, 2024, the Department designated Hesai as a "Chinese military company" on the 1260H List without any prior notice or opportunity to be heard. Since then, the Department has provided no public explanation that allows Hesai, its investors, or anyone else to understand the basis of the Department's decision. In fact, while Section 1260H(b)(2) mandates that the Department "publish the unclassified portion of [the 1260H List] in the Federal Register" "[c]oncurrent" with its release of the List, the Department appears to have failed to comply with even that threshold statutory command.

Significantly, Hesai's listing comes during a sustained, malicious lobbying campaign by Hesai's competitors to falsely smear the company as associated with the Chinese military. For example, the "Lidar Coalition," a group made up mostly of U.S. LiDAR companies and Hesai's competitors,[9] has openly stoked fears of—and lobbied against—Chinese LiDAR companies, especially Hesai. One of Hesai's chief U.S. competitors, Ouster, spent over $800,000 on lobbying in 2023 alone.[10] This commercially driven campaign even led to baseless letters from senators representing the home state of another of Hesai's competitors, Luminar. Mainstream media outlets have reported that purported national-security concerns over companies like Hesai may simply be the result of a "self-interested attempt to handicap overseas rivals" by the "struggling" U.S. LiDAR industry.[11]

Hesai has suffered serious reputational injury, a significant drop in stock price, and lost business opportunities in the weeks since the listing. The company's placement on the List has jeopardized ongoing contract negotiations and disrupted existing and potential customer relationships at a particularly sensitive period for the industry, when automobile companies are making crucial decisions about the technology to be used in future models. Hesai's share price fell over 30% in a single day following the listing,[12] and its share price remains well below its historical value—at a time when the values of other NASDAQ technology companies have been surging. Hesai has also been subject to sustained and damaging press attention that now falsely describes Hesai as an entity that is "helping" and "aiding" the Chinese military.[13]

---

[9] *See, e.g.,* Velodyne Lidar, *Velodyne Lidar Founding Member of Lidar Coalition to Enhance Roadway Safety*, June 9, 2022, https://velodynelidar.com/blog/velodyne-lidar-founding-member-of-lidar-coalition-to-enhance-roadway-safety/.

[10] Open Secrets, *Client Profile: Ouster, Inc.*, https://www.opensecrets.org/federal-lobbying/clients/summary?cycle=2023&id=D000096601 (last visited Mar. 7, 2024).

[11] Bloomberg, *Fears of Chinese Self-Driving Car Tech Are on the Rise*, July 26, 2023, https://www.bloomberg.com/news/newsletters/2023-07-26/fears-of-chinese-self-driving-car-tech-are-on-the-rise.

[12] MarketWatch, *Hesai Group Shares Drop 30% After Addition to 'Chinese Military Companies' List*, Feb. 1, 2024, https://www.marketwatch.com/story/hesai-group-shares-drop-30-after-addition-to-chinese-military-companies-list-94d9f343

[13] Reuters, *Pentagon calls out Chinese companies it says are helping Beijing's military*, Feb. 1, 2024, https://www.reuters.com/technology/pentagon-adds-companies-chinese-military-list-us-official-says-2024-01-31/; Bloomberg, *US Accuses Chinese Memory Chipmaker, AI Firms of Aiding PLA*, Feb. 1, 2024,



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 7

These and related harms underscore the urgency of Hesai's request, and the critical need for prompt correction of the Department's egregious mistake.

Beyond the harm to Hesai, the listing threatens the public interest. Hesai is the industry leader because the established and certified safety of its LiDAR technology is far superior to, and more reliable than, its competitors' unproven products. Until corrected, Hesai's continued presence on the 1260H List risks leaving the U.S. public with only unsafe, unreliable, and unsuitable alternatives at a time when LiDAR technology is becoming increasingly critical to the future of the American automotive industry. American roads will be more dangerous if Hesai's technology is restricted.

The listing also harms free and fair competition in the LiDAR market. Hampering a major supplier and innovator in the LiDAR space will increase costs and impede technological advancement. U.S. consumers will ultimately bear those consequences.

## II.    HESAI'S IMPROPER DESIGNATION AS A "CHINESE MILITARY COMPANY"

By law, the Department must justify its placement of Hesai on the 1260H List "based on the most recent information available." Hesai thus requests that the Department immediately provide to Hesai whatever information it relied on in placing the company on the List. In addition, Section 1260H(b)(3) commands that the Department make "ongoing revisions," including "deletion[s] to the most recent list . . . based on the latest information available." As explained below, the information described in (and appended to) this letter establishes that there is no justification for Hesai's continued designation as a "Chinese military company." The Department therefore has a statutory duty to remove Hesai from the 1260H List without delay.

### a.    Statutory Definition of a "Chinese Military Company"

Section 1260H provides an express statutory definition of a "Chinese military company," consisting of two distinct prongs. *First*, Section 1260H(d)(1)(B)(i)(I) defines a Chinese military company as "an entity that is . . . directly or indirectly owned, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party."

*Second*, Section 1260H defines a Chinese military company as an entity "identified as a military-civil fusion contributor to the Chinese defense industrial base." Section 1260H(d)(2), in turn, defines a "military-civil fusion contributor" as:

---

https://www.bloomberg.com/news/articles/2024-02-01/us-accuses-chinese-memory-chipmaker-ai-firms-of-aiding-military.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 8

(A)     Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B)     Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C)     Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D)     Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E)     Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F)     Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G)     Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H)     Any other entities the Secretary determines is appropriate.

As explained below, neither prong of the statutory definition provides any basis to designate Hesai as a "Chinese military company."

