# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civ. Action No. 1:24-cv-01381-PLF |
| U.S. DEPARTMENT OF DEFENSE, *et al.* | |
| *Defendants*. | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc. hereby move for summary judgment against Defendants United States Department of Defense, Lloyd J. Austin, III, in his official capacity as Secretary of Defense, and Laura D. Taylor-Kale, in her official capacity as Assistant Secretary of Defense for Industrial Base Policy.  In support of this motion, Plaintiffs submit the accompanying Memorandum of Points and Authorities and accompanying declaration.  A proposed order is attached.

WHEREFORE, Plaintiffs respectfully request that the Court grant summary judgment to Plaintiffs; declare that Defendants violated the Administrative Procedure Act in placing Plaintiffs on the list of Entities Identified as Chinese Military Companies Operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal year 2021 (Public Law 116-283) ("Section 1260H List"); hold unlawful and set aside Defendants' decision to designate Plaintiffs as a Chinese military company; and order Defendants to remove Plaintiffs from the Section 1260H List.

Respectfully submitted,

Dated:  July 3, 2024

   /s James E. Tysse

James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jtysse@akingump.com

Zach ZhenHe Tan
  *Admitted Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
100 Pine Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 765-9500
Facsimile:  (415) 765-9501

*Counsel to Plaintiffs Hesai Technology Co., Ltd.
and Hesai Inc.*

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civ. Action No. 1:24-cv-01381-PLF |
| U.S. DEPARTMENT OF DEFENSE, *et al.* | |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................4

    A.    Statutory And Regulatory Background......................................................4

          1.    *This Court enjoins the Department's prior attempts to designate companies for purported connections to the Chinese military.* ...............................................................4

          2.    *Congress enacts Section 1260H with a focus on companies' connections to the Chinese military.* ...........5

    B.    Hesai's Ownership, Operations, And Technology .....................................8

    C.    January 2024 Listing....................................................................................11

    D.    Procedural History ......................................................................................13

STANDARD OF REVIEW ............................................................................................15

ARGUMENT ...............................................................................................................16

    I.    THE DEPARTMENT'S DESIGNATION OF HESAI WAS UNLAWFUL BECAUSE IT FAILED TO MAKE THE REQUISITE FINDING THAT HESAI CONTRIBUTES "TO THE CHINESE DEFENSE INDUSTRIAL BASE"..................................................16

          A.    The Department Was Statutorily Bound To Find That Hesai Contributes To The "Chinese Defense Industrial Base"...........................16

          B.    The Department's Failure To Make A Critical Factual Finding Should Result In Vacatur ........................................................18

    II.    THE DEPARTMENT'S DETERMINATION THAT HESAI IS A "MILITARY-CIVIL FUSION CONTRIBUTOR" IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW........................................................22

          A.    The Department Exceeded Its Statutory Authority In Concluding That Hesai Is "Affiliated With" The MIIT. ...............................22

               1.    *The term "affiliated with" requires at least effective control.*................................................................22

               2.    *The Department's sweeping application of "affiliated with" extends far beyond "effective control."*..............25

           B.    The Department Failed To Articulate A Comprehensible Standard For Which MIIT Connections Qualify Under Its Broad Conception Of "Affiliated" ......................................................27

    III.    THE DEPARTMENT'S DESIGNATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ....................................................30

A.    The Department Misconstrues Hesai's Own Public-Facing Prospectus ................................................................................31

B.    Hesai's Participation In Industry-Wide Commercial Activities Is Not Evidence Of Affiliation With The MIIT...............................................34

C.    The Department's Remaining Evidence Is Also Lacking.........................37

IV.    THE DEPARTMENT'S FAILURE TO BASE HESAI'S DESIGNATION ON THE MOST RECENT INFORMATION AVAILABLE VIOLATES SECTION 1260H, THE APA, AND THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT .............................41

CONCLUSION...............................................................................................................43

ADDENDUM

Note to 50 U.S.C. § 1701, Application of Authorities Under the International Emergency Economic Powers Act to Communist Chinese Military Companies ........Add. 1

Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal year 2021 (Public Law 116-283), codified at 10 U.S.C. § 113 note ........................................................................................................Add. 3

# TABLE OF AUTHORITIES

**CASES:**

*ACA Int'l v. FCC,*
　　885 F.3d 687 (D.C. Cir. 2018) ................................................................................27, 29

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
　　522 U.S. 359 (1998) ...............................................................................................29

*AT&T Corp. v. FCC,*
　　86 F.3d 242 (D.C. Cir. 1996) ...................................................................................15

*Autodesk, Inc. v. ZWCAD Software Co.,*
　　No. 14-cv-1409, 2015 WL 1928184 (N.D. Cal. Mar. 27, 2015) ...........................20

*Bittner v. United States,*
　　598 U.S. 85 (2023) ..................................................................................................19

*Burlington Truck Lines v. United States,*
　　371 U.S. 156 (1962) ................................................................................................15

*Center for Auto Safety v. Federal Highway Admin.,*
　　956 F.2d 309 (D.C. Cir. 1992) .................................................................................30

*Community for Creative Non-Violence v. Turner,*
　　893 F.2d 1387 (D.C. Cir. 1990) ...............................................................................27

*Defenders of Wildlife v. Babbitt,*
　　958 F. Supp. 670 (D.D.C. 1997) ..............................................................................33

*Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.,*
　　892 A.2d 1073 (Del. 2006) ......................................................................................23

*Dickinson v. Zurko,*
　　527 U.S. 150 (1999) ...........................................................................................30, 33

*Dickson v. Sec'y of Def.,*
　　68 F.3d 1396 (D.C. Cir. 1995) .................................................................................18

*Duncan v. Walker,*
　　533 U.S. 167 (2001) ..........................................................................................16, 18

*Emory Univ., Inc. v. Neurocare, Inc.,*
　　985 F.3d 1337 (11th Cir. 2021) ...............................................................................23

*FCC v. Fox Television Stations, Inc.,*
　　567 U.S. 239 (2012) ................................................................................................27

*Garnett v. RLX Tech. Inc.*,
   632 F. Supp. 3d 574 (S.D.N.Y. 2022) ...........................................................................20, 25

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ......................................................................................................26, 27

*Haping v. 17 Educ. & Tech. Grp. Inc.*,
   No. 22-cv-09843, 2023 WL 8716895 (S.D.N.Y. July 20, 2023) ...........................................20

*Hikvision USA, Inc. v. FCC*,
   97 F.4th 938 (D.C. Cir. 2024) .................................................................................27, 29, 30

*Homer v. Roche*,
   226 F. Supp. 2d 222 (D.D.C. 2002) ....................................................................................29

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ............................................................................................................27

*Luokung Tech. Corp. v. Department of Def.*,
   538 F. Supp. 3d 174 (D.D.C. 2021) ............................................................................. *passim*

*Mey v. DIRECTV, LLC*,
   971 F.3d 284 (4th Cir. 2020) ..............................................................................................23

*Morall v. DEA*,
   412 F.3d 165 (D.C. Cir. 2005) ............................................................................................21

*Mori v. Dep't of Navy*,
   731 F. Supp. 2d 43 (D.D.C. 2010) ......................................................................................29

*Morton v. Ruiz*,
   415 U.S. 199 (1974) ............................................................................................................28

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................................. *passim*

*Nasdaq Stock Mkt. LLC v. Securities & Exch. Comm'n*,
   38 F.4th 1126 (D.C. Cir. 2022) ..........................................................................................38

*National Council of Resistance of Iran v. Department of State*,
   251 F.3d 192 (D.C. Cir. 2001) ............................................................................................41

*Pac. Nw. Newspaper Guild, Loc. 82 v. NLRB*,
   877 F.2d 998 (D.C. Cir. 1989) ............................................................................................28

*Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*,
   313 F. Supp. 3d 62 (D.D.C. 2018) ......................................................................................15

*Ralls Corp. v. Committee on Foreign Inv. in U.S.*,
    758 F.3d 1296 (D.C. Cir. 2014) ................................................................41

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ....................................................................23

*Sessions v. Dimaya*,
    584 U.S. 148 (2018) ..................................................................................26

*Taucher v. Brown–Hruska*,
    396 F.3d 1168 (D.C. Cir. 2005) ...............................................................27

*Trafalgar Cap. Assocs., Inc. v. Cuomo*,
    159 F.3d 21 (1st Cir. 1998) ......................................................................28

*Trifax Corp. v. District of Columbia*,
    314 F.3d 641 (D.C. Cir. 2003) .................................................................42

*Tripoli Rocketry Ass'n Inc. v. Bureau of Alcohol, Tobacco, Firearms, &*
    *Explosives*,
    437 F.3d 75 (D.C. Cir. 2006) .............................................................21, 29

*U.S. Postal Serv. v. Postal Regul. Comm'n*,
    785 F.3d 740 (D.C. Cir. 2015) ...........................................................27, 29

*United States v. Davis*,
    588 U.S. 445 (2019) ..................................................................................23

*United States v. Hansen*,
    599 U.S. 762 (2023) ............................................................................26, 43

*United States v. W. Elec. Co.*,
    12 F.3d 225 (D.C. Cir. 1993) ...................................................................23

*Woodhull Freedom Found. v. United States*,
    72 F.4th 1286 (D.C. Cir. 2023) ..........................................................26, 43

*\*Xiaomi Corp. v. Department of Def.*,
    No. CV 21-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021)........................... *passim*

*Yates v. United States*,
    574 U.S. 528 (2015) ..................................................................................26

<u>**Statutes and Regulations**</u>:

5 U.S.C.
　　§ 706(1) ..................................................................................................43
　　§ 706(2) ..................................................................................................15
　　§ 706(2)(A) .............................................................................................43
　　§ 706(2)(B) .............................................................................................43

10 U.S.C.
　　§ 113 note ................................................................................................5

11 U.S.C.
　　§ 101(2)(A) .............................................................................................24

12 U.S.C.
　　§ 5481 .....................................................................................................24

15 U.S.C.
　　§ 9009a ...................................................................................................40

16 U.S.C.
　　§ 618 .......................................................................................................24

21 U.S.C.
　　§ 379g......................................................................................................24

47 U.S.C
　　§ 153 .......................................................................................................24

50 U.S.C.
　　§ 1701 note ...............................................................................................4

Pub. L. No. 105-261, 112 Stat. 1920 (1998) ......................................................4

Pub. L. No. 106-398, 114 Stat. 1654 (2000) ......................................................4

Pub. L. No. 108-375, 118 Stat. 1811 (2004) ................................................ *passim*
　　§ 1237(b)(4)(B) ........................................................................................34

Pub. L. No. 116-283, 134 Stat. 3388 (2021) ................................................................ *passim*
    § 1260H(a) ..................................................................................................5, 41
    § 1260H(b)(1) .......................................................................................................6
    § 1260H(b)(3) ...........................................................................................6, 41, 43
    § 1260H(d)(1) .....................................................................................................23
    § 1260H(d)(1)(B)(i) ...........................................................................................13
    § 1260H(d)(1)(B)(i)(I) ................................................................................ *passim*
    § 1260H(d)(1)(B)(i)(II) ............................................................................... *passim*
    § 1260H(d)(1)(B)(ii) ...........................................................................................6
    § 1260H(d)(2) .......................................................................................................7
    § 1260H(d)(2)(A) ...............................................................................................38
    § 1260H(d)(2)(B) ........................................................................................ *passim*
    § 1260H(d)(2)(F) ...............................................................................................37
    § 1260H(d)(3) .......................................................................................................7

