## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:24-cv-01381 |
| U.S. DEP'T OF DEFENSE, *et al.*, | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LAUREN A. WETZLER
Deputy Director, Federal Programs Branch

STEPHEN M. ELLIOTT (PA Bar# 203986)
DANIEL RIESS
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel:  (202) 353-0889  Fax:  (202) 616-8470
E-mail:  stephen.m.elliott@usdoj.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………….…....1

STATEMENT OF FACTS……………………………………………………………..2

I.    The United States' Concerns About Chinese Military-Civil Integration………......2

II.   The Hesai Group……………………………………………………………......4

III.  DoD's Placement of Hesai on the Section 1260H List……………………….…..5

IV.   Initiation of Litigation…………………………………………………………6

.

STANDARD OF REVIEW……………………………………………………..…..7

ARGUMENT…………………………………………………………………………..9

I.    Substantial Evidence Supports DoD's Determination that Hesai is Affiliated
      With MIIT………………………………………………………………….…..9

II.   The Court Should Not Impose An Illusory Statutory Obligation……………….....18

III.  The Court Should Reject Plaintiffs' Narrow Definition of "Affiliated With"
      MIIT…………………………………………………………………………….19

IV.   DoD Based Its Decision to Place Hesai on the Section 1260H List on the
      Latest Information Available to It at the Time of the Identification………………..23

V.    Plaintiffs Have Abandoned Their Remaining Claims……………………………...25

CONCLUSION……………………………………………………………………..…26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*3883, Conn. LLC v. District of Columbia*,
   336 F.3d 1068 (D.C. Cir. 2003) ........................................................................... 25

*Aragon v. Tillerson*,
   240 F. Supp. 3d 99 (D.D.C. 2017) ...................................................................... 25

*Atl. Cleaners & Dyers, Inc. v. United States*,
   286 U.S. 427 (1932) ............................................................................................ 21

*Banks v. Booth*,
   3 F.4th 445 (D.C. Cir. 2021) ............................................................................... 20

*Biestek v. Berryhill*,
   587 U.S. 97 (2019) .............................................................................................. 10

*Bloomberg, L.P. v. SEC*,
   45 F.4th 462 (D.C. Cir. 2022) ............................................................................. 10

*Camp v. Pitts*,
   411 U.S. 138 (1973) ............................................................................................ 23

*Camreta v. Greene*,
   563 U.S. 692 (2011) ............................................................................................ 19

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .............................................................................................. 8

*Deal v. United States*,
   508 U.S. 129 (1993) ............................................................................................ 20

*Dillmon v. Nat'l Transp. Safety Bd.*,
   588 F.3d 1085 (D.C. Cir. 2009) .......................................................................... 10

*Earth Island Inst. v. Coca-Cola Co.*,
   No. CV 21-1926 (PLF), 2022 WL 872605 (D.D.C. Mar. 24, 2022) ....................... 19

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ............................................................................................ 25

*Finberg v. U.S. Dep't of Agric.*,
   6 F.4th 1332 (D.C. Cir. 2021) ............................................................................. 10

*\*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ....................................................................................... 8, 23

*Griffin v. Oceanic Contractors, Inc.*,
   458 U.S. 564 (1982) ............................................................................................ 21

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) .................................................................................................. 9

*Islamic Am. Relief Agency v. Gonzales,*
    477 F.3d 728 (D.C. Cir. 2007).................................................................. 9

*Jefferson v. Harris,*
    170 F. Supp. 3d 194 (D.D.C. 2016).......................................................... 24

*Kadi v. Geithner,*
    42 F. Supp. 3d 1 (D.D.C. 2012)................................................................. 8

*La. Pub. Serv. Comm'n v. FERC,*
    20 F.4th 1 (D.C. Cir. 2021).............................................................. 9, 18

*Lopez Bello v. Smith,*
    651 F. Supp. 3d 20 (D.D.C. 2022)........................................................... 24

*Luokung Tech. Corp. v. Dep't of,Def.,*
    538 F. Supp. 3d 174 (D.D.C. 2021) ..................................................... 8, 19

*Mashpee Wampanoag Tribe v. Bernhardt,*
    466 F. Supp. 3d 199 (D.D.C. 2020) ......................................................... 8

*Mistretta v. United States,*
    488 U.S. 361 (1989) ............................................................................... 25

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) .......................................................................... 8, 9

*Nepal v. United States Dep't of State,*
    602 F. Supp. 3d 115 (D.D.C. 2022)......................................................... 19

*NLRB v. SW Gen., Inc.,*
    580 U.S. 288 (2017).............................................................................. 16

*Paul v. Davis,*
    424 U.S. 693 (1976).............................................................................. 24

*Pham v. Nat'l Transportation Safety Bd.,*
    33 F.4th 576 (D.C. Cir. 2022)................................................................. 10

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.,*
    758 F.3d 296 (D.C. Cir. 2014)................................................................ 24

*Stephenson v. Cox,*
    223 F. Supp.2d 119 (D.D.C. 2002).......................................................... 25

*Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.,*
    940 F.2d 685 (D.C. Cir. 1991)................................................................ 17

*Xiaomi v. Dep't of Defense,*
    Case No. 21-0280, 2021 WL 950144 (D.D.C. March 12, 2021) ......................... 9, 19

*Zevallos v. Obama,*
    10 F. Supp. 3d 111 (D.D.C. 2014)............................................................. 8

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017)......................................................................... 21, 22

**Statutes**

5 U.S.C. § 706(2)(A) ........................................................................................................ 8

22 U.S.C. § 7002(b)(2) ..................................................................................................... 3

Pub. L. No. 105-261, 112 Stat. 2160 (Oct. 17, 1998) ..................................................... 2

Pub. L. No. 106-398, 114 Stat. 1654 (2000), .................................................................. 3

Pub. L. No. 116-283, § 1260H(a), 134 Stat. 3388 (2021) ..................................... *passim*

**Rule**

Fed. R. Civ. P. 56(a) ........................................................................................................ 7

**Regulation**

32 C.F.R. § 117.3 ........................................................................................................... 20

## **INTRODUCTION**

The United States Government has determined that China's symbiotic relationships with Chinese technology companies present a national security threat.  In response, and consistent with Congress's mandate in Section 1260H of the National Defense Authorization Act for Fiscal Year 2021, the Deputy Secretary of Defense on January 18, 2024, notified Congress that the Department of Defense ("DoD") had identified, among others, Hesai Technology Co., Ltd., ("Hesai")  as a "Chinese military company" ("Section 1260H List" or "the List").  Hesai and its wholly owned subsidiary Hesai Group, Inc. (collectively, "Plaintiffs") now challenge this determination, disavowing any relationship with the Chinese government.  But the administrative record provides substantial evidence that Hesai is "affiliated with" the Chinese Ministry of Industry and Information Technology ("MIIT"), "including research partnerships and projects," by virtue of Hesai's extensive regulatory and programmatic association with this arm of the Chinese state.

