## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civ. Action No. 1:24-cv-01381-PLF |
| U.S. DEPARTMENT OF DEFENSE, *et al.*, | |
| *Defendants*. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jtysse@akingump.com

Zach ZhenHe Tan
  *Admitted Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
100 Pine Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 765-9500
Facsimile:  (415) 765-9501

*Counsel to Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

ARGUMENT ...........................................................................................................................3

    I.    THE DEPARTMENT FAILED TO MAKE THE STATUTORILY REQUIRED FINDING THAT HESAI CONTRIBUTES "TO THE CHINESE DEFENSE INDUSTRIAL BASE" ....................................................3

    II.    THE FINDING THAT HESAI IS "AFFILIATED WITH" THE MINISTRY OF INDUSTRY AND INFORMATION TECHNOLOGY CONFLICTS WITH THE STATUTE AND IS UNSUPPORTED BY THE ADMINISTRATIVE RECORD ....................................................5

        A.    The Department Relies On A Flawed Legal Interpretation Of "Affiliated With" ...........................................................6

        B.    The Department's Primary Factual Finding Hinges On A Fundamental Error ..................................................10

        C.    The Department's Reliance On Other Disparate Pieces Of Irrelevant Information Fails To Support The 1260H Designation............12

    III.    THE DEPARTMENT HAS FAILED TO SATISFY ITS "ONGOING" STATUTORY DUTY TO REMOVE HESAI FROM THE SECTION 1260H LIST BASED ON "THE LATEST INFORMATION AVAILABLE"...........................................................16

CONCLUSION........................................................................................................................16

i

# TABLE OF AUTHORITIES

**CASES:**

*Chickasaw Nation v. United States,*
534 U.S. 84 (2001).............................................................................................7

*David v. Shalala,*
862 F. Supp. 1 (D.D.C. 1994)...........................................................................12

*Defenders of Wildlife v. Babbitt,*
958 F. Supp. 670 (D.D.C. 1997).......................................................................12

*Loper Bright Enters. v. Raimondo,*
144 S. Ct. 2244 (2024).......................................................................................6

*Luokung Tech. Corp. v. Department of Def.,*
538 F. Supp. 3d 174 (D.D.C. 2021).................................................................6, 7

*Mandel v. Associated Collection Serv. Inc.,*
No. 13-cv-02100, 2015 WL 1508842 (D. Ariz. Mar. 31, 2015)..........................7

*Pac. Nw. Newspaper Guild, Loc. 82 v. NLRB,*
877 F.2d 998 (D.C. Cir. 1989).........................................................................10

*Transcon. Gas Pipe Line Corp. v. FERC,*
907 F.2d 1211 (D.C. Cir. 1990).......................................................................12

*\*U.S. ex rel. Totten v. Bombardier Corp.,*
380 F.3d 488 (D.C. Cir. 2004).......................................................................3, 4

*Xiaomi Corp. v. Department of Def.,*
No. 21-cv-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021)........................6, 7, 15

**STATUTES AND REGULATION:**

5 U.S.C.
§ 706.....................................................................................................................6
§ 706(1)...............................................................................................................16

31 U.S.C.
§ 3729(a)(2)..........................................................................................................3

NDAA FY99 § 1237(b)(4)(B) ...............................................................................9

Pub. L. No. 116-283, 134 Stat. 3388 (2021)

§ 1260H(b)(1) ...............................................................................................16

§ 1260H(d)(1)(B)(i)(II) ...............................................................................3, 4

§ 1260H(d)(2)(B) ........................................................................................2, 7, 9

§ 1260H(d)(2)(D) .............................................................................................4

§ 1260H(d)(2)(E) ...............................................................................4, 7, 8, 9

§ 1260H(d)(3) ...................................................................................................9

28 C.F.R.

§ 46.102(d) .....................................................................................................13

## OTHER AUTHORITIES:

Int'l Econ. & Tech. Coop. Ctr. of Ministry of Indus. & Info. Tech., *Notice on Organizing the Application for Research Projects in the Field of International Advanced Manufacturing Clusters* (June 11, 2024) ....................................................8

Radarlock, *CRRC and Beijing's Dash For Global Rolling Stock Dominance* (Oct. 2019) ...............................................................................................................8

*Research*, MERRIAM-WEBSTER .....................................................................13

