IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )   Civil Action No. 1:24-cv-01381 |
| U.S. DEP'T OF DEFENSE, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LAUREN A. WETZLER
Deputy Director, Federal Programs Branch

STEPHEN M. ELLIOTT (PA Bar# 203986)
DANIEL RIESS
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel:  (202) 353-0889  Fax:  (202) 616-8470
E-mail:  stephen.m.elliott@usdoj.gov

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I.      Substantial Evidence Supports the Department of Defense's Determination that Hesai is "Affiliated With" MIIT .................................................................................. 2

II      The Court Should Not Impose An Illusory Statutory Obligation ................................... 6

III.    The Court Should Reject Plaintiffs' Narrow Definition of "Affiliated With" MIIT ................................................................................................................................ 9

IV.    The Department of Defense Continues to Reassess Hesai's Placement on the Section 1260H List Based on the Latest Information Available .............................. 14

V.     Plaintiffs Have Abandoned Their Remaining Claims ................................................... 15

CONCLUSION .............................................................................................................................. 16

**INTRODUCTION**

Substantial evidence demonstrates that Plaintiffs Hesai Technology Co. Ltd. and its wholly owned subsidiary Hesai Group, Inc. (collectively, "Plaintiffs" or "Hesai") are "affiliated with" the Chinese Ministry of Industry and Information Technology ("MIIT"), and therefore the Department of Defense ("DoD") properly identified Hesai as a Chinese military company pursuant to Section 1260H of the National Defense Authorization Act for Fiscal Year 2021 ("Section 1260H List" or "the List"). Plaintiffs' arguments to the contrary each fail. First, Section 1260H does not require DoD to establish that Hesai independently satisfies the definition of a "military-civil fusion contributor" *and* contributes to the "Chinese defense industrial base." Instead, by satisfying the definition of a military-civil fusion contributor, Hesai necessarily contributes to the Chinese defense industrial base as a Chinese military company. Second, the Court is not bound by the overly restrictive definition of "affiliated with" that was adopted by another member of this Court when interpreting a different statute. Rather, the Court should apply the ordinary definition of "affiliated with," and in doing so, it becomes readily apparent Hesai is "affiliated with" MIIT through their close association and shared common purpose. Third, DoD continues to abide by its ongoing obligation to assess the propriety of Hesai's placement on the List, including the evaluation of Plaintiffs' March 2024 submission. Notwithstanding Plaintiffs' unsupported protestations that DoD's careful reconsideration of its decision has taken too long, there is no statutorily proscribed timetable for reaching a new determination.

For these reasons and those addressed in Defendants' opening brief, the Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

**ARGUMENT**

I.  **Substantial Evidence Supports DoD's Determination that Hesai is "Affiliated With" MIIT**

As Defendants' opening brief explains, *see* Defs.' Opp'n and Cross-Mot. for Summ. J. at 9-18, ECF No. 23 ("Defs.' Mot."), the administrative record contains sufficient evidence to support DoD's factual determination that Hesai is a military-civil fusion contributor to the Chinese defense industrial base "due to its affiliation with the Chinese MIIT, including research partnerships and projects." Re-Certified Administrative Record ("A.R.") 13. Specifically, record evidence demonstrates that: (1) MIIT administers four programs and projects in which Hesai's wholly-owned subsidiary participates; (2) MIIT has established and oversees an industry partnership in which Hesai participates; (3) MIIT provided an administrative license to Hesai; and (4) MIIT administers the "Little Giants" program, of which Hesai is an officially recognized company. In the face of such evidence, a reasonable factfinder could readily conclude that Hesai is "affiliated with" MIIT because Hesai is associated with MIIT on the basis of a common purpose or of shared characteristics or, alternatively, that Hesai is closely associated with MIIT in a dependent or subordinate position. *See infra* part III; *see also, e.g., Sec'y of Lab. v. Knight Hawk Coal, LLC*, 991 F.3d 1297, 1308 (D.C. Cir. 2021) (under substantial-evidence standard, "the question is whether a theoretical 'reasonable factfinder' could have reached the conclusions actually reached by the [agency]" (citation and internal punctuation omitted)).[1] Hesai's efforts to minimize the weight of this evidence are unpersuasive.

