## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————————

| | |
|---|---|
| HESAI TECHNOLOGY CO., LTD, | : |
| | : |
| Building A, No. 658 | : |
| Zhaohua Road, Changning District | : |
| Shanghai, China 200050 | : |
| | : |
| HESAI INC., | : |
| | : |
| 3500 W. Bayshore Road | : |
| Palo Alto, CA 94303 | : |
| | : |
| *Plaintiffs*, | : |
| | : |
| v. | : Civ. Action No. 1:24-cv-01381-PLF |
| | : |
| U.S. DEPARTMENT OF DEFENSE, | : |
| | : |
| 1400 Defense Pentagon | : |
| Washington, D.C. 20301 | : |
| | : |
| LLOYD J. AUSTIN III, in his official capacity as | : |
| SECRETARY OF DEFENSE, | : |
| | : |
| 1000 Defense Pentagon | : |
| Washington, D.C. 20301 | : |
| | : |
| LAURA D. TAYLOR-KALE, in her official capacity as | : |
| ASSISTANT SECRETARY OF DEFENSE | : |
| FOR INDUSTRIAL BASE POLICY, | : |
| | : |
| 3050 Defense Pentagon | : |
| Washington, D.C. 20301 | : |
| | : |
| *Defendants*. | : |

———————————————————————————

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc. ("Hesai"), by and through their

attorneys, allege and state as follows:

1.      This lawsuit seeks relief from Defendants' unlawful tarring of Hesai as a "Chinese military company," a designation that has no legal or factual basis and that has inflicted significant economic and reputational harm on the company.

2.      Plaintiffs are part of the Hesai Group, a NASDAQ-listed company with operations around the world, including in the United States.  The Hesai Group is the world's leading manufacturer of Light Detection and Ranging ("LiDAR") technology for commercial—primarily automotive—uses.  Unlike cameras or radar, LiDAR uses laser pulses to create a real-time, highly accurate 3D representation of physical surroundings, enabling autonomous cars and trucks to navigate complex environments in a wide variety of driving conditions.  Based on the company's proven track record of responsible development, private-sector automobile manufacturers from around the globe trust the Hesai Group to provide the safest and most reliable LiDAR technology for intelligent self-driving and driver-assisting systems in modern commercial and passenger vehicles.

3.      The Hesai Group has U.S.-educated leadership, a demonstrated commitment to transparency in its financials and corporate management, an independently certified record of data security, cybersecurity, and data privacy, and an international customer base that includes most of the world's leading producers of, and contributors to, commercial and passenger vehicles.  Its founders—private businesspeople with no relationship to the People's Liberation Army or any organization subordinate to it—control the company's strategic decisions and own nearly a quarter of its shares.  The rest of the Hesai Group's shares are owned by institutional, retail, and commercial investors, including from the United States and other Western countries.

4.      No Chinese governmental or military entity controls, or has sought to exert control over, the Hesai Group's management, strategy, or research-and-development operations.  On the

contrary, Hesai has made deliberate efforts to operate independently of any governmental control or military influence, Chinese or otherwise.  Since inception, the Hesai Group has designed and made products solely for commercial and civilian uses.

5.      Nevertheless, in January 2024, Defendants suddenly placed Hesai Technology Co., Ltd. and its subsidiaries (collectively, "Hesai") on a list of entities identified as "Chinese Military Companies Operating in the United States" in accordance with Section 1260H of the William M. ('Mac') Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)" ("1260H List" or the "List").

6.      Defendants afforded Hesai no warning, no explanation, and no opportunity to defend itself prior to the listing.

7.      Hesai sued in this Court to challenge the unlawful listing and agreed with the government to brief summary judgment expeditiously.

8.      Midway through briefing, leaked news reports indicated that Hesai would soon be removed from the 1260H List because "US government lawyers were concerned that the rationale for [Hesai's] inclusion would not hold up to legal scrutiny under the criteria outlined in the 2021 [NDAA] legislation."[1]

9.      After summary judgment briefing completed, and days before a long-scheduled hearing, Defendants abruptly sought a postponement of that hearing.  Apparently no longer willing to defend the original decision, Defendants announced that they were instead contemplating a "new" decision that would "render the original determination inoperative."

---

[1] Demetri Sevastopulo & Edward White, *China's Hesai to be removed from US defence department blacklist*, FIN. TIMES (Aug. 13, 2024), https://www.ft.com/content/97dff7c2-33e9-4729-a059-968e308cac49.

10.     On October 15, 2024, Defendants rescinded the baseless and unlawful January designation and delisted Hesai.

11.     But on the same day—and following political pressure after the media leaked the delisting before it was announced officially—Defendants immediately replaced the original designation with an equally baseless and unlawful re-designation of Hesai as a Chinese military company under Section 1260H.

12.     Defendants' basis for re-listing Hesai is most notable for what it lacks:  any accusation whatsoever that Hesai is owned or controlled by the Chinese military; sells products to the Chinese military; or otherwise directly supports the Chinese military (or any other military) in any way.

13.     Instead, in a transparent effort to save face, Defendants have cobbled together from public internet searches a variety of "facts"—all innocuous, misleading, or obviously false—to make far-fetched, attenuated allegations wholly unsupported by the sources on which Defendants rely.

14.     As this Court has repeatedly made clear, U.S. law imposes enforceable limits on Defendants' authority to designate companies they believe are tied to the Chinese military—limits that Defendants once again transgressed here.  *See, e.g., Xiaomi Corp. v. Department of Def.,* No. CV 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021); *Luokung Tech. Corp. v. Department of Def.,* 538 F. Supp. 3d 174 (D.D.C. 2021).

15.     Hesai is not owned or controlled, directly or indirectly, by the Chinese government or the Chinese military, and does not otherwise meet the statutory definition of a "Chinese military company."  Just as Defendants had no legal or factual basis to initially add Hesai to the 1260H List, they lack any legal or factual basis to re-list the company.