> ### b.  Hesai is Neither Owned by Nor an Agent of the People's Liberation Army or the Chinese Communist Party

The Department had no basis to determine that Hesai is directly, indirectly, or beneficially owned by, or an agent of, any arm of the People's Liberation Army, or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.

With regard to ownership, Hesai is a publicly listed company on NASDAQ, and there is no evidence that a majority, or even a substantial portion, of its shares are directly or beneficially owned by entities that have any relationship to the People's Liberation Army or the Central Military Commission of the Chinese Communist Party.  Again, Hesai's founders own a substantial share—23%—of the company.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 9

Hesai's founders' shares are super-voting shares, affording them 75% dominant control over the company. The rest of Hesai's shares are owned by institutional and commercial investors, including from the United States and other Western countries. And as also noted, neither the Chinese government nor the Chinese military has any "golden" share or veto right over Hesai's actions.

Any allegation that Hesai (or its U.S.-educated leadership) is an "agent" of the People's Liberation Army or the Chinese Communist Party is entirely meritless. While Section 1260H does not define the term "agent," courts interpreting the same term in the context of other statutes regulating "agent[s] of a foreign government" have held that there must be—at the very least—an agreement by the agent to act on behalf, or subject to the control, of the foreign government. *E.g.*, *United States v. Rafiekian*, 991 F.3d 529, 539 (4th Cir. 2021).

As noted, Hesai has made deliberate efforts to operate independently of any governmental control and military influence, Chinese or otherwise: it does not accept non-generally available subsidies from the Chinese government (or any government), and it engages in a robust screening process to prevent sales to any military end-users or any entity on a U.S. restricted-parties list. Hesai has made no agreement with the Chinese government and is not subject in any way to its control. Thus, Hesai—a publicly traded company responsible to its board and shareholders (including countless U.S. shareholders)—cannot be deemed an "agent" of the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.

### c. Hesai is Not a "military-civil fusion contributor to the Chinese defense industrial base"

Nor is there any basis to conclude that Hesai is a "military-civil fusion contributor to the Chinese defense industrial base" under Section 1260H(d)(1)(B)(i)(II). The plain text and structure of Section 1260H demonstrate that an entity can be a "military-civil fusion contributor" only if it either (1) takes proactive steps to be involved in the Chinese government's military-civil fusion strategy,[14] or (2) receives some substantial amount of assistance, direction, or guidance from the Chinese government in an effort to aid the latter's military-civil fusion strategy. Hesai, however, has taken affirmative steps to *avoid* either form of involvement.

To start, while the term "contributor" is not defined in Section 1260H, courts have understood the term "contribute" to mean "lend assistance or aid in the common purpose" and to require proof of an "active role" in the conduct or effect that the statute is targeting. *See, e.g.*, *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850-851 (9th Cir. 2011). Accordingly, for an entity to be a "military-civil fusion contributor,"

---

[14] The Department has described the Chinese government's military-civil fusion strategy as "systematically reorganizing the Chinese science and technology enterprise to ensure that new innovations simultaneously advance economic and military development." U.S. Department of State, *The Chinse Communist Party's Military-Civil Fusion Policy*, https://2017-2021.state.gov/military-civil-fusion/.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 10

the entity must take an active role in some way—whether it be in the form of providing technology, services, expertise, or assistance—that furthers the Chinese government's military-civil fusion strategy.

The enumerated list of examples provided in Section 1260H confirms this understanding of "contributor." Each of these examples falls into one of two clear buckets. In the first are entities that themselves are providing or attempting to provide assistance to the Chinese government's military-civil fusion strategy. *See* Section 1260H(d)(2)(D) ("entities or subsidiaries defined as a 'defense enterprise' by the State Council of the People's Republic of China"), (E) ("[e]ntities residing in or affiliated with a military-civil fusion enterprise zone"), (G) ("[e]ntities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China"). The second bucket contains entities that are all in a mutually beneficial relationship with the Chinese defense industrial base, such that they can be expected to play an active role in the military-civil fusion strategy. *See* Section 1260H(d)(2)(A) ("knowingly receiving assistance" from Chinese government or Chinese Communist Party), (B) ("affiliated with the Chinese Ministry of Industry and Information"), (E) ("residing in or affiliated with a military-civil fusion enterprise zone"), (F) ("awarded with receipt of military production licenses" from Chinese government).[15]

Section 1260H(d)(2)(H)'s grant of residual authority to the Department to designate other entities "the Secretary determines is appropriate" does not alter this conclusion. As a matter of law, the interpretation of a "residual phrase" must "give independent effect to the statute's enumeration of the specific categories" that precede that residual clause. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001). Put another way, a "residual clause should be read to give effect to the terms" preceding it and "should itself be controlled and defined by reference to the enumerated categories . . . recited just before it." *Id.* at 115. As described above, the enumerated categories preceding the residual clause in Section 1260H(d)(2), like the common understanding of the term "contributor," all establish that the Department may designate as "military-civil fusion contributors" only those entities actively involved in furthering the Chinese government's military civil fusion strategy or receiving some amount of assistance, direction, or guidance from the Chinese government that furthers the China's military-civil fusion strategy.[16]

---

[15] In this context, the phrase "affiliated with" refers to "a company effectively controlled by another or associated with others under common ownership or control." *Xiaomi Corp. v. Dep't of Def.*, No. CV 21-280 (RC), 2021 WL 950144, at *6 (D.D.C. Mar. 12, 2021) (holding that "[t]he overwhelming weight of authority," including Department regulations, "supports this definition") (citing, *inter alia*, 32 C.F.R. § 232.3 (Defense regulation stating that an "affiliate" is "any person that controls, is controlled by, or is under common control with another person")).