Pub. L. No. 118-31, 137 Stat. 135 (2023) .........................................................................6

32 C.F.R.
    § 117.3 ................................................................................................................24
    § 232.3(a) ...........................................................................................................24

86 Fed. Reg. 33,994 (June 28, 2021) .............................................................................7, 8

89 Fed. Reg. 22,698 (Apr. 2, 2024) ............................................................................13, 41

**OTHER AUTHORITIES:**

Apple Chinese iPhone User Manual (last visited July 3, 2024) .......................................38

Autel Intelligent Tech. Corp. Ltd., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* (last visited July 3, 2024) ...........................................................................................................32

Beijing Jingwei Hirain Techs. Co., Inc., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* (last visited July 3, 2024) ..................................................................................................32

BLACK'S LAW DICTIONARY (12th ed. 2024) ...................................................................23

Bloomberg, People's Republic of China Ministry of Industry & Information Technology (last visited July 3, 2024) ...........................................................................19

Brunner, Jordan & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021) ...........................................................................................................6, 17

*China's Little Giants' Are Its Latest Weapon in the U.S. Tech War*, BLOOMBERG NEWS (Jan. 23, 2022) ..................................................................................................39

Cubic Sensor & Instrument Co., Ltd., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* (last visited July 3, 2024) ................................................................................................ 32

Garcia-Herrero, Alicia & Michal Krystanczuk, *How Does China Conduct Industrial Policy: Analyzing Words Versus Deeds*, 24 J. OF INDUS., COMPETITION & TRADE 10 (2024) ..................................................................... 39

Letter from Rep. Ashley Hinson, U.S. Rep., et al., to Adena Friedman, Chair & CEO, Nasdaq World Headquarters (Apr. 11, 2024) ...................................... 12

Ministry of Industry and Information Technology (MIIT) (工业和信息化部), Westlaw Practical Law UK Glossary 1-552-9335 ...................................... 19

Nat'l Standards & Tech. Evaluation Ctr. of State Admin. For Mkt. Regul., *TC114 National Technical Committee for Automotive Standardization* (last visited July 3, 2024) ................................................................................................ 35

Nicastro, Luke A., Cong. Rsch. Serv., Defense Primer: U.S. Defense Industrial Base (2023) ................................................................................................ 17

Orbbec Inc., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* (last visited July 3, 2024) ................. 32

Press Release, U.S. Department of Defense, *DOD Releases List of People's Republic of China (PRC) Military Companies in Accordance With Section 1260H of the National Defense Authorization Act for Fiscal Year 2021* (Jan. 31, 2024) ................................................................................................ 11

SAC, National Public Service Platform for Standards Information (last visited July 3, 2024) ................................................................................................ 36

UNI-TREND TECH. (CHINA) CO., LTD., Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board 124–25 (last visited July 3, 2024) ....................................................................... 32

U.S. Dep't of Def., DOD Dictionary of Military and Associated Terms (Mar. 2017) ................................................................................................ 17

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) ....................................... 23

## INTRODUCTION

Without warning or explanation, in early 2024, the U.S. Department of Defense tarred Hesai Technology Co., Ltd. and its wholly owned American subsidiary, Hesai Inc. (collectively, "Hesai"), as a "Chinese military company" under Section 1260H of the National Defense Authorization Act ("NDAA") for FY2021. Hesai, which is publicly traded on NASDAQ and is a manufacturer of Light Detection and Ranging (LiDAR) for commercial and passenger automotive vehicles, was completely blindsided. The designation has imposed serious reputational injury, caused a significant drop in stock price, and impeded important business opportunities. Hesai quickly reached out to the Department to seek justification for the designation and to help clear up the mistake, but received only limited, non-substantive responses—forcing the company to file this lawsuit just to obtain the agency's rationale.

After Hesai filed suit, the Department produced a seven-page decision memorandum explaining its purported justifications for Hesai's placement on the Section 1260H list. That memorandum, and the paltry administrative record underlying it, demonstrate that the Department's decision is unlawful and lacks any legitimate basis. Under the governing statute, a "Chinese military company" is an entity that is either (i) owned, controlled, or acting as an agent of "the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party," or (ii) "a military-civil fusion contributor to the Chinese defense industrial base." The Department does not even attempt to proceed under the first prong of this test. In fact, the Department does not allege any connection between Hesai and the Chinese military at all.

Instead, the lone justification the Department offers is that the company is a "military-civil fusion contributor" because it is purportedly "affiliated with" the Chinese Ministry of Industry and Information Technology ("MIIT"), an executive department agency within the Chinese

1

government that oversees Chinese manufacturing, telecommunications, and information technology industries. The MIIT thus fulfills a role akin to the regulatory, standard-setting, and policy functions performed domestically by the Department of Commerce (including the National Institute of Standards and Technology), the Federal Communications Commission, and the Small Business Administration. The Department's designation of Hesai as a "Chinese military company" based *solely* on alleged connections with the MIIT violated the Administrative Procedure Act ("APA") many times over.

*First*, the Department completely failed to make the requisite factual finding under Section 1260H that Hesai contributes "to the Chinese defense industrial base." That statutory requirement supplies the critical link between a supposed "Chinese military company" and the *Chinese military.* But the Department's decision memorandum ignores the requirement, which alone compels vacatur. Moreover, the record does not contain a shred of evidence that Hesai contributes to the Chinese defense industrial base; indeed, the Department itself recognized that Hesai "develops, manufactures, and sells three-dimensional Light Detection and Ranging (LiDAR) solutions" to "enable a broad spectrum of applications across *passenger or commercial vehicles*."

*Second*, the Department exceeded its authority, and acted arbitrarily and capriciously, in concluding that Hesai is a "military-civil fusion contributor" because it is (supposedly) "affiliated with" the MIIT, without any finding that the MIIT owns or controls Hesai. The Department thus disregarded this Court's repeated holdings, when enjoining similar designations under a predecessor statute, that the statutory term "affiliated with" requires at least "effective control." *See Luokung Tech. Corp. v. Department of Def.*, 538 F. Supp. 3d 174 (D.D.C. 2021); *Xiaomi Corp. v. Department of Def.*, No. CV 21-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021). Additionally,

the Department independently erred in failing to articulate *any* alternative standard for what "affiliated" means.

*Third*, even if Congress had conferred unbounded discretion to re-define "affiliated," the Department lacked sufficient evidence to designate Hesai. The Department relies on a scattershot list of supposed MIIT "partnerships," "projects," licenses, and recognitions. But the record does not support—and in several cases actively contradicts—the Department's descriptions of those purported affiliations between Hesai and the MIIT. At most, those links show that Hesai—just like Apple, Tesla, Pepsi, Nike, and countless other American companies with a Chinese footprint—engages in industry-wide commercial activities generally subject to the MIIT's regulatory jurisdiction. Accepting such evidence as sufficient would give the Department near-limitless discretion to designate any company as a "Chinese military company."

*Finally*, the Department violated Hesai's statutory and constitutional rights when it selectively refused to even *consider* materials submitted by Hesai that undermined the Department's prior assumptions. Such evidence was the "latest information available" that the Department was required to consider under Section 1260H.

Each of these defects is independently fatal to the Department's egregiously wrong designation decision. The Court should declare that the Department has violated Section 1260H and the APA, hold unlawful and set aside Hesai's designation as a Chinese military company, and order Defendants to remove Hesai from the Section 1260H List.

3

# BACKGROUND

## A.      Statutory And Regulatory Background

> *1.        This Court enjoins the Department's prior attempts to designate companies for purported connections to the Chinese military.*

Although this action primarily concerns the Department's Section 1260H List, the Department's use of an analogous predecessor list of "Communist Chinese military companies" ("CCMC"), maintained under Section 1237 of the 1999 NDAA, provides important context.  50 U.S.C. § 1701 note, Pub. L. No. 105-261, § 1237, 112 Stat. 1920, 2160 (1998), as amended by Pub. L. No. 106-398, § 1233, 114 Stat. 1654 (2000), and Pub. L. No. 108-375, § 1237, 118 Stat. 1811, 2089 (2004) ("Section 1237").  Under Section 1237, a company qualified as a CCMC if the Secretary of Defense determined that it is "owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China," or "owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China," among other requirements.  *Id.*  That is, Section 1237 targeted not only military companies, but also entities owned or controlled by, or affiliated with, the Chinese "government" more broadly.

"Section 1237's CCMC designation authority went unused for almost twenty years," *Luokung Tech. Corp.*, 538 F. Supp. 3d at 195 n.15, until a "flurry" of companies were added to the list in 2020 and 2021, *Xiaomi Corp.*, 2021 WL 950144, at *12.  But it quickly became apparent that the Department's "designation process *** was deeply flawed and failed to adhere to several different [APA] requirements."  *Id.* at *8.  In 2021, this Court twice held that, in placing certain companies on the Section 1237 List, the Department failed to "adequately explain[] the basis for its decision," acted "in violation of the Department of Defense's limited grant of statutory authority," and "lack[ed] the substantial evidentiary support required" under the APA.  *Xiaomi Corp.*, 2021 WL 950144, at *4–8 (citations omitted); *see Luokung Tech. Corp.*, 538 F. Supp. 3d at

191 ("The Department of Defense's CCMC designation process as to Luokung was flawed and failed to adhere to several different APA requirements."). In particular, the Court held that the key statutory term "affiliated with" requires "effective[] control[]," yet neither listed entity was "an affiliate of any of the proscribed entities identified by Congress in Section 1237." *Xiaomi Corp.*, 2021 WL 950144, at *7; *Luokung Tech. Corp.*, 538 F. Supp. 3d at 188. The Court also noted "serious concerns" about whether the Department had afforded the designated companies "constitutional due process" in listing them without any notice or opportunity to object. *Xiaomi Corp.*, 2021 WL 950144, at *8 n.8; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 n.13.

After finding various harms flowing from the designations—including that the associated stigma caused "reputational damage," "diminished access to capital, canceled contracts, loss of market share, and difficulty recruiting and retaining talent"—the Court enjoined the listings of the two entities that had brought suit. *Luokung Tech. Corp.*, 538 F. Supp. 3d at 192, 195–96; *see Xiaomi Corp.*, 2021 WL 950144, at *13. The Department did not appeal, and it subsequently removed both entities from the Section 1237 List.

> 2.    *Congress enacts Section 1260H with a focus on companies' connections to the Chinese military.*

In January 2021—the same month the Department added Xiaomi and Luokung to the Section 1237 List—Congress enacted the provision at issue here: Section 1260H of the 2021 NDAA. *See* Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965 (2021).[1] That provision directed the Secretary of Defense to "identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company." Sec. 1260H(a). The Secretary must update

---

[1] Section 1260H is codified at 10 U.S.C. § 113 note. For ease of reference, this brief cites to the original public law provision.

the list annually, Sec. 1260H(b)(1), as well as "make additions or deletions *** on an ongoing basis based on the latest information available," Sec. 1260H(b)(3). Congress has already barred entities on the Section 1260H List from selling goods to the Department beginning in 2026, *see* Pub. L. No. 118-31, § 805, 137 Stat. 135, 315 (2023), and has considered additional sanctions.

As commentators have observed, "Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237," but with a "particular[] concern[] about the Chinese military and its operations in the United States, rather than the Chinese state broadly." Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021).[2] Congress directed this "more precise" designation strategy through "Section 1260H's narrow and tailored language," including a "new definition of a [Chinese military company that] is significantly narrower than the old definition of CCMCs under Section 1237." *Id.*

To that end, Section 1260H provides that a "Chinese military company" is an entity "engaged in providing commercial services, manufacturing, producing, or exporting," Sec. 1260H(d)(1)(B)(ii), that has one of two distinct relationships with the Chinese military.