Plaintiffs advance three primary arguments, none of which have merit.  First, Plaintiffs attempt to burden DoD with an illusory statutory requirement, criticizing the agency for not expressly explaining how Hesai both satisfies the definition of a "military-civil fusion contributor" *and* contributes to the "Chinese defense industrial base."  Implicit in DoD's listing determination, however, is that as a military-civil fusion contributor, Hesai contributes to the Chinese defense industrial base.  DoD would not have identified Hesai as a "Chinese Military Company" and, in particular, a "military-civil fusion contributor," if the company was not a contributor to the Chinese defense industrial base.  Second, Plaintiffs argue that the Court should adhere to the narrow definition of the term "affiliated with" adopted by another member of this Court in the context of a different statute.  This Court is not bound by the decision of another district court judge, let alone a decision interpreting a different statute.  In any event, a plain textual interpretation of the term

"affiliated with," to "include[e] research partnerships and projects," encompasses Hesai's connection to MIIT. Third, Plaintiffs fault DoD for not considering evidence that they submitted three months *after* the date of the final agency action, conflating record review and constitutional principles. As explained in the Government's Opposition to Plaintiffs' Motion to Complete or, in the Alternative, Supplement the Administrative Record, the Court should not consider extra-record evidence that was not before the decision-maker at the time of the decision.

For these reasons, the Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

## STATEMENT OF FACTS

## I. The United States' Concerns About Chinese Military-Civil Integration

The United States Government has long expressed significant concerns about the national security threat posed by the relationship between Chinese technology companies and the Chinese state. In the FY 1999 National Defense Authorization Act ("NDAA"), Congress directed the President to create a list identifying entities that meet the statutory definition of a Communist Chinese Military Company ("CCMC"). *See* National Defense Authorization Act for FY 1999 ("FY99 NDAA"), § 1237(a), b), Pub. L. 105-261, 112 Stat. 2160 (Oct. 17, 1998). In 2005, Congress expanded the definition of CCMC because the then-existing definition, which depended on the company's relationship to the Chinese People's Liberation Army, was too narrow—it "exclud[ed] a class of firms engaged in Chinese military modernization." H.R. Rep. No. 108-491 at 367 (2004).

These concerns have persisted up to the present day. In its 2011 Annual Report to Congress, the Department of Defense observed that "China's defense industry has benefited from integration with a rapidly expanding civilian economy and science and technology sector,

particularly elements that have access to foreign technologies." Off. of the Sec'y of Def., Ann. Rep. to Cong.: Mil. & Sec. Devs.  Involving the PRC, at 42 (2011) ("2011 DoD Ann. Rep.").[1] "Information technology companies in particular . . . maintain close ties to the [People's Liberation Army]." *Id.*  A decade later, DoD again noted that China's strategy seeks to "fuse[] . . . China's defense industrial base and its civilian technology and industrial base." Off. of the Sec'y of Def., Ann. Rep. to Cong.: Mil. and Sec. Devs. Involving the PRC, at 18 (2020) ("2020 DoD Ann. Rep.").[2]    The U.S.-China Economic and Security Review Commission ("U.S.-China Commission")[3] has articulated similar concerns, noting that "[t]he Chinese government's military–civil fusion policy aims to spur innovation and economic growth through an array of policies . . . while leveraging the fruits of civilian innovation for China's defense sector."  *See* U.S.-China Econ. & Sec. Rev. Comm'n, 2018 Ann. Rep., Ch. 3 § 2 – Emerging Technologies and Military-Civil Fusion: Artificial Intelligence, New Materials, and New Energy ("U.S. China Comm'n 2018 Rep.").[4]

The William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 provides for the identification of "each entity the Secretary [of Defense] determines, based on the most recent information available, is operating directly or indirectly in the United States . .

---

[1]  https://dod.defense.gov/Portals/1/Documents/pubs/2011_CMPR_Final.pdf.

[2]  https://media.defense.gov/2020/Sep/01/2002488689/-1/-1/1/2020-DOD-CHINAMILITARY-POWER-REPORT-FINAL.PDF.

[3]  The U.S.-China Commission, established by statute in the 2001 NDAA, Pub. L. No. 106-398, 114 Stat. 1654 (2000), is intended "to monitor, investigate, and report to Congress on the national security implications of the bilateral trade and economic relationship between the United States and the People's Republic of China [PRC]," 22 U.S.C. § 7002(b)(2).

[4]  https://www.uscc.gov/sites/default/files/2019-11/Chapter%203%20Section%202%20-%20Emerging%20Technologies%20and%20Military-Civil%20Fusion%20-%20Artificial%20Intelligence,%20New%20Materials,%20and%20New%20Energy.pdf.

. that is a Chinese military company." (Public Law 116-283), § 1260H(a), 134 Stat. 3388 (2021). A "Chinese military company" includes those entities "identified as a military-civil fusion contributor to the Chinese defense industrial base . . . engaged in providing commercial services, manufacturing, producing, or exporting." *Id.* § 1260H(d)(1)(B)(II). Congress defined "military-civil fusion contributor," in turn, to include "[e]ntities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects." *Id.* § 1260H(d)(2)(B).