Sevastopulo, Demetri & Edward White, *China's Hesai to be removed from US defence department blacklist*, FIN. TIMES (Aug. 13, 2024) ..............................1

## INTRODUCTION

The Department's opposition and summary-judgment brief confirms what the administrative record already made clear:  the Department's decision to tar Hesai as a "Chinese military company" violates Section 1260H and rests on a wholly inadequate factual foundation.  For multiple independent reasons, the Court should order Hesai removed from the 1260H List—assuming Defendants do not remove Hesai voluntarily first.[1]

Most starkly, the Department concedes that it has no evidence—and made no finding—that Hesai is actually connected to the *Chinese military*.  Section 1260H defines a "Chinese military company" as one that contributes "to the Chinese defense industrial base."  But the Department undisputedly made no such finding; instead, it characterizes that statutory text as "illusory" because the language is "inextricably intertwined" with a separate, specifically defined element of the statute.  Fundamental principles of statutory interpretation foreclose the Department's novel approach of picking and choosing what parts of a statute to follow based on its own policy judgments.

Beyond that, the Department fails to demonstrate—as a matter of both law and fact—that Hesai is "affiliated with" the Chinese Ministry of Industry and Information Technology ("MIIT").  On the law, the Department substitutes what this Court has called the "plain and common meaning" of that statutory term—which requires a showing of at least effective control by the MIIT—with

---

[1] According to press reports published last week (August 13), the "Pentagon has decided to remove Hesai from its blacklist of Chinese military-affiliated companies after judging" that Hesai "did not meet the legal criteria for inclusion," *i.e.*, because "US government lawyers were concerned that the rationale for its inclusion would not hold up to legal scrutiny under the criteria outlined in the 2021 [NDAA] legislation."  Demetri Sevastopulo & Edward White, *China's Hesai to be removed from US defence department blacklist*, FIN. TIMES (Aug. 13, 2024), https://www.ft.com/content/97dff7c2-33e9-4729-a059-968e308cac49.  Hesai will notify this Court immediately if the Department makes an official announcement.

1

an amorphous inquiry into whether Hesai shares (undefined) "characteristics" or "purposes" with the MIIT. On the facts, the Department's superficial and qualified explanations about what "*could* lead a reasonable factfinder to conclude" that Hesai might somehow be affiliated with the MIIT come nowhere close to meeting the statutory standard. Defs.' Opp'n to Pls.' Mot. for Summ. J. & Cross-Mot. for Summ. J. ("Opp'n") 11, ECF No. 23 (emphasis added). Its decision to place Hesai on the 1260H List hinges on its identification of four "programs" by the MIIT that it asserts Hesai "worked on." But the record plainly shows—and the Department barely disputes—that these were not "programs" at all, but instead were national *policies* that benefitted entire industries, with no meaningful "work" (voluntary or not) involving Hesai. None of the Department's remaining evidence, demonstrating only commonplace business activities engaged in by scores of both foreign and domestic companies, substantiates the Department's decision.

Ultimately, the Department's position—which jettisons the requirement that an entity contribute "to the Chinese defense industrial base," and takes an entirely *ad hoc* approach to determining how "closely" an entity need be affiliated with the MIIT—would accord the Department essentially unlimited discretion. *See* Opp'n 20 (touting its definition's "vastly wider reach" (citing Sec. 1260H(d)(2)(B)). Indeed, nothing appears to prevent the Department from designating *any* company under the MIIT's regulatory jurisdiction—including the Chinese operations of Apple, Tesla, and various other U.S. companies—as a "Chinese military company." The Department never denies that upside-down result. The plain language of Section 1260H, interpreted under basic statutory construction principles, forecloses such an unconstrained delegation. The Department's designation of Hesai as a "Chinese military company" cannot stand.

**ARGUMENT**

**I.    THE DEPARTMENT FAILED TO MAKE THE STATUTORILY REQUIRED FINDING THAT HESAI CONTRIBUTES "TO THE CHINESE DEFENSE INDUSTRIAL BASE"**

The Department admits that it did not find that Hesai contributed "to the Chinese defense industrial base." Sec. 1260H(d)(1)(B)(i)(II); *see* Opp'n 1, 18–19. Because that clause constitutes a congressionally mandated component of a "Chinese military company," rather than an "illusory statutory requirement" that the Department is free to ignore (Opp'n 1), vacatur is required on this basis alone. *See* Pls.' Mot. for Summ. J. ("Mot.") 16–21, ECF No. 17.