---

[1] Hesai criticizes DoD for using what it calls "tentative" language, like the words "could" and "might," to describe what a reasonable factfinder is required to conclude, *see* Pls.' Reply and Opp'n to Defs.' Cross-Mot. at 10, ECF No. 26 ("Pls.' Opp'n"), but those terms are drawn directly from the governing case law. *See, e,g., Pham v. Nat'l Transp. Safety Bd.*, 33 F.4th 576, 581 (D.C. Cir. 2022) (under the relevant APA standard, substantial evidence is "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion" (emphasis added) (citation

*First*, in Hesai's prospectus of its Shanghai Stock Exchange public offering, Hesai noted its participation in three plans and one action guide administered under MIIT. *See* A.R. 13. In its briefing, Hesai fails to represent that it lacked any choice except to comply with these projects, or that it had no discretion or agency in determining whether to participate in them. A reasonable finder of fact could thus determine that Hesai made an informed, deliberate decision to closely associate itself with MIIT in a dependent or subordinate position, and that it shares a common purpose and common characteristics with MIIT. Hesai is thus affiliated with MIIT.

Hesai errs in asserting that crediting DoD's conclusion would necessarily mean that "solely by operating in [a] regulated industry," a U.S. technology company such as Tesla would be considered to be "affiliated with" the U.S. Department of Transportation under the relevant definition. *See* Pls.' Opp'n at 11-12. DoD's determination that Hesai is affiliated with MIIT does not depend "solely" on Hesai's participation in these MIIT projects. Instead, it is the combined weight of this piece of evidence, taken together with the other evidence contained in the administrative record, that supports DoD's determination.[2]

---

omitted)); *Finberg v. U.S. Dep't of Agric.*, 6 F.4th 1332, 1336 (D.C. Cir. 2021) ("Substantial evidence is lacking if, considering the record as a whole, no reasonable factfinder *could* have made the same finding as the agency." (emphasis added)).

[2] Hesai also misplaces its reliance on the caselaw it cites. *See id.* at 12. In *Transcontinental Gas Pipe Line Corp. v. FERC*, 907 F.2d 1211 (D.C. Cir. 1990), the agency had "previously determined" that a regulated entity could rebut a presumption of anti-competitiveness under a particular criterion, known as "the third *Seaboard* criterion." *Id*. at 1213. Despite this previous determination, the D.C. Circuit explained, the agency's decision in the case under review "suggest[ed] that [the agency] has impermissibly adopted a new test without providing any explanation for its change in policy." *Id*. at 1214. The non-truncated quotation of the sentence cited in Hesai's brief thus reads: "Before we can accord these factors [offered by the agency] any weight, the Commission must explain, based on the record evidence, how they influence the analysis under the third *Seaboard* criterion." *Id*. In other words, contrary to Hesai's assertion, the D.C. Circuit found error not due to any alleged deficiency in the agency's explanation of its decision but instead in the agency's apparent adoption of a new standard for reaching that decision. Similarly inapposite is *Davis v. Shalala*, 862 F. Supp. 1 (D.D.C. 1994). Rather than involving

3

*Second*, there is substantial evidence in the record that MIIT has established and oversees an industry partnership—the National Automotive Standardization Committee (Committee)—and that Hesai acts as part of this partnership. *See* A.R. 762, 784-85. Hesai was one of the main drafting entities of an automotive standard under the jurisdiction of the Committee, *see id*. at A.R. 785-90, and participated in a conference organized by the Committee, *see id*. at A.R. 775-84. Because the Committee's "professional scope" includes the responsibility for "national terminology, product classification, technical requirements, and testing of trucks, off-road vehicles, dump trucks, tractor-trailers, special-purpose vehicles, passenger cars, cars and trains (including semitrailers and full trailers), motorcycles and electric vehicles," *id*. at A.R. 763, the Committee is a "research partnership" and a "project" of the MIIT. Section 1260H specifically designates entities affiliated with such MIIT research partnerships and projects—such as Hesai—as "military-civil fusion contributors." Sec. 1260H(d)(2)(B).

Hesai's attempts to downplay its affiliation with the Committee as "isolated interactions" or as part of an "indirect relationship[]," Pls.' Opp'n at 13, are not persuasive in light of Hesai's voluntary decision to participate as the main drafting entity of an automotive standard under the jurisdiction of the Committee, and to participate in a conference that the Committee organized. It is irrelevant whether (as Hesai contends) the work it performed for the Committee involved "research" per se. The statute requires only that an entity be affiliated with an MIIT research partnership or project, and not that the specific work performed by the entity affiliated with the partnership or project be research-oriented in nature.