16.     Hesai's placements on the 1260H List have caused Plaintiffs to suffer serious reputational injury, a significant drop in stock price, and lost business opportunities.  Indeed, these severe consequences appear to be the whole point of the List, which has the purpose of "naming and shaming" foreign entities purportedly associated with the Chinese military.[2]  As several members of Congress have made clear, Plaintiffs "have been blacklisted by the U.S. government" via their placement on the 1260H List.[3]

17.     Defendants' new listing decision is just as unsubstantiated and weak as the original one that they recently refused to defend in this Court.  Because Defendants insist on perpetuating their egregious listing mistake, this Court should set aside their re-listing decision as arbitrary and capricious, in excess of statutory authority, contrary to constitutional right, and otherwise contrary to law, and remand to the Department of Defense ("Department") with instructions to remove Hesai from the 1260H List without delay.

### JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and § 2201 (the Declaratory Judgment Act).

19.     This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment Act); 5 U.S.C. §§ 701-706 (the Administrative Procedure Act); and the Court's inherent equitable power.

---

[2] Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021), https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors ("Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237[.]").

[3] Letter from Rep. Ashley Hinson to Adena Friedman (Apr. 11, 2024) ("Hinson Letter") at 1, *available at* https://mcusercontent.com/ffedde7e54b71a41a9505fff1/files/567c1355-c421-5287-60d0-eab9e37a7306/Hinson_Letter_to_Nasdaq_04.11.24_64_.pdf.

20.    Venue is proper under 28 U.S.C. § 1391(b) and (e) because this is a civil action in which Defendants are federal agencies and federal officers acting in their official capacities, a substantial part of the events or omissions giving rise to the claims occurred in the District of Columbia, and Defendants reside in this district.

## PARTIES

21.    Plaintiff Hesai Technology Co., Ltd. is wholly owned by Hesai Hong Kong Limited, which in turn is wholly owned by Hesai Group, a NASDAQ-traded holding company incorporated under the laws of the Cayman Islands.  The Hesai Group has a global footprint: it is headquartered in Shanghai, with multiple offices in the United States, Germany, Japan, and South Korea, and has customers spanning over 40 countries.  The company develops, manufactures, and sells LiDAR technology for use in commercial and passenger vehicles.  Since February 9, 2023, the Hesai Group has been listed on NASDAQ under the ticker symbol HSAI.

22.    Plaintiff Hesai Inc., a wholly owned subsidiary of Hesai Technology Co., Ltd., was incorporated as a California corporation in October 2017.  As the Hesai Group's primary sales platform in the United States, Hesai Inc. employs over a dozen workers at locations in Palo Alto, California, and Detroit, Michigan.

23.    Defendant Department of Defense is an executive agency of the United States within the meaning of 5 U.S.C. § 551(1) that is charged with coordinating and supervising all agencies and functions of the government directly related to national security and the United States Armed Forces.  Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965 ("Section 1260H"), directs the Department to (1) identify and maintain a list of Chinese military companies, and (2) delete from that list, on an ongoing basis and based on the latest information

available, any entities that no longer fall within the statutory definition of a Chinese military company.

24.    Defendant Lloyd J. Austin III is the Secretary of Defense.  In this capacity, he oversees the Department's functions, including the listing of entities as Chinese military companies under Section 1260H.  He is sued in his official capacity.

25.    Defendant Laura D. Taylor-Kale is the Assistant Secretary of Defense for Industrial Base Policy.  In this capacity, she manages the process for the Department's placement of entities on the Section 1260H List and the process for the Department's removal of entities from the 1260H List.  She is sued in her official capacity.

## FACTS

### I.    Hesai and its Technology

26.    Hesai got its start in 2013 in San Jose, California by three Chinese entrepreneurs, who were educated at the University of Illinois at Urbana-Champaign and Stanford University. The co-founders chose the name "Hesai," a phonetic translation of "Jose" in Chinese, to honor the company's American roots.   In 2014, the co-founders moved to Shanghai and formally incorporated the company.  All three remain directors of Hesai today.

27.    Since February 2023, Hesai has been publicly traded on NASDAQ.  Hesai uses Deloitte, a Public Company Accounting Oversight Board-approved outside auditing firm, to ensure that U.S. financial regulators have a continuous level of transparency into the company's finances.

28.    While the company's initial focus was on high-performance laser sensors used in natural gas and other industries, the company shifted its primary business to the development, manufacturing, and sale of LiDAR products for the consumer automotive industry in 2016.

29.     LiDAR, or Light Detection and Ranging, is a method for determining the distance of an object or surface via lasers.  Its primary application is in autonomous vehicles or Advanced Driver Assistance Systems, where LiDAR allows the vehicle system to create a three-dimensional picture to facilitate safe maneuvering and avoid crashes.

30.     Today, Hesai operates in, and leads, the automotive LiDAR industry, with a 37% share of the global market as of 2023.[4]  Hesai's share of the global market for robotic cars (*i.e.*, "robotaxis") that year was higher, at 74%.[5]  Indeed, 12 of the world's top 15 autonomous driving companies have used Hesai's technology as their primary LiDAR solution.[6]

31.     Given that global reach, Hesai has established offices around the world, including in the United States.  Reflecting its client relationships with the American automotive industry, Hesai's U.S. subsidiary, Hesai Inc., employs over a dozen workers at locations in Palo Alto, California, and Detroit, Michigan.  Additionally, Hesai has been in advanced discussions to build a manufacturing facility in the United States—plans that are unfortunately now on hold due to Defendants' erroneous and unlawful addition of Hesai to the 1260H List.

32.     Hesai's competitors include both U.S. and Chinese LiDAR companies.  Hesai's market position can be attributed to its strengths in innovation and safety, which are the result of the company's deep commitment to research and development.

---

[4] Hesai, *Hesai Tops the Global Automotive Lidar Ranking for the Third Consecutive Year*, July 8, 2024, https://www.hesaitech.com/hesai-tops-the-global-automotive-lidar-ranking-for-the-third-consecutive-year/.

[5] *Id.*

[6] Hesai Group, Form F-1 filed with the U.S. Securities and Exchange Commission on Jan. 17, 2023, at 112, https://investor.hesaitech.com/static-files/a52326dc-263e-4565-b9d9-3c765859f49f.