[16] Constitutional avoidance principles support this interpretation, too. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (describing this "cardinal principle" of statutory interpretation). The nondelegation doctrine prevents Congress from affording the Department unlimited listing discretion. Construing the seven enumerated examples as informing the scope of the Secretary's residual discretion to determine what listings are "appropriate" would provide the intelligible principle necessary to overcome nondelegation concerns. Even if there were any doubt, Section 1260H(d)(2) must be construed narrowly to avoid the constitutional question.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 11

Under the proper definition, Hesai cannot be considered a military-civil fusion contributor. For one, Hesai does not fall within any of the seven enumerated examples of what constitutes a "military-civil fusion contributor," as it is not: (i) "knowingly receiving" any "assistance" from the Chinese government, much less assistance "initiated under the Chinese military industrial planning apparatus," Section 1260H(d)(2)(A); (ii) "affiliated with the Chinese Ministry of Industry and Information Technology," either officially or through any other informal relationships, Section 1260H(d)(2)(B); (iii) "receiving assistance, operational direction or policy guidance from the State administration for Science, Technology and Industry for National Defense," Section 1260H(d)(2)(C); (iv) "defined as a 'defense enterprise' by the State Council of the People's Republic of China," Section 1260H(d)(2)(D); (v) "residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone," Section 1260H(d)(2)(E); (vi) "awarded with receipt of military production licenses by the Government of China," Section 1260H(d)(2)(F); or (vii) "advertis[ing] on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China," Section 1260H(d)(2)(G).

Nor does the residual clause provide a basis for classifying Hesai as a "military-civil fusion contributor." Far from assisting the Chinese government's military-civil fusion strategy, Hesai is a U.S.-traded public company that has taken deliberate steps to ensure that (1) it does not receive assistance, financial or otherwise, from any arm of the Chinese defense industrial base, (2) its leadership is unaffiliated with the Chinese military (or any arm of the Chinese government), and (3) its products are not sold, and may not be resold, to the Chinese military. Indeed, Hesai has made conscious efforts to avoid any wrongful and reputationally devastating listing such as this one. The Department has no basis to conclude that Hesai provides or attempts to provide assistance to the Chinese government's military-civil fusion strategy or is in any form of mutually beneficial relationship with the Chinese defense industrial base.

Finally, Hesai is not a contributor "to the Chinese defense industrial base." That term, which is not defined in the statute, must have some meaning independent of "military-civil fusion contributor." *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining "duty" to "give effect, if possible to every clause and word of a statute" so no term is rendered "superfluous"). Because Hesai does not supply its technology to either the Chinese military or the Chinese defense industry more broadly, it does not contribute "to the Chinese defense industrial base"—yet another reason it cannot be considered a "Chinese military company" under Section 1260H.

### d. No Evidence Supports A Contrary Determination

Because the Department has given Hesai no opportunity to be heard regarding its 1260H designation and has provided no reasoned basis for its decision, it is unclear what information, if any, the Department relied upon in erroneously determining that Hesai is a "Chinese military company." Accordingly, Hesai has been forced to comb through publicly available information—some of which may have been planted or fomented by Hesai's competitors—and speculate as to the possible basis of the listing.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 12

To the extent the Department may have relied on any of the publicly available sources described below to make its determination, none justifies the Department's January 31, 2024 designation decision. If the Department instead relied on different information, Hesai again requests that information immediately, so that Hesai can correct the record. Either way, the factual clarifications provided in this letter constitute the "latest information available" that the Department must address in abiding by its statutory responsibility to make "ongoing revisions," including "deletions," to its list of Section 1260H entities.

*i.  2023 Congressional Research Service Report*

First, Hesai is aware of an August 14, 2023 report by the Congressional Research Service, titled "U.S.-China Competition in Emerging Technologies: LiDAR" ("CRS Report"). The majority of this two-page report speaks in general terms about the competitive dynamics between U.S. and Chinese LiDAR companies and the fact that LiDAR has both "civilian and military uses." Notably, the federal judiciary has held that such general concerns about a given industry or technology are not, without more, a sufficient basis for designating a Chinese competitor in that industry as an entity involved in the Chinese government's military-civil fusion strategy. *See Xiaomi Corp. v. Department of Defense*, 2021 WL 950144, at *8 (D.D.C. Mar. 12, 2021); *Luokung Technology Corp. v. Department of Defense*, 538 F. Supp. 3d 174, 189 (D.D.C. 2021).

Apart from these general concerns about the Chinese LiDAR industry, the CRS Report also makes three specific assertions about Hesai. None of these statements is evidence, much less credible proof, that Hesai is in any way involved in the Chinese government's military-civil fusion strategy:

(1) "Hesai has a $98.4 million credit line to expand production in Shanghai and says it will use earnings from its 2023 U.S. initial public offering for acquisitions, research, and manufacturing."

That Hesai, a company with operations in both the U.S. and China, has a credit line to expand its production capabilities in China is irrelevant to Section 1260H. The CRS Report does not assert that this credit line is provided by the Chinese government. In fact, and as noted above, Hesai has not taken any non-generally available subsidies or other money from governmental entities, Chinese or otherwise, and has no plans to do so.

(2) "Hesai makes autonomous warfighting vehicles for the miliary and is reportedly tied to the military's China Electronics Technology Group Corporation."