The first type of "Chinese military company" is "an entity that is *** directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party[.]" Sec. 1260H(d)(1)(B)(i)(I). "The term 'People's Liberation Army' means the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security

---

[2]    https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors.

element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate." Sec. 1260H(d)(3).

The second type of "Chinese military company" is an entity "identified as a military-civil fusion contributor to the Chinese defense industrial base." Sec. 1260H(d)(1)(B)(i)(II). Congress did not define the phrase "Chinese defense industrial base." Congress did, however, define a "military-civil fusion contributor" to cover entities that fit into one of eight subcategories:

(A)     Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B)     Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C)     Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D)     Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E)     Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F)     Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G)     Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H)     Any other entities the Secretary determines is appropriate.

Sec. 1260H(d)(2).

On June 28, 2021, Defendants published the initial Section 1260H List, designating various entities as "Chinese military companies" for the first time. 86 Fed. Reg. 33,994, 33,994 (June 28,

2021).   Hesai did not appear on that List.   The Department simultaneously "removed the designation of 'Communist Chinese military companies' from entities previously listed as such in accordance with Section 1237[.]"  *Id.*  "There are currently no entities designated as Communist Chinese military companies" under Section 1237.  *Id.*

### B.   Hesai's Ownership, Operations, And Technology

**1.**   Plaintiff Hesai Technology Co., Ltd. is wholly owned by Hesai Group, a holding company incorporated under the laws of the Cayman Islands.   Headquartered in Shanghai, the Hesai Group has a global footprint that includes the United States, where California-based Plaintiff Hesai Inc. serves as the Hesai Group's primary sales platform in America, with over a dozen employees in Palo Alto and Detroit.  Compl. ¶¶ 14–15.[3]

Since February 9, 2023, Hesai Group has been publicly traded on NASDAQ under the ticker symbol HSAI.   Its founders—private, U.S.-educated businesspeople with no relationship to the People's Liberation Army or any organization subordinate to it—maintain a 23% ownership stake in the company and hold super-voting shares that confer 75% of the voting power and control over the company's strategic decisions.   The rest of Hesai's shares are owned by institutional, retail, and commercial investors, including from the United States and other Western countries. Compl. ¶¶ 31, 63.

Hesai is fully committed to independence from government control by any country, including China.   As a publicly traded company, Hesai Group is responsible to its Board, which does not include any person affiliated with the Chinese military.   Neither the Chinese government

---

[3] The allegations in the Complaint are drawn from the facts set forth in a letter and accompanying sworn CEO affidavit that Hesai submitted to the Department on March 8, 2024. *See* Mot. to Complete R. or, in the Alternative, Suppl. Admin. R. ("Mot. to Complete R."), Dkt. 16 (moving to add those submissions to the record).

nor the People's Liberation Army—nor any sub-entity operating subject to the direction of the government or military—has any "golden" share or veto right over the company's decision-making.  And Hesai does not accept any benefits (such as tax breaks) from the governments of the United States, China, or other countries that are not generally available to any technology company, foreign or domestic.  Compl. ¶¶ 31–32, 67.

**2.**  Hesai principally develops, manufactures, and sells LiDAR technology for commercial use.  While LiDAR can be analogized to low-resolution 3D cameras that have been used in millions of applications (such as passenger vehicles) for safety purposes, LiDAR improves on that technology by using laser pulses to create a real-time, accurate 3D representation of an object's physical surroundings.  This enables autonomous or assisted driving systems to navigate complex environments in a wide variety of driving conditions to facilitate safe maneuvering and avoid crashes.  LiDAR's primary application is thus in autonomous vehicles or Advanced Driver Assistance Systems.  Hesai leads the automotive LiDAR industry, with a 47% share of the global market as of 2022.  Hesai's share of the global market for robotic cars (*i.e.*, "robotaxis") that year was even higher, at 67%.  Indeed, 12 of the world's top 15 autonomous driving companies have used Hesai's technology as their primary LiDAR solution.  Compl. ¶¶ 19–21.

Hesai's market position can be attributed to its strengths in innovation and safety.  Its LiDAR products do not capture personally identifiable information such as human facial features, biometric data, or license plates, as shown below in the sample of an actual image taken with Hesai's LiDAR:



Hesai's LiDAR products cannot store even a second of any image they see, and are also incapable of wirelessly transmitting any images they generate. Rather, the image data is transmitted to the vehicle's onboard computer via a one-way secure cable, ensuring the data cannot be accessed (by Hesai or any third party) outside of the vehicle in which it operates. These privacy safeguards and cybersecurity protections have been certified by international, independent, expert testing organizations. Compl. ¶¶ 22–25.

**3.** Hesai is also dedicated to preventing the improper use or resale of its products, including for any military or warfighting purpose. Hesai does not sell its LiDAR equipment to any military, has never engaged in scientific research cooperation with any military, and has never provided its equipment for military use. It has in place a carefully designed customer-screening process, established with the assistance of U.S. counsel, to help ensure that the company does not sell its products to any entity listed on the Military End User List, the Entity List, or the Specially Designated Nationals and Blocked Persons List, or to any entity subject to U.S., E.U., U.K., or U.N. blocking measures. And Hesai's standard sales agreement with new customers prohibits the re-sale of Hesai's LiDAR equipment to the military. Compl. ¶¶ 29–30, 70.

Not only does Hesai not supply its products for military use, it could not do so. That is because all of the company's products are strictly designed and manufactured at civilian

specifications for commercial and passenger vehicles, which are significantly below battlefield standards for any country's military. Hesai's products simply do not provide the durability and performance that would be needed for military use—*i.e.*, they have a lower internal component temperature range, they have a lower vibration/shock endurance, they are not radiation proof, etc. That is why the U.S. Department of Commerce has classified all of Hesai's LiDAR products as EAR99, meaning that they fall into the same category as most commercial and consumer goods, and do not require a license for exports in most situations. Compl. ¶¶ 27–28.

### C. January 2024 Listing

**1.** On January 31, 2024, the Department released an updated Section 1260H List via press release.[4] The Department designated Hesai Technology Co., Ltd.—as well as all "[s]ubsidiaries"—as a "Chinese military compan[y]" for the first time. The Department provided Hesai no warning, notice, or opportunity to be heard regarding its inclusion on the Section 1260H List. And the Department offered no explanation, publicly or otherwise, that would allow Hesai, its investors, its customers, or anyone else to understand the basis for the Department's decision. Compl. ¶¶ 46–49.

The listing inflicted immediate, severe, and ongoing harms on Hesai. Most notably, the company suffered serious reputational injury from the stigma of being placed on the Section 1260H List—including sustained and damaging press attention falsely describing Hesai as an entity that is "helping" and "aiding" the Chinese military. Several members of Congress have capitalized on the Department's placement of Hesai on the 1260H List to urge NASDAQ to "consider delisting

---

[4] Press Release, U.S. Department of Defense, *DOD Releases List of People's Republic of China (PRC) Military Companies in Accordance With Section 1260H of the National Defense Authorization Act for Fiscal Year 2021* (Jan. 31, 2024), https://www.defense.gov/News/Releases/Release/Article/3661985/dod-releases-list-of-peoples-republic-of-china-prc-military-companies-in-accord/.

Hesai (HSAI) from the stock exchange."  Letter from Rep. Ashley Hinson, U.S. Rep., et al., to Adena Friedman, Chair & CEO, Nasdaq World Headquarters 1–2 (Apr. 11, 2024) (adding that allowing Hesai's shares to continue to trade on the exchange "contradicts the federal government's effort[s]" to shame the company).  Compl. ¶¶ 85–87.

The Hesai Group's share price fell over 30% in a single day following the listing—and remains well below its historical value, while the values of other NASDAQ-listed technology companies have soared.  The company's continued placement on the List has jeopardized ongoing contract negotiations and disrupted existing and potential customer relationships at a particularly sensitive time for the industry, when automobile companies are making crucial decisions about the technology to be used in future models.  Hesai stands to suffer substantial loss of business if it remains designated as a Chinese military company, due to clients' and prospective clients' professed concerns about the Department's designation.  Compl. ¶¶ 86–89.

The listing also harms the public interest.  Hesai is the LiDAR industry leader.  Because of the established and certified safety of its technology, its products are superior to, and more reliable than, its competitors' unproven products.  Hesai's continued presence on a list of alleged Chinese military companies thus risks leaving the U.S. public with only unsafe, unreliable, and unsuitable alternatives at a time when LiDAR technology is becoming increasingly critical to the future of the American automotive industry.  Hesai's placement on the List also harms free and fair competition in the LiDAR market.  Hesai is one of few companies that can ship LiDAR products in volume to automotive original-equipment manufacturers in the Advanced Driver Assistance Systems market.  Hampering a major supplier and innovator in the LiDAR space will increase costs, reduce choices crucial to consumer safety, and impede technological advancement.  U.S. consumers will ultimately bear those consequences in the form of higher prices and inferior

products.  In short, American competition will be harmed—and American roads will be more dangerous—as long as Hesai remains on the List.  Compl. ¶¶ 93–94.

### D.    Procedural History

In a good-faith effort to cooperate with the Department and avoid litigation, counsel for Hesai repeatedly asked Defendants for the legal and factual basis on which the Department relied to designate Hesai as a "Chinese military company" so that Hesai could correct any misunderstanding.  On March 8, 2024, Hesai's counsel provided detailed letters and a sworn declaration from Hesai's CEO refuting that the company satisfies any of the Section 1260H(d)(1)(B)(i) criteria, and asking the Department to remove Hesai from the List.  Over several months, however, Defendants provided no substantive response.[5]  Compl. ¶¶ 50–52.

On April 2, 2024, the Department published in the Federal Register a "Notice of Chinese military companies," stating without elaboration that "[t]he Secretary of Defense has determined" that the entities listed in the Department's January 31 press release, including Hesai, "qualify as 'Chinese military companies' in accordance with Section 1260H[.]"  89 Fed. Reg. 22,698, 22,698 (Apr. 2, 2024).  In light of its serious, ongoing harms, Hesai determined that it had no choice but to pursue legal relief.  As a courtesy, Hesai sent Defendants a draft complaint and reiterated the company's preference to resolve the matter administratively.  Defendants did not respond.  Compl. ¶¶ 49, 51.

---

[5] Instead, Defendants told Hesai it "must submit a Freedom of Information Act request through FOIA.gov" to "request[] the administrative record underlying Hesai's designation as a Chinese military company."  Tysse Decl. in Supp. of Mot. to Complete R. ("Tysse Decl.") Ex. C. Despite disagreeing that a FOIA request was necessary, Hesai promptly complied by filing a request for the Department's decision memorandum.  In response, the Department informed Hesai that its request for that single document was "placed in [the Department's] complex processing queue" behind "approximately 3,178 open requests," with an estimated response time of August 2024.  *Id.*, Ex. D.

On May 13, 2024, Hesai filed a complaint for declaratory and injunctive relief against the Department, Secretary Lloyd J. Austin III, and Assistant Secretary of Defense for Industrial Base Policy Laura D. Taylor-Kale. Despite not knowing the basis of their listing, Hesai alleged that Defendants exceeded their authority under Section 1260H, acted arbitrarily and capriciously under the APA, and violated the U.S. Constitution in both listing and in failing to remove Hesai from the 1260H List.