## II.    The Hesai Group

Plaintiffs are part of the Hesai Group, "a NASDAQ-listed company with operations around the world, including in the United States." Compl. ¶ 2, ECF No. 1; *see id.* ¶ 14 (noting that Plaintiff Hesai Technology Col., Ltd. "is wholly owned by Hesai Hong Kong Limited, which in turn is wholly owned by Hesai Group"); *id.* ¶ 15 (explaining that Plaintiff Hesai Inc. is a "wholly owned subsidiary" of Plaintiff Hesai Technology Co., Ltd.). Plaintiffs allege that the Hesai Group "is the world's leading manufacturer of Light Detection and Ranging ('LiDAR') technology for commercial—primarily automotive—uses." *Id.* ¶ 2. Reportedly, however, Hesai also "makes equipment used in autonomous warfighting vehicles[.]" Karen M. Sutter & Kelley M. Sayler, Cong. Rsch. Serv., IF12473, U.S.-China Competition in Emerging Technologies: LiDAR 2 (2024).[5] LiDAR "is a method for determining the distance of an object or surface via lasers." Compl. ¶ 19. LiDAR creates "a real-time, highly accurate 3D representation of physical surroundings, enabling autonomous systems to navigate complex environments in a wide variety of driving conditions." *Id.* ¶ 2.

---

[5] https://crsreports.congress.gov/product/pdf/IF/IF12473.

### III.    DoD's Placement of Hesai on the Section 1260H List

On January 18, 2024, the Deputy Secretary of Defense notified Congress that DoD identified Hesai, among other companies, on the Section 1260(H) List for 2023.  *See* Re-Certified Admin. Rec. ("A.R.") 1-6.  In the accompanying press release, DoD explained that "[u]pdating the Section 1260H list of 'Chinese military companies' is an important continuing effort in highlighting and countering the PRC's Military-Civil Fusion strategy.  The PRC's Military-Civil Fusion strategy supports the modernization goals of the People's Liberation Army (PLA)[.]"  Press Release, U.S. Dep't of Def., *DoD Releases List of People's Republic of China (PRC) Military Companies in Accordance With Section 1260H of the National Defense Authorization Act for Fiscal Year 2021* (Jan. 31, 2024).[6]

DoD's internal Hesai Group report, dated November 2, 2023, provides additional details about the basis for Hesai's placement on the 1260H List.  A.R. 9-17.  DoD explained in the report that Hesai functions as a military-civil fusion contributor to the Chinese defense industrial base.  A.R. 13 (citing Section 1260H(d)(1)(B)(i)(II)).  In particular, DoD placed Hesai on the Section 1260H List because of its affiliation with MIIT.  *Id.*  DoD identified four grounds for identifying Hesai on the 1260H List.  *Id.*

*First*, Hesai's prospectus for its Initial Public Offering on the Shanghai Stock Exchange named four programs and projects administered by MIIT in which Hesai participated:

- The Internet of Vehicles (Intelligence Connected Automobiles) Industry Development Action Plan;

- The Medium- and Long-Term Development Plan for the Automobile Industry;

- The Three-Year Action Guide for the Smart Sensor Industry (2017-2019); and

---

[6] https://www.defense.gov/News/Releases/Release/Article/3661985/dod-releases-list-of-peoplesrepublic-of-china-prc-military-companies-in-accord/.

- The Action Plan to Accelerate the Development of Sensors and Intelligent Instruments.

*Id.*

*Second*, Hesai acts as part of the National Automotive Standardization Technical Committee, "an industry partnership intended to promote standardization in China's automotive industry," which MIIT established and oversees. *Id.* DoD identified Hesai's specific involvement with the National Automotive Standardization Technical Committee:

- Hesai Technology Co., Ltd. participated in the 6th International Exchange Conference on Intelligent Connected Vehicle Technology, Standards and Regulations, organized under the Medium and Long-Term Development Plan for the Automobile Industry and the Internet of Vehicles (Intelligence Connected Automobiles) Industry Development Action Plan; and

- Hesai Technology Co., Ltd. acted as one of the main drafting organizations of a standard titled "Automotive LiDAR performance requirements and test methods," under the jurisdiction of the National Automotive Standardization Technical Committee.

*Id.* at 13-14.

*Third*, Hesai applied for and received a Radio Transmitting Equipment Model Approval administrative license from the MIIT. *Id.* at 14.

*Fourth*, "Hesai was included in Batch 4 of 'Little Giants' announced in August 2022." *Id.* at 15. MIIT functions as the Chinese government body in charge of the "Little Giants" program, whose participants receive guaranteed subsidies, tax cuts, and other grants from the Chinese government. *Id.*

## IV.    Initiation of Litigation

On May 13, 2024, Plaintiffs initiated the instant lawsuit, challenging DoD's determination that Hesai is a Chinese military company under Section 1260H. *See* Compl. Plaintiffs specifically allege that DoD's determination to identify Hesai "constitutes 'final agency action' subject to

judicial review because it consummates the agency's decision-making process with respect to Hesai's placement on the 1260H List." *Id.* ¶ 100.

After the start of the instant litigation, the parties proposed a joint summary judgment briefing schedule, which the Court adopted. *See* Joint Mot. for Summ. Judg. Briefing Sched., ECF No. 12. The Court ordered, *inter alia*, that Defendants file the certified list of the contents of the administrative record by June 21, 2024, and Plaintiffs file their motion for summary judgment by July 3, 2024. *See* Scheduling Order, ECF No. 13.

Pursuant to the Court's order, Defendants filed the certified list of the contents of the administrative record and transmitted to Plaintiffs the administrative record on June 21, 2024. *See* Notice, ECF No. 15. On July 17, 2024, Defendants filed a re-certified list of the contents of the administrative record and submitted to Plaintiffs a revised administrative record.[7] *See* Re-Cert. of Admin. Record, ECF No. 18-1.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mashpee Wampanoag Tribe v.*

---

[7] As explained in Defendants' Opposition to Plaintiffs' Motion to Complete or, in the Alternative, Supplement the Administrative Record, DoD filed a re-certified list of the contents of the administrative record because it learned that an inadvertent administrative error occurred when assembling the initial version of the administrative record. *See* Defs.' Opp'n, ECF No. 19, Ex. 4, Decl. of Libbi Finelsen. The Deputy Secretary of Defense reviewed the report dated November 2, 2023, when finalizing DoD's decision to place Hesai on the Section 1260H List. *Id.* ¶ 2. But the initial version of the administrative record included a later version of the report dated February 9, 2024. *Id.* ¶ 3. The February 9, 2024 version of the report was "generated as the first step in DoD's statutorily mandated annual review to determine whether entities who currently appear on the list should be removed from the list." *Id.* "The February 2024 report was not part of the decision-making process for the 2023 list and has not been presented to the Deputy Secretary of Defense." *Id.*

*Bernhardt*, 466 F. Supp. 3d 199, 213 (D.D.C. 2020).  In the context of an APA claim, "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) (quoting *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012)); *see also Mashpee Wampanoag Tribe*, 466 F. Supp. 3d at 213 ("In APA cases such as this one, involving cross-motions for summary judgment, 'the district judge sits as an appellate tribunal. The entire case on review is a question of law.'" (quotation omitted)).