The Department seeks to dodge that reality by arguing that its identification of Hesai as a "military-civil fusion contributor" negates any need to determine that the company also contributes "to the Chinese defense industrial base[.]" Sec. 1260H(d)(1)(B)(i)(II). But fundamental principles of statutory interpretation prohibit the Court (or the agency) from redlining the statute to strike language Congress purposefully included. For example, in *U.S. ex rel. Totten v. Bombardier Corporation*, the D.C. Circuit interpreted a provision within the False Claims Act that prohibited making "a false record or statement to get a false or fraudulent claim paid or approved *by the Government*[.]" 380 F.3d 488, 498 (D.C. Cir. 2004) (quoting 31 U.S.C. § 3729(a)(2)). While the False Claims Act generally imposed liability for defrauding the government, the Court held that the specific phrase "by the Government" must have independent meaning, thereby requiring that the Government itself (and not just a third party handling federal funds) be defrauded. *Id.* at 498–99. According to the Court, a broader construction would have suffered from the "fatal flaw" of "yield[ing] exactly the same meaning that would result if [the statute] did not contain the words 'by the Government' at all." *Id.* at 498.

The Department's proffered interpretation of Section 1260H suffers from the same "fatal flaw." Congress could have completely omitted the phrase "to the Chinese defense industrial

base"—and the statute would have "exactly the same meaning[.]" *Totten*, 380 F.3d at 498.  The Department does not respond to—and thus concedes—that fact.  That violation of the principle against superfluity is confirmed by Congress's decision to explicitly define (only) "[t]he term 'military-civil fusion contributor[,]'" Sec. 1260H(d)(2), separate and apart from "to the Chinese defense industrial base[,]" Sec. 1260H(d)(1)(B)(i)(II).  If the former was meant to subsume the latter, Congress would not have independently defined only a component of the broader definition of a "Chinese military company." *Id.*

The Department's argument (Opp'n 19) that the two statutory elements of a "Chinese military company" definition are "inextricably intertwined" is unpersuasive.  Although a factual finding that an entity is a "military-civil fusion contributor" under Section 1260H(d)(2) could potentially inform whether the entity contributes "to the Chinese defense industrial base" under Section 1260H(d)(10)(B)(i)(II)—such as evidence that an entity is "defined as a 'defense enterprise' by the State Council of the People's Republic of China" under Section 1260H(d)(2)(D)—that will not always be the case.  For example, an entity may be "residing in *** a military-civil fusion enterprise zone" for purposes of Section 1260H(d)(2)(E).  But unless that entity is actually providing goods or services "to the Chinese defense industrial base[,]" its mere residence there would not satisfy the definition of a "Chinese military company."  Sec. 1260H(d)(1)(B)(i)(II).  Or, as relevant here, a company could meet the Department's capacious understanding of what it means to be "affiliated with" the MIIT (and thus a "civil-military fusion contributor") by being subject to ministry policies that have nothing to do with contributions to the Chinese defense industrial base.

Beyond making no finding, the Department also does not contend that the record contains evidence that Hesai contributes "to the Chinese defense industrial base[,]" such as by supplying

4

"military weapon systems" or "parts to meet military requirements." Mot. 17–18 (citation omitted). Its finding that Hesai is "associated" with the MIIT cannot alone suffice, given the undisputed fact that the MIIT's sprawling regulatory ambit covers industries and companies with no military or defense connection. *See id.* at 19–20. Instead, the Department merely found that Hesai "manufactures and exports automotive three-dimensional LiDAR devices for us[age] in *vehicle fleets and autonomous robotics*"—without any additional finding that it provides these products "to the Chinese defense industrial base[.]" AR12 (emphasis added).

To accept the Department's approach—which requires no showing that a company supports the Chinese military in any manner—would mean that the Department could designate even "U.S. technology companies such as Apple and Tesla on the Section 1260H List[,]" based solely on their participation in Chinese industry. Opp'n 13 n.9. Rather than deny that conclusion, Defendants tepidly respond only that they "*do not contend* that these companies satisfy the definition of a Chinese Military Company in Section 1260H." *Id.* (emphasis added). But that is simply a concession that Defendants have the power to do so. That can't be right: Congress surely did not give Defendants the authority to designate even subsidiaries of *American companies with no Chinese military connections* as "Chinese military companies." Yet nothing in the Department's legal interpretation prevents that bizarre result.