---

review of agency action under the APA, *Davis* instead reviewed a Social Security disability decision made by an administrative law judge. *See id*. at 4 (citing 42 U.S.C. §§ 405(g) and 1383(c)(3), rather than the APA, as governing the standard of review).

*Third*, Hesai received a Radio Transmitting Equipment Model Approval administrative license from MIIT. *See* A.R. 14. Based on this fact, together with the other record evidence cited by DoD, a reasonable factfinder could conclude that Hesai is closely associated with MIIT in a subordinate or dependent position. Hesai's observation that Apple has received similar licenses for its iPhone models, Pls.' Opp'n at 14, is immaterial because Hesai has not shown that Apple is similarly situated to Hesai with respect to all of the other factors that support DoD's determination. And contrary to Hesai's representation, the fact that this administrative license was for the approval of "certain models of [Hesai's] laser gas sensor products," *see* Paterno Decl. Ex. B at 2, is consistent with DoD's determination that Hesai "is engaged in providing commercial services . . . because it manufactures and exports automotive three-dimensional LiDAR devices for using in vehicle fleets and autonomous robotics," A.R. 12. By approving Hesai's LiDAR sensor products for automobiles, the license granted by MIIT necessarily approved products that serve as the core of the commercial services that Hesai provides.

*Fourth*, the fact that MIIT included Hesai in the "Little Giants" program shows that the two entities have a common purpose and shared characteristics. As explained previously, a reasonable factfinder who considered this piece of evidence in conjunction with the other record evidence cited by DoD could conclude that Hesai is affiliated with MIIT. And it is irrelevant that other companies included in the "Little Giants" program may lack a "military or defense connection," Pls.' Opp'n at 15, because the commercial services provided by Hesai *do* have such a connection. Hesai manufactures and exports automotive three-dimensional LiDAR devices for use in vehicle fleets and autonomous robotics. A.R. 12. Both vehicle fleets (*i.e.*, groups of vehicles owned and operated by businesses or government organizations) and autonomous robotics (*i.e.*,

5

the use of intelligent machines that operate and perform tasks without human intervention) have readily apparent military uses.[3]

"Substantial-evidence review is highly deferential to the agency fact-finder, requiring only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Knight Hawk Coal*, 991 F.3d at 1308 (quoting *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). In reviewing the agency's factual determination, courts "may not reject reasonable findings and conclusions, even if [they] would have weighed the evidence differently." *Id*. (quoting *Cumberland Coal Res., LP v. Fed. Mine Safety & Health Rev. Comm'n*, 717 F.3d 1020, 1028 (D.C. Cir. 2013)). And "reversal of an agency decision under the substantial evidence standard is rare." *Id*. (quoting *Rossello*, 529 F.3d at 1185). Here, a reasonable factfinder examining all four categories of record evidence could accept DoD's factual determination that Hesai is affiliated with MIIT. The Court should therefore uphold the agency's determination under the highly deferential substantial-evidence standard.

## II. The Court Should Not Impose An Illusory Statutory Obligation

The Court should reject Plaintiffs' argument that Section 1260H imposes a non-existent statutory condition on DoD. *See* Pls.' Mem. at 16-21. Plaintiffs argue that the Court should separate Section 1260H(d)(1)(B)(i)(II) into two distinct requirements, demanding DoD to establish

---

[3] Hesai also misplaces its reliance on the canon of constitutional avoidance in contending that DoD's construction of Section 1260H affords the agency "untrammeled power" to designate entities affiliated with the Government of China. Pls.' Opp'n at 15. As noted previously, DoD has used its statutory authority in an appropriate, targeted manner, having listed only approximately forty-five companies in 2023. *See* A.R. 4-6. And in any event, Hesai has failed to demonstrate that DoD's reasonable interpretation of Section 1260H, as applied in this case, raises "grave and doubtful constitutional questions" that could trigger the application of constitutional-avoidance principles. *Ctr. for Arms Control & Non-Proliferation v. Pray*, 531 F.3d 836, 842 (D.C. Cir. 2008) (quoting *Jones v. United States*, 526 U.S. 227, 239 (1999)); *see also Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 230 (2020) ("Constitutional avoidance is not a license to rewrite Congress's work to say whatever the Constitution needs it to say in a given situation.").