33.    Hesai's LiDAR products do not capture personally identifiable information such as human facial features, biometric data, or license plates, as shown below in the sample of an actual image taken with Hesai's LiDAR:



34.    Hesai's LiDAR products also do not—and indeed cannot—store or wirelessly transmit any point cloud images they generate, ensuring data security.  The Department of Commerce (Bureau of Industry and Security) recently recognized that "LiDAR generally lacks the ability to transmit from the vehicle and does not, as a standalone system, control the vehicle." *Securing the Information and Communications Technology and Services Supply Chain: Connected Vehicles*, 89 Fed. Reg. 79,088, 79,092 (Sept. 26, 2024).  And indeed, Hesai's products do not have wireless, cellular, or Bluetooth capabilities.

35.    Nor can Hesai's LiDAR store information through a cloud or be controlled remotely.  Rather, Hesai's LiDAR transmits image data to the vehicle's onboard computer via a one-way secure cable, ensuring the data cannot be accessed outside of the vehicle in which it operates.  All images and other data are owned, stored, and controlled by the vehicle owner or manufacturer.  Neither Hesai nor any third party has access to those images and data.

36.     These safeguards of Hesai's technology have been certified through a cybersecurity report by TÜV Rheinland, an international authoritative third-party testing and certification institution in Germany, and through a teardown report by Dekra, the world's largest independent expert organization in the testing, inspection, and certification sector.[7]

37.     Hesai is also the first LiDAR company to have obtained TÜV Rheinland's ISO/SAE 21434 cybersecurity certification, a standard that covers the entire product lifecycle from conceptualization through development, production, operation, and disposal.[8]

## II.    Hesai's Independence From Military And Governmental Control

38.     Hesai's LiDAR products are manufactured and sold strictly for civilian and commercial use.  Because Hesai sells to the commercial and consumer market, Hesai's technology has never been designed for, evaluated for, or validated to military specifications.

39.     Although no company can fully control what its customers do with its technology (including unauthorized use or third-party resale), Hesai does not supply its products for any military uses and is committed to preventing the improper use or resale of its products, including for any military purpose.

40.     Prior to its addition to the 1260H List, Hesai implemented, with the assistance of U.S. counsel, a carefully designed customer-screening process to ensure that Hesai does not sell its products to any entities on any list of prohibited and restricted parties maintained by the U.S. government (including the Military End User List, the Entity List, the Specially Designated

---

[7] Hesai, *Hesai's Lidars Get Top Marks for Data Security*, Nov. 6, 2023, https://investor.hesaitech.com/news-releases/news-release-details/hesais-lidars-get-top-marks-data-security.

[8] Hesai, *Hesai's Pandar128 Becomes the World's First Lidar to Obtain ISO/SAE 21434 Cybersecurity Certification*, Oct. 31, 2023, https://www.hesaitech.com/hesais-pandar128-becomes-the-worlds-first-lidar-to-obtain-iso-sae-21434-cybersecurity-certification/.

Nationals and Blocked Persons List, etc.); to any entities subject to U.S., E.U., U.K., or U.N. blocking measures; or to any entities it has found to have military connections. Moreover, Hesai's standard sales agreement with new customers prohibits the re-sale of Hesai's LiDAR equipment to any military.

41.     Not only does Hesai not supply its products for military use, but it could not do so. That is because (as Hesai previously explained in a letter submitted to Defendants) all of Hesai's existing products are strictly designed and manufactured at civil specifications for commercial and passenger vehicles, which are significantly below battlefield standards for any country's military, to ensure sales at competitive prices in the consumer market. Hesai's products do not provide the durability and performance needed for the battlefield—*i.e.*, they have a narrower internal component temperature range, they have a lower vibration/shock endurance, they are not radiation-proof, etc. For example, Hesai's products can only withstand internal temperatures between -40 degrees and 125 degrees Celsius, whereas the typical military standard requires an internal component temperature range between -55 degrees and 150 degrees Celsius. Even if it were technically feasible to design Hesai's products at military specifications, the costs of doing so would be prohibitive and inconsistent with Hesai's leadership in and commitment to the consumer market.

42.     In fact, the U.S. Department of Commerce's Bureau of Industry and Security has given Hesai's technology the classification of EAR99—meaning that it falls into the same category as most commercial and consumer goods and does not require a license for exports in most

situations.[9]  Likewise, Hesai's products are not covered by the Chinese government's list of sensitive or strategic technologies restricted from export.

43.    Hesai's leadership is also fully committed to independence from government control from any country, including China.  Hesai's founders maintain a 23% ownership stake in the company and hold super-voting shares that confer 75% of the voting power and control over the company's strategic decisions.  As a publicly traded company, Hesai is responsible to its Board, which does not include any person affiliated with the Chinese military.  Neither the Chinese government nor the People's Liberation Army has a "golden" share or veto right over the company's decision-making.

44.    The only benefits (such as tax breaks) the company accepts from the governments of the United States, China, and other countries are those generally available to any technology company, foreign or domestic.

## III.    Statutory And Regulatory Background

45.    The 1260H List follows Defendants' prior attempts—some of which were enjoined by this Court—to designate companies for their purported connection to the Chinese government or military.

46.    One set of prior attempts was under Section 1237 of the National Defense Authorization Act of 1999, as amended, which mandates that the Secretary of Defense make a list of certain "Communist Chinese military companies" ("CCMC") and "make additions or deletions to the list . . . on an ongoing basis based on the latest information available."  50 U.S.C. § 1701

---

[9] U.S. Department of Commerce, Bureau of Industry and Security, Office of Exporter Services, *Frequently Asked Questions to Export Licensing Requirements* at 5-6, 11 (revised Nov. 2018), https://www.bis.doc.gov/index.php/documents/pdfs/286-licensing-faq/file#:~:text=EAR99%20is%20a%20classification%20designation,%2C%E2%80%9D%20is %20a%20shipment%20designation.

note, Pub. L. No. 105-261, § 1237, 112 Stat. 1920, 2160 (1998), *as amended by* Pub. L. No. 106-398, § 1233, 114 Stat. 1654 (2000), and Pub. L. No. 108-375, § 1237, 118 Stat. 1811, 2089 (2004) ("Section 1237"). The Secretary must list a company pursuant to that authority if it "is owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China" or "owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China," among other requirements.