The unfounded, uncited statement that Hesai "makes autonomous warfighting vehicles" is utterly false (and absurd). Hesai does not make any form of "autonomous warfighting vehicles"; it is solely a LiDAR supplier for *commercial and passenger* vehicles. Although neither Hesai nor any other LiDAR company (foreign or domestic) can completely control products on the re-sale market, as noted, Hesai's products are classified by BIS as EAR99, which means its products are not specially designed for military



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 13

use, and its technical parameters do not meet the standards to be export-controlled by the Department of Commerce.  Moreover, as previously explained, Hesai has strong controls in place to prevent sales of its technology to military end-users.

The CRS Report's vague and unsubstantiated statement that Hesai is "reportedly tied to the military's China Electronics Technology Group Corporation" ("CETC") is severely misleading (and outdated).  While the CRS Report provides no further detail or citation, Hesai believes that this statement refers to the fact that a CETC research institute was once one of more than 2,000 suppliers that Hesai previously contracted with for component parts.  That supply agreement with the CETC research institute was limited to optoelectronic parts purchased on the open market, and represented less than 0.5% of Hesai's total volume of component parts in 2022.  Immediately upon learning that CETC appeared on restricted lists, Hesai ended its relationship with the supplier in the first half of 2023.  Today, Hesai has no business relationship with CETC.

(3) <u>"PRC LiDAR firm Hesai has led China's efforts to develop national and global LiDAR standards."</u>

This statement is also deeply misleading.  The CRS Report appears to suggest that Hesai is cooperating with the Chinese government's "efforts to develop national and global LiDAR standards."  But as already stated, Hesai is not affiliated with the Chinese government and never applied for or took non-generally applicable financial subsidies or other payments from the government.  While Hesai readily acknowledges that it plays a key role in the development of national and global *commercial* LiDAR standards, this work is part and parcel of its business as a commercial market leader in LiDAR technology and is independent of any government influence.

### ii.  *Hesai's 2023 F-1 Statement to the Securities and Exchange Commission*

Aside from the CRS Report, Hesai is also aware that specific SEC-required standard "risk factor" language in its financial filings regarding the Chinese government's authority has been taken out of context by third parties seeking to challenge Chinese LiDAR companies on an industry-wide level.  In particular, in an F-1 risk-factor statement filed with the U.S. Securities and Exchange Commission, Hesai represented that "the PRC government has significant authority in regulating our operations and may influence or intervene in our operations at any time."[17]  But this statement, which is required by the SEC for Chinese-listed companies, merely informs investors of the general risks of investing in companies based in China.[18]  Indeed, in the past few years, numerous other Chinese companies (across a variety of industries) were required by the SEC to include the same standard risk factor disclosure language in their reporting

---

[17] Hesai Group, Form F-1, Registration Statement under the Securities Act of 1933, at 7 (Jan. 17, 2023), https://investor.hesaitech.com/static-files/a52326dc-263e-4565-b9d9-3c765859f49f.

[18] *See* U.S. Securities & Exchange Commission, Sample Letter to China-Based Companies (modified Dec. 20, 2021), https://www.sec.gov/corpfin/sample-letter-china-based-companies.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 14

documents.[19]  To determine that Hesai is a "Chinese military company" based on this statement would effectively render every publicly traded Chinese company subject to such a designation—a position that the federal courts have decisively rejected.  *See, e.g.*, *Xiaomi*, 2021 WL 950144, at *8.  Moreover, it bears repeating that the Chinese government has *not* intervened in Hesai's operations or management decisions.

## III.    STATUTORY & CONSTITUTIONAL GROUNDS FOR REMOVAL

Based on the facts and information provided above, Hesai requests that the Department not only share the basis for its listing, but also remove Hesai from the 1260H List immediately.  Otherwise, given the ongoing harms Hesai is suffering, Hesai will have no choice but to seek judicial review to enjoin the Department's unwarranted designation of Hesai as a "Chinese military company."  In particular, Hesai will show that the Department's designation decision—and subsequent failure to remove Hesai based on the latest available information—violates Section 1260H, the Administrative Procedure Act, and the U.S. Constitution.

### a.    The Department's Failure to Remove Hesai Would Violate Its Statutory Mandate

As described above, Section 1260H(b)(3) imposes on the Department the statutory responsibility to make "[o]ngoing revisions" to its listing decisions, including by making "deletions . . . based on the latest information available."  This direct statutory command requires the Department to remain continually responsive to new information and to correct or revise its prior designation decisions where appropriate. Here, the information provided in this letter constitutes the "latest information available" to the Department, and affirmatively demonstrates why any prior information that the Department may have relied upon no longer justifies Hesai's designation as a "Chinese military company."  The Department's failure to make the corresponding "deletion[]" from the Section 1260H List would thus be a violation of its statutory mandate.

### b.    The Department's January 31, 2024 Designation of Hesai and Failure to Remove Hesai Violate the Administrative Procedure Act

As the Department is well aware, its listing decisions are subject to judicial scrutiny pursuant to the Administrative Procedure Act.  *E.g., Xiaomi*, 2021 WL 950144, at *8; *Luokung*, 538 F. Supp. 3d at 189. Accordingly, where the Department acts arbitrarily and capriciously, contrary to law, or without substantial evidence, its listing decisions will be set aside.  Here, the Department has provided neither a reasoned basis

---

[19] *See, e.g.*, New Ruipeng Pet Group Inc., Form F-1 (Jan. 23, 2023); Zepp Health Corporation, Form 20-F (April 24, 2023), Jayud Global Logistics Limited, Form 20-F (May 15, 2023); Lixiang Education Holding Co., Ltd., Form F-1 (Amended) (Sept. 27, 2023) (all using identical language); *see also, e.g.*, Clean Energy Technologies, Inc., Form S-3 (Amended) (Dec. 15, 2023); Quhuo Limited, Form F-3 (June 30, 2023); ECARX Holdings Inc., Form F-1 (May 12, 2023); ZEEKR Intelligent Technology Holding Limited, Form F-1 (Nov. 9, 2023) (all using materially similar language).