Several weeks after Hesai filed suit, the Department finally produced the decision memorandum, which revealed, for the first time, the narrow basis for Hesai's inclusion on the Section 1260H List. Despite acknowledging that the publicly traded company's "LiDAR products enable a broad spectrum of applications across passenger or commercial vehicles," AR12, the Department nevertheless determined that "Hesai is a military-civil fusion contributor to the Chinese defense industrial base" solely due to its purported "affiliation with the Chinese Ministry of Industry and Information Technology (MIIT)." *Id.* The Department alleged just three factual bases for that conclusion. First, "[i]n its prospectus for its Initial Public Offering on the Shanghai Stock Exchange, Hesai Technology Co., Ltd., a wholly owned subsidiary of Hesai, identified \*\*\* programs and projects on which it is working that are administered under the Chinese MIIT." AR13 (footnote omitted). Second, Hesai "acts as part of \*\*\* an industry partnership intended to promote standardization in China's automotive industry" that "[t]he Chinese MIIT established and oversees[.]" AR13. Third, Hesai received an "administrative license from the Chinese MIIT" and was included among a "[b]atch" of companies the MIIT named as "Little Giants" that are purportedly "guaranteed" subsidies, tax cuts, and grants. AR14–15.

In light of its ongoing harms, Hesai asked the government to agree to an expedited summary judgment briefing schedule, and the parties jointly proposed a schedule to this Court.

Dkt. 12.  Consistent with that schedule, *see* Dkt. 13, Defendants produced the administrative record on June 21, 2024, *see* Dkt. 15 (certified list), though it omitted the information Hesai submitted on March 8, 2024, *see* Dkt. 16 (Mot. to Complete R.).  Oral argument is set for September 24, 2024. Dkt. 13.

## STANDARD OF REVIEW

On summary judgment in an APA case, "the reviewing court generally *** reviews the [agency's] decision as an appellate court addressing issues of law."  *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (alterations in original) (citation omitted).  A court will set aside an agency decision if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, contrary to statute, or otherwise not in accordance with law.  5 U.S.C. § 706(2).

An agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  An agency decision "would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id*.  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" taking into account "whatever in the record fairly detracts from its weight."  *AT&T Corp. v. FCC*, 86 F.3d 242, 247 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

## ARGUMENT

## I.    THE DEPARTMENT'S DESIGNATION OF HESAI WAS UNLAWFUL BECAUSE IT FAILED TO MAKE THE REQUISITE FINDING THAT HESAI CONTRIBUTES "TO THE CHINESE DEFENSE INDUSTRIAL BASE"

As a threshold matter, the Department's decision should be vacated because the Department failed to make one of the two required determinations before designating Hesai as a "Chinese military company": that Hesai contributes "to the Chinese defense industrial base." Sec. 1260H(d)(1)(B)(i)(II).

### A.    The Department Was Statutorily Bound To Find That Hesai Contributes To The "Chinese Defense Industrial Base"

Under Section 1260H, the Department may designate a company as a "Chinese military company" in only two ways. The first way—not directly applicable here—is that the Department must find that the company is owned or controlled by the Chinese military itself. *See* Sec. 1260H(d)(1)(B)(i)(I) (entity must be "owned," "controlled," or acting as an "agent" of "the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party").

The other way—and the ground the Department exclusively relied on—is to make a two-part finding: that the company is a "[i] military-civil fusion contributor [ii] to the Chinese defense industrial base[.]" Sec. 1260H(d)(1)(B)(i)(II). Congress specifically defined the first requirement. Sec. 1260H(d)(2) ("The term 'military-civil fusion contributor' includes *** [.]"). But neither Congress nor the Department defined what it means for a company to contribute "to the Chinese defense industrial base." Under ordinary principles of statutory construction, that term must mean something different than "military-civil fusion contributor." *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining "duty" to "give effect, if possible, to every clause and word of a statute" so no term is rendered "superfluous" (citation omitted)).

16

Determining that a company contributes to the "Chinese defense industrial base" is not a mere check-the-box exercise; instead, it supplies the critical connection with the Chinese military that Section 1260H requires. As commentators have explained, Section 1260H has a "particular[] concern[] about the Chinese military and its operations in the United States, rather than the Chinese state broadly." Brunner & Weinstein, *supra* note 2; *see id.* (given Section 1260H's "focus solely on the Chinese military," some "companies that qualify as CCMCs [under Section 1237] due to their connections to the Chinese state, intelligence services or police would not qualify as [Chinese military companies] under Section 1260H"). That is why Section 1260H's two distinct definitions of a "Chinese military company" *both* require that the entity advances the *Chinese military specifically*. *See* Sec. 1260H(d)(1)(B)(i)(I) (requiring ownership/control by Chinese military entities); Sec. 1260H(d)(1)(B)(i)(II) (requiring contribution to the "Chinese defense industrial base").

That the Department must find that a company supports the Chinese military specifically is reinforced by the common understanding of the (undefined) term "defense industrial base." Domestically, that term means the "organizations and facilities that provide the DOD with materials, products, and services." Luke A. Nicastro, Cong. Rsch. Serv., Defense Primer: U.S. Defense Industrial Base (2023) ("[d]efining the Defense Industrial base").[6] And the Department itself has elsewhere defined the term in reference to material support for "military weapon systems, subsystems, components, or parts to meet military requirements." U.S. Dep't of Def., DOD Dictionary of Military and Associated Terms 64 (Mar. 2017) (emphasis added).[7] Congress thus

---

[6] https://crsreports.congress.gov/product/pdf/IF/IF10548.

[7] https://www.tradoc.army.mil/wp-content/uploads/2020/10/AD1029823-DOD-Dictionary-of-Military-and-Associated-Terms-2017.pdf.

borrowed a descriptor—"defense industrial base"—traditionally applied to companies that supply "military weapon systems" or "parts to meet military requirements."

B.    **The Department's Failure To Make A Critical Factual Finding Should Result In Vacatur**

The Department purported to find that Hesai satisfied the first requirement of Section 1260H(d)(1)(B)(i)(II)—*i.e.*, that Hesai was a "civil-military fusion contributor."  But the Department failed to make the critical second finding:  that Hesai contributes "to the Chinese defense industrial base."  The closest it came was to parrot the statutory language in determining that "Hesai is a military-civil fusion contributor to the Chinese defense industrial base *** due to its affiliation with the Chinese MIIT, including research partnerships and projects."  AR13.  But that language just mirrors one of the eight definitions of a Chinese "military-civil fusion contributor," *i.e.*, an entity "affiliated with the [MIIT], including research partnerships and projects."  Sec. 1260H(d)(2)(B).  That finding thus cannot satisfy the *independent* requirement that Hesai contribute "to the Chinese defense industrial base."  *See, e.g.*, *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995) ("When an agency merely parrots the language of a statute without providing an account of how it reached its results, it has not adequately explained the basis for its decision.").

Under the Department's apparent view, *all* Chinese "military-civil fusion contributor[s]"— even those that plainly do not support "military weapon systems" or supply "parts to meet military requirements"—necessarily contribute to the "Chinese defense industrial base."  That view cannot be squared with basic principles of statutory interpretation, under which this Court has the "duty" to "give effect" to all of Congress's terms, whether defined ("military-civil fusion contributor") or undefined ("Chinese defense industrial base").  *Duncan*, 533 U.S. at 174 (citation omitted).  It also contradicts Congress's choice to narrow and effectively replace the now-dormant Section 1237 list

with the similar but "significantly narrower" Section 1260H criteria.  Brunner & Weinstein, *supra* note 2; *cf. Bittner v. United States*, 598 U.S. 85, 94 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning[.]").

Importantly, the Department cannot bootstrap a finding regarding the "defense industrial base" through Hesai's purported connection to the MIIT alone.  Although the Department has elsewhere argued that the MIIT "purportedly 'helps manage military-civil fusion for the state,'" *Xiaomi Corp.*, 2021 WL 950144, at *3, the only description in the administrative record (from Hesai's prospectus) shows that the MIIT is not a military department, but rather a government ministry overseeing the Chinese manufacturing, telecommunications, and information technology industries.  *See* AR491 (certified translation at Paterno Decl. Ex. A) (noting that MIIT's "main responsibilities of formulating and implementing industrial plans, industrial policies and standards").  Its roles are akin to the regulatory, policy, and standard-setting functions performed domestically by the Department of Commerce (including the National Institute of Standards and Technology), the Federal Communications Commission, and the Small Business Administration.  *See, e.g.*, Ministry of Industry and Information Technology (MIIT) (工业和信息化部), Westlaw Practical Law UK Glossary 1-552-9335[8] (MIIT is "[a] central government ministry sitting under the State Council to oversee areas including the internet, telecommunications, broadcasting, postal delivery, computer and other electronic hardware and software management."); Bloomberg, People's Republic of China Ministry of Industry & Information Technology [9] (MIIT's

---

[8]  https://next.westlaw.com/Document/Id45b3a3047f311e498db8b09b4f043e0/View/FullText.html?originationContext=document&transitionType=DocumentItem&ppcid=a7b4d49bce054661a79f906bebb9a910&contextData=(sc.Default).

[9]  https://www.bloomberg.com/profile/company/MIIZ:CH#:~:text=Ministry%20of%20Industry%20and%20Information,of%20those%20plans%20and%20policies.

"responsibilities include managing of proposed industrial development strategies," "develop[ing] plans and industrial policies of industrial sectors and organiz[ing] the implementation of those plans and policies," and "creat[ing] regulations and industry standards"); *see also, e.g.*, *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 591 (S.D.N.Y. 2022) (MIIT regulation of "e-cigarettes and other new tobacco products"); *Haping v. 17 Educ. & Tech. Grp. Inc.*, No. 22-cv-09843, 2023 WL 8716895, at \*6 (S.D.N.Y. July 20, 2023) (MIIT regulation of "After-school Tutoring and Educational Apps"); *Autodesk, Inc. v. ZWCAD Software Co.*, No. 14-cv-1409, 2015 WL 1928184, at \*5 (N.D. Cal. Mar. 27, 2015) (MIIT issuance of "nonbinding data privacy guidelines").  In other words, an alleged connection with the MIIT, by itself, implies nothing about a military contribution.

Regardless, any *post hoc* finding that Hesai contributes to the "Chinese defense industrial base" would conflict with the administrative record.  The Department did not find that Hesai supplies its technology to the "People's Liberation Army or any other organization subordinate to the Central Military Commission," Sec. 1260H(d)(1)(B)(i)(I), or for a military end-use.  On the contrary, the decision memorandum recognizes that "Hesai's LiDAR products enable a broad spectrum of applications across *passenger or commercial* vehicles."  AR12 (emphasis added).

The absence of any sufficient justification in the Department's decision memorandum is enough to set it aside as unlawful.  But materials submitted to the Department—which should form part of the administrative record, *see* Dkt. 16—confirm that Hesai does not contribute to the "Chinese defense industrial base."  For example, the company has in place a carefully designed customer-screening process, established with the assistance of U.S. counsel, to help ensure it does not sell its products to any entity listed on the Military End User List, the Entity List, or the Specially Designated Nationals and Blocked Persons List, or to any entity subject to U.S., E.U.,

U.K., or U.N. blocking measures.  Tysse Decl. Ex. A, at 5, 9, 13; *id.*, Ex. B ¶ 17.  Hesai does not sell its equipment to the Chinese military.  *Id.*, Ex. A, at 5; *id.*, Ex. B ¶ 16.  And Hesai's standard sales agreement with new customers prohibits the re-sale of Hesai's LiDAR equipment to the military.  *Id.*, Ex. A, at 5, 9, 13.