When evaluating claims brought under the APA, a court reviews an agency decision based on the administrative record.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).  As relevant here, a court should uphold an agency decision unless it is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A).  Under this deferential standard, the agency's decision is presumed valid, and a court reviews only whether that decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park*, 401 U.S. at 416.  An agency's decision may be deemed arbitrary and capricious only in circumstances where the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or its decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *accord Mashpee Wampanoag Tribe*, 466 F. Supp. 3d at 213-14 ("This is a 'deferential standard' that 'presume[s] the validity of

agency action.'" (citation omitted)).  The Court may not "substitute its judgment for that of the agency"; the agency's decision should be affirmed as long as it is supported by a rational basis. *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43.

This deference is further heightened in cases such as this one that involve national security and foreign affairs.  *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("[O]ur review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential.").  The Supreme Court has emphasized the need for courts to grant this heightened deference even when considering constitutional claims.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010).  A case, such as this, involving DoD's statutory obligation to identify Chinese military companies is no exception.  *See Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 182 (D.D.C. 2021) ("Courts are to afford heightened deference to an agency's determination when it concerns national security, as is the case here." (citing *Islamic Am. Relief Agency*, 477 F.3d at 734)); *Xiaomi v. Dep't of Defense*, Case No. 21-0280, 2021 WL 950144, *4 (D.D.C. March 12, 2021) (same).

## ARGUMENT

## I.    Substantial Evidence Supports DoD's Determination that Hesai Is Affiliated With MIIT

DoD has determined that Hesai is a military-civil fusion contributor to the Chinese defense industrial base, as defined in Section 1260H, "due to [Hesai's] affiliation with the Chinese MIIT, including research partnerships and projects."  A.R. 13.  That factual determination is supported by substantial evidence.

The APA's substantial evidence standard erects a "low bar."  *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021).  Under this standard, the Court "looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's

factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation and internal punctuation omitted). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pham v. Nat'l Transportation Safety Bd*., 33 F.4th 576, 581 (D.C. Cir. 2022) (citation omitted). The standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Bloomberg, L.P. v. SEC*, 45 F.4th 462, 475 (D.C. Cir. 2022) (citation omitted). The agency's factual findings "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Dillmon v. Nat'l Transp. Safety Bd*., 588 F.3d 1085, 1089 (D.C. Cir. 2009) (citation omitted). By contrast, "[s]ubstantial evidence is lacking if, considering the record as a whole, no reasonable factfinder could have made the same finding as the agency." *Finberg v. U.S. Dep't of Agric*., 6 F.4th 1332, 1336 (D.C. Cir. 2021).

The administrative record contains sufficient evidence to support DoD's factual determination that Hesai is an entity "affiliated with the Chinese Ministry of Industry and Information, including research partnerships and projects." Record evidence shows that: (1) MIIT administers four distinct programs and projects that Hesai's wholly owned subsidiary Hesai Technology Co., Ltd. participates in; (2) MIIT established and oversees an industry partnership that Hesai participates in; (3) MIIT provided an administrative license to Hesai; and (4) MIIT administers the "Little Giants" program of which Hesai is an officially recognized company. A reasonable factfinder could therefore conclude that Hesai shares a common purpose with, shares characteristics with, and is closely associated with MIIT in a dependent or subordinate position.

*First*, in Hesai's prospectus of its Shanghai Stock Exchange public offering, Hesai identified four programs and projects in which it participates that are administered by the Chinese government's MIIT:

- The Internet of Vehicles (Intelligent Connected Vehicles) Industry Development Action Plan ("IoV Plan")

- The Medium- and Long-Term Development Plan for the Automobile Industry ("Automobile Industry Plan")

- The Three-Year Action Guide for the Smart Sensor Industry ("Smart Sensor Guide")

- The Action Plan to Accelerate the Development of Sensors and Intelligent Instruments ("Sensors and Intelligent Instruments Plan")

*See* A.R. 13.

Hesai contends that the participation of its wholly owned subsidiary Hesai Technology Co., Ltd. in these programs should be construed not as affiliation with MIIT, but instead as compliance as a regulated entity with policies issued by MIIT.  *See* Pls.' Mem. in Supp. of Mot. for Summ. J. ("Pls.' Mem.") at 31-33, ECF No. 17.  But this argument would only be plausible if the four programs identified in the prospectus were mandatory in order to operate in the Chinese market.  However, Hesai nowhere represents that it was forced to participate in these programs.  To the contrary, the characterization of these four programs that Hesai highlighted in its prospectus could lead a reasonable factfinder to conclude that an entity such as Hesai did, in fact, retain a degree of choice and discretion as to whether to affiliate itself with MIIT.  Its voluntary participation in these programs thus lends support to DoD's determination that Hesai is affiliated with MIIT.

Moreover, given that one of the key purposes of a company's prospectus is to encourage investors to purchase its stock offerings, it is reasonable to understand Hesai's discussion of these programs in its prospectus as highlighting its close relationship with the Chinese government.  The potential benefits to Hesai of this close relationship include lucrative incentives such as tax cuts, loans, and direct funding.  *See* A.R. 820 (designation in "Little Giants" program typically includes incentives such as "tax cuts, generous loans and favorable talent acquisition policies"), 821 (priority "Little Giants" participants receive direct government funding).  A reasonable factfinder

could determine that the availability of such incentives provides further evidence that Hesai made a voluntary decision to be affiliated with MIIT.