Because the Department did not find that Hesai contributes "to the Chinese defense industrial base" (and because the record contains no facts supporting that finding), this Court need go no further to vacate the Department's decision.

## II. THE FINDING THAT HESAI IS "AFFILIATED WITH" THE MINISTRY OF INDUSTRY AND INFORMATION TECHNOLOGY CONFLICTS WITH THE STATUTE AND IS UNSUPPORTED BY THE ADMINISTRATIVE RECORD

The Department's finding that Hesai purportedly is "affiliated with" the MIIT is also replete with fatal legal and factual errors—and constitutes an independent ground for vacatur.

5

A.    **The Department Relies On A Flawed Legal Interpretation Of "Affiliated With"**

The Department points to zero authority in the statute or caselaw for its "broader definition of 'affiliated with[,]'" which it argues "encompasses associations 'on the basis of a common purpose or of shared characteristics.'" Opp'n 19–20 (quoting Oxford English Dictionary). That definition undisputedly sweeps far beyond the effective-control meaning that is supported by the overwhelming weight of caselaw involving relationships between entities (including in the entity-designation context specifically), analogous statutory examples (including in the same statute containing Section 1260H), and the Department's own regulations. *See* Mot. 22–27.

As an initial matter, the Department's appeals to deference (Opp'n 8–9) are unpersuasive. The Department receives no deference in interpreting the statute. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2270 (2024) (APA prohibits "yielding to an agency the express responsibility, vested in 'the reviewing *court*,' to 'decide all relevant questions of law' and 'interpret *** statutory provisions'" (quoting 5 U.S.C. § 706)). That is especially so because this dispute concerns "the scope of [the Department's] own power—perhaps the occasion on which abdication in favor of the agency is *least* appropriate." *Id.* at 2266. And even in the government's pre-*Loper Bright* authority, the courts did not permit the Department to override the plain meaning of statutory language. *Luokung Tech. Corp. v. Department of Def.*, 538 F. Supp. 3d 174, 182 (D.D.C. 2021) (rejecting Department's erroneous interpretation even while applying pre-*Loper Bright* deference related to issues of "national security"); *Xiaomi Corp. v. Department of Def.*, No. 21-cv-280, 2021 WL 950144, at *4 (D.D.C. Mar. 12, 2021) (same).

In defending its fuzzy standard, the Department never explains what "purpose" or "characteristics" a qualifying entity must share with the MIIT, other than to note that it encompasses a "broad swath of entities[.]" Opp'n 20. Even worse, the Department does not even

6

commit to that single definition, asserting elsewhere in its brief that an affiliation can alternatively be shown because "Hesai is closely associated with MIIT in a dependent or subordinate position." *Id.* at 16; *see id.* at 20 (quoting Merriam-Webster).  But again, the Department provides no functional definition of how "closely" an entity must be associated before a Section 1260H designation is warranted.  And of course, none of these novel rationales appears in the agency's contemporaneous decision memorandum—let alone in any judicial decision.

The Department's various reasons for straying from the "plain and common meaning" of "affiliated with" (*Xiaomi Corp.*, 2021 WL 950144, at *6 (citation omitted)) are unavailing.  *First*, rather than actually confront Hesai's many authorities, the Department argues they should all be disregarded to the extent they interpret the term "affiliate," because the statute here uses the "operative term, 'affiliated with[.]'" Opp'n 20.  But this Court rightly rejected that very argument in *Luokung*.  538 F. Supp. 3d at 184–85.  "Defendants [still] cite no support for their assertion that a broader reading due to the adjectival form is required."  *Id.*  After all, the terms "'affiliate' and 'affiliated with' are simply 'different forms of the same word, and the substantive meaning of the terms is the same[,]" as made clear by examples of the terms' consistent use across various regulatory contexts.  *Id.* at 185 (quoting *Mandel v. Associated Collection Serv. Inc.*, No. 13-cv-02100, 2015 WL 1508842, at *4 (D. Ariz. Mar. 31, 2015) (citing regulatory examples)).