that an entity separately both meets the definition of "a military-civil fusion contributor," *and* "contribut[es] to the Chinese defense industrial base." *Id.* But Congress imposed no such requirement. To the contrary, in defining "Chinese military company," Congress requires DoD to place on the Section 1260H List entities: (1) "identified as a military-civil fusion contributor to the Chinese defense industrial base," (the identification requirement); and (2) that are "engaged in providing commercial services, manufacturing, producing, or exporting," (the conduct requirement). Sec. 1260H(d)(1)(B)(i)(I), (d)(1)(B)(ii). In other words, Section 1260H(d)(1)(B)(i)(I) identifies the entities that DoD must assess for placement on the List, while Section 1260H(d)(1)(B)(ii) articulates the requisite conduct. Plaintiffs, on the other hand, conflate the identification and conduct requirements, in contravention of Congress' intent. *See, e.g.*, Pls.' Opp'n at 4-5 (faulting DoD for not establishing that Hesai supplies "military weapons systems" or "parts to meet military requirements"). Had Congress intended to adopt Plaintiffs' preferred reading, it could have done so by phrasing Section 1260H(d)(1)(B)(i)(II) differently, such as defining Chinese military companies as those entities "identified as a military-civil fusion contributor that supply materiel to the Chinese defense industrial base." The far more logical reading of the statute is that the two parts of Section 1260H(d)(1)(B)(i)(II), ostensibly bifurcated by Plaintiffs, are inextricably intertwined: an entity contributes to the Chinese defense industrial base by virtue of it being a *military*-civil fusion contributor.

Plaintiffs contend that the Court should rely on the D.C. Circuit's decision in *U.S. ex rel. Totten v. Bombardier*. *See* Pls.' Opp'n at 3. That case, however, is readily distinguished. In *U.S. ex rel. Totten*, the D.C. Circuit had to decide, *inter alia*, whether the False Claims Act—specifically the phrase "a false record or statement to get a false or fraudulent claim paid or approved by the Government"—requires that the United States Government itself must be defrauded, as opposed

7

to a third-party federal funding recipient. 380 F.3d 488, 498 (D.C. Cir. 2004). The Court concluded that the term "by the Government" would be rendered superfluous if violators could run afoul of the False Claims Act by fraudulently using federal funds disbursed by a non-government party. *Id.* But in doing so, the Court largely based its decision on the unique legislative history there; Congress amended the original version of the False Claims Act to, among other things, specifically add the phrase "by the Government." *Id.* at 499 ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." (citation omitted)). Here, in contrast, Congress has retained the phrase "military-civil fusion contributor to the Chinese defense industrial base" since the inception of Section 1260H. Sec. 1260H(d)(1)(B)(i)(II). Moreover, the term "Chinese defense industrial base" has in no way been rendered superfluous—entities, such as Hesai, necessarily contribute to the Chinese defense industrial base by virtue of satisfying the statutory definition of a "*military*-civil fusion contributor," meaning that they are a Chinese *military* company. *Id*.

Further, Plaintiffs incorrectly label as "unpersuasive" Defendants' argument that the two supposed phrases in Section 1260H(d)(1)(B)(II) are inextricably intertwined. *See* Pls.' Opp'n at 4. Plaintiffs concede, as they must, that DoD's factual determination that an entity satisfies the definition of "military-civil fusion contributor" could satisfy their so-called "defense industrial base" requirement. *Id.* But they allege that "will not always be the case," arguing, for example, that an entity that resides in a "military-civil fusion enterprise zone" does not necessarily provide goods or services to the Chinese defense industrial base. *Id.* Plaintiffs miss the point. By virtue of residing in a *military*-civil fusion enterprise zone and thus satisfying the definition of a *military*-civil fusion contributor, thereby qualifying as a Chinese *military* company, Congress has determined that the entity contributes to the Chinese defense industrial base.

Plaintiffs also fault DoD for not making a finding that Hesai supplied "military weapons systems" or "parts to meet military requirements." Pls.' Opp'n at 4-5. Once again, Plaintiffs' argument is misguided. Section 1260H(d)(1)(B) does not contain any requirement that materiel be supplied to the Chinese military. Rather, Section 1260H(d)(1)(B)(ii) merely requires that DoD demonstrate that Hesai, as a military-civil fusion contributor, "engaged in providing commercial services, manufacturing, producing, or exporting," which DoD has readily shown—as Plaintiffs acknowledge. *See* Pls.' Opp'n at 5 (noting that DoD "merely found" that Hesai "manufactures and exports automotive three-dimensional LiDAR devices").