47.     In 2021, this Court twice held that, in placing certain companies on the Section 1237 List, the Department failed to "adequately explain[] the basis for its decision," acted "in violation of the Department of Defense's limited grant of statutory authority," and "lack[ed] the substantial evidentiary support required" under the Administrative Procedure Act ("APA"). *Xiaomi Corp.*, 2021 WL 950144, at *4-8; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 ("The Department of Defense's CCMC designation process as to Luokong was flawed and failed to adhere to several different APA requirements."). The Court also noted "serious concerns" about whether the Department had afforded the designated companies "constitutional due process." *Xiaomi Corp.*, 2021 WL 950144, at *8 n.8; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 n.13.

48.     This Court thus enjoined the listings under Section 1237 of two companies: Xiaomi Corporation and Luokung Tech. Corp. *See Xiaomi Corp.*, 2021 WL 950144, at *13; *Luokung Tech. Corp.*, 538 F. Supp. 3d at 195-196. The Department did not appeal, and subsequently removed both entities from the Section 1237 List.

49.     In January 2021—the same month the Department added Xiaomi and Luokung to the Section 1237 List—Congress enacted the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1237, 134 Stat. 3388, 3965 (2021), which provides the authority for the List at issue in this action. Specifically, Section 1260H of

that Act directs the Secretary of Defense to "identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company" ("CMC").  Sec. 1260H(a).

50.    As commenters have explained, Section 1260H shares some similarities with Section 1237, but is narrower in that it reflects a "particular[] concern[] about the Chinese military and its operations in the United States, rather than the Chinese state more broadly."[10]  Congress directed this "more precise" designation strategy through "Section 1260H's narrow and tailored language," including a "new definition of a CMC [that] is significantly narrower than the old definition of CCMCs under Section 1237."[11]

51.    To that end, Section 1260H provides an express statutory definition of a "Chinese military company" that consists of two distinct prongs.

52.    *First*, Section 1260H(d)(1)(B)(i)(I) defines a Chinese military company as "an entity that is . . . directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party."  "The term 'People's Liberation Army' means the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate."  Sec. 1260H(d)(3).

---

[10] Brunner & Weinstein, *supra* note 2.

[11] *Id.*

53.     *Second*, Section 1260H(d)(1)(B)(i)(II) defines a Chinese military company as an entity "identified as a military-civil fusion contributor to the Chinese defense industrial base." Section 1260H(d)(2), in turn, defines a "military-civil fusion contributor" as:

(A)     Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B)     Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C)     Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D)     Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E)     Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F)     Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G)     Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H)     Any other entities the Secretary determines is appropriate.

54.     Section 1260H(b)(1) directs the Secretary of Defense to submit the list of designated Chinese military companies to Congress in an annual report. Section 1260H(b)(2) provides that, "[c]oncurrent with th[at] submission . . . , the Secretary shall publish the unclassified portion of such list in the Federal Register."

15

55. Section 1260H(b)(3) provides that the Secretary of Defense "shall make additions or deletions" to the 1260H List "on an ongoing basis based on the latest information available."

56. On June 28, 2021, Defendants published the 1260H List, designating various entities as "Chinese military companies" for the first time. 86 Fed. Reg. 33,994, 33,994 (June 28, 2021). Hesai did not appear on that List.

57. At the same time that Defendants published the first 1260H List, Defendants "removed the designation of 'Communist Chinese military companies' from entities previously listed as such in accordance with Section 1237[.]" 86 Fed. Reg. at 33,994. "There are currently no entities designated as Communist Chinese military companies" under Section 1237. *Id.*

## IV. **Defendants Add Hesai To The 1260H List, Then De-list Hesai, and Then Re-list Hesai**

58. On January 31, 2024, two days after receiving political pressure for its unexplained delay in publishing the annual update to its 1260H List for 2023,[12] the Department released an updated 1260H List via press release.[13]

59. On that List, the Department designated Hesai Technology Co., Ltd. as a Chinese military company.[14] The Department provided Hesai no prior warning, notice, or opportunity to be heard.

---

[12] Press Release, Ted Budd, *Budd, Colleagues Press DoD on Failure to Publish List of Chinese Military Companies Operating in the United States* (Jan. 29, 2024), https://www.budd.senate.gov/2024/01/29/budd-colleagues-press-dod-on-failure-to-publish-list-of-chinese-military-companies-operating-in-the-united-states/.

[13] Press Release, U.S. Department of Defense, *DOD Releases List of People's Republic of China (PRC) Military Companies in Accordance With Section 1260H of the National Defense Authorization Act for Fiscal Year 2021* (Jan. 31, 2024), https://www.defense.gov/News/Releases/Release/Article/3661985/dod-releases-list-of-peoples-republic-of-china-prc-military-companies-in-accord/.

[14] U.S. Department of Defense, *Entities Identified as Chinese Military Companies Operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)*,

60.    Notably, Hesai's listing followed a sustained, malicious lobbying campaign by Hesai's competitors to falsely smear Hesai as a Chinese military company.  For example, the "Lidar Coalition," a group made up mostly of Hesai's U.S. LiDAR competitors, has openly stoked fears of and lobbied against Chinese LiDAR companies—especially Hesai.  One of Hesai's chief U.S. competitors, Ouster, spent over $800,000 on lobbying in 2023 alone.[15]  This commercially driven campaign also led to baseless letters from senators representing Florida, the home state of another of Hesai's main competitors (Luminar).  Mainstream media outlets subsequently recognized that the purported national-security concerns raised over companies like Hesai may be nothing more than a "self-interested attempt to handicap overseas rivals" by the "struggling" U.S. LiDAR industry.[16]

61.    In a good-faith effort to cooperate with the Department and avoid litigation, counsel for Hesai repeatedly sought to engage with the Department.  For example, on March 8, 2024, Hesai submitted to the Department a detailed letter requesting removal from the list that included a sworn declaration from Hesai's CEO refuting that the company qualifies as a Chinese military company. The declaration explained, *inter alia*, that Hesai's products were manufactured solely to civilian and commercial specifications, that its products are sold strictly to civilian customers, and many of Hesai's deliberate efforts to avoid any involvement with the Chinese military and government.