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 15

nor any evidence (much less substantial evidence) for its decision. Given that Hesai has now provided the Department with facts clarifying previously available information and demonstrating why it is not a "Chinese military company," the Department's failure to address these facts would only exacerbate its errors. *Genuine Parts Co. v. EPA*, 890 F.3d 304, 313 (D.C. Cir. 2018) (agencies cannot "ignore[e]" evidence "that is at odds with its conclusion").

Further, as established above, because Hesai does not fall within the statutory meaning of a "Chinese military company," the Department has acted contrary to law and outside the scope of its authority. Additionally, the Department's failure to explain its disparate treatment of Hesai compared to similarly situated competitors is yet another ground for setting aside its decision. *See Baltimore Gas & Elec. Co. v. Federal Energy Regul. Comm'n*, 954 F.3d 279, 283 (D.C. Cir. 2020) (agency must "provide some reasonable justification for any adverse treatment relative to similarly situated competitors").

   **c.   The Department's Process and Claimed Statutory Authority Are Constitutionally Infirm**

Hesai will also demonstrate the constitutional infirmities in both the specific manner by which the Department made its designation determination over Hesai and the broader authority that the Department purports to exercise over these listing decisions. As to process, it is undeniable that Hesai was not given any notice or opportunity to be heard before the Department made its decision that formally prevents Hesai from bidding on Department contracts.[20] *See Trifax Corp. v. D.C.*, 314 F.3d 641, 643-644 (D.C. Cir. 2004) (formal debarment "unquestionably constituted a deprivation of liberty" triggering due process protections); *Old Dominion Dairy Products v. Secretary of Defense*, 631 F.2d 953 (D.C. Cir. 1980) (Department's official blacklisting of corporation without process violated liberty interests); *see also Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 312-321 (D.C. Cir. 2014) (entities have procedural due process rights even in context of national security determinations). Separately, to the extent that the Department claims open-ended discretion to determine what entities constitute a "Chinese military company," such a claim would violate various constitutional principles, including the void-for-vagueness principle and the non-delegation doctrine.

***

Thank you in advance for your prompt consideration of the above information. Hesai is available to work with the Department to facilitate the removal of Hesai from the 1260H List, including by meeting

---

[20] Beginning in 2026, Section 805 of the National Defense Authorization Act for Fiscal Year 2024 (Public Law 118-31) prohibits the Department from entering into contracts "for the procurement of goods, services, or technology" from any Section 1260H listed entity. In 2027, that prohibition extends to contracts "for the procurement of goods or services that include goods of services produced or developed by" any Section 1260H listed entity.



Dr. Laura D. Taylor-Kale
Assistant Secretary of Defense for
  Industrial Base Policy
March 8, 2024
Page 16

at your earliest convenience.  In light of the ongoing harm Hesai is suffering, we respectfully request that you respond as soon as possible and no later than March 22, 2024.

Sincerely,

James E. Tysse

Enclosure: Declaration of David Yifan LI

CC:    Halimah Najieb-Locke
        Acting Principal Deputy Assistant Secretary of Defense for Industrial Base Policy
        United States Department of Defense

        Nicoletta Giordani
        Director of Global Investment and Economic Security
        United States Department of Defense

        I.K. Blanton
        Division Director, Policy and Engagement, Global Investment and Economic Security
        United States Department of Defense

        Caroline D. Krass
        General Counsel
        United States Department of Defense

# EXHIBIT B

### DECLARATION OF DAVID YIFAN LI

I, David Yifan LI, declare:

1.      I am a co-founder and the Chief Executive Officer of Hesai Technology and have been with the company since its start in California in 2013.  I received my Master's and Ph.D. degrees in mechanical engineering from the University of Illinois at Urbana-Champaign.

2.      This declaration is based on personal knowledge and information provided to me in my official capacity.

**History of Hesai and Its Present-Day Operations**

3.      Along with two other American-educated entrepreneurs, Kai Sun and Shaoqing Xiang (each of whom has multiple degrees from Stanford University), we formed the idea of Hesai in San Jose, California in 2013.  My co-founders and I chose the name "Hesai," a phonetic translation of "Jose" in Chinese, to honor the company's American roots.  In 2014, my co-founders and I moved to Shanghai, where we formally incorporated the company.  All three of us remain directors of Hesai today.

4.      While the company's initial focus was on high-performance laser sensors used in natural gas and other industries, we shifted our primary business to the development, manufacturing, and sale of LiDAR products for the consumer automotive industry in 2016.

5.      Today, Hesai leads the LiDAR industry, with a 47% share of the global market as of 2022 and an even higher share of the L4 autonomous mobility market.[1]  The company's competitors include global players from the U.S., E.U., and Asia.

---

[1]      *See* Yole Intelligence, *LiDAR for Automotive 2023*, July 2023, https://www.yolegroup.com/product/report/lidar-for-automotive-2023/.

6.      Hesai has sold its technology to over one thousand customers in the United States and around the world, including household names and most other major producers of, or contributors to, commercial and passenger vehicles globally.