Hesai also develops its LiDAR only at civilian specifications for commercial and passenger vehicles, which do not provide the durability and performance needed for use on a battlefield environment for any country's military.  Tysse Decl. Ex. A, at 5; *see id.* (noting that the Commerce Department has classified all of Hesai's LiDAR products in the same category as most commercial and consumer goods, which do not require a license for exports in most situations); *id.* (similar for Chinese government).

In sum, because the Department failed to make a factual finding that Hesai contributes to the Chinese defense industrial base, Hesai's designation as a Chinese military company should be set aside.  *Morall v. DEA*, 412 F.3d 165, 176 (D.C. Cir. 2005).  Moreover, "[b]y failing to analyze" whether Hesai contributes to the Chinese defense industrial base as a statutory condition "in its own right," and instead "treat[ing] it together with" the separate finding that Hesai is a military-civil fusion contributor, "the agency has failed to offer the rational connection between facts and judgment required to pass muster under the arbitrary and capricious standard."  *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 56–57.  And the Department independently erred by "articulat[ing] no standard whatsoever" for discerning what constitutes the "defense industrial base," or a "contributor" to it.  *Tripoli Rocketry Ass'n Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 84 (D.C. Cir. 2006).  Any one of these defects, much less all of them combined, compels vacatur of the Department's decision to place Hesai on the 1260H List.

II.   **THE DEPARTMENT'S DETERMINATION THAT HESAI IS A "MILITARY-CIVIL FUSION CONTRIBUTOR" IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW.**

The Department purported to find that Hesai is a "military-civil fusion contributor"—and thus a "Chinese military company"—based solely on its determination that Hesai is "affiliated with" the MIIT.  AR13.  But that determination should also be set aside:  First, the Department exceeded its statutory authority in extending the term "affiliated" beyond its settled meaning; and second, even if Congress had conferred broad discretion to redefine that term, the Department would have abused it by failing to articulate any comprehensible standard.

A.   **The Department Exceeded Its Statutory Authority In Concluding That Hesai Is "Affiliated With" The MIIT.**

The Department's sole basis for listing Hesai was that the company was supposedly "affiliated with" the MIIT.  But the Department exceeded its authority by failing to find that the MIIT at least effectively controlled Hesai.

*1.   The term "affiliated with" requires at least effective control.*

Although Section 1260H does not provide a definition of "affiliated with," the term has an established meaning both generally and in the specific context of defense-related laws and regulations—including with respect to designations of companies tied to the Chinese government.  Specifically, as this Court has recognized in the parallel Section 1237 setting, the "plain and common meaning" of "affiliated with" is a relationship where one entity is "effectively controlled by another or associated with others under common ownership or control."  *Xiaomi Corp.*, 2021 WL 950144, at *6 (citation omitted); *Luokung Tech. Corp.*, 538 F. Supp. 3d at 184.

In fact, that definition mirrors the one Congress used in the very statute of which Section 1260H is a part.  In a separate section of the 2021 NDAA, Congress expressly defined an "affiliate" as an "entity that *controls*, is *controlled by*, or is under common *control* with another entity."  Pub.

L. No. 116-283, § 6212(a), 134 Stat. 3388 (emphasis added) (defining "affiliate" for purposes of financial-crimes reporting).  The Court should thus presume that Congress meant for the use of the same term in Section 1260H of the NDAA to embrace the same definition.  *See United States v. Davis*, 588 U.S. 445, 456–457 (2019) (courts presume that Congress uses a statutory term "consistently" within a statute and the onus is on party claiming otherwise to "rebut[] that presumption").

That definition also comports with ordinary usage in contexts (such as this one) where Congress is referring to corporate entities.  *See* Sec. 1260H(d)(1) (noting "[t]he term 'Chinese military company' *** does not include natural persons" but rather only "entit[ies]").  It is the standard dictionary definition.  *See, e.g., Affiliate*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("affiliate" indicates some "means of control," *i.e.*, being "controlled by, or [being] under common control with" another); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 35 (2002) (similar). It is the meaning that the "overwhelming weight" of case law "across the federal courts" has recognized in the corporate context, *Xiaomi Corp.*, 2021 WL 950144, at *6, which recognizes that an "affiliation" typically signifies "a relationship involving ownership or control," *United States v. W. Elec. Co.*, 12 F.3d 225, 230 (D.C. Cir. 1993); *see, e.g., Emory Univ., Inc. v. Neurocare, Inc.*, 985 F.3d 1337, 1343, 1346 (11th Cir. 2021) (applying the "well-established common meaning" of the term as requiring "shareholdings or other means of control" (citation omitted)); *Mey v. DIRECTV, LLC*, 971 F.3d 284, 289 (4th Cir. 2020) ("An affiliate is commonly understood as a company effectively controlled by another or associated with others under common ownership or control." (internal quotation marks and citation omitted)); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (similarly emphasizing need for a "means of control" (quoting *Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.*, 892 A.2d 1073, 1077 (Del.

2006))).  And it is the meaning that Congress has expressly embraced across a variety of statutes. *E.g.*, 12 U.S.C. § 5481 (Dodd-Frank Consumer Protection Act); 21 U.S.C. § 379g (Federal Food, Drug, and Cosmetic Act); 16 U.S.C. § 618 (Federal Timber Contract Payment Modification Act); 47 U.S.C § 153 (Telecommunications Act); 11 U.S.C § 101(2)(A) (Bankruptcy Code).

This common meaning even prevails in the Department's own regulations.  For example, in its National Industrial Security Program Operating Manual, the Department expressly defines an "affiliate" as an "entity that directly or indirectly controls, is directly or indirectly controlled by, or is under common control with, the ultimate parent entity."  32 C.F.R. § 117.3; *see also, e.g.*, *id.* § 232.3(a) (defining "affiliate" as "any person that controls, is controlled by, or is under common control with another person").

Indeed, reading the term "affiliated" here to stretch beyond a relationship of effective control would mean that a broad set of relationships with the *MIIT* would trigger a Section 1260H designation, while those same relationships with the *People's Liberation Army* would not. *Compare* Sec. 1260H(d)(1)(B)(i)(II), (2)(B), *with* Sec. 1260H(d)(1)(B)(i)(I).  That illogical outcome would be difficult to square with the MIIT's regulatory scope, which covers many issues and policies with no ostensible tie to the Chinese military.  *E.g.*, AR491 (certified translation at Paterno Decl., Ex. A) (noting the MIIT's "main responsibilities of formulating and implementing industrial plans, industrial policies and standards; monitoring the daily operation of the industrial sector; promoting the development and independent innovation of major technical equipment; managing the communication industry; guiding and promoting information construction; coordinating and maintaining national information security, etc.").

In sum, by limiting the Department to identifying entities that are affiliated with the MIIT, subsection (d)(2)(B) extends the Department's authority only to entities that the MIIT at least effectively controls.

> 2.    *The Department's sweeping application of "affiliated with" extends far beyond "effective control."*

The Department's conclusion that Hesai is "affiliated" with the MIIT is unsupported by any finding of common or effective control—and therefore both exceeds the Department's authority under Section 1260H and is otherwise contrary to law.

The Department found that Hesai is "affiliated with" the MIIT based on a handful of purported contacts, such as "work[] on programs or projects" that are "administered under the Chinese MIIT," participation in an "industry partnership intended to promote standardization in [the] industry" that is "established and oversee[n]" by the MIIT or "under [its] jurisdiction," receipt of an "administrative license" from the MIIT, and inclusion in a "[b]atch" of companies announced by the MIIT that purportedly are "guaranteed subsidies, tax cuts and other grants." AR13–15. But the Department does not even try to explain how any of those circumstances indicates that the MIIT at least effectively controls Hesai or its operations. *Cf. Garnett*, 632 F. Supp. 3d at 583 (involving "state-owned manufacturer *** operated by China's Ministry of Industry and Information Technology ('MIIT')"). For good reason: Like the other companies whose listings this Court enjoined, Hesai "is a publicly traded company that produces commercial products for civilian use, is controlled by an independent board and its controlling [private] shareholder[s]," and is not "effectively controlled by" the Chinese government, let alone the MIIT. *Luokung Tech. Corp.*, 538 F. Supp. 3d at 191; *see, e.g.*, Tysse Decl. Ex. A, at 2; *id.*, Ex. B ¶¶ 8, 9, 14.

The only fair inference from the Department's list of purported connections between Hesai and the MIIT is that the Department believes that *any relationship whatsoever* with the MIIT—

including merely being subject to its broad regulatory jurisdiction like countless global companies operating in China—satisfies section 1260H(d)(2)(B).  But that loose conception of the term "affiliated" would "imbue [the statute's] use of 'affiliate' with 'a meaning so broad that it is inconsistent with [the statute's] accompanying words, thus giving unintended breadth to the Acts of Congress.'"  *Xiaomi Corp.*, 2021 WL 950144, at *7 (second alteration in original) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)); *Luokung Tech. Corp.*, 538 F. Supp. 3d at 187 (rejecting definition that would "potentially encompass all Chinese government contractors, even those that *** produce products with no direct military applications").  "There is no indication that Congress intended to provide the Department of Defense with this sort of unfettered discretion." *Luokung Tech. Corp.*, 538 F. Supp. 3d at 187.

Were there any doubt that such an open-ended construction of "affiliate" oversteps the Department's statutory authority, that conclusion is compelled by the constitutional-avoidance canon.  *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1302-1303 (D.C. Cir. 2023) (canon requires rejection of "expansive reading" of statutory terms that "raises grave constitutional concerns" in favor of a "'fairly possible' reading that assures the constitutionality of the text" (quoting *United States v. Hansen*, 599 U.S. 762, 781 (2023))).  Reading "affiliated with" to cover virtually all Chinese companies would violate the "basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Applying "affiliated" to any range of connections to the MIIT, however attenuated, would also offend the due-process "guarantee[] that ordinary people have 'fair notice' of the conduct a statute proscribes" and be able to conform their conduct accordingly.  *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (citation omitted).  And such "lack of precision" would raise non-delegation concerns, by conferring on the agency "an impermissibly wide discretionary range

26

in which to determine" which entities the statutory criterion covers in an *ad hoc* (or, worse yet, discriminatory) manner. *Community for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1395 (D.C. Cir. 1990); *see FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("[P]recision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." (citing *Grayned*, 408 U.S. at 108–09)). Indeed, as explained below, that threat is present here, where Hesai is singled out as the only LiDAR company on the 1260H List, even though there are countless other entities that fall within the regulatory jurisdiction of the MIIT.

Under the canon, the Court should "avoid deciding" such difficult constitutional issues. *Taucher v. Brown–Hruska*, 396 F.3d 1168, 1176 (D.C. Cir. 2005) (emphasis omitted). Instead, because the "effective control" definition is "fairly possible"—indeed, it is by far the best reading—that construction forecloses the Department's boundless interpretation, which raises at least a "serious doubt" about Section 1260H's constitutionality. *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (citation omitted). The Department's decision should be vacated. *See Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 950 (D.C. Cir. 2024) ("Vacatur is the normal remedy for unsustainable agency action[.]" (citation omitted)).

**B.     The Department Failed To Articulate A Comprehensible Standard For Which MIIT Connections Qualify Under Its Broad Conception Of "Affiliated"**

Even if Congress had authorized the Department to define "affiliated" however it pleased, the Department's failure to "'articulate a comprehensible standard' for assessing the applicability of [that] statutory category" was itself "arbitrary and capricious." *ACA Int'l v. FCC*, 885 F.3d 687, 699 (D.C. Cir. 2018) (quoting *U.S. Postal Serv. v. Postal Regul. Comm'n*, 785 F.3d 740, 753–54 (D.C. Cir. 2015)).