Hesai observes that in its prospectus, these four programs are listed within a section entitled "Major industry laws, regulations and policies and impacts on operation and development of issuer."  *See* Paterno Decl. at 3, Ex. A (A.R. 491).[8]  However, the actual descriptions of the programs in the prospectus do not suggest that they are mandatory in nature, but instead that entities retain at least some discretion to decide whether to participate in them.  Thus, according to the prospectus, the IoV Plan "point[ed] out" that the development of certain devices (such as vehicle-mounted vision systems) "should be accelerated," stated that the research and development of certain key smart vehicle components (such as intelligent vehicle-mountain terminals) "are accelerated," and "promoted" the industrial application of certain technologies.  *Id*. at 10 (A.R. 493).  Similarly, the prospectus's description of the Automobile Industry Plan explained that the "focus" of the program is to "overcome" certain "core key technologies" and to "promote the research and development and industrial application" of specified items (such as vehicle sensors).  *Id*.; *see also id*. (representing that the Automobile Industry Plan would also "focus on breaking through the bottlenecks of engineering and industrialization of" certain items (such as automobile sensors); that under the program, a number of auto part enterprise groups "would be formed" by 2020; and that by 2025, a number of such groups "would be formed" that would "enter[] the world's top ten").  The descriptions of these two programs thus make clear that they include such

---

[8]  Plaintiffs have submitted with their motion for summary judgment an English translation of two parts of Hesai's prospectus.  *See* Decl. of Lide E. Paterno ("Paterno Decl."), Exs. A-B, ECF No. 17-1.  The pagination of this translation corresponds to the pagination of the prospectus in the administrative record.  In citing these exhibits, Defendants refer first to the page number of the exhibit, and then (in parentheses) to the page number of the administrative record to which the translation corresponds.

measures as "promot[ing]" or "accelerat[ing]" the development of particular business practices in the smart car industry without indicating that participation in these measures (or other measures in these Plans) are mandatory for companies operating in the automotive industry.

So too the description of the Smart Sensor Guide—which has also been translated as MIIT's "Guideline on Three-year Action of Intelligent Sensor Industry (2017-2019)," *see id.*—states that the "two main tasks" of this plan (or guideline) are to "complete the shortcomings" of design and manufacturing key links and "promote" the upgrade of intelligent sensors, and to "carry out application demonstrations of intelligent sensors" for "key industries" (such as automobile electronics). *Id.* The prospectus's description of the Sensors and Intelligent Instruments Plan states the program's "overall goals" for 2013-25, which are for the "overall level" of the sensor and intelligent instrument industry to enter "the world's advanced ranks," for "industrial form" to change from production-oriented to service-oriented manufacturing, and for "key industrial security and major products" to "achieve independent manufacturing and autonomous control." *Id.* at 11 (A.R. 493). As with the other two programs, the prospectus's description of these programs do not phrase their "tasks" or "goals" in mandatory language. Instead, they are phrased in a manner suggesting that participation is voluntary on the part of smart car companies such as Hesai. Consequently, a reasonable finder of fact could rely on the descriptions of Hesai's participation in these MIIT programs to support the conclusion that Hesai had at least some degree of discretion in determining whether to participate in them and thereby affiliate itself with MIIT.[9]

---

[9] Additionally, Hesai errs in its contention that this conclusion by DoD would necessarily lead the agency to designate U.S. technology companies such as Apple and Tesla on the Section 1260H List. *See* Pls.' Mem. at 33. But Defendants do not contend that these companies satisfy the definition of a Chinese Military Company in Section 1260H.

*Second*, the record evidence shows that MIIT has established and oversees an industry partnership—the National Automotive Standardization Committee ("Committee")—that is intended to promote standardization in China's automotive industry, *see* A.R. 762, and that Hesai acts as a part of this partnership, *see id.* at 784-85.  Hesai's affiliation with this partnership is demonstrated by the company's (1) status as one of the main drafting entities of an automotive standard under the jurisdiction of the MIIT Committee, *see id.* at 785-90, and (2) participation in a conference organized by the Committee, *see id.* at 775-84.

The record evidence shows that the Committee was "established and provided business guidance by" MIIT, *id.* at 762, that the Committee exercises jurisdiction over the national standard plan entitled "Automotive LiDAR performance requirements and test methods," *id.* at 785, and that Hesai's subsidiary is listed first among the "main drafting units" of this national standard plan, *id.*  It also demonstrates that the director of the Safety and Quality Engineering Department of Hesai's subsidiary, Zhao Xin, participated in the Sixth International Exchange Conference on Intelligent Connected Vehicle Technology, Standards and Regulations, which was "jointly organized" by the MIIT Committee and another entity.  *See id.* at 775, 782.  Taken together with the other evidence marshalled by DoD, this evidence shows that as the main drafter of a national standard plan under the Committee's jurisdiction, and a participant in a conference co-organized by the Committee, Hesai is closely associated with MIIT in a subordinate position and shares a common purpose with MIIT.

Hesai's attempts to minimize the weight of this evidence are not persuasive.  *See* Pls.' Mem. at 34-37.  Initially, record evidence shows that the "professional scope" of the MIICommittee includes the responsibility for "national terminology, product classification, technical requirements, and testing of trucks, off-road vehicles, dump trucks, tractor-trailers,

special-purpose vehicles, passenger cars, cars and trains (including semitrailers and full trailers), motorcycles and electric vehicles." A.R. 763. The Committee is therefore both a "research partnership" and a "project" of the MIIT, and the statute specifically designates entities affiliated with such MIIT research partnerships and projects as "military-civil fusion contributors." Section 1260H(d)(2)(B). Accordingly, Plaintiff is mistaken in contending that Congress did not intend for entities affiliated with research partnerships and projects of MIIT to be designated under Subsection (d)(2)(B) as military-civil fusion contractors. Nor is it especially relevant that the record evidence does not apparently list any specific Hesai executive, employee, or Board member as a Committee member. The statute does not require such membership. It suffices that an entity is affiliated with MIIT, including MIIT research partnerships and projects, to be designated as a military-civil fusion contributor. Contrary to Plaintiff's representation, the record pages it cites do not show that Hesai merely recommended draft standards from the broader automotive industry; rather, they make clear that Hesai was foremost among the actual "main drafting units" of MIIT's national standard plan. *See* A.R. 785-86.