*Second*, the Department argues that the addition of the phrase "including research partnerships and projects" in Section 1260H(d)(2)(e) indicates that Congress intended the statute to cover a "broad swath of entities" and have a "vastly wider reach[.]"  Opp'n 20–21  (emphasis omitted) (citing Sec. 1260H(d)(2)(B)).  But if Congress had intended to *widen* the meaning of "affiliated with," it would have used the word "and"—not the word "including," which indicates that the enumerated examples are merely "illustrative" of the general term.  *See Chickasaw Nation*

7

*v. United States*, 534 U.S. 84, 89–90 (2001) (rejecting interpretation that would have expanded the statutory text to say "including *** and" (alteration in original)).  That illustrative language simply clarifies that the MIIT may exert effective control in different ways, "including" through "research partnerships and projects."  For example, the MIIT specifically engages in "research projects" with entities that affirmatively submit an "application for research" to be conducted pursuant to "research requirements" set by the MIIT, under the condition that the "intellectual property rights of the final research results of the project belong to" the MIIT.  *See* Int'l Econ. & Tech. Coop. Ctr. of Ministry of Indus. & Info. Tech., *Notice on Organizing the Application for Research Projects in the Field of International Advanced Manufacturing Clusters* (June 11, 2024).[2]  But the Department offers zero evidence that Hesai is involved in *any* research projects with the MIIT, much less research projects that allow the MIIT to exert the necessary control over Hesai.

*Third*, the Department argues that Section 1260H(d)(2)(E), which refers to entities "affiliated with a military-civil fusion enterprise zone[,]" undermines the effective-control meaning of "affiliated with."  Opp'n 21 (quoting Sec. 1260H(d)(2)(E)).  Without any substantiation (other than an appeal to "credulity"), the Department bases this notion on the premise that an "enterprise zone" can refer only to a "geographic location[.]"  *Id.*  But just as a term (such as "the Pentagon" or "the United States") may refer to both a geographic area and a political entity, so too can the term "enterprise zone" refer to both a geographic area and its governing authorities.  *See, e.g.*, Radarlock, *CRRC and Beijing's Dash For Global Rolling Stock Dominance* (Oct. 2019) (noting that "enterprise zones" can "support their members with funding" and "create channels for

---

[2] https://miit-iie.com/h-nd-407.html (translated at https://miit--iie-com.translate.goog/h-nd-407.html?_x_tr_sl=auto&_x_tr_tl=en&_x_tr_hl=en-US&_x_tr_pto=wapp).

'research integration'").[3]  Indeed, it is the *Department's* definition of "affiliated with" that would render Section 1260H(d)(2)(E) "illogical," as it would be impossible for an entity to be "subordinate to" or "share a common purpose with" a piece of land.  And construing the term "affiliated with" to mean "physically located in" (Opp'n 21) would also swallow the neighboring term, "residing in," Sec. 1260H(d)(2)(E)—rendering that term (and Congress's use of the disjunctive "or") completely superfluous.

*Fourth*, the Department asserts that Congress's use of the term "controlled" in Section 1260H(d)(1)(B)(i)(I), which covers the relationships to the People's Liberation Army, proves that the term "affiliated" must have a different meaning when describing the connection to the MIIT. Opp'n 19.  But everyone agrees that the terms "affiliated" and "controlled" are not completely coterminous.  *E.g.*, NDAA FY99 § 1237(b)(4)(B) (defining a CCMC as an entity "owned or controlled by, or affiliated with, the People's Liberation Army").  The question is why Congress used the term "affiliated" in Section 1260H(d)(2)(B)—and the obvious explanation is that the Congress wanted to reach relationships involving at least "effective control" by the MIIT.  By contrast, accepting the Department's logic would lead to absurd results (*see* Mot. 24):  It would make it far easier for an entity to qualify as a "Chinese military company" based on its associations with the *MIIT* (a sprawling executive branch agency) than with the *People's Liberation Army* (*i.e.*, China's "land, naval, and air military services," Sec. 1260H(d)(3)).  Congress could not have intended that incongruous result.

*Finally*, the Department offers no response to Hesai's arguments that the Department's failure to define "affiliated with" (or other key terms) at the time it made its decision—and its *ad*

---

[3]    https://www.railwayage.com/wp-content/uploads/2019/11/Raderlock-CRRC-Report-October-2019.pdf.