Finally, Plaintiffs renew their hyperbolic argument that, without the application of their preferred statutory reading, DoD could identify Apple or Tesla as Chinese military companies "based solely on their participation in Chinese industry." Pls.' Opp'n at 5. This flawed reasoning ignores the express statutory language adopted by Congress. If an entity satisfies the definition of a *military*-civil fusion contributor and thus is a Chinese *military* company, DoD has an obligation to identify the entity on the Section 1260H List. But such identification is not due merely to a company's "participation in Chinese industry"—DoD would have made the factual determination that the entity satisfies the definition of a Chinese *military* company that Congress set forth.

### III. The Court Should Reject Plaintiffs' Narrow Definition of "Affiliated With" MIIT

Relying substantially on non-binding district court precedent, Plaintiffs mistakenly argue that Section 1260H's use of the term "affiliated with" requires Hesai to be "effectively controlled" by MIIT. *See* Pls.' Mem. at 22-27 (citing *See Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174 (D.D.C. 2021); *Xiaomi Corp. v. Dep't of Def.*, Case No. 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021)); *see also* Pls.' Opp'n at 7 (same). "The Supreme Court has clearly articulated that '[a] decision of a federal district court judge is not binding precedent in either a

9

different judicial district, the same judicial district, or even upon the same judge in a different case.'" *Earth Island Inst. v. Coca-Cola Co.*, No. 21-1926 (PLF), 2022 WL 872605, at *6 (D.D.C. Mar. 24, 2022) (quoting *Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011)).  In any event, a broader definition of "affiliated with" is warranted here given that the term's ordinary definition readily encompasses associations "on the basis of a common purpose or of shared characteristics." *See Affiliated*, Oxford English Dictionary, affiliated (adj.)[4]; *see also Affiliated*, Merriam-Webster, (adj.) ("closely associated with another typically in a dependent or subordinate position").[5] Revealingly, Plaintiffs continue to argue that the Court should apply the definition of the term "affiliate," ignoring the reality that Section 1260H includes the term "affiliated with."  *See* Pls.' Mem. at 23 (citing *Affiliate*, Black's Law Dictionary (12th ed. 2024); Webster's Third New Int'l Dictionary 35 (2002)); Pls.' Opp'n at 7 (same).  Again, Congress did not use the phrase "owned, controlled, or an affiliate of," it purposely used "affiliated with the [MIIT], including research partnerships and projects."  *See Banks v. Booth*, 3 F.4th 445, 449 (D.C. Cir. 2021) ("Congress says what it means and means what it says.").

Plaintiffs curiously raise, "[a]s an initial matter," the Supreme Court's recent decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2270 (2024).  *See* Pls.' Opp'n at 6.  In doing so, Plaintiffs confuse the appropriate respect accorded to the political branches on matters of foreign policy and national security, with deference to agency interpretations of ambiguous statutory provisions addressed in *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  *Compare* Pls.' Opp'n at 6 ("The Department receives no deference in interpreting the statute."), *with* Defs.' Mot. at 9 ("This deference is further heightened in cases such as this one that

---

[4] https://www.oed.com/dictionary/affiliated_adj?tab=meaning_and_use#9323083 (last visited July 30, 2024).

[5] https://www.merriam-webster.com/dictionary/affiliated#learn-more.

10

involve national security and foreign affairs."). But the traditional respect accorded to the Executive Branch's views on matters involving national security does not flow, as *Chevron* deference did, from assumptions that Congress has left gaps in ambiguous statutes to be filled by agency expertise in the course of APA rulemaking. Rather, such respect follows from Article II principles inherent in the Executive's authority over foreign affairs. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936) (noting the "very delicate, plenary and exclusive power of the President as the sole organ of the federal government in the field of international relations—a power which does not require as a basis for its exercise an act of Congress"). For this reason, the cases cited by Defendants for the proposition that courts generally give great weight to the Executive Branch on national security issues do not rely on (or even cite) *Chevron*. *See, e.g.*, *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007). Thus, the traditional consideration accorded to the Department of Defense stems from separation-of-powers principles and a caution against judicial interference in foreign relations and national security matters, not *Chevron*. *See, e.g.*, *Regan v. Wald*, 468 U.S. 222, 242 (1984) ("Matters relating to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference" and warrant judicial "deference" ( citation and quotation marks omitted)). *Loper Bright Enters.* did not address this form of deference to the Executive and is thus inapposite.