62.    On April 12, 2024, counsel for Hesai also provided the Department with a letter Hesai had sent the Congressional Research Service ("CRS"), at CRS's invitation, to correct a false

https://media.defense.gov/2024/Jan/31/2003384819/-1/-1/0/1260H-LIST.pdf (last visited Nov. 14, 2024).

[15] Open Secrets, *Client Profile: Ouster, Inc.*, https://www.opensecrets.org/federal-lobbying/clients/summary?cycle=2023&id=D000096601 (last visited Nov. 14, 2024).

[16] Bloomberg, *Fears of Chinese Self-Driving Car Tech Are on the Rise*, July 26, 2023, https://www.bloomberg.com/news/newsletters/2023-07-26/fears-of-chinese-self-driving-car-tech-are-on-the-rise.

statement in a 2023 CRS report.  (CRS subsequently acknowledged that the statement was incorrect and revised it.)  That correspondence explained that Hesai does not sell equipment for use in the military, does not take any other action to enable such use (and in fact has systems in place with the goal of preventing improper use or resale), and that its products are designed at specifications that are significantly below battlefield standards for any country's military.  The letter also explained that the materials CRS had relied on were unreliable and insufficient to support the unfounded conclusions in its 2023 report.

63.     On April 18, 2024, Defendant Taylor-Kale acknowledged receipt of the April 12 letter from Hesai's counsel and responded that the Department would "consider [that] letter, the attachment, and all the information provided thus far in [its] ongoing assessment of whether Hesai should remain on, or be removed from, the Chinese military company list as required by Section 1260H."

64.     Despite Hesai's efforts to cooperate with the Department, however, the Department refused even to provide the factual basis for Hesai's listing.  After those efforts were unsuccessful, Hesai filed its original complaint in this action on May 13, 2024.

65.     In June 2024, this Court entered the parties' agreed-to schedule for expedited resolution of the case.  The parties fully briefed cross-motions for summary judgment by early September 2024, and this Court set a hearing on those motions for September 24, 2024.

66.     A few days before the hearing, Defendants requested a three-week postponement based on their sudden assertion that the Department would "make a new decision regarding Hesai's placement on the Section 1260H list" by October 8, 2024, that would "render the original determination inoperative."  ECF No. 30, at 2.

67.     Press reports published earlier had stated that the "Pentagon ha[d] decided to remove Hesai from its blacklist of Chinese military-affiliated companies after judging" that Hesai "did not meet the legal criteria for inclusion," *i.e.*, because "US government lawyers were concerned that the rationale for its inclusion would not hold up to legal scrutiny under the criteria outlined in the 2021 [NDAA] legislation."[17]

68.     Those reports, in turn, prompted political backlash from some politicians, who asked the government to do "more to restrict Chinese lidar companies" and "called on the Pentagon to 'immediately reverse the decision.'"[18]

69.     Several days after October 8, Defendants still had not issued a new decision and continued to refuse to provide any information to Hesai (or its counsel) about the company's listing, including any specific assurance about when Defendants might issue a new decision. Only after Hesai moved for an order to show cause why the Court should not promptly adjudicate the parties' fully briefed cross-motions for summary judgment did the Department, on October 15, finally rescind Hesai's Section 1260H designation and de-list the company.

70.     That same day, however, the Department re-listed Hesai, thus continuing the 1260H blacklisting of Hesai as a Chinese military company—once again without any advance notice or opportunity to contest the re-listing.

71.     Upon Hesai's request, Defendants provided the company a memorandum that explains the re-listing, which is dated September 17, 2024 (*i.e.*, approximately one month before the delisting/re-listing).

---

[17] *See* Sevastopulo & White, *supra* note 1, at 1-2.

[18] Khushboo Razdan, *Hesai's reported removal from Pentagon blacklist draws criticism from Republican senators*, SOUTH CHINA MORNING POST (Aug. 15, 2024), https://finance.yahoo.com/news/hesais-reported-removal-pentagon-blacklist-093000017.html.

72.    The re-listing memorandum makes no finding that Hesai is directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.

73.    The memorandum instead purports to find that Hesai is a military-civil fusion contributor to the Chinese defense industrial base.  But that conclusion is unsupported by factual evidence and is, in fact, contradicted by record evidence and other readily available evidence.

74.    To take one example, the Department's new analysis found that Hesai qualifies as a military-civil fusion contributor because Hesai supposedly "advertises" its products on a military equipment procurement platform—specifically, the website of Beijing Huawei Testing Technology Co., Ltd. ("BHTT").  Putting aside whether BHTT's website even qualifies as such a platform, Hesai has *never* advertised, sold, or authorized any sales of its products on that website— as BHTT recently confirmed in a public statement.[19]  Instead of making any effort to ascertain the truth of its false and damaging allegation (or otherwise giving Hesai notice or an opportunity to be heard), the Department was apparently content to rely on superficial Internet research.

75.    The re-listing memorandum also fails to engage with the various evidence Hesai had submitted in March 2024.  Its conclusory statement that the Department "considered the information during its analysis" is belied by the lack of any discussion whatsoever of the evidence Hesai actually submitted.  And the decision memorandum completely ignores the additional correspondence Hesai submitted in April 2024—despite Defendant Taylor-Kale's promise to "consider" it.

---

[19] *Clarification Statement on the Company's Lack of Authorized Agent Relationship with Hesai Technology*, CNSENS (Nov. 7, 2024), http://www.cnsens.com/newsinfo/7728762.html.