7.      Since February 9, 2023, Hesai has been publicly listed on NASDAQ.

8.      Together, my co-founders and I maintain a 23% ownership stake in the company and also hold super-voting shares that provide approximately 75% of the aggregate voting power and control over the company's strategic decisions.

9.      Hesai's major shareholders include companies and institutional investors in the United States, Germany, and other Western nations.  As a publicly traded company, Hesai also has Chinese private investors, but these investors do not make up a majority of the company's shareholding, nor do they hold sufficient shares to exert control over the company's strategic decisions.

10.     Hesai has several offices around the world.  Its U.S. subsidiary, Hesai Inc., employs over a dozen workers at locations in Palo Alto, California, and Detroit, Michigan.  Additionally, Hesai has been in advanced discussions to build a manufacturing facility in the United States—plans that are unfortunately on hold due to Hesai's wrongful addition to the 1260H List.

**Hesai's Commitment to Security and Transparency**

11.     As a NASDAQ-listed company, Hesai's financials and corporate leadership are open and transparent.  At the time of its IPO, Hesai engaged Goldman Sachs, Morgan Stanley, and Credit Suisse (UBS) to lead due diligence efforts.  Currently, Hesai retains Skadden Arps as its general corporate counsel, and engages Deloitte, a PCAOB-approved auditing firm, to ensure that U.S. financial regulators have a continued level of transparency into the company's financials.

12.     Hesai is committed to ensuring data security and privacy with respect to its technology. Hesai's LiDAR products do not—and indeed cannot—store or wirelessly transmit any images or information, capture personally identifiable information, or be controlled remotely. Neither Hesai nor any third party has access to the images and data collected by Hesai's LiDAR, which are transmitted by a secure cable to the vehicle's onboard computer. These technology features have been certified by a cybersecurity report conducted by TÜV Rheinland (the leading international independent testing organization based in Germany, with expertise in safety, efficiency, and quality) and a teardown report conducted by Dekra (the world's largest independent expert organization in the testing, inspection, and certification sector).[2]

13.     Additionally, Hesai was the first LiDAR company to have obtained the ISO/SAE 21434 automotive cybersecurity management certification from TÜV Rheinland.[3]    That certification confirms the company's compliance with global regulatory requirements regarding information security and cybersecurity.

**Hesai's Deliberate Efforts to Avoid Military and Governmental Involvement**

14.     From Hesai's founding, Hesai's leadership has been committed to independence from governmental control and military influence (Chinese or otherwise). Neither the Chinese government, the People's Liberation Army, nor any other organization subordinate to the Central Military Commission of the Chinese Communist Party has interfered with, or had any control over, Hesai's operations and management.

---

[2] Hesai, *Hesai's Lidars Get Top Marks for Data Security*, Nov. 7, 2023, https://www.hesaitech.com/hesais-lidars-get-top-marks-for-data-security/.

[3] Hesai, *Hesai Becomes the First Lidar Company to Obtain ISO/SAE 21434 Automotive Cybersecurity Management Certification*, May 15, 2023, https://www.hesaitech.com/hesai-becomes-the-first-lidar-company-to-obtain-iso-sae-21434-automotive-cybersecurity-management-certification/.

15.    For one, Hesai's technology has never been designed for, evaluated for, or validated to military specifications.  In fact, its products have been designated as EAR99 by the U.S. Department of Commerce, a category consisting of mostly consumer goods that do not require an export license in most situations.[4]

16.    Hesai has never sold its products to the Chinese government or the People's Liberation Army.  Hesai does not receive sovereign money or government benefits beyond the treatment generally available to other technology companies, foreign and domestic.

17.    In recent years Hesai has taken aggressive steps to strengthen its sales-compliance framework more broadly.  For example, well before its addition to the 1260H List, Hesai implemented, with the assistance of U.S. counsel, a robust customer screening process to ensure that it does not sell its products to any entities on U.S. restricted parties lists or to any military end-user.

18.    I have reviewed Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283).  Based on my extensive understanding of Hesai, its history, and its operations, I can state that the company does not meet any of the statutory listing criteria.

**Lobbying Against Hesai by Competitors**

19.    Despite Hesai's commitments to safety and security, I am aware that Hesai's competitors, especially those in the United States, including Ouster and Cepton, have resorted to

---

[4] U.S. Department of Commerce, Bureau of Industry and Security, Office of Exporter Services, *Frequently Asked Questions to Export Licensing Requirements* at 5-6, 11 (revised Nov. 2018), https://www.bis.doc.gov/index.php/documents/pdfs/286-licensing-faq/file#:~:text=EAR99%20is%20a%20 classification%20designation,%2C%E2%80%9D%20is%20a%20shipment%20designation.

stoking fears about Chinese LiDAR companies in general, and Hesai specifically—including by forming a self-named "LiDAR Coalition."[5]

20.    In my view, these competitors are blatantly exploiting anti-China sentiment in an attempt to paint Chinese LiDAR companies as a national security threat in order to obtain a competitive advantage against Hesai.  And indeed, these efforts have been publicly reported in mainstream media as an apparent attempt by Hesai's competitors to stop the "hemorrhaging" of their own business losses,[6] and a "self-interested attempt to handicap overseas rivals."[7]

21.    I am also aware that Hesai's competitors have directly lobbied American government officials.  For example, I am aware that a lobbying and communications firm sent an open letter to congressional staffers in November 2023 encouraging members of Congress to urge various federal departments to investigate Chinese LiDAR technology companies.