The Department concluded that "Hesai is Affiliated with the MIIT via Partnerships and Projects[.]" AR13. Yet the Department provides no coherent meaning as to what comprises a qualifying "partnership or project" (also undefined) with the MIIT. As noted, *supra* pp. 19–20, the MIIT is a sprawling regulatory agency that generally oversees commercial activity touching most corporations operating in China—including countless American companies with a Chinese footprint. *See* AR491. Nothing in the Department's scattershot approach to citing Hesai's purported connections with the MIIT—ranging from participation in industry-wide "international conferences" and commercial-standard-setting efforts to the receipt of an "administrative license" and recognition among a "Batch" of thousands of start-up companies, AR13–15—identifies commonalities that render those circumstances (and not others) material to the Section 1260H(d)(2)(B) conclusion. Nothing in the decision memorandum explains the type and degree of involvement in the relevant circumstances that are necessary to trigger an affiliation. And nothing indicates the factors that are dispositive (or the relative weight of any such factors) in evaluating why different entities with similar involvement are deemed to have an affiliation with the MIIT (or not).

The Department's failure to articulate a comprehensible standard for the key statutory language threatens the sort of "impermissible 'ad hocery' on the part of [agencies] which is the core concern underlying the prohibition of arbitrary or capricious agency action." *Pac. Nw. Newspaper Guild, Loc. 82 v. NLRB*, 877 F.2d 998, 1003 (D.C. Cir. 1989); *see, e.g.*, *Trafalgar Cap. Assocs., Inc. v. Cuomo*, 159 F.3d 21, 34 n.11 (1st Cir. 1998) ("It is precisely this sort of ad-hoc standardless determination that is likely to be arbitrary and capricious under the Administrative Procedure Act." (citing *Morton v. Ruiz*, 415 U.S. 199, 232 (1974))). Indeed, the sources underlying the Department's purported evidence make clear that many other global companies participated in

the same purported "partnerships and projects"—including the Chinese subsidiaries of Volkswagen (the well-known German automobile manufacturer), Rheinland Technology (a German provider of testing, inspection and certification service), and Keysight Technologies (a U.S. manufacturer of electronic measurement equipment and software).  *See, e.g.*, AR788–89 (listing those global companies as "main drafting units" for the industry standard identified by the Department in AR14).  The Department offers no definition of "affiliated" whatsoever, let alone one that might encompass only Hesai's alleged affiliation and not that of every one of those companies (and countless more).  *See ACA Int'l*, 885 F.3d at 700 (Administrative action fails "the requirement of reasoned decisionmaking" if the "agency cannot satisfactorily explain why a challenged standard embraces one potential application but leaves out another, seemingly similar one." (citing *U.S. Postal Serv.*, 785 F.3d at 753–54)).

"Without a clear understanding" of which entities the agency will deem "affiliated" with the MIIT, regulated parties like Hesai "will face significant difficulty" in modifying their conduct to avoid placement on, and to obtain removal from, the Section 1260H List.  *Hikvision USA, Inc.*, 97 F.4th at 950.  The Department's failure also makes it impossible for this Court to evaluate whether the agency "permissibly exercised" its statutory authority and "made a choice that is supported by at least substantial evidence."  *Homer v. Roche*, 226 F. Supp. 2d 222, 226 (D.D.C. 2002) (failure to articulate standard "leaves the Court to guess whether" agency's decision was based on a "reason (whether permissible or impermissible) that cannot be discerned from the record"); *see Tripoli*, 437 F.3d at 77 ("Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998))); *see also Mori v. Dep't of Navy*, 731 F. Supp. 2d 43, 49 (D.D.C. 2010) (failure to articulate appropriate standard

of proof leaves a court "unable to determine whether the [agency's] chosen standard was appropriate or whether the [agency] properly applied that standard").

Because the Department "fails to provide comprehensible guidance about what falls within the bounds of" an affiliation with the MIIT—the sole basis the Department provided—the Court should vacate Hesai's designation. *See Hikvision USA, Inc.*, 97 F.4th at 950.

## III.   THE DEPARTMENT'S DESIGNATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Beyond the Department's legal errors, its designation must also be set aside because of the lack of record support for its sole factual conclusion:  that "Hesai is Affiliated with the MIIT via Partnerships and Projects[.]"  AR13; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 188 ("When an agency action is 'bound up with a record-based factual conclusion,' the reviewing court is tasked with determining if the agency's conclusion is supported by 'substantial evidence.'" (quoting *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999))); *Center for Auto Safety v. Federal Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992) ("An agency action is arbitrary and capricious if it rests upon a factual premise that is unsupported by substantial evidence." (citation omitted)).

The Department's evidence falls into three categories:  (1) statements in Hesai's Initial Prospectus purportedly showing that it is "working" on "programs and projects *** administered under the Chinese MIIT"; (2) alleged indications of Hesai's involvement with the "National Automotive Standardization Technical Committee, an industry partnership intended to promote standardization in China's automotive industry"; and (3) Hesai's receipt of an "administrative license" and inclusion in the "Little Giants" program.  AR13–15.  Because each category of findings rests on "paltry evidence," and because the Department fails to draw a "rational connection between the facts found and the choice made," the designation is arbitrary and capricious. *Xiaomi Corp.*, 2021 WL 950144, at *4, *7 (citation omitted).

### A.    The Department Misconstrues Hesai's Own Public-Facing Prospectus

In support of its finding that Hesai is "Affiliated with the MIIT via Partnerships and Projects," the Department relies primarily on Hesai's own "prospectus for its Initial Public Offering on the Shanghai Stock Exchange[.]" AR13. According to the Department, Hesai "identified *** four programs and projects *on which it is working* that are administered under the Chinese MIIT." *Id.* (emphasis added).

The Department's factual findings are wrong—and in any event, they are detached from what the referenced document actually describes. In reality, Hesai did not say it was "working" on programs or projects with the MIIT, but rather merely described for prospective investors the regulatory environment in which the company operates. As the certified translation of Hesai's prospectus establishes, the four "programs and projects" the Department identifies are cited in the section of the prospectus titled "Industry competent departments, industry supervision systems and major industry laws, regulations[,] and policies of industry to which [Hesai] belongs and its impacts on operation and development of issuer [Hesai]." AR491 (certified translation at Paterno Decl. Ex. A). In that section, Hesai explains that "the competent government department of the manufacturing industry of computers, communications[,] and other electronic equipment is the Ministry of Industry and Information Technology, with the main responsibilities of formulating and implementing industrial plans, industrial policies and standards[.]" *Id.* Hesai then identifies— among other laws and regulations issued by a variety of different government agencies—the four MIIT policies the Department's decision memorandum cited:

- The Internet of Vehicles (Intelligence Connected Automobiles) Industry Development Action Plan;

- The Medium- and Long-Term Development Plan for the Automobile Industry;

- The Three-Year Action Guide for the Smart Sensor Industry; and

- The Action Plan to Accelerate the Development of Sensors and Intelligent Instruments.

AR13; *see* AR491–493 (certified translation at Paterno Decl. Ex. A).

Viewed in context, the cited disclosures and descriptions (spanning a handful of pages in the middle of the 426-page prospectus) simply inform Hesai's potential investors of industry policies and regulations that may affect their investment in the company. Notably, such disclosures were mandated by the securities regulations that were in force at the time Hesai issued its prospectus—which is presumably why materially similar language about identical MIIT policies can be found in the prospectuses of other (non-Section 1260H) companies with a global footprint in the manufacturing industry.[10] Beyond such generic disclosures, nothing in the prospectus (or elsewhere in the administrative record) indicates that Hesai was "working" on, or otherwise involved with, these MIIT policies. Nor is there record evidence that Hesai had any involvement

---

[10] *See, e.g.*, Autel Intelligent Tech. Corp. Ltd., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 89–92, https://static.sse.com.cn/stock/information/c/201906/5de4aaa1ad2240dfbad88168a185f5c5.pdf (last visited July 3, 2024) (discussing MIIT regulatory authority and disclosing similar industry policies, including "Action Plan to Accelerate the Development of the Sensor and Intelligent Instrumentation Industry"); Beijing Jingwei Hirain Techs. Co., Inc., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 177–79, https://static.sse.com.cn/stock/information/c/202106/3eaf3a5774c74e0f9a2d29881058702f.pdf (last visited July 3, 2024) (discussing Internet of Vehicles and Medium- and Long-Term Development Plan for the Automobile Industry); Orbbec Inc., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 177, https://static.sse.com.cn/stock/information/c/202106/92c6353841ac4cc1beb731ecb1b2b1f9.pdf (last visited July 3, 2024) (discussing Internet of Vehicles and Three-Year Action Guide for the Smart Sensor Industry); Cubic Sensor & Instrument Co., Ltd., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 120, https://www.sse.com.cn/disclosure/listedinfo/bulletin/star/c/688665_20210204_1.pdf (last visited July 3, 2024) (discussing Three-Year Action Guide for the Smart Sensor Industry); UNI-TREND TECH. (CHINA) CO., LTD., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 124–125, https://static.sse.com.cn/disclosure/listedinfo/bulletin/star/c/688628_20210126_2.pdf (last visited July 3, 2024) (discussing Action Plan to Accelerate the Development of Sensors and Intelligent Instruments).

or contact with the MIIT beyond the fact that the company is operating in the regulated "[i]ntelligent sensors" industry.  AR491.

The Department's conclusion that Hesai is "affiliated" or in "partnership" with the MIIT because it is subject to its regulatory jurisdiction is the equivalent of saying that every U.S.-based farmer is "affiliated with" the U.S. Department of Agriculture, or that every publicly traded company is in "partnership" with the U.S. Securities and Exchange Commission.  Given the MIIT's vast regulatory jurisdiction, the Department's reasoning would sweep in wide swaths of companies lacking any real relationship to MIIT (let alone the Chinese military).  *See Xiaomi Corp.*, 2021 WL 950144, at *4 (when agency explanation is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise,' courts must cast the action aside as arbitrary and capricious" (internal quotation marks omitted) (quoting *Dickinson*, 527 U.S. at 164)).  And because Hesai's "behavior is no different than American technology companies" with a Chinese footprint, *Luokung Tech. Corp.*, 538 F. Supp. 3d at 189–190, the Department's "sweeping inference" would capture "even U.S. technology companies with Chinese subsidiaries[,]" such as Apple and Tesla (not to mention even more non-technology companies, such as Pepsi and Nike).  *Xiaomi Corp.*, 2021 WL 950144, at *8; *see also infra* pp. 37, 38.

In sum, the prospectus provides zero support for the Department's overstated and misleading finding that these four industry-wide policies are "programs and projects on which [Hesai] is working" with the MIIT.  The Department's reliance on purported "evidence" that "runs counter" to the "explanation for its decision" is the height of arbitrary and capricious reasoning. *Motor Vehicles Mfrs. Ass'n*, 463 U.S. at 43; *see, e.g.*, *Defenders of Wildlife v. Babbitt*, 958 F. Supp. 670, 681 (D.D.C. 1997) (agency acts arbitrarily and capriciously in basing listing decision on "faulty factual premises").