Hesai also devotes considerable space to observing that other entities whose representatives participated in the conference that was co-organized by the Committee were not included on the 1260H list, and that other organizations also listed as drafters of the Committee's plan were not included on the 1260H list. But these observations are largely beside the point. DoD's factual determination that Hesai is affiliated with the Committee is not based on this single piece of evidence, taken in isolation, that Hesai participated in the conference. So too, because DoD is not relying solely on Hesai's involvement as one of the main drafters of an MIIT plan as evidence of its affiliation with MIIT, it is immaterial that other organizations also listed as drafters of that plan—or that other organizations that have participated in the drafting of similar plans— were not

included on the 1260H list. Rather, it is the combined weight of the totality of the record evidence, rather than any single item, that supports DoD's factual determination. Moreover, Hesai has not explained why the other entities that it lists as having participated in the conference are similarly situated with respect to all of the other factors that supported DoD's factual determination.

*Third*, Hesai's application for and receipt of a Radio Transmitting Equipment Model Approval administrative license from MIIT, *see* A.R. 14, constitutes further evidence that Hesai is closely associated with MIIT in a dependent or subordinate position. A reasonable finder of fact who considered this evidence in conjunction with the other record evidence cited by DoD could reasonably conclude that Hesai is affiliated with MIIT.

Hesai's attempts to downplay the weight of this additional evidence are unpersuasive. Pls.' Mem. at 37-41. As an initial matter, Hesai misplaces its reliance on the canon of *expressio unius est exclusio alteris* in contending that Congress, by explicitly identifying those that received "military production licenses" as "military-civil fusion contributors," must necessarily have intended to *exclude* as military-civil fusion contributors other entities that received different types of licenses. This argument fails because the *expressio unius* canon applies only when "circumstances support a sensible inference that the term left out must have been meant to be excluded." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (citation omitted). No such inference is sensible here. Section 1260H identifies by name only one type of license (a military production license) issued by only one named entity (the Government of China). *See* Section 1260H(d)(2)(F). But the statute otherwise defines the term "military-civil fusion contributor" broadly, and it is not reasonable to infer that Congress intended to exclude receiving other types of licenses, for instance as constituting an "affiliat[ion] with" an arm of the Chinese state. "In any event, an equally pertinent canon of interpretation states that a congressional decision to prohibit certain activities

does *not* imply an intent to disable the relevant administrative body from taking similar action with respect to activities that pose a similar danger." *Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 694 (D.C. Cir. 1991).  There can be little doubt that Hesai's receipt of an administrative license from MITT poses a national security risk to the United States similar to receipt of a military production license.

Furthermore, the fact that the license that MIIT issued to Hesai was for the approval of "certain models of [Hesai's] laser gas sensor products," *see* Paterno Decl. Ex. B at 2, does not diminish the weight that should be afforded to that license's issuance.  Because Hesai "specializes in manufacturing LiDAR sensor products for automobiles," A.R. 14, the license approved products that serve as the core of the commercial services that Hesai provides and that could be used to contribute to the Chinese defense industrial base.

*Fourth*, Hesai's inclusion in the "Little Giants" program administered by MIIT, *see* A.R. 15, shows that it has a common purpose and shared characteristics with MIIT.  The Little Giants program is "key to the [Chinese] Communist Party's ambitious strategy to reposition the country's technology industry" and participation in the program "has become a valued measure of government endorsement, a signal for investors and employees that the companies are insulated from regulatory punishment."  A.R. 820.

Hesai's argument that its inclusion in the "Little Giant" program, in and of itself, does not justify the company's inclusion on the 1260H List, *see* Pl.'s Mem. at 39-40, is immaterial because DoD has not made that argument here.  The fact that MIIT included Hesai in this program is not a single factor to be considered in isolation but one of several data points that, taken together, furnish substantial evidence to support DoD's factual determination that Hesai is affiliated with MIIT.  It is also irrelevant (as Hesai observes) that MIIT may have included companies in the "Little Giants"

program that lack a military or defense connection when the commercial services that Hesai provides *do* have just such a connection.

The record evidence compiled by DoD, taken as a whole, more than suffices to allow a reasonable factfinder to conclude that Hesai is affiliated with MIIT. Especially in light of the "low bar" set by the substantial-evidence standard, *La. Pub. Serv. Comm'n*, 20 F.4th at 7, the record therefore contains sufficient evidence to support the inclusion of Hesai on the 1260H List.

## II.    The Court Should Not Impose An Illusory Statutory Obligation

The Court should reject Plaintiffs' alternative reading of Section 1260H, which would impose extra-statutory burdens on DoD not dictated by Congress. *See* Pls.' Mem. at 16-21. Plaintiffs argue that the Court should bifurcate Section 1260H(d)(1)(B)(i)(II) into two distinct requirements, demanding DoD to establish with respect to a particular entity: (i) the entity is a military-civil fusion contributor *and* (ii) the entity is a military-civil fusion contributor to the Chinese defense industrial base. *Id.* The crux of Plaintiffs' flawed reasoning is that DoD cannot show that a "military-civil fusion contributor" is a "Chinese Military Company," the focus of Section 1260H, without demonstrating that it contributes to the "Chinese defense industrial base." *Id.* at 17 ("Determining that a company contributes to the 'Chinese defense industrial base' . . . supplies the critical connection with the Chinese military that Section 1260H requires.").

Plaintiffs' argument makes no logical or linguistic sense. The first word of the operative statutory provision requires an entity placed on the Section 1260H List to be a *military*-civil fusion contributor. *See* Section 1260H(d)(1)(B)(i)(II). The straightforward reading of the statute, therefore, demands that an entity must be a contributor to the Chinese military that also has civil/commercial purposes. In fact, the very purpose of the entire statutory scheme is to identify Chinese military companies; it is illogical that DoD would inform Congress that a "military-civil

fusion contributor" has been placed on the Section 1260H List when that company does not also, by definition, contribute to the Chinese defense industrial base. Plaintiffs, without any explanation or argument, assert that "Chinese defense industrial base . . . must mean something different than 'military-civil fusion contributor.'" Pls.' Mem. at 16. The far more logical reading of the provision is that the two purported elements are inextricably intertwined: an entity placed on the Section 1260H List, such as Hesai, must be a military-civil fusion contributor to the Chinese defense industrial base. As discussed above, substantial evidence supports this determination.