*hoc* picking and choosing of which companies are "closely" associated enough to qualify as Chinese military companies—was itself arbitrary and capricious.  *See* Mot. 27–30; *see also Pac. Nw. Newspaper Guild, Loc. 82 v. NLRB*, 877 F.2d 998, 1003 (D.C. Cir. 1989) (describing "the core concern underlying the prohibition of arbitrary or capricious agency action" as preventing "impermissible 'ad hocery'").[4]

## B.    The Department's Primary Factual Finding Hinges On A Fundamental Error

Even if the Department had free reign to adopt its "broader" definition of "affiliated with," the record still would lack substantial evidence that Hesai "has a common purpose and shared characteristics with MIIT[,]" or is otherwise "closely associated" with it.  Opp'n 14.[5]

The Department's opposition ignores the decision memorandum's primary finding:  that Hesai was supposedly "working" on four MIIT "programs and projects."  AR13.  The Department instead argues, in conspicuously tentative fashion, that the evidence "*could* lead a reasonable factfinder to conclude" that Hesai "voluntar[ily] participat[ed] in these programs[.]"  Opp'n 11–12 (emphasis added); *see, e.g., id.* at 11 ("prospectus *could* lead a reasonable factfinder to conclude that an entity *such as Hesai* did, in fact, retain a *degree* of choice and discretion"); *id.* at 13 (descriptions "are phrased in a manner *suggesting* that participation is voluntary"); *id.* ("a reasonable finder of fact *could* rely on the descriptions *** to support the conclusion that Hesai had *at least some degree* of discretion") (emphases added).  The apparent reason for those qualified

---

[4] The Department makes a half-hearted effort to argue that the record still justifies its decision even under the proper definition of "affiliated with[.]"  Opp'n 22.  But nowhere in the administrative record can the Department identify any showing of "effective control" by the MIIT.

[5] Certainly nothing in the record could constitute substantial evidence of a close association *today*, given that the relevant Hesai prospectus is from 2020, and some of the cited government policies and conference attendance occurred more than a decade ago.  *See, e.g.*, AR13, 493 (referring to government policy issued as far back as 2013).

locutions is that the Department's *decision memorandum* contains no such distinction between "voluntary" and "non-voluntary" participation.

More importantly, these *post hoc* arguments beg the question:  As Hesai explained (and the Department ignores), these are not "programs" which Hesai could "work" on or "participate" in; rather, they are expressly described as government "policies" and "regulations" in the very document on which the Department relies.  AR491 (prospectus describing the "[m]ajor industry laws, regulations and policies and impacts on operation and development of issuer").  The only plausible characterization of Hesai's prospectus statements is that they are meant to explain to investors the "national policies[,]" from a variety of government entities, that concern its industry. AR491; *see* AR494 (summarizing that "governments at all levels have issued a number of policies to clearly develop the vehicle-mounted sensor technology and form an industrial scale, which has played a positive role in promoting the company's business development").  The Department cites no contrary authority.

Nor does anything else in the administrative record support the notion that these policies are "projects" or "partnerships" (let alone ones involving "research").  While the Department cherry-picks words from the description of these policies stating how certain technologies "should be accelerated" or "promoted[,]" Opp'n 12–13 (citation omitted), none of this language speaks to any actions *involving Hesai* that might signify "work" on, or "voluntary participation" in, these supposed "programs."  By way of example, the U.S. Department of Transportation might promulgate a policy of de-regulation to "accelerate" the growth of autonomous vehicles in the United States and might also define benchmarks to measure the development of the industry.  But that alone does not mean that Tesla, solely by virtue of operating in this regulated industry, is

"working on" a Department of Transportation "program," much less that Tesla is "affiliated with" the Department of Transportation in any meaningful sense.

At bottom, the Department's "glaringly faulty factual premises" underlying the primary basis for its decision is a "clear indication[] that the agency's decisionmaking" should be set aside as arbitrary and capricious. *Defenders of Wildlife v. Babbitt*, 958 F. Supp. 670, 681–82 (D.D.C. 1997).