Next, Plaintiffs contend that the presence of the phrase "including research partnerships and projects" does not broaden the meaning of "affiliated with" because the term "including" means that "partnerships and projects" is merely "illustrative." *See* Pls.' Opp'n at 7. But that is precisely the point. An entity, such as Hesai, can be "affiliated with" MIIT and thus a military-civil fusion contributor simply by engaging in projects with MIIT. It does not follow that MIIT

11

has "effective control" over an entity simply because the two participate in a project together. To the contrary, two entities partnering on a project signifies an association based on a common purpose, not one partner controlling the other partner. Nor can a particular project control its participants. Thus, the statutory language itself supports Defendants' broader definition of "affiliated with."

Relying on their unduly narrow definition of "affiliated with," Plaintiffs also contend that an entity can be effectively controlled by a physical location, in this case a "military-civil fusion enterprise zone." *See* Pls.' Opp'n at 8-9. But an alternative interpretation of "affiliated with" is readily available and far less absurd. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). Under the ordinary definition of "affiliated with," an entity can be a military-civil fusion contributor by being associated with an enterprise zone, and thus working for the common purpose of advancing particular technological advancements. While Plaintiffs claim that "a term . . . may refer to both a geographic area and a political entity," there is no evidence in the record to establish that a "military-civil fusion enterprise zone" constitutes anything more than a geographic location with an assembly of corporations working toward a common technological purpose or goal.

Finally, Plaintiffs argue that the decision by Congress not to incorporate the phrase "effective control" in Section 1260H(d)(2)(B) has no relevance. *See* Pls.' Opp'n at 9. But "the silence of Congress is relevant; and here that silence is telling." *Ziglar v. Abbasi*, 582 U.S. 120, 143-44, (2017). The United States Government has long expressed significant concerns about the national security threat posed by the relationship between Chinese technology companies and the Chinese state. *See, e.g.*, Off. of the Sec'y of Def., Ann. Rep. to Cong.: Mil. & Sec. Devs. Involving

12

Case 1:24-cv-01381-PLF   Document 28   Filed 09/04/24   Page 15 of 18

the People's Republic of China, at 42 (2011) ("China's defense industry has benefited from integration with a rapidly expanding civilian economy and science and technology sector, particularly elements that have access to foreign technology.").[6]  "The Chinese government's military–civil fusion policy aims to spur innovation and economic growth through an array of policies . . . while leveraging the fruits of civilian innovation for China's defense sector." U.S.-China Econ. & Sec. Rev. Comm'n, 2018 Ann. Rep., Ch. 3 § 2 – Emerging Technologies and Military-Civil Fusion: Artificial Intelligence, New Materials, and New Energy ("U.S. China Comm'n 2018 Rep.").[7]  As such, the decision *not* to include "effective control" in Section 1260H demonstrates that Congress made a conscious decision, especially given the thoughtful consideration that Congress afforded the authority. *See Ziglar*, 582 U.S. at 144 (observing that the silence of Congress is notable when "high-level policies will attract" its attention). Indeed, Congress, when it intended to do so, expressly used the term "effective control" in other national security contexts. *See, e.g.*, Prohibition on purchase of United States defense contractors by entities controlled by foreign governments, 50 U.S.C. § 4566(c)(1)(A) (defining the term "entity controlled by a foreign government" to include "any domestic or foreign organization or corporation that is effectively owned or controlled by a foreign government"); Disclosures for offerors for certain shipbuilding major defense acquisition program contracts, 10 U.S.C. § 8755(d)(2) (defining "foreign government subsidized performance" to mean, in relevant part, any financial support to a "foreign government or entity effectively owned or controlled by a foreign government"); Authorities Relating to the Regulation of Foreign Missions, 22 U.S.C.

---

[6] https://dod.defense.gov/Portals/1/Documents/pubs/2011_CMPR_Final.pdf.

[7] https://www.uscc.gov/sites/default/files/2019-11/Chapter%203%20Section%202%20-%20Emerging%20Technologies%20and%20Military-Civil%20Fusion%20-%20Artificial%20Intelligence,%20New%20Materials,%20and%20New%20Energy.pdf.