## V.    Defendants' Actions Have Inflicted, And Threaten To Inflict, Substantial Harm On Plaintiffs And The U.S. Public

76.    Defendants' actions have inflicted immediate, severe, and ongoing harms on Plaintiffs and, if not enjoined, threaten future harms as well.

77.    Hesai has suffered serious reputational injury because of the stigma caused by its placement on the 1260H List, consistent with that List's "naming and shaming" purpose.[20]  For example, the company and its executives have been subject to sustained and damaging press attention that falsely describes Hesai as an entity that is "helping" and "aiding" the Chinese military.[21]

78.    Defendants' actions also caused the Hesai Group's share price to fall over 30% in a single day following Hesai's initial designation as a Chinese military company.[22]  Today, the share price remains well below its historical value, at a time when the values of other NASDAQ-listed technology companies have been surging.

79.    Moreover, Hesai's designation prompted members of Congress to send a letter to NASDAQ expressing their "concern[] to see companies included on U.S. stock exchanges that are also designated on the Section 1260H List."[23]  A press release announcing the letter cites Hesai as

---

[20] Brunner & Weinstein, *supra* note 2 ("Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237[.]").

[21] Idrees Ali et al., *Pentagon calls out Chinese companies it says are helping Beijing's military*, REUTERS (Feb. 1, 2024), https://www.reuters.com/technology/pentagon-adds-companies-chinese-military-list-us-official-says-2024-01-31/; Bloomberg News, *US Accuses Chinese Memory Chipmaker, AI Firms of Aiding PLA*, BLOOMBERG (Feb. 1, 2024), https://www.bloomberg.com/news/articles/2024-02-01/us-accuses-chinese-memory-chipmaker-ai-firms-of-aiding-military.

[22] Chris Wack, *Hesai Group Shares Drop 30% After Addition to 'Chinese Military Companies' List*, MARKETSCREENER, Feb. 1, 2024, https://www.marketscreener.com/quote/stock/HESAI-GROUP-150491008/news/Hesai-Group-Shares-Drop-30-After-Addition-to-Chinese-Military-Companies-List-45867848/.

[23] Hinson Letter, *supra* note 3, at 1.

21

the "prime example" of a "Chinese Military company" that "shouldn't be listed on U.S. stock exchanges."[24]  The letter even urges NASDAQ to "consider delisting Hesai (HSAI) from the stock exchange given their listing on the Section 1260H List[,]" and warns that allowing Hesai's shares to continue to trade on the exchange "contradicts the federal government's effort[s]" to "blacklist[]" the company.[25]

80.     Hesai has lost business opportunities because of its erroneous designation as a Chinese military company.  The company's continued placement on the List has jeopardized ongoing contract negotiations and disrupted existing and potential customer relationships at a particularly sensitive time for the industry, when automobile companies are making crucial decisions about the technology to be used in future models.

81.     Because of the listing and its impact on Hesai's customer relationships, Hesai has been forced to pause advanced plans to establish a manufacturing facility in the United States.

82.     The listing also has significant legal ramifications.  For example, although Hesai has no current or future plans to bid on Department contracts, the listing also imposes a legal prohibition on Hesai, by prohibiting the Department both from directly contracting with Hesai and from entering into contracts with third parties for "goods or services that include goods or services produced or developed by" Hesai.  *See* Section 805 of the National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31 § 805, 137 Stat. 136, 315.

83.     Every day it remains on the 1260H List, Hesai is suffering these and other significant harms.

---

[24] Press Release, Ashley Hinson, *Hinson Leads Effort to Delist Chinese Military Companies from U.S. Stock Exchanges* (Apr. 16, 2024), https://hinson.house.gov/media/press-releases/hinson-leads-effort-delist-chinese-military-companies-us-stock-exchanges.

[25] Hinson Letter, *supra* note 3, at 1-2.

84.     Beyond the harms to Hesai, the listing threatens the public interest.  Higher levels of vehicle autonomy offered through Advanced Driver Assistance Systems and Autonomous Mobility solutions—achieved through LiDAR technology—can help save lives and reduce injuries caused by vehicle crashes.[26]  Hesai is the LiDAR industry leader because the established and certified safety of its technology is far superior to, and more reliable than, its competitors' unproven products.[27]  Until corrected, Hesai's continued presence on a blacklist of Chinese military companies—which has caused U.S. and other customers to be wary of future business with Hesai—risks leaving the U.S. public with only unsafe, unreliable, and unsuitable alternatives at a time when LiDAR technology is becoming increasingly critical to the future of the American automotive industry.

85.     Hesai's placement on the List also harms free and fair competition in the LiDAR market.  Through 2030, the global Advanced Driver Assistance Systems market is expected to have a compound annual growth rate of 93.8%, and the Autonomous Mobility market is expected to have a compound annual growth rate of 73.6%.[28]  Hesai is one of a few companies that can ship LiDAR products in volume to automotive original-equipment manufacturers in the Advanced Driver Assistance Systems market.[29]  Hampering a major supplier and innovator in the LiDAR space increases costs, reduces choices crucial to consumer safety, and impedes technological

---

[26] Hesai Group, Form F-1 filed with the U.S. Securities and Exchange Commission on February 2, 2023, at 105, https://investor.hesaitech.com/static-files/49abeb3c-f2a9-4644-b23c-affe556a5d0d.

[27] Hesai, *Hesai Acts as Group Leader for ISO Automotive Lidar Working Group*, June 23, 2022,   https://www.hesaitech.com/hesai-acts-as-group-leader-for-iso-automotive-lidar-working-group/.

[28] Hesai Group, Form F-1, *supra* note 26, at 3.

[29] *Id.* at 117.

advancement. U.S. consumers will ultimately bear those consequences in the form of higher prices and inferior products.

86.    In short, American competition will be harmed—and American roads will be more dangerous—if Defendants' arbitrary and unlawful targeting of Hesai's technology is not enjoined.

## STATEMENT OF CLAIMS FOR RELIEF

87.    The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

88.    The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

89.    The APA also provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

90.    The APA further provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be, among other things, "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2).