22.    Based on my observations, the public relations campaign and lobbying tactics have focused on two erroneous facts.

23.    First, seizing on the possibility that an unauthorized third-party recipient of LiDAR technology could potentially install LiDAR units on military vehicles—in the same way they may be used on civilian or commercial ones—U.S. competitors have insinuated that Hesai develops LiDAR devices for military uses.  As detailed above, that is simply not true.  Hesai is committed to ensuring that it does not sell its products to any military, it has instituted robust screening processes to ensure that restricted entities do not obtain its technology, and its products have

---

[5] *See, e.g.*, Hesai, *Hesai Technology, Lidars – The Active Seat Belt to Save Lives*, Nov. 2023, https://investor.hesaitech.com/static-files/2ae76546-a3f1-45b7-96fa-87e642712854.

[6] Politico, *The sensors in those self-driving cars have become an international dispute*, Dec. 28, 2023, https://www.politico.com/news/2023/12/28/auto-safety-tech-is-the-newest-front-of-the-u-s-china-trade-war-00130848.

[7] Bloomberg, *Fears of Chinese Self-Driving Car Tech Are on the Rise*, July 26, 2023, https://www.bloomberg.com/news/newsletters/2023-07-26/fears-of-chinese-self-driving-car-tech-are-on-the-rise.

received the same EAR99 designation by the Department of Commerce that is applied to a majority of commercial products.  Moreover, to the extent that such unauthorized installations occur, they could happen with any LiDAR manufacturer's technology—including that of Hesai's U.S. competitors.

24.    Second, U.S. competitors have also mischaracterized certain standard "risk factor" language included in Hesai's prior public filings.  For example, I am aware that they have mischaracterized a statement in Hesai's F-1 filing with the U.S. Securities and Exchange Commission, in which the company stated that "the PRC government has significant authority in regulating our operations and may influence or intervene in our operations at any time."  I have been informed by those involved in preparing this statement that it is standard language required by the SEC for Chinese-listed companies, and it merely informs investors of the general risks of investing in companies based in China.  To be clear, the Chinese government has not intervened in Hesai's operations or management decisions.

25.    The commercially driven smear campaign by Hesai's competitors has resulted in other misinformation in the public record.  For example, I am aware that a 2023 Congressional Research Service report states, without citation, that Hesai "makes autonomous warfighting vehicles."  That unsubstantiated assertion is utterly false (and absurd): Hesai does not make any form of "autonomous warfighting vehicles"; it only makes LiDAR for passenger and commercial vehicles.

26.    The same Congressional Research Service report states that Hesai is "reportedly tied to the military's China Electronics Technology Group Corporation" ("CETC").  That statement is severely misleading.  While a CETC research institute was once one of more than 2,000 suppliers from which Hesai had purchased products, that supply agreement (limited to

optoelectronic parts purchased on the open market) represented less than 0.5% of Hesai's total volume of component parts in 2022. Immediately upon learning that CETC appeared on restricted lists, Hesai ended its relationship with the supplier in the first half of 2023. Today, Hesai has no business relationship with CETC.

### Hesai's Placement on the Section 1260H List

27.     On January 31, 2024, I learned that Hesai had been placed on the Department of Defense's January 31, 2024 list of "Entities Identified as Chinese Military Companies Operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)" ("List").

28.     Hesai did not receive any prior notice or opportunity to be heard with regard to its placement on this List.

29.     As of the date of this declaration, Hesai still has not been provided with any information or explanation for the Department's decision to designate it a "Chinese military company"—and has had no opportunity to assess what credible information, if any, the Department has relied upon in making its decision.

30.     Hesai's current and potential investors have expressed concern to me and others about Hesai's placement on the List. Because of the complete absence of information about the Department's decision, however, Hesai has not been able to explain to these parties why it has been included or what steps it can take to facilitate its removal.

31.     The listing is causing Hesai serious reputational injury. For example, Hesai has been subject to sustained and damaging press attention that now falsely describes Hesai as an entity that is "helping" and "aiding" the Chinese military.

32.    Hesai's share price fell over 30% in a single day following the listing, and its share price remains well below its historical value—at a time when the values of other NASDAQ technology companies have been surging.

33.    The listing has also threatened Hesai's business opportunities in the weeks since the listing.  The company's placement on the List has jeopardized ongoing contract negotiations and disrupted existing and potential customer relationships at a particularly sensitive period for the industry, when automobile companies are making crucial decisions about the technology to be used in future models.

34.    As noted, the listing has forced plans for a Hesai manufacturing facility in the United States to be put on pause.

*****

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed this 8th day of March 2024, in Shanghai, China.

David Yifan LI

# EXHIBIT C

**Tan, Zach**

| | |
|---|---|
| **From:** | Taylor-Kale, Laura D HON (USA) <laura.d.taylor-kale.civ@mail.mil> |
| **Sent:** | Tuesday, March 12, 2024 1:14 PM |
| **To:** | Paterno, Lide; Tysse, James |
| **Cc:** | Najieb-Locke, Halimah A SES (USA); Giordani, Nicoletta S SES (USA); Blanton, Irmie K CIV OSD OUSD A-S (USA); Krass, Caroline D HON (USA) |
| **Subject:** | RE: Hesai Technology Co., Ltd.'s Erroneous And Improper Designation As A "Chinese Military Company" |

**\*\*EXTERNAL Email\*\***

Mr. Tysse,

Thank you for your letter and email dated March 8, 2024.  We very much appreciate the information you provided.  We will consider your letter and the declaration attached thereto in our ongoing assessment of whether Hesai should remain on, or be removed from, the Chinese military company list as required by Section 1260H.