**B.      Hesai's Participation In Industry-Wide Commercial Activities Is Not Evidence Of Affiliation With The MIIT**

The Department next relies on Hesai's alleged involvement with "the National Automotive Standardization Technical Committee ['NASTC'], an industry partnership intended to promote stabilization in China's automotive industry."  AR13.  Specifically, the Department points to Hesai's participation in the "6th International Exchange Conference on Intelligent Connected Vehicle Technology, Standards and Regulations," and in the drafting process of an industry standard titled "Automotive LiDAR performance requirements and test methods." AR13–14.  But neither of these commercial, industry-wide activities is evidence of Hesai's involvement in "partnerships and projects" *with the MIIT*, AR13, much less evidence that Hesai was affiliated with the MIIT for purposes of Section 1260H.

To start, any connection between Hesai and the MIIT based on these alleged facts is at best indirect.  The NASTC is an "*industry* partnership"—*i.e.* a partnership between commercial members of the automotive industry—and the decision memorandum makes clear that the MIIT's role extends no further than "establish[ing] and oversee[ing]" that industry coordination.  AR13 (emphasis added).  Even if Hesai "act[ed] as part of" the NASTC, *id.*, Hesai would act only in partnership *with a committee of other industry players*, rather than "with the Chinese Ministry of Industry and Information Technology," Sec. 1260H(d)(2)(B).  Where Congress meant for a designation to be based on an affiliation with an entity that is in turn affiliated with another, it made that intent clear.  *See, e.g.*, NDAA FY99 § 1237(b)(4)(B) (defining CCMC as an entity "owned or controlled by, or affiliated with, the [PLA] or a ministry of the government of the [PRC] *or that is owned or controlled by an entity affiliated with the defense industrial base of the [PRC]*" (emphasis added)).  Subsection (d)(2)(B) does not cover such second- or third-order connections to the MIIT.

34

In any event, the evidence of Hesai's purported involvement in the NASTC does not support the extreme inferences the Department draws. *See Xiaomi Corp.*, 2021 WL 950144, at *8 ("[E]vidence must be contextualized."). The NASTC is an industry partnership that is responsible for the "national terminology, product classification, technical requirements, and testing of trucks, off-road vehicles, dump trucks, tractor-trailers, special-purpose vehicles, passenger cars, cars and trains (including semi-trailers and full trailers), motorcycles and electric vehicles." AR763. It sets and interprets countless automotive standards ranging from "child restraint systems" for "road vehicles" to "Technical Conditions for Plug-in Hybrid Electric Commercial Vehicles[.]" AR771–773. Several executives from Chinese subsidiaries of U.S. and international car companies, such as General Motors, Volkswagen, Toyota, and Hyundai, are registered members of the NASTC. AR764–768.[11] But no Hesai executive, employee, or Board member is a member. *Id.*

Instead, the Department's limited evidence for Hesai's involvement with the NASTC is its participation in *one* industry conference and in the drafting process for *one* standard relating to LiDAR technology. With regard to the "6th International Exchange Conference on Intelligent Connected Vehicle Technology, Standards and Regulations," the Department's evidence shows only that a single Hesai employee spoke at a session relating to industry standardization efforts. AR782. But the same webpage states that "[m]ore than 300 experts and scholars" attended the conference, including from "major automotive industry countries such as the European Union and Japan," and "international organizations such as the United Nations (UN) and the European

---

[11] For example, the embedded links on the website appearing in the administrative record show that the following companies' subsidiaries employ some of the listed "Members": General Motors (Lu Xiao), Volkswagen (Liu Bin), Toyota (Zu Wendong), and Hyundai (Feng Shuo). *See* Nat'l Standards & Tech. Evaluation Ctr. of State Admin. For Mkt. Regul., *TC114 National Technical Committee for Automotive Standardization*, https://std.samr.gov.cn/search/orgDetailView?tcCode=TC114 (last visited July 3, 2024).

Automobile Industry Association (ACEA)."  AR776; *see* AR779 (describing "experts *** from well-known companies and universities").  Additionally, the webpage directly identifies speeches given by many other industry participants, including, for example, the "United Nation[s] Intelligent Transportation and Autonomous Driving Technical and Economic Affairs Officer"; an official from the "Japan Traffic Safety and Environment Research Institute"; the "Director of Intelligent Mobility of the European Automobile Manufacturers Association"; the "general manager" of "the German Automobile Industry Association (VDA) China Office" that represents carmakers like BMW, Volkswagen, and Mercedes-Benz; and the "Market Development Manager of Rohde & Schwarz (China) Technology Co., Ltd," a subsidiary of a German technology company.  AR777, 780.  Under the Department's logic, these UN, Japanese, and European officials are all "affiliated" with the MIIT, too.  AR13.

The Department also claims that "Hesai was one of the main drafting organizations" for the industry standard titled "Automotive LiDAR performance requirements and test methods[.]"  AR14.  But the cited webpage shows that the other organizations were automobile industry participants that do not appear on the Section 1260H List, including the Chinese subsidiaries of Volkswagen, Rheinland Technology, and Keysight Technologies.  AR785–790.  At most, this shows only that Hesai and these other global businesses participated in a standard-drafting process "under the jurisdiction of the [NASTC]," AR14—not "as part of the [NASTC]," AR13, let alone the MIIT.  The cited webpage also shows that the companies merely "[r]ecommended" "draft" standards from the broader industry, and that the NASTC has not even "review[ed]," "[a]pproved," or "[r]eleas[ed]" the proposals.  AR785–786.  Such minimal involvement in this or other common, industry-wide, commercial activity is not substantial evidence that Hesai is "affiliated with" MIIT.  Indeed, other pages of the Department's cited website (the Chinese "National public service

platform for standards information") show that various U.S. companies—such as Tesla, Pepsi, and Nike—have participated in similar standard-setting efforts through their Chinese subsidiaries.[12] Once again, under the Department's logic, each of these companies is also "affiliated with" the MIIT. *See Xiaomi Corp.*, 2021 WL 950144, at *8.

### C.    The Department's Remaining Evidence Is Also Lacking

The Department finally relied on two disparate facts that are even further removed from its purported finding that Hesai is "Affiliated with the MIIT Via Partnerships and Projects": (1) Hesai's application for and receipt of a "Radio Transmitting Equipment Model Approval *** administrative license" from the MIIT (a fact Hesai itself disclosed in its Initial Prospectus); and (2) Hesai's inclusion in "Batch 4" of companies named by MIIT's "Little Giants" Program, which purportedly "guarantee[s]" Hesai (unspecified) "subsidies, tax cuts and other grants." AR14–15.

As a statutory matter, the text and structure of Section 1260H preclude the Department's general reliance on such licenses and government assistance for proof of an affiliation with the MIIT.  Congress specified, in significant detail, the types of licenses and government assistance that trigger a company's designation as a Chinese military company.  *E.g.*, Sec. 1260H(d)(2)(F)

---

[12] Among many other examples, the website shows that:

- Tesla [特斯拉（上海）有限公司] was involved in standard-setting for "Drive motor system for electric vehicles," https://std.samr.gov.cn/gb/search/gbDetailed?id=19B8508AEDF14286E06397BE0A0A616D;

- Pepsi [百事（中国）有限公司] was involved in standard-setting for "Comprehensive Energy Consumption Limit for Beverage Manufacturing," https://std.samr.gov.cn/hb/search/stdHBDetailed?id=8B1827F1A3E0BB19E05397BE0A0AB44A;

- Nike [耐克体育（中国）有限公司] was involved in standard-setting for "Safety technical specifications for infants' and children's footwear," https://std.samr.gov.cn/gb/search/gbDetailed?id=19BBE2758DF1574AE06397BE0A0A5337.

("Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification."); Sec. 1260H(d)(2)(A) ("Entities knowingly receiving assistance from the Government of China or the Chinese Communist party through science and technology efforts initiated under the Chinese military industrial planning apparatus.").  Congress's decision to omit any similar reference to licenses and assistance in subsection (d)(2)(B) suggests that it did not intend for such regulatory activity to serve as evidence of an affiliation with the MIIT—and particularly not *non-military* licenses and assistance.  *See Nasdaq Stock Mkt. LLC v. Securities & Exch. Comm'n*, 38 F.4th 1126, 1136–1137 (D.C. Cir. 2022) (applying the "maxim of *expressio unius est exclusio alterius*" where Congress "specifically identifies" key statutory terms).

Nor is either alleged circumstance sufficient factually.  With regard to the "Radio Transmitting Equipment Model Approval *** administrative license," AR14, the cited prospectus shows that the approval concerned Hesai's "gas sensor products," AR579 (certified translation at Paterno Decl. Ex. B).  That is a "segment" distinct from Hesai's core business dealing with "manufactur[ing] and export[ing] automotive three-dimensional LiDAR devices," on which the Department "[b]ased" its "determin[ation] that Hesai is a Chinese military company."  AR14.

In any event, Hesai's routine disclosure of the license merely signifies that Hesai—like other companies operating in this space—acts "in accordance with the requirement" of the "laws and regulations of China."  AR579 (certified translation at Paterno Decl. Ex. B).  For example, Apple's Chinese iPhone User Manual also references the specific radio-transmitting equipment

licenses Apple obtained from the "CMIIT" (*i.e.*, Chinese MIIT) for each iPhone model.[13]  In fact, the same section of the prospectus that the Department cites for the "administrative license" also states that Hesai has obtained certifications "in the United States, the European Union and other major overseas sales regions."  AR580 (certified translation at Paterno Decl. Ex. B).

Hesai's inclusion in the "Little Giants" program does not substantiate an MIIT affiliation, either.  The Department's own citations indicate that the MIIT has designated "*thousands* of companies" as "Little Giants," through nominations by "each province."  *China's Little Giants' Are Its Latest Weapon in the U.S. Tech War*, BLOOMBERG NEWS (Jan. 23, 2022) (cited at AR17 nn.21–22) (emphasis added)[14]; *see also* Alicia Garcia-Herrero & Michal Krystanczuk, *How Does China Conduct Industrial Policy: Analyzing Words Versus Deeds* 4, 24 J. OF INDUS., COMPETITION & TRADE 10 (2024) (noting that more than 12,000 firms have been designated as Little Giants).[15] The extensive list of "Little Giants" in the Department's cited materials include companies that plainly have no military or defense-connection, including those selling clothing, watches, cotton textiles, and animal husbandry services:

- AR827 (No. 70, 上海西文服饰有限公司, "Shanghai Xiwen Clothing Co.");

- AR859 (No. 1, 天津海鸥表业集团, "Tianjin Seagull Watch Group");

- AR952 (No. 6, 安徽三宝棉纺针织投资有限公司, "Anhui Sanbao Cotton Knitting Investment Co."); and

---

[13]  https://support.apple.com/zh-cn/guide/iphone/iph301fc905/ios  (last  visited  July  3, 2024).

[14]  https://www.bloomberg.com/news/articles/2022-01-23/china-us-xi-jinping-backs-new-generation-ofstartups-in-tech-war.

[15] https://doi.org/10.1007/s10842-024-00413-w.

- AR925 (No. 87, 杭州海尔希畜牧科技, "Hangzhoi Haierxi Animal Husbandry Technology").