## III.    The Court Should Reject Plaintiffs' Narrow Definition of "Affiliated With" MIIT

Defendants acknowledge that a different member of this Court interpreted "affiliated with"—in the context of a different statute, FY99 NDAA FY99 § 1237—to require "effective control." *See Luokung Tech. Corp.*, 538 F. Supp. 3d at 183-88; *Xiaomi*, 2021 WL 950144, *5-7. Respectfully, a prior decision by another member of this Court interpreting a different statute does not constitute binding precedent. *See Earth Island Inst. v. Coca-Cola Co.*, No. CV 21-1926 (PLF), 2022 WL 872605, at *6 (D.D.C. Mar. 24, 2022) ("The Supreme Court has clearly articulated that '[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.'" (quoting *Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011)); *see also, e.g.*, *Nepal v. United States Dep't of State*, 602 F. Supp. 3d 115, 126 (D.D.C. 2022) ("Generally, one district court decision is not binding on another district court.") (citation omitted).

Relying substantially on these non-binding precedents, Plaintiffs mistakenly argue that Section 1260H's use of the term "affiliated with" requires Hesai to be "effectively controlled" by MIIT. Pls.' Mem. at 22-27. Defendants disagree. A broader definition of "affiliated with" is warranted given that the term's ordinary definition readily encompasses associations "on the basis

of a common purpose or of shared characteristics." *See* Affiliated, Oxford English Dictionary, affiliated (adj.)[10]; *see also* Merriam-Webster, affiliated (adj.) ("closely associated with another typically in a dependent or subordinate position").[11]  Tellingly, Plaintiffs ignore the definition of the operative term, "affiliated with," instead relying on dictionary definitions of "affiliate," *i.e.*, the noun form of the word, not the adjectival phrase. *See* Pls.' Mem. at 23 (citing Affiliate, Black's Law Dictionary (12th ed. 2024); Webster's Third New Int'l Dictionary 35 (2002)).  Plaintiffs similarly cite statutory and regulatory definitions of "affiliate," cobbled together from other sources. *See id.* at 22, 24 (citing 2021 NDAA and 32 C.F.R. § 117.3).  But none of these definitions, either in dictionaries or ancillary government authorities, advance Plaintiffs' argument—the provisions define "affiliate," a term found nowhere in Section 1260H. *Id.*  Congress did not use the phrase "owned, controlled, or an affiliate of," it purposely used "affiliated with." *See Banks v. Booth*, 3 F.4th 445, 449 (D.C. Cir. 2021) ("Congress says what it means and means what it says.").

Moreover, the term "affiliated with" MIIT must be read in the greater context of the statutory provision in which it resides. *See Deal v. United States*, 508 U.S. 129, 132 (1993) (recognizing the "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used").  Section 1260H provides that an entity can be "affiliated with" MIIT if it engages in "research partnerships or projects" with the organization.  Section 1260H(d)(2)(B). The statute, therefore, captures a broad swath of entities that engage or partner with MIIT to conduct research or to participate in other MIIT projects, a vastly wider reach than Plaintiffs' narrow definition. *Id.*  Indeed, a student at a university cannot be said to be "effectively controlled"

---

[10]  https://www.oed.com/dictionary/affiliated_adj?tab=meaning_and_use#9323083 (last visited July 30, 2024).

[11]  https://www.merriam-webster.com/dictionary/affiliated#learn-more.

by an academic institution where he is conducting dissertation research even though he or she is engaged in a project at the university and thus "affiliated with" that university. In sum, Section 1260H captures a wider range of conduct than Plaintiffs advocate, evidenced by the language of the operative provision itself.

Plaintiffs' narrow definition would also render another provision within Section 1260H illogical. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *see also Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) ("[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."). The statute defines "military-civil fusion contributor," *inter alia*, as "[e]ntities residing in or affiliated with a military-civil fusion enterprise zone[.]" Section 1260H(d)(2)(E). If the Court adopts Plaintiffs' definition, a "military-civil fusion contributor" would encompass an entity that is "effectively controlled" by a geographic location, *i.e.* an "enterprise zone." It strains credulity that a piece of real property, such as an industrial park, can "effectively control" an entity in the same manner as an organization or corporation. The more logical reading of this provision is that an entity can be a "military-civil fusion contributor" by being associated with an enterprise zone, *i.e.,* physically located in an area for the common purpose of advancing particular technological advancements. Thus, the definition advocated by Plaintiffs fails.

In addition, Congress incorporated the term "control" into the definition of Chinese Military Company when it intended to do so, which it purposely did not do in Section 1260H(d)(2)(B). *See Ziglar v. Abbasi*, 582 U.S. 120, 143-44, (2017) (observing that "the silence of Congress is relevant" and that "[t]his silence is notable because it is likely that high-level

policies will attract the attention of Congress").  In a different Section 1260H provision, the statute defines "Chinese Military Company" to include entities "directly or indirectly owned, *controlled*, or beneficially owned by," among others, "any other organization subordinate to the Central Military Commission of the Chinese Communist Party[.]"    Section 1260H(d)(1)(B)(i)(I) (emphasis added).  If Congress intended the definition of Chinese Military Company to encompass an entity that is "effectively controlled" by MIIT—*i.e.,* Plaintiffs' preferred "affiliated with" definition—it would have simply said as much.  The silence of Congress is notable here because it used the term "controlled" in another Section 1260H provision in a statutory scheme involving "high level policies" of national security significance.  *Ziglar*, 582 U.S. at 143.

Even applying Plaintiffs' preferred definition, the administrative record supports DoD's determination.  *See* A.R. 9-17.  As discussed above, DoD relied on the strategic partnership between Hesai and MIIT to demonstrate a working, formalized relationship between the two entities.  A.R. 13.  Indeed, Hesai's prospectus for its Initial Public Offering on the Shanghai Stock Exchange named four Hesai programs and projects administered under MIIT—activities expressly contemplated in Section 1260H.  *Id*.; *see* Section 1260H(d)(2)(B) ("Entities affiliated with [MIIT], including *research partnerships and projects*.") (emphasis added).  Hesai also acts as part of the National Automotive Standardization Technical Committee, "an industry partnership intended to promote standardization in China's automotive industry," which MIIT established and oversees.  A.R. 13-14.  Further, Hesai applied for and received the Radio Transmitting Equipment Model Approval administrative license from the MIIT.  *Id.* at 14.  And MIIT functions as the Chinese government body in charge of the "Little Giants" program, whose participates receive guaranteed subsidies, tax cuts and other grants, including Hesai.  *Id.* at 15.

Finally, Plaintiffs argue that interpreting Section 1260H in the manner proposed by DoD violates the constitutional avoidance canon.  *See* Pls.' Mem. at 26-27.  In particular, Plaintiffs argue that the interpretation promoted by Defendants would "cover virtually all Chinese companies," raising due process and non-delegation "concerns."  *Id.* at 26.  Plaintiffs' hyperbolic argument cannot be squared with the facts.  DoD identified approximately forty-five (45) companies in 2023; to state the obvious, China incorporates exponentially more entities that have *not* been identified pursuant to the congressional mandate thrust on DoD.  Indeed, Plaintiffs themselves acknowledge that Hesai is the "*only* LiDAR company on the 1260H List[.]"  *Id.* at 27 (emphasis added).  And for good reason—only those companies with a common purpose and shared characteristics of MIIT fall within the reach of Section 1260H.  Defendants advocate for a reasonable interpretation of "affiliated with," supported by the phrase's ordinary meaning.

## IV.    DoD Based Its Decision to Place Hesai on the Section 1260H List on the Latest Information Available to It at the Time of the Identification

Plaintiffs' final argument conflates, for the second time, APA record review and constitutional due process arguments.  *See* Pls.' Mem. at 41-43.  Plaintiffs primarily argue that their March 2024 submission, which was submitted three months *after* DoD reached a final decision, should have been considered by the Deputy Secretary of Defense.  But DoD did not consider Plaintiff's submission because the decision-maker could not have evaluated information that the agency did not have in its possession at the time of the final agency action in January 2024.  "The task of the reviewing court is to apply the appropriate APA standard of review . . . to the agency decision based on the record the agency presents to the reviewing court."  *Fla. Power & Light Co.*, 470 U.S. at 743-44 (citation omitted); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) (noting that the "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court").  If DoD

ultimately decides to retain Hesai on the List, Plaintiffs may challenge that separate agency action, and the materials submitted by Hesai in March 2024 will be included in any future administrative record.

Plaintiffs superficially argue that DoD violated procedural due process by identifying them on the Section 1260H List. *See* Pls.' Mem. at 41. In particular, Plaintiffs contend that they have suffered reputational harm, asserting that they should have been afforded pre-deprivation notice prior to Hesai's identification. *Id.* It is not clear what legal theory Plaintiffs purportedly advance, as reputational harm alone is not sufficient to demonstrate a deprivation of a liberty or property interest such that they should be afforded due process rights. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (concluding that harm to reputation alone does not implicate any "liberty" or "property" interests sufficient to invoke the procedural protection of the due process clause); *see also, e.g.*, *Jefferson v. Harris*, 170 F. Supp. 3d 194, 205 (D.D.C. 2016) ("In this circuit, a plaintiff may avail himself of two different legal theories [liberty or property] to establish a reputation-based due-process violation."). Regardless, the D.C. Circuit has acknowledged that "due process is flexible and calls for such procedural protections as the particular situation demands." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 317 (D.C. Cir. 2014). Pre-deprivation notice is not necessarily required when, as here, national security and foreign policy concerns are at stake. *See, e.g.*, *Lopez Bello v. Smith*, 651 F. Supp. 3d 20, 40 (D.D.C. 2022), aff'd sub nom., *Bello v. Gacki*, 94 F.4th 1067 (D.C. Cir. 2024) (concluding that pre-deprivation notice is not required when declining to do so advances an important governmental interest such as preventing asset flight when implementing economic sanctions). If DoD afforded pre-deprivation notice in this context, Chinese military companies could alter their corporate structure, change their names, remove

evidence of their affiliation with China from the public record, or otherwise obfuscate their identities to avoid being placed on the List.

## V.    Plaintiffs Have Abandoned Their Remaining Claims

Plaintiffs have declined to meaningfully pursue several of the claims in their Complaint; the Court should consider them abandoned.  *See Aragon v. Tillerson*, 240 F. Supp. 3d 99, 108 n.4 (D.D.C. 2017) (concluding that the plaintiff abandoned a constitutional claim because it was not addressed in the briefing) (citing cases); *see also Stephenson v. Cox*, 223 F. Supp.2d 119, 122 (D.D.C. 2002) ("The court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf[.]").  Plaintiffs specifically do not address their supposed claims that:

- Defendants violated the equal protection clause of the U.S. Constitution by treating Hesai differently from similarly situated companies.  *See* Compl. ¶ 132 (citing no authority); *see also 3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (identifying "two essential elements to an equal protection claim: (1) disparate treatment of similarly situated parties (2) no rational basis").  In the Complaint, however, Plaintiffs do not even attempt to identify similarly situated parties, *see* Compl. ¶ 132, nor do they explain how the few companies they name in their opening brief are similarly situated.  *See* Pls.' Mem. at 33.  Moreover, the substantial evidence supporting Hesai's placement on the 1260H List, *see infra* Pt. I, plainly provides a rational basis for its listing.

- Defendants violated the constitutional non-delegation doctrine.  *See* Compl. ¶¶ 134-39 (citing *Mistretta v. United States*, 488 U.S. 361, 372 (1989) ("So long as Congress shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power." (quotation omitted))).  But an "intelligible principle" exists in Section 1260H: Chinese Military Companies affiliated with MIIT may be added to the List.

- Defendants violated the due process clause of the U.S. Constitution because certain undefined terms infringe upon the "void for vagueness" doctrine.  *See* Compl. ¶¶ 140-45 (citing *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required.")).  Here, the operative term, Chinese Military Company, has been comprehensively defined to include, among other entities, those who are affiliated with MIIT, such as Hesai.

To the extent Plaintiffs contend that the above claims have not been abandoned, the claims also lack merit and Defendants will address them more fully in their reply brief.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

Dated: July 31, 2024

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LAUREN A. WETZLER
Deputy Director, Federal Programs Branch


*/s/ Stephen M. Elliott*
STEPHEN M. ELLIOTT (PA Bar# 203986)
DANIEL RIESS
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel:  (202) 353-0889  Fax:  (202) 616-8470
E-mail:  stephen.m.elliott@usdoj.gov

*Counsel for Defendants*