### C.    The Department's Reliance On Other Disparate Pieces Of Irrelevant Information Fails To Support The 1260H Designation

The Department's remaining evidence cannot shore up its faulty decision.  At various points, the Department essentially acknowledges the independent weakness of each disparate piece of evidence relied on, arguing instead that "it is the combined weight of the totality of the record evidence, rather than any single item, that supports [its] factual determination."  Opp'n 15–16; *see id.* (determination "not based on this single piece of evidence, taken in isolation"); *id.* at 17–18 (cited fact "is not a single factor to be considered in isolation").  But if so, the removal of the Department's primary piece of evidence (the non-existent "programs" it purportedly identifies) significantly weakens the "combined weight" of the evidence.  And the Department's free-wheeling approach to weighing the remaining evidence deprives the Court of any way to evaluate the reasonableness of its decision.  *See Transcon. Gas Pipe Line Corp. v. FERC*, 907 F.2d 1211, 1214 (D.C. Cir. 1990) ("Before [reviewing court] can accord *** factors any weight, the [agency] must explain, based on the record evidence, how they influence the analysis[.]"); *David v. Shalala*, 862 F. Supp. 1, 4, 5 (D.D.C. 1994) (decision fails "substantial evidence" standard where decisionmaker fails to "explain sufficiently the weight he has given to particular items of probative evidence").

In any event, none of the three disparate facts that the Department relies on, whether viewed separately or together, is evidence of any affiliation with the MIIT.

*First*, Hesai's isolated interactions with the "National Automotive Standardization Technical Committee" ("NASTC") is not proof that it is affiliated with the MIIT. The Department does not deny that the NASTC is at most an industry partnership, *i.e.*, a partnership *among* industry members. *See* Mot. 34–35. While the MIIT might have established the NASTC, and the NASTC might have then gone on to organize conferences or standard-drafting efforts that Hesai participated in, nothing in the record establishes that Hesai worked *with the MIIT*. Hesai is not even a member of the NASTC itself (as the Department concedes, s*ee* Opp'n 15). As Hesai argued (*see* Mot. 34), Section 1260H does not encompass such indirect relationships to the MIIT—a point the Department implicitly acknowledges by asserting that Section 1260H requires an entity to be "*closely* associated" with the ministry. Opp'n 10, 14, 16, 20 (emphasis added).

Moreover, the Department's attempt to categorize Hesai's minor involvement in an industry conference and a standard drafting process as evidence of a "*research* partnership[] and project[]" is also unavailing. Opp'n 14–15 (emphasis added). The only record evidence is that the NASTC is concerned with international technical standard-setting, not "research." *See* 28 C.F.R. § 46.102(d) (federal regulation defining research as the "systematic investigation, including research development, testing, and evaluation, designed to develop or contribute to generalizable knowledge"); *Research*, Merriam-Webster (defining research as "investigation or experimentation aimed at the discovery and interpretation of facts").[6] The Department's attempts to mischaracterize these common industry activities—in which foreign government officials and companies from around the world participate, *see* Mot. 35–36—is another failed attempt at forcing

---

[6] https://www.merriam-webster.com/dictionary/research (last visited Aug. 20, 2024).

a square peg through a round hole.  And again, the Department never denies that, if participation in these commonplace activities renders Hesai a "Chinese military company," the Department could designate scores of global companies that participate in similar ways, too.

*Second*, Hesai's receipt of a Radio Transmitting Equipment Model license does not constitute evidence of an affiliation with the MIIT, either.  The Department acknowledges that Section 1260H's express enumeration of certain military licenses indicates Congress's concern with the receipt of certain types of licenses that present a national security threat.  Opp'n 16–17. But the Department relies on nothing beyond rhetoric to assert that the receipt of a generic technical (non-military) license presents the necessary national security risk or government affiliation to justify a "Chinese military company" designation.  *Id.* at 17.  In fact, as Hesai noted and the Department ignores, *see* Mot. 38–39, Apple received the same type of administrative Radio Transmitting Equipment Model license from MIIT for its iPhones.  Yet under the Department's (unexplained) reasoning, there would "be little doubt that [Apple's] receipt of [that] administrative license from MI[I]T poses a national security risk to the United States similar to [the] receipt of a military production license."  Opp'n 17.  That makes no sense.[7]

*Finally*, the Department largely retreats from defending its decision on the basis of Hesai's "Little Giants" designation, asserting only generally that the announcement indicates that the MIIT is interested in developing "the country's technology industry" and that such a fact should be thrown into the soup of "several data points" that the Department has identified.  Opp'n 17–18

---

[7] Additionally, the Department's suggestion that this "license approved products that serve as the core of the commercial services that Hesai provides and that could be used to contribute to the Chinese defense industrial base[,]" Opp'n 17, just further highlights its confusion about the facts.  As the record demonstrates, this license was for "laser gas sensor products."  AR579.  That is distinct from the "vehicle fleets and autonomous robotics" business that is the basis for Hesai's listing.  AR12.

(quoting AR820).  As Hesai has explained (*see* Mot. 39–40), the "Little Giants" designation is provided to a wide swath of companies, many of which have no discernible military or defense connection.  The Department's half-hearted and conclusory rejoinder that "the commercial services that Hesai provides *do* have just such a connection" (Opp'n 18) is unsupported by any record evidence—and the Department does not even try to pretend otherwise.  Even under the Department's expansive definition of "affiliated with," MIIT's own decision to designate an entity as a "Little Giant" does not establish that the receiving entity *itself* shares the ministry's goals or intentions, especially where there are thousands of entities on the receiving end of this common designation (a point that the Department again ignores).  Mot. 39–40.

***

The Department's record arguments are unpersuasive enough standing alone.  But they become untenable when coupled with the Department's legal positions—including that any requirement to show that an entity contributes "to the Chinese defense industrial base" is "illusory," and that the Department is free to apply a novel "broad[]" and "vast" definition of the term "affiliated with" that looks to amorphous shared "purposes" and "characteristics."  Despite its pleas, the Department should not be given untrammeled power to designate any commercial entity that operates in China as a "Chinese *military* company" in the absence of any record evidence whatsoever of a military or defense connection.  Were there any doubt that the plain text disallows such freewheeling discretion, the constitutional-avoidance canon, which applies to any "fairly possible" construction—let alone the "plain and common meaning" Hesai advocates, *Xiaomi Corp.*, 2021 WL 950144, at *6 (citation omitted)—would foreclose it.  *See* Mot. 26–27.

### III. THE DEPARTMENT HAS FAILED TO SATISFY ITS "ONGOING" STATUTORY DUTY TO REMOVE HESAI FROM THE SECTION 1260H LIST BASED ON "THE LATEST INFORMATION AVAILABLE"

The aforementioned legal and factual errors are more than sufficient to warrant vacatur. But the Court should also grant Plaintiffs summary judgment on Hesai's independent claim that the Department has failed to act in accordance with the "latest information available[,]" as required by Section 1260H(b)(3) and due process principles.[8]

The Department's only defense to this claim is that it has not *yet* made a decision as to whether to "retain Hesai on the List," and that Hesai may challenge such action in the future. Opp'n 23–24. But that is cold comfort for Hesai, given that the Department has failed to remove the company from the 1260H List five months (and counting) after its March 2024 evidentiary submission. That submission, moreover, was Hesai's first—and besides this litigation, only— opportunity to challenge the basis for the Department's unfounded action. Whatever the Department decides to do with its "annual report" that is due in the coming year, Sec. 1260H(b)(1), the Department is presently violating its separate duty to make "*ongoing* revisions[,]" including "deletions[,]" to the Section 1260H list "based on the latest information available." Sec. 1260H(b)(3) (emphasis added). The Court need not wait to order effective relief. 5 U.S.C. § 706(1) ("reviewing court shall *** compel agency action unlawfully withheld").

### CONCLUSION

For the foregoing reasons, Hesai respectfully requests that the Court grant summary judgment in its favor and deny Defendants' cross-motion for summary judgment.

---

[8] Hesai's remaining due process and equal protection claims (*see* Opp'n 25–26) were asserted before the administrative record was made available and the Department gave any justification for its designation decision. Now that the Department has provided the record, it is clear that the Court can decide this case on the traditional APA and statutory grounds described above.

Respectfully submitted,

_/s James E. Tysse_____

Dated:  August 21, 2024

James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jtysse@akingump.com

Zach ZhenHe Tan
  *Admitted Pro Hac Vice*
AKIN GUMP STRAUSS HAUER & FELD LLP
100 Pine Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 765-9500
Facsimile:  (415) 765-9501

*Counsel to Plaintiffs Hesai Technology Co., Ltd.*
*and Hesai Inc.*

17