13

§ 4302(a)(3) (defining "foreign mission" as, *inter alia*, an entity "substantially owned or effectively controlled by" a foreign government). Here, Congress' silence is telling.

And relatedly, Congress *did* incorporate a control-based definition of Chinese Military Company in another provision of Section 1260H. *See* Defs.' Mot. at 21-22 (discussing Sec. 1260H(d)(1)(B)(i)(I)). Congress defined "Chinese Military Company" to include entities "directly or indirectly owned, *controlled*, or beneficially owned by," among others, "any other organization subordinate to the Central Military Commission of the Chinese Communist Party[.]" Sec. 1260H(d)(1)(B)(i)(I) (emphasis added). Thus, the definition of "affiliated with" preferred by Hesai, "effective control," would overlap substantially with Section 1260H(d)(1)(B)(i)(I), a result that defies logic. *Id.* The more natural conclusion is that Congress would have integrated control-based language in Section 1260H(d)(2)(B) if it wanted to do so, yet deliberately made the decision to include the term "affiliated with." "Congress says what it means and means what it says." *Banks*, 3 F.4th at 449.

IV.  **DoD Continues to Reassess Hesai's Placement on the Section 1260H List Based on the Latest Information Available**

Plaintiffs argue that DoD has not satisfied its "ongoing" duty to reassess Hesai's placement on the List "based on the latest information available," specifically alleging that DoD "failed to remove the company from the 1260H List[.]" Pls.' Opp'n at 16 (citing Sec. 1260H(b)(3)). First and foremost, DoD disagrees that it did not have a legally sufficient basis to place Hesai on the Section 1260H List when it did so in January 2024. *See* A.R. 9-17. In any event, DoD, consistent with Section 1260H(b)(3), has continued to assess the propriety of its decision, which includes evaluating the materials submitted by Hesai in March 2024 and additional new information. While Plaintiffs may not agree with the speed at which DoD is evaluating the merits of Hesai's request for reconsideration, Section 1260H does not articulate how quickly DoD must reassess an entity's

placement on the List, with the exception that it must submit an annual report to the relevant congressional committees.  *Cf. In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) ("There is 'no per se rule as to how long is too long' to wait for agency action . . . .'" (citation omitted)).  If DoD ultimately decides to retain Hesai on the List, Plaintiffs may challenge that separate agency action, and the materials submitted by Hesai in March 2024 will be included in any future administrative record.

## V.  Plaintiffs Have Abandoned Their Remaining Claims

In their reply and opposition, Plaintiffs again decline to substantively address three claims that appear in the Complaint.  *See* Pls.' Opp'n at 16 n.8.  Specifically, Plaintiffs do not substantively discuss their claims that: (i) Defendants violated the equal protection clause of the U.S. Constitution by treating Hesai differently from similarly situated companies, *see* Compl. ¶ 132, ECF No. 1; (ii) Defendants violated the constitutional non-delegation doctrine, *see id.* ¶¶ 134-39; and (iii) Defendants violated the due process clause of the U.S. Constitution because certain undefined terms infringe upon the "void for vagueness" doctrine, *see id.* ¶¶ 140-45.  In fact, Plaintiffs affirmatively withdraw their due process and equal protection claims.  *See* Pls.' Opp'n at 16 n.8 ("[T]he Court can decide this case on the traditional APA and statutory grounds[.]").  Accordingly, the Court should consider these claims either abandoned or withdrawn.  *See Aragon v. Tillerson*, 240 F. Supp. 3d 99, 108 n.4 (D.D.C. 2017) (concluding that the plaintiff abandoned a constitutional claim because it was not addressed in the briefing) (citing cases); *see also Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002) ("The court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf. . . .").

## **CONCLUSION**

For the foregoing reasons and those addressed in Defendants' opening brief, the Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

Dated: September 4, 2024	BRIAN M. BOYNTON
	Principal Deputy Assistant Attorney General

	LAUREN A. WETZLER
	Deputy Director, Federal Programs Branch


	*/s/ Stephen M. Elliott*
	STEPHEN M. ELLIOTT (PA Bar# 203986)
	DANIEL RIESS
	United States Department of Justice
	Civil Division, Federal Programs Branch
	1100 L St. NW
	Washington, D.C. 20005
	Tel:  (202) 353-0889   Fax:  (202) 616-8470
	E-mail:  stephen.m.elliott@usdoj.gov

	*Counsel for Defendants*