91.    The Department is an "agency" whose final actions are reviewable under the APA.

92.    The October 15, 2024 listing constitutes "final agency action" subject to judicial review because it consummates the agency's decision-making process with respect to Hesai's placement on the 1260H List.

93.    The APA additionally requires the "reviewing court" to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1); *see also id.* § 551(13) ("'agency action' includes … failure to act").  The Secretary of Defense's statutory duty to "make … deletions to the most recent list … on an ongoing basis based on the latest information available," Sec. 1260H(b)(3), constitutes agency action that Plaintiffs have requested and Defendants have withheld.

### COUNT I

**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT:
ACTION IN EXCESS OF STATUTORY AUTHORITY, CONTRARY TO REQUIRED
PROCEDURE, AND OTHERWISE NOT IN ACCORDANCE WITH LAW**

**Against All Defendants**

94.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

95.    Defendants acted in excess of statutory authority, contrary to required procedure, and otherwise contrary to law in at least two respects.

96.    In placing Hesai on the Section 1260H List, Defendants ignored or misconstrued the statutory criteria for an entity to be designated a "Chinese military company."

97.    The government did not find that Hesai is directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party.

98.    Nor does Hesai fall within any of the enumerated categories of a "military-civil fusion contributor to the Chinese defense industrial base" under Section 1260H(d)(1)(B)(i)(II).

99.    For one, Hesai is not a contributor to the Chinese defense industrial base.  Hesai does not supply its technology either directly to the Chinese military or for military end-use by the Chinese military.  Hesai is solely a LiDAR supplier for commercial and passenger vehicles.

100.    For another, Hesai does not fall within the seven enumerated examples of what constitutes a "military-civil fusion contributor," given that:

    a.    Hesai does not knowingly receive assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus;

    b.    Hesai is not affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects;

    c.    Hesai does not receive assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense;

    d.    Neither Hesai nor any subsidiary is defined as a "defense enterprise" by the State Council of the People's Republic of China;

    e.    Hesai neither resides in nor is affiliated with a military-civil fusion enterprise zone, and it does not receive assistance from the Government of China through any such enterprise zone;

    f.    Hesai has not been awarded military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification; and

    g.    Hesai does not advertise on national, provincial, or non-governmental military equipment procurement platforms in the People's Republic of China.

101.    Defendants further acted in excess of statutory authority, contrary to required procedure, and otherwise contrary to law because in "identify[ing]" Hesai as a "Chinese military

company," Defendants did not "base[]" their decision "on the most recent information available," in violation of Section 1260H(a).

102.    Defendants' actions have caused, and will continue to cause, ongoing harm to Plaintiffs.  Plaintiffs have no adequate alternative to review under the APA.

## COUNT II

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: ARBITRARY AND CAPRICIOUS AGENCY ACTION

#### Against All Defendants

103.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

104.    Defendants acted in an arbitrary and capricious manner, and thus violated the APA, in several respects.

105.    *First*, Defendants failed to adequately explain the basis of the Department's decision to designate Hesai a Chinese military company under Section 1260H.  *See Xiaomi Corp.*, 2021 WL 950144, at *4 ("Reasoned decision-making requires that an agency 'articulate a satisfactory explanation for its action' with a 'rational connection between the facts found and the choice made.'" (quoting *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983))).

106.    *Second*, Defendants lack substantial evidence that Hesai meets the statutory definition of a Chinese military company.  *See Center for Auto Safety v. Federal Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992) ("An agency action is arbitrary and capricious if it rests upon a factual premise that is unsupported by substantial evidence.").

107.    *Third*, Defendants failed to examine or address the evidence Hesai presented to the Department showing that Hesai does not meet the statutory definition of a Chinese military

company.  As a result, Defendants "entirely failed to consider an important aspect of the problem,"
and "offered an explanation for [their] decision that runs counter to the evidence before the
agency."  *Motor Vehicle Mfrs. Assn. of United States, Inc.*, 463 U.S. at 43.

108.    *Fourth*, in identifying Hesai as a Chinese military company, Defendants failed to
examine the relevant data and factors, and instead relied on false, misleading, or irrelevant
information.  *See District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 56-59 (D.C. Cir. 2015)
(explaining that "agencies do *not* have free rein to use inaccurate data" and "cannot *ignore* new
and better data," and if agency "fails to examine the relevant data … it has failed to comply with
the APA"); *City of New Orleans v. SEC*, 969 F.2d 1163, 1167 (D.C. Cir. 1992) ("[A]n agency's
reliance on a report or study without ascertaining the accuracy of the data contained in the study
or the methodology used to collect the data is arbitrary." (internal quotation marks omitted)).

109.    *Fifth*, Defendants failed to consider any of the readily available and reasonable
alternatives to adding Hesai to the 1260H List without notice or an opportunity to respond.  *See,
e.g.*, *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 111 (D.D.C. 2020) ("An agency's failure to
'consider significant alternatives to the course [it] ultimately cho[se],' is a telltale sign that its
decision-making process cannot 'be regarded as rational.'" (alterations in original) (quoting *Allied
Local & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 80 (D.C. Cir. 2000))).  For example, Defendants
could have engaged Hesai regarding any potential concerns to give Hesai a chance to dispel them
before taking this damaging action.  As noted, however, Defendants failed to provide Hesai any
notice that it faced potential designation as a Chinese military company or an opportunity to
respond, all the while ignoring the substantial submissions that Hesai has presented to the
government. And even after Defendants declined to defend their original listing of Hesai, they

28

refused to provide the company any prior notice of or opportunity to address the purported facts that prompted its re-designation.

110.    *Finally*, Defendants acted arbitrarily and capriciously by singling out Hesai for disfavored treatment—following a sustained, malicious lobbying campaign by Hesai's competitors to falsely smear the company as associated with the Chinese military.  *See XP Vehicles, Inc. v. Department of Energy*, 118 F. Supp. 3d 38, 78-79 (D.D.C. 2015) ("An agency also acts arbitrarily and capriciously if it fails to 'treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'" (quoting *Independent Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996)).  To Hesai's knowledge, it is the only LiDAR manufacturer on the 1260H List and the only company on the 1260H List whose shares are traded publicly on a U.S. stock exchange.  Hesai is also the only company that was simultaneously de-listed and re-listed.  Singling out only Hesai for disfavored treatment—especially without any valid explanation—epitomizes arbitrary agency action.

111.    Defendants' actions have caused, and will continue to cause, ongoing harm to Plaintiffs.  Plaintiffs have no adequate alternative to review under the APA.

## COUNT III

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: AGENCY ACTION UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED

### Against All Defendants

112.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

113.    The Secretary of Defense has a duty under Section 1260H(b)(3) to "make … deletions to the most recent list" of Chinese military companies "on an ongoing basis based on the latest information available."  *See, e.g.*, *Cobell v. Babbitt*, 91 F. Supp. 2d 1, 41 (D.D.C. 1999)

("When a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command." (alteration and citation omitted)).

114.    On March 8, 2024, and April 12, 2024, Hesai provided Defendants evidence establishing that Hesai does not meet the statutory definition of a Chinese military company. The materials submitted by Hesai constitute "the latest information available" to the Department.

115.    Although Defendants formally removed Hesai from the 1260H List on October 15, 2024, its designation as a Chinese military company has been continuous because Defendants simultaneously re-added Hesai to the 1260H List on the same day. In fact, the publication of Hesai's re-listing in the Federal Register *preceded* the publication of Hesai's de-listing. 89 Fed. Reg 84,547 (Oct. 23, 2024) (listing); 89 Fed. Reg. 84,555 (Oct. 23, 2024) (delisting).

116.    Defendants have subsequently declined to remove Hesai from the 1260H List, in violation of their statutory duty to take such action on an ongoing basis in reliance on the information they received.

117.    Defendants' failure to remove Hesai from the 1260H List has caused, and will continue to cause, ongoing harm to Plaintiffs. Plaintiffs have no adequate alternative to review under the APA.

## COUNT IV

## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT: ACTION CONTRARY TO CONSTITUTIONAL RIGHT, POWER, PRIVILEGE, OR IMMUNITY

### Against All Defendants

118.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

119.    The Fifth Amendment to the U.S. Constitution provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. The

Supreme Court and the D.C. Circuit have "held that the Due Process Clause of the Fifth Amendment contains an equal protection component" that prevents the federal government from withholding equal protection of the laws, including through "arbitrary and irrational classifications." *Azam v. District of Columbia Taxicab Comm'n*, 46 F. Supp. 3d 38, 48 & n.9 (D.D.C. 2014).

120.    Hesai is entitled to the protections of the Due Process Clause in light of its substantial connections with the United States, including the presence of its wholly owned U.S. subsidiary, Plaintiff Hesai Inc., and its listing on NASDAQ. *See Northern Sec. Co. v. United States*, 24 S. Ct. 436, 444 (1904) ("Corporations are persons within the meaning of the constitutional provision forbidding the deprivation of property without due process of law, as well as a denial of the equal protection of the laws."); *National Council of Resistance of Iran v. Department of State*, 251 F.3d 192, 203 (D.C. Cir. 2001) (foreign organizations that have "entered the territory of the United States and established substantial connections with this country . . . are entitled to the protections of the Constitution"); *see also Ralls Corp. v. Committee on Foreign Inv. in the U.S.,* 758 F.3d 296, 312-321 (D.C. Cir. 2014) (entities have procedural due process rights even in context of national security determinations).

121.    Hesai—including Plaintiff Hesai Inc., a California-incorporated company—has constitutionally protected property and liberty interests in the United States, including (i) existing investments from U.S. investors, as well as the anticipated return on those investments; (ii) its right to raise capital and conduct its business in the United States, free of arbitrary and unlawful government action; (iii) contractual arrangements with existing U.S. customers; (iv) its right to bid on future contracts with the U.S. government; and (v) its reputation and professional goodwill.

122.    Defendants have acted contrary to constitutional right, power, privilege, or immunity by violating the Due Process Clause of the Fifth Amendment in at least two respects.

123.    *First*, Hesai received no notice of its re-designation as a Chinese military corporation under Section 1260H or opportunity to respond before that re-designation was announced publicly on October 16, 2024. *See, e.g.*, *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 644 (D.C. Cir. 2003) ("[W]e have held on several occasions that government stigmatization that broadly precludes individuals or corporations from a chosen trade or business deprives them of liberty in violation of the Due Process Clause.").

124.    *Second*, Defendants have acted contrary to constitutional right, power, privilege, or immunity by depriving Hesai of equal protection of the laws.  Hesai's designation as a Chinese military company violates Hesai's right to equal protection because Hesai has unjustly been treated differently from similarly situated companies.  Even if Defendants believed Hesai could properly fall within an overly broad conception of entities eligible for placement on the Section 1260H List, Defendants would still not be empowered to pick and choose only certain disfavored companies to be added to the List.  Nevertheless, Defendants have declined to add many other similarly situated Chinese companies to the Section 1260H List.  In fact, the Department has identified a total of only a few dozen companies falling within the statutory definition of a "Chinese military company," none of which (other than Hesai) is a LiDAR producer.

125.    Defendants' actions have denied Hesai its constitutional rights and caused Plaintiffs significant and ongoing harm.

## PRAYER FOR RELIEF

For those reasons, Plaintiffs respectfully request that this Court:

(1)    declare that Defendants' placement of Hesai on the 1260H List is unauthorized by, and contrary to, Section 1260H;

(2)    declare that Defendants acted arbitrarily, capriciously, and otherwise contrary to law when they placed Hesai on the 1260H List;

(3)    declare that Defendants acted contrary to Hesai's constitutional rights, including under the Due Process Clause of the Fifth Amendment, in placing Hesai on the 1260H List;

(4)    hold unlawful and set aside Hesai's designation as a Chinese military company;

(5)    order Defendants to remove Hesai from the 1260H List;

(6)    award Plaintiffs their costs and reasonable attorney fees; and

(7)    grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ James E. Tysse

Dated:  November 15, 2024

James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar. No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com

*Counsel to Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc.*