In your letter, you requested the administrative record underlying Hesai's designation as a Chinese military company.  You must submit a Freedom of Information Act request through FOIA.gov at https://www.foia.gov/request/agency-component/5a3d3893-4280-4b69-92c9-b51a688fac79/ to request this information.

Please feel free to provide any additional relevant information related to Hesai as it pertains to the Section 1260H List.

Sincerely,
HON Laura Taylor-Kale

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**The Honorable Laura D. Taylor-Kale, PhD**
**Assistant Secretary of Defense for Industrial Base Policy**
Office of the Under Secretary for Acquisition and Sustainment
U.S. Department of Defense

**IBP Mission: *To work with domestic and international partners to forge and sustain a robust, secure, and resilient industrial base enabling the warfighter, now and in the future.***

---

**From:** Paterno, Lide <lpaterno@akingump.com>
**Sent:** Friday, March 8, 2024 6:07 PM
**To:** Taylor-Kale, Laura D HON (USA) <laura.d.taylor-kale.civ@mail.mil>
**Cc:** Najieb-Locke, Halimah A SES (USA) <halimah.a.najieb-locke.civ@mail.mil>; Giordani, Nicoletta S SES (USA) <nicoletta.s.giordani.civ@mail.mil>; Blanton, Irmie K CIV OSD OUSD A-S (USA) <irmie.k.blanton2.civ@mail.mil>; Krass, Caroline D HON (USA) <caroline.d.krass.civ@mail.mil>; Tysse, James <jtysse@akingump.com>
**Subject:** Hesai Technology Co., Ltd.'s Erroneous And Improper Designation As A "Chinese Military Company"

Dear Assistant Secretary Taylor-Kale,

Attached, please find a letter from James Tysse on behalf of Hesai Technology Co., Ltd.

Sincerely,

Lide Paterno

CC: Halimah Najieb-Locke; Nicoletta Giordani; I.K. Blanton; Caroline D. Krass

**Lide E. Paterno**
**Akin**

Robert S. Strauss Tower | 2001 K Street N.W. | Washington, DC 20006 | USA | Direct: <u>+1 202.887.4078</u> | Internal: <u>24078</u>
Fax: +1 202.887.4288 | <u>lpaterno@akingump.com</u> | <u>akingump.com</u> | <u>Bio</u>

This email message was sent from Akin Gump Strauss Hauer & Feld LLP. The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message

# EXHIBIT D



**DEPARTMENT OF DEFENSE**
**FREEDOM OF INFORMATION DIVISION**
**1155 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1155**

Ref: 24-F-0933
March 14, 2024

Mr. James Tysse
2001 K Street N.W.
Washington, DC  20006

Dear Mr. Tysse:

This is an interim response to your March 13, 2024 Freedom of Information Act (FOIA) request, a copy of which is enclosed for your convenience.  We received your request on March 13, 2024, and assigned it FOIA case number 24-F-0933.  We ask that you use this number when referring to your request.

Although we have already begun processing your request, we will not be able to respond within the FOIA's 20-day statutory time period as there are unusual circumstances which impact our ability to quickly process your request.  The FOIA defines unusual circumstances as (a) the need to search for and collect records from a facility geographically separated from this office; (b) the potential volume of records responsive to your request; and (c) the need for consultation with one or more other agencies or DoD components having a substantial interest in either the determination or the subject matter of the records.  At least one, if not more of these scenarios applies or would likely apply to your request.  While this office handles FOIA requests for the Office of the Secretary of Defense (OSD), the Joint Staff (JS) and other component offices, we do not actually hold their records and our office is not geographically located with these organizations.  As we do not hold the records, until the required record searches are complete, we are unable to estimate the potential volume of records or the number of consultations that will be required to make a release determination.

Your request has been placed in our complex processing queue and is being worked based on the order in which the request was received.  Our current administrative workload is approximately 3,178 open requests.

If you have requested a fee waiver, please note that decisions to waive or reduce fees are made on a case-by-case basis, and we will make a determination concerning your fee waiver request at the conclusion of the search and assessment of responsive records, should they exist.  However, this office will only assess fees if we provide the final response to your FOIA request within the statutory time allotted by the FOIA or if the responsive records total more than 5,000 pages, even after a good faith effort on our part to limit the scope of your request.

In some instances, we have found that requesters who narrow the scope of their requests experience a reduction in the time needed to process their requests. If you wish to narrow the scope of your request or have questions about the foregoing, please do not hesitate to contact your Action Officer, Jake Schneider, at jake.a.schneider3.ctr@mail.mil or 571-372-0437. Additionally, if you have concerns about service received by our office, please contact a member of our Leadership Team at 571-372-0498 or Toll Free at 866-574-4970.

Should you wish to inquire about mediation services, you may contact the OSD/JS FOIA Public Liaison, Toni Fuentes, at 571-372-0462 or by email at OSD.FOIALiaison@mail.mil. You may also contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration. The contact information for OGIS is as follows:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road-OGIS
College Park, MD 20740
E-mail: ogis@nara.gov
Telephone: 202-741-5770
Fax: 202-741-5769
Toll-free: 1-877-684-6448

We regret the delay in responding to your request and appreciate your patience. As previously stated, please contact the Action Officer assigned to your request, Jake Schneider, and reference FOIA case number 24-F-0933, if you have any questions or concerns.

Sincerely,

*for* *Madalyn Harper*

Stephanie L. Carr
Chief

Enclosure:
As stated