This Court earlier held that Xiaomi's CEO's receipt of a similar "award," given by the MIIT to "500 entrepreneurs" "in recognition of contributions to China's economic development," "hardly provides 'substantial evidence' (either on its own or when considered in conjunction with [other record evidence]) to support the Department of Defense's determination" of Xiaomi's affiliation with the Chinese government. *Xiaomi Corp.*, 2021 WL 950144, at *8. The same is true here: "The purported link to the [MIIT] is *** far more tenuous than the Department of Defense implies," including because (as here) award recipients are "nominated by a local district" and cover a wide range of industry participants, making it "implausible that [they] would be involved in the military-civil fusion that is of concern." *Id.*

That conclusion is not affected by the Department's assertion that being named a "Little Giant" entitles a company to "subsidies, tax cuts and other grants." AR15. The Department does not explain how receipt of a grant would make a start-up "affiliated with" the MIIT any more than, for example, a small business's receipt of a grant would make it "affiliated with" the U.S. Small Business Administration. *See, e.g.*, 15 U.S.C. § 9009a (providing for pandemic-related grants). As the article the Department relies on makes clear, the (private) founders of these Chinese startups "retain control over their companies even if they participate" in programs associated with the Little Giants designation. AR822. More to the point, the record lacks any evidence that Hesai *actually receives* government funding. On the contrary, as Hesai's CEO told the Department in a sworn declaration, Hesai has not received government benefits from China (or any other country) that are not available to all technology companies, foreign or domestic. Tysse Decl. Ex. B ¶ 16. Even if the record adequately demonstrated a basis for possible future funding, such a "potential"

affiliation "is not the correct standard" for Section 1260H; instead, "an actual affiliation is required"—and is missing here. *Luokung Tech. Corp.*, 538 F. Supp. 3d at 189.

***

Because the Department both lacks substantial evidence for its determination that Hesai is affiliated with the MIIT and fails to rationally connect the paltry facts it finds with the conclusion it reaches, its decision should be held unlawful and set aside.

## IV.    THE DEPARTMENT'S FAILURE TO BASE HESAI'S DESIGNATION ON THE MOST RECENT INFORMATION AVAILABLE VIOLATES SECTION 1260H, THE APA, AND THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential." *National Council of Resistance of Iran v. Department of State*, 251 F.3d 192, 204 (D.C. Cir. 2001) (citation omitted). The Department provided neither to Hesai: The Department failed to give Hesai any warning before announcing its "Chinese military company" designation through a press release in January 2024. And as explained in Hesai's concurrently filed motion to complete the record, the Department has now informed the company that it has not yet considered the March 2024 letter and declaration that Hesai unilaterally submitted to it. 89 Fed. Reg. at 22,698.

Even in a "designation process" premised on "national security" concerns, however, the Due Process Clause requires at least "an opportunity to rebut [the agency's] evidence." *Ralls Corp. v. Committee on Foreign Inv. in U.S.*, 758 F.3d 1296, 318–319 (D.C. Cir. 2014). In fact, Congress itself has prohibited the Department's head-in-the-sand decision-making. Per Section 1260H, Congress commanded the Department to make its listing decisions on "the most recent information available" and make "ongoing" revisions and deletions from the List if its prior findings are undermined by "the latest information available." Sec. 1260H(a), (b)(3). That instruction forecloses the Department's reliance on outdated materials in the record, such as

government policies and conference attendance that occurred more than a decade ago. *See, e.g.*, AR13, 493 (referring to government policy issued as far back as 2013).

Just as critically, the Department's refusal to consider the sworn declaration that Hesai submitted in March 2024 means it has failed to base Hesai's ongoing designation on the "most recent," and hence most *relevant*, information available to it. Hesai's CEO's sworn declaration shows, among other things, that "[n]either the Chinese government, the People's Liberation Army, nor any other organization subordinate to the Central Military Commission of the Chinese Communist Party has interfered with, or had any control over, Hesai's operations and management." Tysse Decl. Ex. B ¶ 14. That declaration separately attests that "Hesai does not receive sovereign money or government benefits beyond the treatment generally available to other technology companies, foreign and domestic." *Id.* ¶ 16. These and other sworn statements directly undermine the Department's reliance on various attenuated connections between Hesai and the MIIT, as well as its suggestion that Hesai is "guaranteed subsidies, tax cuts, and other grants" by the MIIT. AR15.

The Department's surprise-then-stonewall approach raises "serious" questions of "constitutional due process." *Xiaomi Corp.*, 2021 WL 950144, at *8 n.8; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 n.13; *see also Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003) ("[W]e have held on several occasions that government stigmatization that broadly precludes individuals or corporations from a chosen trade or business deprives them of liberty in violation of the Due Process Clause."). At a minimum, the Department's apparent failure to consider (let alone affirmatively weigh) evidence that directly undermines its reasoning is another manifestation of arbitrary and capricious reasoning. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (agency rule is arbitrary and capricious if it "runs counter to the evidence before the agency").

This error is particularly egregious here, where Congress itself imposed on the Department a mandatory duty to make ongoing revisions *and deletions* to its Section 1260H determinations based on "the latest information available."  Sec. 1260H(b)(3) (emphasis added); *see Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 42-43 (agency decision must be based on "relevant factors" and "relevant data").  The Department's failure to account for any of this information, as the statute plainly requires, means that Hesai's designation should be set aside and its removal from the List should be compelled.  *See* 5 U.S.C. § 706(1), (2)(A), (B); *see also Woodhull Freedom Found.*, 72 F.4th at 1303 (adopting "'fairly possible' reading that assures the constitutionality of the text" (quoting *Hansen*, 599 U.S. at 781)).

## CONCLUSION

For the foregoing reasons, Hesai respectfully requests that the Court grant summary judgment in its favor; declare that Defendants have exceeded their statutory authority and acted arbitrarily, capriciously, and contrary to law in placing Hesai on the Section 1260H List; set aside Defendants' designation of Hesai as a Chinese military company; and order Defendants to remove Hesai from the Section 1260H List.

Respectfully submitted,

/s James E. Tysse

Dated:  July 3, 2024

James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jtysse@akingump.com

43

Zach ZhenHe Tan
  *Admitted Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
100 Pine Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 765-9500
Facsimile:  (415) 765-9501

*Counsel to Plaintiffs Hesai Technology Co., Ltd.
and Hesai Inc.*

**ADDENDUM**

# TABLE OF CONTENTS

Note to 50 U.S.C. § 1701, Application of Authorities Under the International
Emergency Economic Powers Act to Communist Chinese Military Companies ..............Add. 1

Section 1260H of the William M. ("Mac") Thornberry National Defense
Authorization Act for Fiscal year 2021 (Public Law 116-283), codified at 10 U.S.C.
§ 113 note........................................................................................................................Add. 3

i

**Note to 50 U.S.C. § 1701**

**Application of Authorities Under the International Emergency Economic Powers Act to Communist Chinese Military Companies**

Pub.L. 105-261 , Div. A, Title XII, § 1237, Oct. 17, 1998, 112 Stat. 2160, as amended Pub.L. 106-398 , § 1 [Div. A, Title XII, § 1233], Oct. 30, 2000, 114 Stat. 1654, 1654A-330; Pub.L. 108-375, Div. A, Title XII, § 1222, Oct. 28, 2004, 118 Stat. 2089, provided that:

"(a) PRESIDENTIAL AUTHORITY.—

"(1) IN GENERAL.—

The President may exercise IEEPA authorities (other than authorities relating to importation) without regard to section 202 of the International Emergency Economic Powers Act (50 U.S.C. 1701) in the case of any commercial activity in the United States by a person that is on the list published under subsection (b).

"(2) PENALTIES.—

The penalties set forth in section 206 of the International Emergency Economic Powers Act (50 U.S.C. 1705) apply to violations of any license, order, or regulation issued under paragraph (1).

"(3) IEEPA AUTHORITIES.—

For purposes of paragraph (1), the term 'IEEPA authorities' means the authorities set forth in section 203(a) of the International Emergency Economic Powers Act (50 U.S.C. 1702(a)).

"(b) DETERMINATION AND REPORTING OF COMMUNIST CHINESE MILITARY COMPANIES OPERATING IN UNITED STATES.—

"(1) INITIAL DETERMINATION AND REPORTING.—Not later than March 1, 2001, the Secretary of Defense shall make a determination of those persons operating directly or indirectly in the United States or any of its territories and possessions that are Communist Chinese military companies and shall submit a list of those persons in classified and unclassified form to the following:

"(A) The Committee on Armed Services of the House of Representatives.

"(B) The Committee on Armed Services of the Senate.

"(C) The Secretary of State.

"(D) The Secretary of the Treasury.

"(E) The Attorney General.

"(F) The Secretary of Commerce.

"(G) The Secretary of Energy.

"(H) The Director of Central Intelligence.

"(2) ANNUAL REVISIONS TO THE LIST.—

The Secretary of Defense shall make additions or deletions to the list submitted under paragraph (1) on an annual basis based on the latest information available and shall submit the updated list not later than February 1, each year to the committees and officers specified in paragraph (1).

"(3) CONSULTATION.—The Secretary of Defense shall consult with the following officers in carrying out paragraphs (1) and (2):

"(A) The Attorney General.

"(B) The Director of Central Intelligence.

"(C) The Director of the Federal Bureau of Investigation.

"(4) COMMUNIST CHINESE MILITARY COMPANY.—For purposes of making the determination required by paragraph (1) and of carrying out paragraph (2), the term 'Communist Chinese military company' means—

"(A) any person identified in the Defense Intelligence Agency publication numbered VP–1920–271–90, dated September 1990, or PC–1921–57–95, dated October 1995, and any update of those publications for the purposes of this section; and

"(B) any other person that—

"(i) is owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China or that is owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China; and

"(ii) is engaged in providing commercial services, manufacturing, producing, or exporting.

"(c) PEOPLE'S LIBERATION ARMY.—

For purposes of this section, the term 'People's Liberation Army' means the land, naval, and air military services, the police, and the intelligence services of the Communist Government of the People's Republic of China, and any member of any such service or of such police."

**Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal year 2021 (Public Law 116-283), codified at 10 U.S.C. § 113 note**

**Sec. 1260H Public Reporting of Chinese Military Companies Operating in the United States**

(a) DETERMINATION.—The Secretary of Defense shall identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company.

(b) REPORTING AND PUBLICATION.—

(1) ANNUAL REPORT.—Not later than April 15, 2021, and annually thereafter until December 31, 2030, the Secretary shall submit to the Committees on Armed Services of the Senate and the House of Representatives a list of each entity identified pursuant to subsection (a) to be a Chinese military company, in classified and unclassified forms, and shall include in such submission, as applicable, an explanation of any entities deleted from such list with respect to a prior list.

(2) CONCURRENT PUBLICATION.—Concurrent with the submission of each list described in paragraph (1), the Secretary shall publish the unclassified portion of such list in the Federal Register.

(3) ONGOING REVISIONS.—The Secretary shall make additions or deletions to the most recent list submitted under paragraph (1) on an ongoing basis based on the latest information available.

(c) CONSULTATION.—The Secretary may consult with the head of any appropriate Federal department or agency in making the determinations described in subsection (a) and shall transmit a copy of each list submitted under subsection (b)(1) to the heads of each appropriate Federal department and agency.

(d) DEFINITIONS.-In this section:

(1) CHINESE MILITARY COMPANY.—The term "Chinese military company"—

(A)  does not include natural persons; and

(B)  means an entity that is—

(i)(I) directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party; or

(II) identified as a military-civil fusion contributor to the Chinese defense industrial base; and

(ii) engaged in providing commercial services, manufacturing, producing, or exporting.

(2) MILITARY-CIVIL FUSION CONTRIBUTOR.—The term "military-civil fusion contributor" includes any of the following:

Add. 3

(A)  Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B)  Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C)  Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D)  Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E)  Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F)  Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G)  Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H)  Any other entities the Secretary determines is appropriate.

(3) PEOPLE'S LIBERATION ARMY.—The term "People's Liberation Army" means the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate.