**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, |
| *Plaintiffs*, |
| v. |
| U.S. DEPARTMENT OF DEFENSE, *et al.* |
| *Defendants*. |

Civ. Action No. 1:24-cv-01381-PLF

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc. hereby move for summary judgment against Defendants United States Department of Defense, Lloyd J. Austin, III, in his official capacity as Secretary of Defense, and Laura D. Taylor-Kale, in her official capacity as Assistant Secretary of Defense for Industrial Base Policy. In support of this motion, Plaintiffs submit the accompanying Memorandum of Points and Authorities and accompanying declaration. A proposed order is attached.

WHEREFORE, Plaintiffs respectfully request that the Court grant summary judgment to Plaintiffs; declare that Defendants violated the Administrative Procedure Act in reinstating Plaintiffs on the list of Entities Identified as Chinese Military Companies Operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal year 2021 (Public Law 116-283) ("1260H List"); hold unlawful and set aside Defendants' decision to designate Plaintiffs as a Chinese military company; and order Defendants to remove Plaintiffs from the 1260H List.

Respectfully submitted,

Dated:  December 9, 2024

_s/ James E. Tysse_

James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jtysse@akingump.com

*Counsel to Plaintiffs Hesai Technology Co., Ltd.*
*and Hesai Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civ. Action No. 1:24-cv-01381-PLF |
| U.S. DEPARTMENT OF DEFENSE, *et al.* | |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT OF THE CASE...................................................................................3

      A.    Statutory And Regulatory Background........................................3

      B.    Factual Background And Procedural History ..............................6

STANDARD OF REVIEW .....................................................................................13

ARGUMENT ...........................................................................................................13

I.     THE DEPARTMENT'S AMENDED DESIGNATION SHOULD BE VACATED FOR IGNORING CONTRADICTORY RECORD EVIDENCE ................13

II.    THE DEPARTMENT'S EXPLANATION FOR DESIGNATING HESAI IS FLAWED AND INADEQUATE ...................................................................17

III.   THE DEPARTMENT'S FINDING THAT HESAI CONTRIBUTES TO THE "CHINESE DEFENSE INDUSTRIAL BASE" IS UNLAWFUL ...................................19

      A.    The Department's Approach Exceeds Its Statutory Authority .................20

      B.    The Department's Findings Are Not Based On Substantial Evidence.........................................................................................22

IV.   THE DEPARTMENT'S FINDING THAT HESAI IS A "MILITARY-CIVIL FUSION CONTRIBUTOR" IS UNLAWFUL .................................................................24

      A.    The Department's Finding That Hesai Is "Affiliated With" The MIIT Is (Still) Unlawful.................................................................24

      B.    The Department's Finding That Hesai Knowingly Received Funding Under China's Military Industrial Planning Apparatus Is Unlawful ..............................................................................35

      C.    The Department's Finding That Hesai Resides In Or Is Affiliated With A Military-Civil Fusion Enterprise Zone Is Unlawful.....................39

      D.    The Department's Finding That Hesai Advertises On Military Equipment Procurement Platforms Is Unlawful ........................................41

V.    THE DEPARTMENT FAILED TO PROVIDE HESAI BASIC DUE PROCESS...........43

CONCLUSION........................................................................................................45

ADDENDUM

    Note to 50 U.S.C. § 1701, Application of Authorities Under the International Emergency Economic Powers Act to Communist Chinese Military Companies ........Add. 1

    Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal year 2021 (Public Law 116-283), codified at 10 U.S.C. § 113 note .......................................................................................Add. 3

i

# TABLE OF AUTHORITIES

C<span>ASES</span>:

*ACA Int'l v. FCC,*
    885 F.3d 687 (D.C. Cir. 2018) ......................................................................17, 19

*AT&T Corp. v. FCC,*
    86 F.3d 242 (D.C. Cir. 1996) ...............................................................................13

*Burlington Truck Lines v. United States,*
    371 U.S. 156 (1962) ...............................................................................................13

*Butte Cnty. v. Hogen,*
    613 F.3d 190 (D.C. Cir. 2010) ..............................................................................16

*Calero-Toledo v. Pearson Yacht Leasing Co.,*
    416 U.S. 663 (1974) ...............................................................................................45

*Center for Auto Safety v. Federal Highway Admin.,*
    956 F.2d 309 (D.C. Cir. 1992) ..............................................................................24

*Community for Creative Non-Violence v. Turner,*
    893 F.2d 1387 (D.C. Cir. 1990) ............................................................................28

*Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.,*
    892 A.2d 1073 (Del. 2006) ...................................................................................26

*Dickson v. Secretary of Def.,*
    68 F.3d 1396 (D.C. Cir. 1995) ........................................................................18, 36

*Dillmon v. National Transp. Safety Bd.,*
    588 F.3d 1085 (D.C. Cir. 2009) ............................................................................16

*Duncan v. Walker,*
    533 U.S. 167 (2001) ...............................................................................................36

*Eagle Cnty., Colo. v. Surface Transp. Bd.,*
    82 F.4th 1152 (D.C. Cir. 2023) .............................................................................16

*Emory Univ., Inc. v. Neurocare, Inc.,*
    985 F.3d 1337 (11th Cir. 2021) ............................................................................25

*FCC v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) ...............................................................................................17
    567 U.S. 239 (2012) ...............................................................................................29

*Federal Trade Comm'n v. Qualcomm Inc.*,
    411 F. Supp. 3d 658 (N.D. Cal. 2019) ................................................................38
    969 F.3d 974 (9th Cir. 2020) ...............................................................................38

*Fred Meyer Stores, Inc. v. NLRB*,
    865 F.3d 630 (D.C. Cir. 2017) .............................................................................16

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) ...............................................................................................45

*Garnett v. RLX Tech. Inc.*,
    632 F. Supp. 3d 574 (S.D.N.Y. 2022) .................................................................26

*Genuine Parts Co. v. Environmental Prot. Agency*,
    890 F.3d 304 (D.C. Cir. 2018) .............................................................................17

*Getty v. Federal Sav. & Loan Ins. Corp.*,
    805 F.2d 1050 (D.C. Cir. 1986) ...........................................................................16

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ......................................................................................28, 29

*Hikvision USA, Inc. v. FCC*,
    97 F.4th 938 (D.C. Cir. 2024) .......................................................................17, 19

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
    219 F. Supp. 2d 57 (D.D.C. 2002) .......................................................................45
    333 F.3d 156 (D.C. Cir. 2003) .............................................................................45

*Homer v. Roche*,
    226 F. Supp. 2d 222 (D.D.C. 2002) .....................................................................19

*Iaccarino v. Duke*,
    327 F. Supp. 3d 163 (D.D.C. 2018) .....................................................................19

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) .............................................................................................29

*Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*,
    405 F. Supp. 3d 1317 (C.I.T. 2019) .....................................................................38

*Luokung Tech. Corp. v. Department of Def.*,
    538 F. Supp. 3d 174 (D.D.C. 2021) ............................................................ *passim*

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) .............................................................................................43

*Mey v. DIRECTV LLC*,
    971 F.3d 284 (4th Cir. 2020) ................................................26

*Morall v. Drug Enf't Admin.*,
    412 F.3d 165 (D.C. Cir. 2005) ..............................................13

*Mori v. Department of Navy*,
    731 F. Supp. 2d 43 (D.D.C. 2010) ....................................19, 35

*Morton v. Ruiz*,
    415 U.S. 199 (1974) .............................................................19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ...............................................................13

*Nasdaq Stock Mkt. LLC v. Securities & Exch. Comm'n*,
    38 F.4th 1126 (D.C. Cir. 2022) ............................................33

*National Ass'n of Home Builders v E.P.A.*,
    682 F.3d 1032 (D.C. Cir. 2012) .......................................16, 23

*National Council of Resistance of Iran v. Department of State*,
    251 F.3d 192 (D.C. Cir. 2001) .........................................43, 44

*Pacific Nw. Newspaper Guild, Loc. 82 v. NLRB*,
    877 F.2d 998 (D.C. Cir. 1989) .............................................19

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
    613 F.3d 220 (D.C. Cir. 2010) .............................................44

*Policy & Rsch., LLC v. United States Dep't of Health & Hum. Servs.*,
    313 F. Supp. 3d 62 (D.D.C. 2018) .......................................13

*Ralls Corp. v. Committee on Foreign Inv. in U.S.*,
    758 F.3d 296 (D.C. Cir. 2014) .............................................44

*Rehaif v. United States*,
    588 U.S. 225 (2019) .............................................................35

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...............................................26

*Sessions v. Dimaya*,
    584 U.S. 148 (2018) .............................................................28

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
    144 S. Ct. 2680 (2024) .........................................................16

*Taylor v. Resolution Tr. Corp.*,
    56 F.3d 1497 (D.C. Cir. 1995) ................................................................................. 43
    66 F.3d 1226 (D.C. Cir. 1995) ................................................................................. 43

*Trafalgar Cap. Assocs., Inc. v. Cuomo*,
    159 F.3d 21 (1st Cir. 1998) ..................................................................................... 19

*Tripoli Rocketry Ass'n Inc. v. Bureau of Alcohol, Tobacco, Firearms, &*
    *Explosives*,
    437 F.3d 75 (D.C. Cir. 2006) ............................................................................. 17, 39

*U.S. Postal Serv. v. Postal Regul. Comm'n*,
    785 F.3d 740 (D.C. Cir. 2015) ........................................................................... 17, 19

*United States v. Davis*,
    588 U.S. 445 (2019) ................................................................................................ 25

*United States v. Hansen*,
    599 U.S. 762 (2023) ................................................................................................ 28

*United States v. Western Elec. Co.*,
    12 F.3d 225 (D.C. Cir. 1993) .................................................................................. 25

*Water Quality Insurance Syndicate v. United States*,
    225 F. Supp. 3d 41 (D.D.C. 2016) ..................................................................... 14, 16

*Woodhull Freedom Found. v. United States*,
    72 F.4th 1286 (D.C. Cir. 2023) ............................................................................... 28

*Xiaomi Corp. v. Department of Def.*,
    No. CV 21-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021) ............................. *passim*

*Yates v. United States*,
    574 U.S. 528 (2015) ................................................................................................ 27

**STATUTES AND REGULATIONS:**

5 U.S.C.
    § 706(2) .................................................................................................................. 13

10 U.S.C.
    § 113 note ................................................................................................................. 4

11 U.S.C.
    § 101(2)(A) ............................................................................................................. 26

12 U.S.C.
    § 5481 ...................................................................................................................... 26

15 U.S.C.
    § 9009a..............................................................................................................34

16 U.S.C.
    § 618................................................................................................................26

21 U.S.C.
    § 379g..............................................................................................................26

47 U.S.C.
    § 153................................................................................................................26

50 U.S.C.
    § 1701 note........................................................................................................3
    § 4815(d)(3).....................................................................................................20

National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31,
   137 Stat. 135 (2023)
    § 805...........................................................................................................4, 43

PRC Military and Human Rights Capital Markets Sanctions Act of 2024, H.R.
   7759, 118th Cong...................................................................................................5

Pub. L. No. 105-261, 112 Stat. 1920 (1998)
    § 1237........................................................................................................ *passim*
    § 1237(b)(4)(B)................................................................................................29

Pub. L. No. 116-283, 134 Stat. 3388 (2021)
    § 1260H..................................................................................................... *passim*
    § 1260H(a) .........................................................................................................4
    § 1260H(b)(1) ....................................................................................................4
    § 1260H(b)(3) ...........................................................................................4, 14, 37
    § 1260H(d)(1) ..................................................................................................25
    § 1260H(d)(1)(B)(i)(I)..............................................................................5, 19, 28
    § 1260H(d)(1)(B)(i)(II)................................................................................ *passim*
    § 1260H(d)(1)(B)(ii)..........................................................................................5
    § 1260H(d)(2) ....................................................................................................6
    § 1260H(d)(2)(A) ....................................................................................... *passim*
    § 1260H(d)(2)(B)....................................................................................24, 27, 30
    § 1260H(d)(2)(E)........................................................................................18, 39
    § 1260H(d)(2)(F)...............................................................................................33
    § 1260H(d)(2)(G)......................................................................................18, 41, 43
    § 1260H(d)(3) ....................................................................................................5
    § 6212(a) .........................................................................................................25

32 C.F.R.
    § 117.3.............................................................................................................25
    § 232.3(a) ........................................................................................................25

86 Fed. Reg. 33,994 (June 28, 2021) ................................................6

89 Fed. Reg. 86,230 (Oct. 29, 2024) ...............................................11

**OTHER AUTHORITIES:**

*Affiliate*, BLACK'S LAW DICTIONARY (12th ed. 2024) ................................25

Amazon Press Center, *Amazon Web Services Announces Upcoming China Region
for its Cloud Computing Platform* (Dec. 18, 2013) ................................40

AZoOptics.com .......................................................................22

Brunner, Jordan & Emily Weinstein, *Chinese Military-Civil Fusion and Section
1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4,
2021) ...............................................................................5

Chongqing Municipal People's Government, *Brief Introduction of Chongqing
Economic and Technological Development Zone* (Sept. 12, 2024) ....................39

Clarification Statement on the Company's Lack of Authorized Agent Relationship
with Hesai Technology, CNSENS (Nov. 7, 2024) ....................................42

Dep't of Commerce, *Dual Use Export Licenses* .................................21, 23

Dep't of Commerce, *Export Control Classification Numbers* .......................23

Dep't of Def., *DOD Dictionary of Military & Associated Terms* (Mar. 2017)........20

Garcia-Herrero, Alicia & Michal Krystyanczuk, *How Does China Conduct
Industrial Policy: Analyzing Words Versus Deeds* 24 J. OF INDUS.,
COMPETITION & TRADE 10 (2024) ...................................................34

Guanjun, Mao, *12 projects in Jiading Industrial Zone signed contracts, with a
total investment of over 4.3 billion yuan*, SHANGGUAN NEWS (Mar. 20, 2023) ......40

Isasi, Rosario M., et al., *Legal and Ethical Approaches to Stem Cell and Cloning
Research: A Comparative Analysis of Policies in Latin America, Asia, and
Africa*, 32 J. L. MED. & ETHICS 626 (2004) .....................................38

Jiading District, Shanghai, *Jiading Industrial Zone* (July 5, 2013) .............39

Letter from Rep. Ashley Hinson, U.S. Rep., et al., to Adena Friedman, Chair &
CEO, Nasdaq World Headquarters (Apr. 11, 2024) ..................................12

Nicastro, Luke A., CONG. RSCH. SERV., *The U.S. Defense Industrial Base:
Background and Issues for Congress* (2024) ......................................20

Pitchbook, *Boeing* ..............................................................22

Pitchbook, *Terran Orbital* ................................................................................22

Press Release, U.S. Department of Defense (Jan. 31, 2024) ...........................9

Qualcomm, *Joint Innovation Center*................................................................40

*Shanghai Jiading Industrial Zone develops three 100 billion-level industries*,
    CHINA WORKERS NETWORK (Feb. 22, 2024) ..........................................40

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)..........................25

Witkin, James B., et al., *Building Green: Regulations and Responsibility for
    Sustainable Development,* SP033 ALI-ABA 2125 (2008) .......................38

## INTRODUCTION

After declining to defend its original decision to tar Hesai—a NASDAQ-traded company selling technology for passenger and commercial vehicles—as a "Chinese military company," the Department issued an amended designation on a new record, sending the parties (and the Court) back to the drawing board. But its new results-oriented decision, which still cannot find a *single connection* to the Chinese military or defense industrial base, is just as flawed as the first one.

Despite having many months and the vast resources of the Pentagon at its disposal, the Department's do-over is based not on government research studies, expert analysis, classified information, interagency discussions, public comment, or the like. Instead, the Department was apparently content to rely on nothing more than a series of haphazard Internet searches and Google-generated translations. That shaky foundation likely explains why the Department's new decision is riddled with sloppy mistakes—ranging from overstating the amount of alleged subsidies by RMB 60 million, to citing facts that don't exist, to falsely accusing Hesai of "advertising" on an Internet site with which Hesai has zero connection. "These errors do not inspire confidence in the fastidiousness of the agency's decision-making process." *Xiaomi Corp. v. Department of Def.*, No. CV 21-280, 2021 WL 950144, at *5 (D.D.C. Mar. 12, 2021).

The end result of the Department's mulligan is a flawed analysis that violates the Administrative Procedure Act in multiple ways. Most glaringly, the Department entirely fails to engage with the evidence Hesai submitted, including a sworn declaration from its CEO. This Court has already recognized that the Department was "obligated to consider these documents when evaluating Hesai's request to remove the company from the list, and DoD has represented to the Court that it will do so." ECF No. 25, at 4-5 n.1. Yet besides a conclusory one-sentence representation that the Department "has considered this information," Defendants ignore it. That is a basic failure of reasoned decisionmaking.

Beyond that, the one-sided "factfinding" the Department ultimately performed exceeds its authority and flunks the substantial evidence test.  On the key issue of whether Hesai contributes to the "Chinese defense industrial base," the Department never bothers to define that term (or to acknowledge its narrower prior definitions).  The Department instead makes a series of questionable factual findings about Hesai, China, and LiDAR technology that, upon inspection, are nowhere to be found in the lone sources on which the Department relies (mainly, a self-styled "digital marketing platform" specializing in "search engine optimization").  And when faced with pesky contrary evidence—such as a sworn affidavit stating that Hesai's technology is incapable of performing to military standards and in fact has been classified by the U.S. government as "consumer goods" requiring no special licenses—the Department (as noted) simply ducks it.

The Department makes still more mistakes in finding that Hesai is a "military-civil fusion contributor."  The Department's approach of parroting the statutory language and listing disconnected facts "skip[s] the most 'critical step' of an agency 'connecting the facts to the conclusion." *Xiaomi Corp.*, 2021 WL 950144, at *5.  Once again, its dubious factfinding is usually unsupported by the evidence it cites.  And to top it all off, the Department declined to give Hesai (including its U.S. subsidiary) notice or an opportunity to respond before issuing the renewed designation.  Had the Department afforded Hesai even a modicum of due process, it might have avoided these basic mistakes.  Instead, it has forced Hesai to ask the Court to intervene (again).

Despite having every incentive to offer its very best evidence in the wake of its first botched attempt, the Department still cannot connect Hesai with the Chinese military or defense industrial base.  For good reason:  Hesai is not a military company.  Rather than double-down on such a shallow record, the Department should have acknowledged its errors and voluntary de-listed Hesai.  Because it refuses to do so, the Court should vacate this unlawful action.

## STATEMENT OF THE CASE

### A.    Statutory And Regulatory Background

> 1.    *This Court enjoins the Department's prior attempts to designate companies for purported connections to the Chinese military*

Although this action primarily concerns the Department's 1260H List, the Department's use of an analogous predecessor list of "Communist Chinese military companies" ("CCMC"), maintained under Section 1237 of the 1999 NDAA, provides important context. 50 U.S.C. § 1701 note ("Section 1237") (Add. 1). Under Section 1237, a company qualified as a CCMC if the Secretary of Defense determined that it is "owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China," or "owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China," among other requirements. *Id.* That is, Section 1237 targeted not only military companies, but also entities owned or controlled by, or affiliated with, the Chinese "government" more broadly.

"Section 1237's CCMC designation authority went unused for almost twenty years," *Luokung Tech. Corp. v. Department of Def.*, 538 F. Supp. 3d 174, 195 n.15 (D.D.C. 2021), until a "flurry" of companies were added to the list in 2020 and 2021, *Xiaomi Corp.*, 2021 WL 950144, at *12. But it quickly became apparent that the Department's "designation process *** was deeply flawed and failed to adhere to several different [Administrative Procedure Act ("APA")] requirements." *Id.* at *8. In 2021, this Court twice held that, in placing certain companies on the 1237 List, the Department failed to "adequately explain[] the basis for its decision," acted "in violation of [its] limited grant of statutory authority," and "lack[ed] the substantial evidentiary support required" under the APA. *Id.* at *4-8 (citations omitted); *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 (same). Among other errors, the Department had simply listed various facts pulled from each plaintiff's annual report, followed by a "blanket conclusion" that the plaintiff satisfied

3

the statutory criteria—while "skip[ping] the most 'critical step' of an agency 'connecting the facts to the conclusion.'" *Xiaomi Corp.*, 2021 WL 950144, at *5; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 188-90 (rejecting purported ties to Chinese government as insubstantial). The Court also noted "serious concerns" about whether the Department had afforded the companies "constitutional due process" in listing them without notice or opportunity to object. *Xiaomi Corp.*, 2021 WL 950144, at *8 n.8; *see Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 n.13.

After finding various harms flowing from the stigmatizing designations—including "reputational damage," "diminished access to capital, canceled contracts, loss of market share, and difficulty recruiting and retaining talent"—the Court enjoined the listings of the two entities. *Luokung Tech. Corp.*, 538 F. Supp. 3d at 192, 195-96; *see Xiaomi Corp.*, 2021 WL 950144, at *13. The Department did not appeal, and it subsequently removed both entities from the 1237 List.

> ## 2. Congress enacts Section 1260H with a focus on Chinese military connections

In January 2021, Congress enacted the provision at issue here: Section 1260H of the 2021 NDAA. *See* Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965 (2021) (Add. 3).[1] That provision directed the Secretary of Defense to "identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company." § 1260H(a). The Secretary must update the list annually, § 1260H(b)(1), as well as "make additions or deletions *** on an ongoing basis based on the latest information available," § 1260H(b)(3). Congress has already barred entities on the 1260H List from selling goods to the Department beginning in 2026, *see* Pub. L. No. 118-31, § 805, 137 Stat. 135, 315 (2023), and is actively considering additional

---

[1] Section 1260H is codified at 10 U.S.C. § 113 note. For ease of reference, this brief cites to the original public law provision.

sanctions, *e.g.*, PRC Military and Human Rights Capital Markets Sanctions Act of 2024, H.R. 7759, 118th Cong. (prohibiting purchase of securities from, *inter alia*, entities on the 1260H List).

As commentators have observed, "Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237," but with a "particular[] concern[] about the Chinese military and its operations in the United States, rather than the Chinese state broadly." Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021).[2]  Congress directed this "more precise" designation strategy through "Section 1260H's narrow and tailored language," including a "new definition of a [Chinese military company that] is significantly narrower than the old definition of CCMCs under Section 1237." *Id.*

To that end, Section 1260H provides that a "Chinese military company" is an entity that is "engaged in providing commercial services, manufacturing, producing, or exporting," § 1260H(d)(1)(B)(ii), and that falls into one of two categories of relations to the Chinese military. The first category encompasses any entity owned, controlled, or acting as an agent of "the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party." § 1260H(d)(1)(B)(i)(I); *see* § 1260H(d)(3) (defining People's Liberation Army).

The second type of "Chinese military company" is an entity "identified as a [1] military-civil fusion contributor to the [2] Chinese defense industrial base." § 1260H(d)(1)(B)(i)(II). Although Congress did not define the term "Chinese defense industrial base," it defined a "military-civil fusion contributor" to cover entities that fit into the following subcategories:

---

[2]  https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors (all cited websites last visited Dec. 8, 2024).

(A)    Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B)    Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C)    Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D)    Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E)    Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F)    Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G)    Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H)    Any other entities the Secretary determines is appropriate.

§ 1260H(d)(2).

On June 28, 2021, Defendants published the initial 1260H List, designating various entities as "Chinese military companies" for the first time. 86 Fed. Reg. 33,994, 33,994 (June 28, 2021). Hesai did not appear on that List. The Department simultaneously "removed the designation of 'Communist Chinese military companies' from entities previously listed as such in accordance with Section 1237[.]" *Id.* "There are currently no entities designated as Communist Chinese military companies" under Section 1237. *Id.*

**B.    Factual Background And Procedural History**

*1.    Hesai's ownership, operations, and technology*

Plaintiff Hesai Technology Co., Ltd. got its start in 2013 in San Jose, California by three Chinese entrepreneurs, who were educated at the University of Illinois at Urbana-Champaign and

Stanford University.  They chose the name "Hesai," a phonetic translation of "Jose" in Chinese, to honor the company's American roots.  In 2014, the co-founders moved to Shanghai and formally incorporated the company.  All three remain directors of Hesai today.  NDAR387.

Hesai develops, manufactures, and sells LiDAR technology for passenger and commercial vehicles.  NDAR375.  Its parent company, Hesai Group, has a global footprint that includes the United States, where California-based Plaintiff Hesai Inc. serves as the company's primary sales platform in America, with over a dozen employees in Palo Alto and Detroit.  NDAR388.[3]  Since February 9, 2023, Hesai Group has been publicly traded on NASDAQ under the ticker symbol HSAI.  NDAR372.  Its founders—who have no relationship to the People's Liberation Army or any organization subordinate to it—maintain a 23% ownership stake in the company and hold super-voting shares that confer 75% of the voting power and control over the company's strategic decisions.  *Id.*  The rest of Hesai's shares are owned by institutional, retail, and commercial investors, including from the United States and other Western countries.  *Id.*

LiDAR's primary application is in autonomous vehicles.  The technology uses laser pulses to create a real-time, accurate 3D representation of an object's physical surroundings.  *See* NDAR373.  This enables autonomous or assisted driving systems to navigate complex environments in a wide variety of driving conditions to facilitate safe maneuvering and avoid crashes.  Hesai leads the automotive LiDAR industry, with a 37% share of the global market as of 2023.  Am. Compl. ¶ 30; *see* NDAR373 (2022 data).  Hesai's share of the global market for robotic cars (*i.e.*, "robotaxis") was even higher, at 74%.  *Id.*  Indeed, 12 of the world's top 15 autonomous driving companies have used Hesai's technology as their primary LiDAR solution.  *Id.*

---

[3] "NDAR" refers to the Administrative Record for the re-listing decision, *see* ECF No. 40, while "AR" refers to the record for the initial listing decision, *see* ECF No. 29.

Hesai's LiDAR products do not capture personally identifiable information such as human facial features, biometric data, or license plates.  NDAR374-375.  Nor can they store even a second of any image they generate, or wirelessly transmit any image.  NDAR373.  Rather, the image data is transmitted to the vehicle's onboard computer via a one-way secure cable, ensuring the data cannot be accessed (by Hesai or any third party) outside of the vehicle in which it operates.  *Id.* These privacy safeguards and cybersecurity protections have been certified by international, independent, expert testing organizations.  *Id.*

Hesai is fully committed to independence from government control by any country, including China.  NDAR375.  As a publicly traded company, Hesai Group is responsible to its Board, which does not include any person affiliated with the Chinese military.  NDAR379.  Neither the Chinese government nor the People's Liberation Army—nor any sub-entity operating subject to the direction of the government or military—has any "golden" share or veto right over the company's decision-making.  NDAR372.

Hesai is also dedicated to preventing the improper use or resale of its products, including for any military purpose.  NDAR375.  Hesai does not sell its LiDAR equipment to any military and is committed to doing everything it can to ensure that its technology is not transferred to military entities (Chinese or otherwise).  *Id.*  It employs a carefully designed customer-screening process, established with the assistance of U.S. counsel, to help ensure that the company does not sell its products to any entities on any list of prohibited and restricted parties maintained by the U.S. government (including the Military End User List, the Entity List, the Specially Designated Nationals and Blocked Persons List, etc.), or to any entity subject to U.S., E.U., U.K., or U.N. blocking measures.  NDAR375, NDAR390.  Hesai's standard sales agreement with new customers also prohibits the re-sale of Hesai's LiDAR equipment to the military.  ECF No. 17, at 10.

Not only does Hesai not supply its products for military use, it could not do so. ECF No. 17, at 10. That is because all of the company's products are strictly designed and manufactured at civilian specifications for commercial and passenger vehicles, which are significantly below battlefield standards for any country's military, ensuring sales at competitive prices in the consumer market. *Id.* at 11; NDAR375. Hesai's products simply do not provide the durability and performance necessary for military use—*i.e.*, they have a lower internal component temperature range, they have a lower vibration/shock endurance, they are not radiation-proof, etc. *Id.* That is presumably why the U.S. Department of Commerce has classified all of Hesai's LiDAR products as "EAR99," meaning that they fall into the same category as most commercial and consumer goods, and do not require a license for exports in most situations. NDAR375.

### 2. Defendants list, then de-list, Hesai

On January 31, 2024, the Department released an updated 1260H List via press release, which designated Hesai Technology Co., Ltd. as a "Chinese military compan[y]" for the first time.[4] The Department provided Hesai no prior notice or opportunity to be heard. NDAR376, 393. Notably, Hesai's initial listing followed a sustained, malicious lobbying campaign by Hesai's main U.S. competitors to falsely smear Hesai as a Chinese military company. NDAR376, 390-391.

In a good-faith effort to cooperate and avoid litigation, counsel for Hesai repeatedly asked Defendants for the legal and factual basis for Hesai's listing so that it could correct their misunderstanding. NDAR371. Hesai also submitted detailed information to Defendants refuting that the company satisfies any of the Section 1260H(d)(1)(B)(i) criteria in March and April 2024.

---

[4]    Press Release, U.S. Department of Defense (Jan. 31, 2024), https://www.defense.gov/News/Releases/Release/Article/3661985/dod-releases-list-of-peoples-republic-of-china-prc-military-companies-in-accord/.

NDAR371-395.  But Defendants provided no substantive response.  Given its ongoing harm, Hesai had no choice but to file this lawsuit in May 2024.

Plaintiffs eventually shared the listing memorandum ("Original Designation").  AR9-17. Although the Original Designation did not find that Hesai is owned or controlled by the military and acknowledged that Hesai's products "enable a broad spectrum of applications across passenger or commercial vehicles," AR12, it nevertheless determined that "Hesai is a military-civil fusion contributor to the Chinese defense industrial base," *id.*  Despite having "examined" all the factors, AR11, the Department listed Hesai based on only a single, narrow ground:  a purported "affiliation with the Chinese Ministry of Industry and Information Technology (MIIT)."  AR12.

In June 2024, this Court entered the parties' agreed-to schedule for expedited resolution of the case, and set a September 2024 hearing on cross-motions for summary judgment.  ECF No. 13.  But over the summer, the Financial Times reported that the Pentagon had decided to de-list Hesai as a Chinese military company because government lawyers "were concerned that the rationale for [the company's] inclusion would not be up to legal scrutiny under the criteria outlined in the 2021 [NDAA] legislation."  Am. Comp. ¶ 67.  This determination was met with backlash from politicians, who "call[ed] on the Pentagon to 'immediately reverse the decision.'"  *Id.* ¶ 68.

A few days before the long-scheduled hearing, Defendants requested a three-week postponement so that the Department could "make a new decision regarding Hesai's placement on the Section 1260H list" by October 8, 2024, that would "render the original determination inoperative."  ECF No. 30.  After the Department missed that deadline, Hesai moved for an order to show cause as to why the Court should not adjudicate the fully briefed summary judgment papers.  ECF No. 34.  On October 15, 2024, the Department finally rescinded Hesai's Section 1260H designation and de-listed the company.

### 3.    *Defendants re-list Hesai*

The same day that Defendants delisted Hesai, however, the Department immediately *re-listed* Hesai as a Chinese military company—once again, without giving Hesai any advance notice or opportunity to respond.  Am. Compl. ¶ 70.  The de-listing and re-listing determinations were published on October 29, 2024.  89 Fed. Reg. 86,230; *see* NDAR5.

Upon Hesai's request, Defendants provided the Department's new decision memorandum ("Amended Designation"), which is dated September 17, 2024 (*i.e.*, one month before the de-listing/re-listing).  NDAR6-24 (attached as Tysse Decl. Ex. A).  Like the agency's Original Designation, the Amended Designation makes no finding that Hesai is owned or controlled by the PLA or any other military-related body.  *Id.*  Instead, the Department alleges only that Hesai "is a military-civil fusion contributor to the Chinese defense industrial base."  NDAR10.  Although the Department finds (for the first time) that "Hesai Group contributes to the Chinese defense industrial base through its development of LiDAR products which are used in military equipment," the Department relies purely on the supposed "dual-use" nature of LiDAR technology; it offers zero support that relates to Hesai, China, or China's defense industrial base.  NDAR11.

The Department also identifies the statutory bases for its conclusion that Hesai meets the definition of a "military-civil fusion contributor."  NDAR10.  Beyond reasserting the original determination that Hesai is "affiliat[ed] with the [MIIT] through research partnerships and projects," the Department relies on three new justifications for designating Hesai (all based on facts that predated the original listing):  that it purportedly (i) "receives assistance from the Government of China through science and technology efforts initiated under the Chinese military industrial planning apparatus"; (ii) "resides in or is affiliated with military-civil fusion enterprise zones"; and (iii) has "products [that] are advertised on a nongovernmental military equipment procurement platform."  *Id.*

4.    *Defendants' actions harm Plaintiffs and the U.S. public*

The Department's actions have inflicted immediate, severe, and ongoing harms on Hesai. The company has suffered serious reputational injury from the stigma of being placed (and maintained) on the 1260H List—including sustained and damaging press attention falsely describing Hesai as an entity that is "helping" and "aiding" the Chinese military. NDAR376. Several members of Congress have cited Hesai's listing in urging NASDAQ to "consider delisting Hesai (HSAI) from the stock exchange." Letter from Rep. Ashley Hinson, U.S. Rep., et al., to Adena Friedman, Chair & CEO, Nasdaq World Headquarters 1-2 (Apr. 11, 2024).

The company has also suffered severe financial harm. After its original listing, Hesai Group's share price fell over 30% in a single day. NDAR376. The company's re-listing and continued placement on the List has jeopardized ongoing contract negotiations and disrupted existing and potential customer relationships at a particularly sensitive time for the industry, when automobile companies are making crucial decisions about the technology to be used in future models. *Id.* Due to the listing's impact on Hesai's customer relationships, Hesai has been forced to pause advanced plans to establish a manufacturing facility in the United States. NDAR372.

Hesai's listing as a Chinese military company also harms the public interest. NDAR377. The established and certified safety of Hesai's technology means that its products are more reliable than its competitors' unproven products. *Id.* Hesai's listing thus not only harms free and fair competition, but also risks leaving the U.S. public with only unsafe, unreliable, and unsuitable alternatives at a time when LiDAR technology is becoming increasingly critical to the future of the American automotive industry. *Id.* Hampering a major supplier and innovator in the LiDAR space will increase costs, reduce choices crucial to consumer safety, and impede technological advancement. *Id.* In short, American competition will be harmed—and American roads will be more dangerous—as long as Hesai remains on the List. NDAR377.

## STANDARD OF REVIEW

On summary judgment in an APA case, "the reviewing court generally reviews the agency's decision as an appellate court addressing issues of law." *Policy & Rsch., LLC v. United States Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (internal alterations and citation omitted). A court will set aside an agency decision if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, contrary to statute, or otherwise not in accordance with law. 5 U.S.C. § 706(2). An agency "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). An agency acted arbitrarily and capriciously if it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*.

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]" taking into account "whatever in the record fairly detracts from its weight." *AT&T Corp. v. FCC*, 86 F.3d 242, 247 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

## ARGUMENT

## I.    THE DEPARTMENT'S AMENDED DESIGNATION SHOULD BE VACATED FOR IGNORING CONTRADICTORY RECORD EVIDENCE

The Department's Amended Designation should be set aside for an obvious and critical failure:  it fails to consider relevant contradictory evidence before the agency. That failure alone requires vacatur. *See, e.g., Morall v. Drug Enf't Admin.*, 412 F.3d 165, 179-84 (D.C. Cir. 2005)

13

(vacating agency decision where memorandum "fails to consider relevant contradictory evidence" and "therefore cannot stand").  "The D.C. Circuit has not hesitated to reject agency determinations" when the agency "ignored evidence contrary to its position" or "offered only [a] mere assertion that [its determination] accounted for contrary evidence." *Water Quality Insurance Syndicate v. United States*, 225 F. Supp. 3d 41, 68 (D.D.C. 2016) (quotation marks and alterations omitted) (citing cases).  That bedrock administrative-law principle applies with particular force in light of Congress's command that the Department "make additions or deletions" to the 1260H List "based on the latest information available," § 1260H(b)(3)—which obviously includes information that Hesai submitted to the Department before it issued the Amended Designation.

Following its original listing, Hesai submitted to the Department (1) a March 2024 letter requesting the basis for its wrongful placement on the 1260H List (along with a sworn declaration from its CEO), and (2) an April 2024 letter regarding Hesai's communications with the Congressional Research Service.  NDAR371-395; Am. Compl. ¶ 62.  This Court has held that the Department "is obligated to consider these documents when evaluating Hesai's request to remove the company from the list, and DoD has represented to the Court that it will do so."  ECF No. 25, at 4-5 n.1; *see* ECF No. 19, at 15 (submissions post-dating original listing "will be duly considered by DoD in the context of assessing the propriety of retaining Hesai on the Section 1260H List").

Yet the Amended Designation inexplicably fails to engage with the materials Hesai submitted—even though they contradict various findings in the Amended Designation.  For example, the Department asserts that Hesai "contributes to the Chinese defense industrial base through its development of LiDAR products which are used in military equipment."  NDAR11.  But Hesai's CEO's declaration, submitted in March 2024 "under penalty of perjury," NDAR395, refutes that finding, explaining that "Hesai's technology has never been designed for, evaluated

for, or validated to military specifications," and instead has "received the same EAR99 designation by the Department of Commerce that is applied to a majority of commercial products." NDAR375, 392. Hesai's April 2024 submission again refuted that finding, when it explained that the company does not sell its equipment for military use; it has systems to prevent such improper use, including of equipment resold downstream; and its products' specifications are significantly below battlefield standards for military use. Am. Compl. ¶ 62.

The Department also asserts that "the PRC Government could assist the Hesai Group [to] make decisions or provide guidance." NDAR13. But Hesai's CEO also specifically refuted that claim in the March 2024 submission, explaining that the statements from Hesai's securities filings that the Department relies on "merely inform[] investors of the general risks of investing in companies based in China." NDAR392. More broadly, the March 2024 submission explained that "[n]either the Chinese government, the People's Liberation Army, nor any other organization subordinate to the Central Military Commission of the Chinese Community Party has interfered with, or had any control over, Hesai's operations and management." NDAR389-390.

Hesai's specific factual assertions, along with its general denials, contradict the government's factual findings. At a bare minimum, they are *relevant* to the Department's analysis. Yet Hesai's submissions appear nowhere in the Amended Designation. In fact, Defendants *failed to include* the April 2024 letter in the certified record—even after Defendant Taylor-Kale explicitly told Hesai that the Department "would consider the [April 2024] letter, its attachment, and all the information provided thus far in [its] ongoing assessment of whether Hesai should remain on, or be removed from, the Chinese military company list as required by Section 1260H." Am. Compl. ¶ 63; *see also* ECF No. 16-1, Ex. C (same representation with respect to March 2024 letter and declaration). The Department's unexplained "refusal to consider [the] evidence bearing on the

issue before it constitutes arbitrary agency action within the meaning of" the APA.  *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

Although the Department at least included the March 2024 materials in the administrative record, it may well not have, as its one-sentence explanation asserts only that "[t]he Department considered this information during its analysis."  NDAR10.  But "[m]erely '[s]tating that a factor was considered *** is not a substitute for considering it[.]'"  *Eagle Cnty., Colo. v. Surface Transp. Bd.*, 82 F.4th 1152, 1184 (D.C. Cir. 2023) (quoting *Getty v. Federal Sav. & Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986)) (criticizing agency's bare "assurance" that it considered materials, while "offer[ing] no citations that explicitly reference" them), *cert. granted sub nom. Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 144 S. Ct. 2680 (2024).  "[T]he record does not support [the Department's] contention that it gave actual consideration" to the latest information made available to it, as Section 1260H(b)(3) requires; the Amended Designation is bereft of any "analysis of [the facts submitted] and how they influenced [the agency]'s decision."  *Getty*, 805 F.2d at 1057.  Even if the Department believed that the materials lacked credibility, it was required to offer some "compelling reason for refusing to believe the plaintiff," whose CEO swore under oath.  *Water Quality Insurance Syndicate*, 225 F. Supp. 3d at 68 (alteration omitted) (quoting *Dillmon v. National Transp. Safety Bd.*, 588 F.3d 1085, 1091 (D.C. Cir. 2009)).  Instead, the Amended Designation "evidences a complete failure to reasonably reflect upon the information" and to "grapple with contrary evidence—disregarding entirely the need for reasoned decisionmaking."  *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638-39 (D.C. Cir. 2017).

Finally, the Amended Designation fails even to acknowledge the *Original* Designation, let alone to attempt to explain the discrepancies between the two.  *See National Ass'n of Home Builders v E.P.A.*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (agency must "display awareness that it

is changing position" (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009))). For example, the Original Designation asserted that, "[w]hile each of the factors and subfactors set forth in *** Section 1260H were examined, this report only addresses the statutory provisions that apply to the profiled entity"—namely, Hesai's purported affiliation with MIIT. AR11. Yet the Amended Designation found three *additional* factors satisfied—without acknowledging the Department's prior statement, or that the facts underlying each factor *predate* the Original Designation. Moreover, the Original Designation's *primary* basis for deeming Hesai "affiliated with" the MIIT—that its prospectus supposedly revealed "four programs and projects on which [Hesai] is working" with the MIIT, AR13—is conspicuously absent from the Amended Designation (again with no explanation). In fact, the Department excluded the Original Designation from the new administrative record altogether. The Department's "fail[ure] to consider [that] important aspect of the problem," like its failure to engage with substantial evidence before it, renders its decision "arbitrary and capricious." *Genuine Parts Co. v. Environmental Prot. Agency*, 890 F.3d 304, 307 (D.C. Cir. 2018) (internal quotation marks and citation omitted).

In sum, the Amended Designation should be vacated for its obvious failure to consider relevant record material. *See Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 950 (D.C. Cir. 2024) ("Vacatur is the normal remedy for unsustainable agency action[.]" (citation omitted)).

## II.    THE DEPARTMENT'S EXPLANATION FOR DESIGNATING HESAI IS FLAWED AND INADEQUATE

Even if the Department had considered the full record, its failure to "'articulate a comprehensible standard' for assessing the applicability" of its purported evidence to the "statutory categor[ies]" invoked under Section 1260H is also "arbitrary and capricious." *ACA Int'l v. FCC*, 885 F.3d 687, 700 (D.C. Cir. 2018) (quoting *U.S. Postal Serv. v. Postal Regul. Comm'n*, 785 F.3d 740, 753-54 (D.C. Cir. 2015)); *see Tripoli Rocketry Ass'n Inc. v. Bureau of Alcohol, Tobacco,*

*Firearms, & Explosives*, 437 F.3d 75, 84 (D.C. Cir. 2006) (noting an agency errs by "articulat[ing] no standard whatsoever" for discerning the meaning of relevant terms).

Section 1260H includes a number of terms that Congress left undefined, such as the "Chinese defense industrial base," § 1260H(d)(1)(B)(i)(II); "Chinese military industrial planning apparatus," § 1260H(d)(2)(A); "military-civil fusion enterprise zone," § 1260H(d)(2)(E); and "military equipment procurement platform," § 1260H(d)(2)(G).  But instead of explaining how it found those definitions met—or even what standard it was applying—the Department simply quotes the statutory language, lists a variety of disjointed facts, and declares the standard satisfied.  That violates the APA.  The Department does "not adequately explain[] the basis for its decision" when it does "little more than 'parrot[ ] the language of a statute,' followed by a conclusory statement." *Xiaomi Corp.*, 2021 WL 950144, at *5 (quoting *Dickson v. Secretary of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995)).  That approach "skips the most 'critical step' of an agency 'connecting the facts to the conclusion.'"  *Id.* (quoting *Dickson*, 68 F.3d at 1405).

Take this example:  the Amended Designation states that Hesai "resides in or is affiliated with military-civil fusion enterprise zones," and then supports that conclusion with eight bullet points of factual findings.  NDAR15-16.  But the Department offers no definition of a "military-civil fusion enterprise zone."  And none of the bullets states that Hesai "resides in or is affiliated with" a "military-civil fusion enterprise zone."  Instead, the bullets allege that Hesai resides in an "*Economic and Technology Development* Zone" and an "*Industrial* Zone."  *Id.* (emphases added).  Does the Department believe that all such "Economic" and "Industrial" zones are, in reality, "military-civil fusion enterprise zones"?  Or does it view only these two sprawling zones in particular—or perhaps some subset of each—as "military-civil fusion enterprise zones"? For these and other critical questions, Hesai (and this Court) can only guess.

By "merely list[ing] facts and conclusions without connecting them in a rational[] way," *Iaccarino v. Duke*, 327 F. Supp. 3d 163, 177 (D.D.C. 2018), the Department's approach threatens the sort of "impermissible 'ad hocery' on the part of [agencies] which is the core concern underlying the prohibition of arbitrary or capricious agency action," *Pacific Nw. Newspaper Guild, Loc. 82 v. NLRB*, 877 F.2d 998, 1003 (D.C. Cir. 1989); *see, e.g.*, *Trafalgar Cap. Assocs., Inc. v. Cuomo*, 159 F.3d 21, 34 n.11 (1st Cir. 1998) ("It is precisely this sort of ad-hoc standardless determination that is likely to be arbitrary and capricious under the Administrative Procedure Act." (citing *Morton v. Ruiz*, 415 U.S. 199, 232 (1974))). That refusal to offer a standard by which regulated parties can understand why the government's designation policy embraces one potential application but excludes another fails even the basic "requirement of reasoned decisionmaking," *ACA Int'l*, 885 F.3d at 700 (citing *U.S. Postal Serv.*, 785 F.3d at 753-54); *see Hikvision USA, Inc. v. FCC*, 97 F.4th 938, 950 (D.C. Cir. 2024) (vacating definition after agency "fail[ed] to provide comprehensible guidance about what falls within the bounds of" term).

The Department's approach leaves the Court "unable to determine whether the [agency's] chosen standard was appropriate or whether the [agency] properly applied that standard." *Mori v. Department of Navy*, 731 F. Supp. 2d 43, 49 (D.D.C. 2010); *see Homer v. Roche*, 226 F. Supp. 2d 222, 226 (D.D.C. 2002) (agency's failure "leaves the Court to guess" as to whether the agency "permissibly exercised" its authority and "made a choice that is supported by at least substantial evidence"). These errors, too, require vacatur.

## III.    THE DEPARTMENT'S FINDING THAT HESAI CONTRIBUTES TO THE "CHINESE DEFENSE INDUSTRIAL BASE" IS UNLAWFUL

The Department does not contend that Hesai is owned or controlled by the Chinese military. *See* § 1260H(d)(1)(B)(i)(I). Instead, it found only that the company is a "military-civil fusion

contributor to the Chinese defense industrial base[.]" § 1260H(d)(1)(B)(i)(II); *see* NDAR10-11. Neither the statute nor the record supports that finding.

## A.        The Department's Approach Exceeds Its Statutory Authority

The Department exceeded its authority and acted contrary to law by concluding that Hesai contributes to the "Chinese defense industrial base."  Although (as noted) the Amended Designation does not purport to define that term, the Department has argued earlier in this litigation that "[t]he straightforward reading of" the relevant statutory section "demands that an entity must be a contributor to the Chinese military that also has civil/commercial purposes."  ECF No. 23. That is consistent with the commonly understood meaning of "defense industrial base" in the U.S. context, *i.e.*, the "organizations, facilities, and resources that supply the U.S. government— principally, but not exclusively, the Department of Defense (DOD)—with materials, products, and services for defense purposes."  Luke A. Nicastro, Cong. Rsch. Serv., *The U.S. Defense Industrial Base: Background and Issues for Congress* (2024); *see id.* (explaining this is the meaning "Congress, the executive branch, think tanks, and media outlets frequently employ," which typically involves a "contractual relationship with the government" and private parties);[5] *see also, e.g.*, 50 U.S.C. § 4815(d)(3) (indicating "United States defense industrial base" involves acquisition or funding by the U.S. government "for the advancement of the national security of the United States").  In fact, the Department itself has defined the term in reference to those entities "with capabilities to perform research and development, design, produce, and maintain military weapon systems, subsystems, components, or parts to meet military requirements."  Dep't of Def., *DOD Dictionary of Military & Associated Terms* 64 (Mar. 2017).[6]

---

[5] https://crsreports.congress.gov/product/pdf/R/R47751.

[6]            https://www.tradoc.army.mil/wp-content/uploads/2020/10/AD1029823-DOD-Dictionary-of-Military-and-Associated-Terms-2017.pdf.

The Amended Designation, however, makes no finding that Hesai "contribut[es] to the Chinese *military*." ECF No. 23, at 18 (emphasis added). Although the Department appears to finally acknowledge that Section 1260H(d)(1)(B)(i)(II) mandates this independent finding, *cf. id.* (calling this factor "illusory"), it never finds that Hesai supplies the Chinese government or military "with materials, products, and services for defense purposes," or otherwise contributes to the *military*.

Instead, the Department appears to take the position that the term covers any company that makes "dual-use" products, *i.e.*, products that "*can* have military applications," regardless of whether they are actually made for or supplied to the military. NDAR11 (emphasis added); see *id.* (finding that LiDAR generally "is recognized as a dual-use technology with substantial applications in civilian and military sectors"). But virtually every product—from paper to batteries to gasoline to canned food—"can" have military applications. *See, e.g.*, Dep't of Commerce, *Dual Use Export Licenses* (acknowledging that "most commercial items" are "dual-use" in the sense they have "both commercial and military or proliferation applications").[7] That does not make every product manufacturer a military company. The Department's capacious "dual-use" definition provides no basis for distinguishing Hesai from every other commercial company.

The Department's "dual-use" position also runs headlong into *Xiaomi*'s holding that the fact "[t]hat [certain] technologies have military applications as well [as civilian ones] cannot be enough to support a conclusion" that an entity may be designated as a Chinese military company. *Xiaomi*, 2021 WL 950144, at *8. The APA does not countenance such a "lack of any limiting princip[le] on the Department of Defense's [Chinese military company] designation power,"

---

[7] https://www.bis.doc.gov/index.php/all-articles/2-uncategorized/91-dual-use-export-licenses#:~:text=EAR99%20items%20generally%20consist%20of,required%20to%20obtain%20a%20license.

"result[ing] in a situation where any Chinese company involved in technology that has alternative military uses could be designated." *Id.* "[E]ven U.S. technology companies with Chinese subsidiaries could be considered [Chinese military companies] under this sweeping inference." *Id.*

### B.    The Department's Findings Are Not Based On Substantial Evidence

Even if the Department's position was lawful, its startlingly inadequate factual findings—relying on just two inapposite sources—are not.

For the key proposition that "Hesai Group's LiDAR products also have military applications," the Department cites Hesai's profile at Pitchbook (a commercial database of companies). NDAR9 & n.4. That profile makes no mention whatsoever of the "military" or any military uses for Hesai's products; indeed, the word "military" does not appear at all (which is unsurprising, as Hesai has no connection to any military). NDAR41-77.[8]

The Department's lone other source is an obscure website called "AZoOptics.com," part of the "AZo Network," which advertises itself to private companies as a way to "[c]onnect your brand" through a "precision-targeted digital marketing platform that drives measurable results."[9] The featured post is "authored" and "[s]ponsored by Avantier Inc.," a private "optical innovations" company based in New Jersey. NDAR396-399. Beyond its questionable reliability, nothing on that website substantiates the critical points the Department cites it for: that (1) "LiDAR, including Hesai Group's products, is recognized as a dual-use technology with substantial applications in

---

[8] Also unsurprisingly, defense-related Pitchbook profiles *do* indicate "military" applications. *E.g.*, Pitchbook, *Terran Orbital*, https://pitchbook.com/profiles/company/120979-45 (providing satellite products "primarily serving the aerospace and defense industries" to "meet the needs of our military, civil and commercial customers"); Pitchbook, *Boeing*, https://pitchbook.com/profiles/company/11551-69 ("aerospace and defense firm" that "create[s] military aircraft, satellites, and weaponry").

[9] https://www.azonetwork.com/. That page cites client testimonials raving about "AZoNetwork's SEO [search engine optimization] services," and its ability to "deliver[] exceptional results *** with the highest-performing metrics like cost per lead and cost per click."

the civilian and military sectors"; (2) it is "a valuable asset for the Chinese military"; or (3) "the PLA uses LiDAR in its development of autonomous vehicles, which can have military applications."  NDAR11 & nn.14-17.  Indeed, the website does not mention the words "Hesai" or "China" even once.  And its sole use of the word "military" refers to "Er-doped fiber 1550 nm lasers," NDAR397—a product Hesai is not even alleged to (and does not) manufacture.

That's it.  A generic corporate database and an Internet search-engine-optimizing "digital marketing platform" are the only support the Department musters for its linchpin conclusion that Hesai contributes to the "Chinese defense industrial base."  NDAR11.

If that weren't bad enough, those findings also contradict the Department's own prior findings and the administrative record.  For one thing, the Original Designation found only that Hesai's products have a "broad spectrum of applications across *passenger and commercial vehicles*," and said nothing about military uses, AR11-12 (emphasis added)—but the Department never acknowledges its shift in position, *see National Ass'n of Home Builders*, 682 F.3d at 1038. For another, as noted, Hesai's materials submitted in March and April 2024 make clear that the company does not supply its technology to either the Chinese military or the defense industry more broadly; that it has systems in place to prevent such misuse of its products; and that its products' specifications depart significantly from battlefield standards.  NDAR371-399; Am. Compl. ¶ 62. Hesai also explained that the U.S. Commerce Department classifies its technology as EAR99, *i.e.*, the classification under which "the majority of commercial products" falls and "which generally consist of low-technology or consumer goods and do not require a license in many situations."[10] As noted, the Department does not even acknowledge, let alone respond to, those facts.

---

[10]  Dep't of Commerce, *Export Control Classification Numbers*, https://www.bis.doc.gov/index.php/regulations/export-administrationregulations-ear/99-regulations; Dep't of Commerce, *Dual Use Export Licenses*, *supra* note 7.

Because the finding that Hesai contributes to the Chinese defense industrial base "rests upon a factual premise that is unsupported by substantial evidence"—and that is, in fact, refuted by the record—it is "arbitrary and capricious," and Hesai's designation should be vacated. *Center for Auto Safety v. Federal Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992).

## IV.    THE DEPARTMENT'S FINDING THAT HESAI IS A "MILITARY-CIVIL FUSION CONTRIBUTOR" IS UNLAWFUL

Despite "examin[ing]" all the statutory factors, the Original Designation identified a purported affiliation with the MIIT, § 1260H(d)(2)(B), as the only "military-civil fusion contributor" subcategory that "appl[ies]" to Hesai.  AR11.  Now, in a transparent attempt to rehabilitate that botched designation—and ignoring its change in course—the Department cites three *additional* statutory bases for its conclusion.  None of the four grounds can sustain the Amended Designation.

### A.    The Department's Finding That Hesai Is "Affiliated With" The MIIT Is (Still) Unlawful

The Department again concludes that Hesai is "affiliated with" the MIIT under subsection 1260H(d)(2)(B).  *See* NDAR13-15.  The agency has conspicuously abandoned the primary basis set forth in the Original Designation—that Hesai's prospectus supposedly revealed "four programs and projects on which [Hesai] is working" with the MIIT.  AR13.  Regardless, both its new and rehashed findings run afoul of the statute and the record.

**1.** The Department exceeded its statutory authority by concluding that Hesai is "affiliated with" the MIIT without finding that the MIIT at least effectively "controls" Hesai.  Although Section 1260H does not provide a definition of "affiliated with," the term has an established meaning both generally and in the specific context of the related predecessor statute providing for designation of Chinese military companies.  Specifically, the "plain and common meaning" of "affiliated with" is a relationship where one entity is "effectively controlled by another or

24

associated with others under common ownership or control." *Xiaomi Corp.*, 2021 WL 950144, at *6 (citation omitted); *Luokung Tech. Corp.*, 538 F. Supp. 3d at 184.

Indeed, the Department has adopted that definition in its own regulations. In its National Industrial Security Program Operating Manual, for instance, the Department expressly defines an "affiliate" as an "entity that directly or indirectly controls, is directly or indirectly controlled by, or is under common control with, the ultimate parent entity." 32 C.F.R. § 117.3; *see also, e.g.*, *id.* § 232.3(a) (defining "affiliate" as "any person that controls, is controlled by, or is under common control with another person"). That definition also mirrors the one Congress used in the very statute of which Section 1260H is a part. In a separate section of the 2021 NDAA, Congress expressly defined an "affiliate" as an "entity that controls, is controlled by, or is under common control with another entity." Pub. L. No. 116-283, § 6212(a), 134 Stat. 3388 (emphasis added); *see United States v. Davis*, 588 U.S. 445, 456-457 (2019) (contesting party must "rebut[] th[e] presumption" that Congress uses a statutory term "consistently" within statute).

More generally, the "control" definition is the standard dictionary definition when discussing corporate entities. *See* § 1260H(d)(1) (noting "'Chinese military company' *** does not include natural persons"); s*ee, e.g.*, *Affiliate*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("affiliate" indicates some "means of control," *i.e.*, being "controlled by, or [being] under common control with" another); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 35 (2002) (similar). It is also the meaning that the "overwhelming weight" of case law "across the federal courts" has recognized in the corporate context, *Xiaomi Corp.*, 2021 WL 950144, at *6, which recognizes that an "affiliation" typically signifies "a relationship involving ownership or control," *United States v. Western Elec. Co.*, 12 F.3d 225, 230 (D.C. Cir. 1993); *see, e.g.*, *Emory Univ., Inc. v. Neurocare, Inc.*, 985 F.3d 1337, 1343, 1346 (11th Cir. 2021) (applying the "well-established common

meaning" of the term as requiring "shareholdings or other means of control" (citation omitted));
*Mey v. DIRECTV LLC*, 971 F.3d 284, 289 (4th Cir. 2020) ("An affiliate is commonly understood
as a company effectively controlled by another or associated with others under common ownership
or control." (internal quotation marks and citation omitted)); *Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946, 955 (9th Cir. 2009) (similarly emphasizing need for a "means of control" (quoting
*Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.*, 892 A.2d 1073, 1077 (Del.
2006))). And it is the meaning that Congress has expressly embraced across a variety of statutes.
*E.g.*, 12 U.S.C. § 5481 (Dodd-Frank Consumer Protection Act); 21 U.S.C. § 379g (Federal Food,
Drug, and Cosmetic Act); 16 U.S.C. § 618 (Federal Timber Contract Payment Modification Act);
47 U.S.C. § 153 (Telecommunications Act); 11 U.S.C. § 101(2)(A) (Bankruptcy Code).

      But the Amended Designation nowhere finds that Hesai is "controlled by" MIIT.[11] Nor
could it. Like the other companies whose listings this Court enjoined, Hesai "is a publicly traded
company that produces commercial products for civilian use, is controlled by an independent board
and its controlling [private] shareholder[s]," and is not "effectively controlled by" the Chinese
government at all, let alone the MIIT specifically. *Luokung Tech. Corp.*, 538 F. Supp. 3d at 191;
*see, e.g.*, NDAR372, 388-389. The designation thus exceeds the Department's authority.

      **2.** Rather than applying its own well-established definition of "affiliated with," the
Department has chosen to interpret the term as encompassing some (unspecified) amount of
contact with MIIT, a sprawling regulatory agency that generally oversees commercial activity
touching most corporations operating in China—including countless American companies with a
Chinese footprint. *See* NDAR 10 n.1, 555; *see also* ECF No. 17, at 19-20. But nothing in the

---

    [11] Such companies exist. *E.g., Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 583
(S.D.N.Y. 2022) (involving "state-owned manufacturer *** operated by China's Ministry of
Industry and Information Technology ('MIIT')").

Department's scattershot approach to citing Hesai's purported connections with the MIIT—ranging from participation in industry-wide international conferences and commercial-standard-setting efforts alongside dozens of other global companies, to the receipt of administrative "certificates" and recognition among a "Batch" of thousands of start-up companies, NDAR13-15—identifies commonalities that render those circumstances (and not others) material to the Section 1260H(d)(2)(B) conclusion.  Nothing in the Amended Designation explains the type and degree of involvement necessary to trigger the necessary "affiliation."  And nothing indicates the factors that are dispositive (or the relative weight of any such factors) in evaluating why different entities with parallel involvement are, or are not, "affiliated with" the MIIT.

Indeed, the only fair inference from the Department's list of purported connections between Hesai and the MIIT is that the Department reserves the right to find, in its discretion, that *any relationship whatsoever* with the MIIT—including merely being subject to its broad regulatory jurisdiction like countless global companies operating in China—can satisfy Section 1260H(d)(2)(B).  But in rejecting a similarly capacious definition, the *Xiaomi* court held that such a loose conception would "imbue [the statute's] use of 'affiliate' with 'a meaning so broad that it is inconsistent with [the statute's] accompanying words, thus giving unintended breadth to the Acts of Congress.'"  *Xiaomi Corp.*, 2021 WL 950144, at *7 (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)); *Luokung Tech. Corp.*, 538 F. Supp. 3d at 187 (rejecting definition that would "potentially encompass all Chinese government contractors, even those that *** produce products with no direct military applications").  "There is no indication that Congress intended to provide the Department of Defense with this sort of unfettered discretion."  *Luokung Tech. Corp.*, 538 F. Supp. 3d at 187.

27

In fact, accepting the Department's untethered reading would mean that a broad and unspecified set of relationships with the *MIIT* would trigger a Section 1260H designation, while those same relationships with the *People's Liberation Army itself* would not. *Compare* § 1260H(d)(1)(B)(i)(I) (requiring ownership or control by Chinese military itself), *with* § 1260H(d)(1)(B)(i)(II), (2)(B) (requiring that an entity merely be "affiliated with" MIIT). That illogical outcome would be impossible to square with the MIIT's regulatory scope, which covers many issues and policies with no ostensible tie to the Chinese military. *See* NDAR10 n.1 ("MIIT oversees China's industrial planning, policies, and standards to promote the development of communications technology and innovation and to safeguard the country's information security.").

The constitutional-avoidance canon also forecloses the Department's interpretation. *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1302-1303 (D.C. Cir. 2023) (canon requires rejection of "expansive reading" of statutory terms that "raise[s] grave constitutional concerns" in favor of a "'fairly possible' reading that assures the constitutionality of the text" (quoting *United States v. Hansen*, 599 U.S. 762, 781 (2023))). The Department's open-ended definition of "affiliated with," which could cover virtually all Chinese (and many international) companies, would violate the "basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018) (noting due-process "guarantee[] that ordinary people have 'fair notice' of the conduct a statute proscribes" and be able to conform their conduct accordingly) (citation omitted). Such "lack of precision" would also raise non-delegation concerns, by conferring on the agency "an impermissibly wide discretionary range in which to determine" which entities the statutory criterion covers in an *ad hoc* (or, worse yet, discriminatory) manner. *Community for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1395 (D.C. Cir. 1990);

28

*see FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("[P]recision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." (citing *Grayned*, 408 U.S. at 108-09)).  Indeed, that threat is manifest here, where Hesai has been singled out despite being one of countless global entities that fall within the regulatory jurisdiction of the MIIT.  Because the "effective control" definition is at least "fairly possible"—indeed, it is the definition found elsewhere in the Department's *own regulations*—that definition forecloses the Department's boundless one, which raises a "serious doubt" about Section 1260H's constitutionality.  *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (citation omitted).

**3.**    Even under the Department's freewheeling conception of "affiliated with," the Amended Designation still rests on "paltry evidence" and fails to draw a "rational connection between the facts found and the choice made."  *Xiaomi Corp.*, 2021 WL 950144, at \*4, \*7 (citation omitted).  As noted, the Department has quietly omitted its primary rationale from the Original Designation—that Hesai is "working" on programs and projects "administered under the Chinese MIIT."  AR13.  It now concludes that Hesai is "affiliated with" the MIIT based on four other grounds—none of which withstand scrutiny.  NDAR13-15.

*First*, the Department's findings of qualifying "Research Projects" impermissibly rely on indirect connections.  NDAR11.  The statute requires evidence of "research partnership and research projects *with MIIT*."  NDAR13 (emphasis added).  Rather than make that finding, the Department finds instead that Hesai "has worked with Tsinghua University" and with a "Vehicle Demonstration Zone"—and that the MIIT (together with other ministries) merely "support[s]" those third parties.  NDAR13-14.  But where Congress means for a designation to be based on an affiliation with an entity that is in turn affiliated with another, it makes its intent clear.  *See, e.g.*, § 1237(b)(4)(B) (defining CCMC in relevant part as an entity "owned or controlled by an entity

affiliated with the defense industrial base of the [PRC]"). In contrast, the terms of § 1260H(d)(2)(B) does not cover such second- or third-order connections to the MIIT.

The Department's evidence underscores the attenuated, scattershot nature of the purported link between Hesai's research and the MIIT. The website the Department cites for the assertion that the MIIT "supports" a project on which Hesai partnered with Tsinghua University, NDAR13 & n.35, does not even mention the MIIT—and instead discusses "Hesai's ten years of independent innovation," NDAR1436-1444. The only source that states that the MIIT joined several other organizations in "support[ing]" the project does not mention Hesai—and instead notes the participation of several "internationally renowned automobile manufacturers," including General Motors, Ford, and Daimler. NDAR1451. And the source the Department cites for the assertion that Tsinghua University "engages in a range of military research," NDAR14, does not suggest any connection whatsoever between that allegation and Hesai, MIIT, or the specific project discussed in the Amended Designation, NDAR1503-1508.

Nor does the Department demonstrate an affiliation with the MIIT by the fact that Hesai "performed in-depth testing" at a driving "Demonstration Zone" that the MIIT had "approved." NDAR14. Such approval reflects the undisputed point that Hesai operates subject to the regulatory jurisdiction of the MIIT, which—together with several other government bodies, like the "Ministry of Transport"—"issues policies to promote road testing of intelligent connected vehicles." NDAR14. Indeed, around 100 "foreign and domestic companies"—including BMW, Valeo, and Continental—have also used the cited demonstration zone, with several dozen having obtained "test licenses." NDAR1562; *see* NDAR1534 (certified translation at Tysse Decl. Ex. B) (showing BMW among first foreign companies to receive license to conduct testing in Shanghai Jiading). But no one would conclude that BMW is "affiliated with" the MIIT based on such evidence.

*Second*, the evidence of Hesai's purported involvement in the National Automotive Standardization Technical Committee (NASTC) does not support the extreme inferences the Department draws.    *See Xiaomi Corp.*, 2021 WL 950144, at *8 ("[E]vidence must be contextualized.").    The NASTC is an "*industry* partnership," NDAR14—*i.e.*, a partnership between commercial members of the automotive industry that sets and interprets industry standards on run-of-the-mill topics ranging from "collision occupant protection of motorcycles and mopeds" to "Technical Conditions for Plug-in Hybrid Electric Commercial Vehicles," NDAR 1580-1581.    The Amended Designation makes clear that the MIIT's role extends no further than "establish[ing] and oversee[ing]" that industry coordination.    NDAR14.    The website in the administrative record shows that several executives from Chinese subsidiaries of U.S. and international companies, such as General Motors, Volkswagen, Toyota, and Hyundai, are registered members of the NASTC.    NDAR1574-1577; *see* ECF No. 17, at 35 & n.11.    But neither Hesai itself, nor any of its executives, employees, or Board members, is such a member.    *Id.*

Instead, the Department's limited evidence for Hesai's involvement with the NASTC is its participation in one industry conference and in the drafting process for one standard relating to LiDAR technology.    NDAR15.    With regard to the "6th International Exchange Conference on Intelligent Connected Vehicle Technology, Standards and Regulations," the Department's evidence shows only that a single Hesai employee spoke at a session relating to industry standardization efforts.    NDAR1598.    But the same webpage states that "[m]ore than 300 experts and scholars" attended the conference, including from "major automotive industry countries such as the European Union and Japan," and "international organizations such as the United Nations (UN) and the European Automobile Industry Association (ACEA)."    NDAR1591-1592; *see* NDAR1595 (describing "experts *** from well-known companies and universities").

31

Additionally, the webpage directly identifies speeches given by many other industry participants, including, for example, experts and officials from "the United Nations," the "Japan Traffic Safety and Environment Research Institute," "the European Automobile Manufacturers Association," and "the German Association of the Automotive Industry" (which represents carmakers like BMW, Volkswagen, and Mercedes-Benz). NDAR1593, 1595. Under the Department's logic, these foreign experts, officials, and entities are all "affiliated" with the MIIT, too. NDAR15.

The Department also claims that "Hesai was one of the main drafting organizations" for the industry standard titled "Automotive LiDAR performance requirements and test methods." NDAR15. But the cited webpage reveals the other drafting organizations included the Chinese subsidiaries of European and U.S. companies like Volkswagen, Rheinland Technology, and Keysight Technologies—yet the Department does not assert that those automobile industry participants are affiliated with the MIIT. NDAR1609-1612. At most, this fact indicates only that Hesai and these other global businesses participated in a standard-drafting process "under the jurisdiction of the [NASTC]," NDAR15—not "as part of" that committee, NDAR14, let alone as part of the MIIT. Moreover, the webpage shows that the companies merely "[p]roposed" "[d]raft" standards from the broader industry. NDAR1609-1610. Such minimal involvement in common, industry-wide, commercial activity is not substantial evidence that Hesai is "affiliated with" MIIT. Indeed, the Amended Designation does not mention that other pages of the Department's cited website (the Chinese "National public service platform for standards information") show that many U.S. companies—such as Pepsi and Nike—participate in similar standard-setting efforts through their Chinese subsidiaries. *See* ECF No. 17, at 36-37 & n.12. Yet the Department surely does not contend that all those companies are "affiliated with" the MIIT.

*Third*, neither of the remaining disparate facts the Department relies on—that Hesai "received certificates from MIIT" and has "been identified as a 'Little Giant' company by the MIIT"—substantiates that Hesai "is affiliated with the MIIT." NDAR13.

As a statutory matter, the text and structure of Section 1260H preclude the Department's argument. Congress specified, in significant detail, the types of (military-related) licenses and government assistance that trigger a company's designation as a Chinese military company. *E.g.*, § 1260H(d)(2)(F); § 1260H(d)(2)(A). Congress's decision to omit any similar reference to licenses and assistance in subsection (d)(2)(B) suggests that it did not intend for such generic regulatory activity to serve as evidence of an affiliation with the MIIT—and especially not *non-military* licenses and assistance. *See Nasdaq Stock Mkt. LLC v. Securities & Exch. Comm'n*, 38 F.4th 1126, 1136–1137 (D.C. Cir. 2022) (applying the "maxim of *expressio unius est exclusio alterius*" where Congress "specifically identifies" key statutory terms).

Nor is either finding sufficient factually. The Amended Designation does not dispute that the "Radio Transmitter Equipment-Type Approval Certificate" Hesai received, NDAR15, approved "gas sensor products" that are distinct from the LiDAR devices on which the Department bases its designation determination, *see* ECF No. 17, at 38. In any event, Hesai's routine disclosure of the license merely signifies that Hesai—like every other regulated company—acts "in accordance with the requirement" of the "Chinese laws and regulations." NDAR1069. Indeed, despite having supposedly "considered" Hesai's prior summary judgment motion, NDAR10; *see* NDAR19 n.10, the Amended Designation declines to distinguish Apple's receipt of the same type of administrative Radio Transmitting Equipment Model license from MIIT for its iPhones, *see* ECF No. 17, at 38-39, or the prospectus's statement that Hesai has obtained similar certifications

33

"in the United States, the European Union and other major overseas sales regions," *id.*; *see* NDAR1070.

Hesai's inclusion in the "Little Giants" program does not substantiate an MIIT affiliation, either. The record indicates that *thousands* of companies have been recognized as Little Giants. NDAR1429, NDAR1432; *see* Alicia Garcia-Herrero & Michal Krystyanczuk, *How Does China Conduct Industrial Policy: Analyzing Words Versus Deeds* 4, 24 J. OF INDUS., COMPETITION & TRADE 10 (2024) (noting that more than 12,000 firms have been designated as Little Giants).[12] The "fourth batch" list alone occupies over *200 pages* of the administrative record, NDAR1190-1427, including countless companies that plainly have no military connection (such as those selling clothing, watches, cotton textiles, and animal husbandry services), *see* ECF No. 17, at 39-40.

The Department asserts that the Little Giants, including Hesai, "received a RMB 300,000 reward," NDAR13—*i.e.*, around $40,000, or less than 0.008% of Hesai's market cap, *see* NDAR41. The Department does not explain how receipt of that nominal award would make a start-up "affiliated with" the MIIT any more than, for example, a small business's receipt of a grant makes it "affiliated with" the U.S. Small Business Administration. *See, e.g.*, 15 U.S.C. § 9009a (providing for pandemic-related grants). As the article the Department relies on makes clear, the (private) founders of these startups "retain control over their companies even if they participate" in programs associated with the Little Giants designation. AR822.

In fact, the *Xiaomi* court already held that a CEO's receipt of a similar "award," given by the MIIT to "500 entrepreneurs" "in recognition of contributions to China's economic development," "hardly provides 'substantial evidence' (either on its own or when considered in conjunction with [other record evidence]) to support the Department of Defense's determination"

---

[12] https://doi.org/10.1007/s10842-024-00413-w.

of Xiaomi's affiliation with the Chinese government. *Xiaomi Corp.*, 2021 WL 950144, at *8. The same is true here. "The purported link to the [MIIT] is *** far more tenuous than the Department of Defense implies," including because (as here) award recipients are "nominated by a local district" and cover a wide range of industry participants, making it "implausible that [they] would be involved in the military-civil fusion that is of concern." *Id.*

### B.    The Department's Finding That Hesai Knowingly Received Funding Under China's Military Industrial Planning Apparatus Is Unlawful

The Department next concludes that Hesai falls under subsection 1260H(d)(2)(A) "because it knowingly receives assistance from the Government of the People's Republic of China through science and technology efforts initiated under the Chinese military industrial planning apparatus." NDAR11. That determination relies on a confused legal standard and a collection of incorrect, unrelated, and irrelevant data points.

**1.** As an initial matter, "[a]s a matter of ordinary English grammar, [courts] normally read the statutory term 'knowingly' as applying to all the subsequently listed elements" in the same statutory provision. *Rehaif v. United States*, 588 U.S. 225, 230 (2019) (internal quotation marks and citation omitted). Thus, Congress's conspicuous placement of that qualifier at the beginning of subsection 1260(H)(d)(2)(A)—and only in that subsection—requires the Department to find that Hesai *knew* it was receiving science and technology-related assistance "initiated under the Chinese military industrial planning apparatus." § 1260H(d)(2)(A) (emphasis added). But the Amended Designation never makes that specific finding.

The Department also fails once again to define the key term it applies—here, "Chinese military industrial planning apparatus"—so it is impossible to judge whether its "chosen standard was appropriate or whether the [agency] properly applied that standard." *Mori*, 731 F. Supp. 2d at 49. The Department's analysis seems to imply that the phrase is interchangeable with "defense

industrial base." NDAR11. But because the latter phrase already pertains to an independent requirement under section 1260H(d)(1)(B)(i)(II), substituting it into section 1260H(d)(2)(A) would fail to "give effect *** to every clause and word of a statute," rendering "superfluous" the distinct language Congress selected. *See Duncan v. Walker*, 533 U.S. 167, 173-74 (2001) (explaining duty to treat Congress's use of distinct statutory terms as intentional). In any event, even if those phrases were interchangeable, projects that are "*related to* the defense industrial base" (or "*related to* military-civil fusion in science and technology"), NDAR 11-12 (emphases added), are not the same as "science and technology efforts *initiated under* the Chinese military industrial planning apparatus," § 1260H(d)(2)(A) (emphasis added).

Finally, the Department again misses the "critical step" of "connecting the facts to the conclusion." *Xiaomi*, 2021 WL 950144, at *5 (quoting *Dickson*, 68 F.3d at 1405). Its (unarticulated) logic appears to be: (i) Hesai received subsidies from the Chinese government; (ii) Hesai worked on projects connected to Chinese agencies unrelated to those subsidies; (iii) those agencies have occasionally expressed support for "military-civil fusion" in contexts completely independent of Hesai or its projects; and therefore, (iv) Hesai "knowingly receiv[es] assistance" from the Chinese government "through science and technology efforts initiated under the Chinese military industrial planning apparatus." § 1260H(d)(2)(A). That series of tenuous inferential leaps violates the APA. *See Xiaomi*, 2021 WL 950144, at *5

**2.** The Amended Designation pairs those legal defects with factual shortcomings in each of the three sets of findings on which it relies.

*First*, the Department claims Hesai "received over RMB 77 million in subsidies from the Chinese government" over a four-year period. NDAR11. That is another error: the cited Prospectus states Hesai received a total of around RMB *17* million (~$2.3 million) over those four

years, not RMB *77* million (~$10.6 million).  NDAR736 (certified translation at Tysse Decl. Ex. C).  More importantly, neither the page cited nor any other evidence purports to link these subsidies to science and technology efforts "initiated under the Chinese military industrial apparatus."

*Second*, the Department asserts that Hesai "worked on two national-level projects" that were "supported by the Chinese government," NDAR11, and that concluded in "June 2020" and "February 2021."  NDAR12.  As an initial matter, participation in projects that ended four years ago, before or shortly after Congress enacted Section 1260H, does not show that Hesai "knowingly receive[s]" qualifying relevant government assistance on an ongoing basis.  § 1260H(d)(2)(A).  That stale evidence is hardly "the latest information available."  § 1260H(b)(3).

More importantly, the Hesai prospectus the Department relies on does not say that Hesai carries out these projects "for" the National Development and Reform Commission (NDRC) or the China Ministry of Science and Technology (MST), NDAR11-12, much less that those ministries provided material "assistance," NDAR11 (quoting § 1260H(d)(2)(A)); *see* ECF No. 17, at 31-33.  The table on one of the cited pages simply indicates that the projects fell under those (and other) ministries' regulatory jurisdiction.  NDAR1051; *see* NDAR1052 (list of "participating R&D entities and their respective roles," which does not include the government ministries cited).  The other prospectus page the Department cites makes no mention of the NDRC or MST at all.  NDAR736 (certified translation at Tysse Decl. Ex. C).

Nor does the Department show that the two projects Hesai worked on "related to the defense industrial base."  NDAR11.  Instead, the Department merely notes that, as a general matter, the NDRC and MST have "issued guidelines" and reports "support[ing] defense and military modernization" and "endeavor[ing] to promote military-civilian integration."  NDAR12.  Although the Department does not attempt to comprehensively characterize these agencies'

37

jurisdiction, they have extensive regulatory authority over many non-military matters.[13]  The fact that these ministries "*can* implement key special projects related to military-civil fusion in science and technology" as part of their sprawling ambits, NDAR12 (emphasis added), is thus not substantial evidence that *Hesai's* projects were related to military-civilian fusion—much less that they were "initiated under the Chinese military industrial planning apparatus," § 1260H(d)(2)(A). After all, even the Department agrees that Hesai's technology has "applications across passenger and commercial vehicles." AR11-12; NDAR9.

*Third*, the Department cites the inapposite fact that Hesai's 2023 SEC Form F-1 filing notes that "the PRC government has significant oversight *** over [Hesai's] business operation" in connection with "its efforts to enforce the law." NDAR13. The Department reads that statement to indicate that "the PRC Government *could* assist the Hesai Group [to] make decisions or provide guidance." *Id.* (emphasis added). As noted, that speculation contradicts (ignored) sworn record evidence that the quoted language "is required by the SEC for Chinese-listed companies," that it "merely informs investors of the general risks of investing in companies based in China," and that "numerous other Chinese companies (across a variety of industries) were required by the SEC to include the same standard risk factor disclosure language." NDAR383-384. It also contradicts

---

[13] The MST's jurisdiction covers a host of technologies with no military application. *See, e.g.*, Rosario M. Isasi, et al., *Legal and Ethical Approaches to Stem Cell and Cloning Research: A Comparative Analysis of Policies in Latin America, Asia, and Africa*, 32 J. L. MED. & ETHICS 626, 634 (2004) (noting MST's issuance of guidelines regarding human embryonic stem cell research); James B. Witkin, et al., *Building Green: Regulations and Responsibility for Sustainable Development*, SP033 ALI-ABA 2125, 2166-2167 (2008) (discussing U.S. Department of Energy's partnership with MST to develop a "protocol for Cooperation in Clan Energy Technologies for the 2008 Summer Olympic Games in Beijing"). The NDRC is the Chinese government's generalized "antitrust agency." *Federal Trade Comm'n v. Qualcomm Inc.*, 411 F. Supp. 3d 658, 719 (N.D. Cal. 2019), *vacated on other grounds*, 969 F.3d 974 (9th Cir. 2020); *see, e.g.*, *Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*, 405 F. Supp. 3d 1317, 1336 (C.I.T. 2019) (discussing U.S. Department of Commerce's understanding of "NDRC's role in deriving electricity price adjustments" paid by aluminum foil producers).

sworn evidence that "the Chinese government has *not* intervened in Hesai's operations or management decisions."  NDAR384.  Regardless, the Department never explains what its speculation about possible *future* PRC involvement has to do with whether Hesai *currently* "knowingly receiv[es] assistance *** through science and technology efforts initiated under the Chinese military industrial apparatus." § 1260H(d)(2)(A).  Nor could it:  the "potential" assistance the Department hypothesizes "is not the correct standard"; instead, "actual" receipt of assistance is required—and is missing here.  *Luokung Tech. Corp.*, 538 F. Supp. 3d at 189.

## C.    The Department's Finding That Hesai Resides In Or Is Affiliated With A Military-Civil Fusion Enterprise Zone Is Unlawful

The Department concludes that Hesai is a military-civil fusion contributor under § 1260H(d)(2)(E) because the company allegedly "resides in or is affiliated with military-civil fusion enterprise zones," and claims that the Chongqing Economic Development Zone and the Jiading Industrial Zone are such zones.  NDAR15.  Notably, these zones are enormous—93 km$^2$ and 78 km$^2$, respectively (both larger than Arlington County, Virginia, at 67 km$^2$, where Defendants reside).[14]  The Department's failure even to try to "articulate[] the standards that guided its analysis" as to how it equates an "Economic Development Zone" or "Industrial Zone" with a "*military-civil fusion enterprise zone*" is a "fatal shortcoming."  *Tripoli*, 437 F.3d at 81.

The Department's discussion of the record illustrates the impermissibly *ad hoc* nature of its determination.  The Amended Designation does not point to an established list of "military-civil fusion enterprise zones."  Nor does it cite an actual use of that phrase anywhere in the record (or

---

[14] *See* Chongqing Municipal People's Government, *Brief Introduction of Chongqing Economic and Technological Development Zone* (Sept. 12, 2024), https://www.cq.gov.cn/zt/yhyshj/zsyz/zqcyyq/naq/202409/t20240912_13623119.html;  Jiading District, Shanghai, *Jiading Industrial Zone* (July 5, 2013), http://english.jiading.gov.cn/2013-07/05/c_709564.htm.

acknowledge the sworn declaration that Hesai "does *not* meet" this criterion, NDAR390 (emphasis added)).  Instead, the Department apparently takes the view that it may classify any "zone" as a "military-civil fusion enterprise zone" if Internet research turns up statements that *some* entity (*e.g.*, a District Bureau or "Industrial Alliance") intends to "promote scientific and technological military-civil fusion and innovation" in *some* part of these sprawling areas.  NDAR16.

That can't be right.  Most obviously, a host of major international consumer-facing companies such as Qualcomm, Amazon Web Services, Volvo, Autoliv, and Continental are Hesai's neighbors in these zones.[15]  In the Jiading Industrial Zone alone, "more than 2,000 physical enterprises from more than 40 countries and regions in the world, including more than 50 world's 'Fortune 500' and well-known domestic and foreign enterprises."[16]  If Hesai "resides" in a military-civil fusion zone, so do all those companies.

Even putting aside the Department's obviously flawed logic, its evidence does not support the conclusion it draws.  The Department relies on a document from the "Nan'an District Science and Technology Bureau" (without explaining what that entity is, or its relationship to the "Chongqing Economic Development Zone").  The document explains that the Bureau's "[o]verall approach" is to "comprehensively promote[] high-quality economic and social development" by

---

[15] Qualcomm, *Joint Innovation Center*, https://www.qualcomm.cn/company/center (noting Qualcomm's presence in "Chongqing Economic and Technological Development Zone"); Amazon Press Center, *Amazon Web Services Announces Upcoming China Region for its Cloud Computing Platform* (Dec. 18, 2013), https://press.aboutamazon.com/2013/12/amazon-web-services-announces-upcoming-china-region-for-its-cloud-computing-platform (announcing collaboration between Amazon and Jiading Industrial Zone); *Shanghai Jiading Industrial Zone develops three 100 billion-level industries*, CHINA WORKERS NETWORK (Feb. 22, 2024), https://www.163.com/dy/article/IRIIG4M50550TYQ0.html (noting presence of Volvo, Autoliv, and Continental).

[16] Mao Guanjun, *12 projects in Jiading Industrial Zone signed contracts, with a total investment of over 4.3 billion yuan*, SHANGGUAN NEWS (Mar. 20, 2023), https://www.shobserver.com/wx/detail.do?id=594513.

"encourag[ing] all types of innovation entities to increase investments."  NDAR1624; *see, e.g.*, NDAR 1625-1627 (goals include promoting "key technologies in financial services, big health, big cultural tourism, productive services, and life services").  Its only "military" reference is a single use of the (nonstatutory) term "military-civilian integration," in a subset of seven listed goals.  NDAR1627.  Nothing in the document states or even implies that the entire 93 km$^2$ "Economic Development Zone" is a "military-civil fusion zone."

Similarly, the "Industrial Alliance" document the Department cites nowhere states (or implies) that the entire Jiading Industrial Zone—which is geared toward the production of consumer equipment for "mainstream automobile manufacturers" globally, "local car companies," and other commercial clients, NDAR1617, 1642—is dedicated to "the country's military-civil fusion national strategy."  NDAR16.  Rather, it notes that the "Tianzhou Rongzhi Civil-Military Integration Industrial Park" was "established *** in the [Jiading] industrial zone" as a particular sub-unit.  NDAR1650.  But Hesai does not reside within that sub-zone (and nothing in the record suggests it does).  Thus, the only reasonable inference to be drawn from the Department's record is that all the industrial-zone areas *outside* the Tianzhou Park—including where Hesai and the countless other "well-known domestic and foreign enterprises" are located—are *not* part of the "military-civil fusion enterprise zone."

**D.    The Department's Finding That Hesai Advertises On Military Equipment Procurement Platforms Is Unlawful**

As the final ground for its designation decision, the Department states that "Hesai advertises its products on Beijing Huawei Testing Technology Co., Ltd.'s *** website," NDAR16, which the Department implies (though never actually finds) is "a national, provincial [or] non-governmental military equipment procurement platform in the People's Republic of China." § 1260H(d)(2)(G).  Once again, the Department fails to define the key term "military equipment

procurement platform." It instead relies on tenuous chain of inferences: that (i) Beijing Huawei Testing (which is not related to the phone manufacturer) "promotes, sells, and provides technical services to hi-tech products" used in "electronics," "transportation," "university systems," etc.; (ii) a university purchased (civilian) LiDAR equipment through an open "bid[]" on Beijing Huawei Testing's website; (iii) the university is considered to be part of a group of universities "closely affiliated with MIIT"; and (iv) MIIT "oversees China's defense industry" through a "subordinate" entity. NDAR16, 1660; *but see* NDAR10 n.1 (explaining MIIT's primary purview to "promote the development of communications technology and innovation and to safeguard the country's information security"). Even accepting each link in that dubious chain, the conclusion drawn— that "Hesai advertises" on a "military equipment procurement platform"—simply does not follow.

It is also plainly wrong: Hesai has *never* advertised, sold, or authorized any sales of its products on that website—as recently confirmed in Beijing Huawei Testing's public statement.[17] As the materials Hesai submitted to the Department made clear, although Hesai (like every company) cannot completely control the downstream redistribution of the products it sells on the civilian market for consumer automotive use, it takes significant precautions to avoid selling to any military users, and its standard sales agreement prohibits the re-sale of its LiDAR equipment for military use. Am. Compl. ¶¶ 40, 62; *see also* ECF No. 17, at 10. Yet instead of trying to ascertain the truth—or giving Hesai any notice or opportunity to rebut that finding—the Department was apparently content to draw faulty inferences from superficial Internet research.

Aside from the Department's basic factual error, its statutorily required finding—that "*Hesai* advertises" on a procurement platform, NDAR16 (emphasis added)—collapses under

---

[17] Clarification Statement on the Company's Lack of Authorized Agent Relationship with Hesai Technology, CNSENS (Nov. 7, 2024), http://www.cnsens.com/newsinfo/7728762.html (certified translation at Tysse Decl. Ex. D).

scrutiny. In reality, the Department's passive-voice findings are only that Hesai products "*were* advertised*" or "*are* advertised*" (by someone). NDAR16-17, 1656. Needless to say, the fact that *an entity other than Hesai* apparently advertised Hesai products without authorization does not satisfy the requirement that "*Hesai* advertises its products" on a procurement platform. NDAR16 (citing § 1260H(d)(2)(G)) (emphasis added). No one would say that Nike "advertises" on eBay just because a teenager resold his sneakers there.

***

Despite having many months and the robust fact-finding power of the Pentagon at its disposal, Defendants' second attempt fails to satisfy any of the factors necessary to show Hesai is a contributor to the "Chinese defense industrial base"—let alone to the Chinese military itself. The Amended Designation violates the APA and should be vacated.

## V.    THE DEPARTMENT FAILED TO PROVIDE HESAI BASIC DUE PROCESS

"[T]he fundamental norm of due process clause jurisprudence requires that before the government can constitutionally deprive a person of the protected liberty or property interest, it must afford him notice and hearing." *National Council of Resistance of Iran v. Department of State* ("*NCRI*"), 251 F.3d 192, 205 (D.C. Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). The 1260H List designation deprived Hesai—including Plaintiff Hesai Inc., a California-incorporated company—of constitutionally protected liberty and property interests in the United States. Although Hesai has no present intention to bid on contracts with the Department, the listing squarely prohibits such activity beginning in 2026.[18] The Amended Designation has thus deprived Hesai of a protected liberty interest. *See Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506, *as amended*, 66 F.3d 1226 (D.C. Cir. 1995) ("[I]f [the government's]

---

[18] *See* National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805, 137 Stat. 136 (2023).

action formally or automatically excludes [the plaintiff] from work on some category of future [government] contracts *** that action *** implicates a liberty interest.").  The listing has also substantially interfered with Hesai's ability to raise capital and solicit investment from U.S. investors, and severely harmed its reputation and professional goodwill—thus depriving it of protected property interests.  *See id.* (plaintiff may also "demonstrate that the government's action precludes him—whether formally or informally—from such a broad range of opportunities that it 'interferes with [his] constitutionally protected right to follow a chosen trade or profession'" (internal quotation marks and citations omitted)); *see also Ralls Corp. v. Committee on Foreign Inv. in U.S.*, 758 F.3d 296, 318-319 (D.C. Cir. 2014) (designation that prohibits business transactions may affect property interests).

In the context of a "redesignation" to a sanctions list, due process required, at a minimum, that the government provide Hesai (i) notice prior to denial of its petition for removal; (ii) the unclassified material "upon which [Defendants] propose[d] to rely"; and (iii) "the opportunity to present, at least in written form, such evidence as [it] may be able to produce to rebut the administrative record or otherwise negate the proposition that" it should remain listed.  *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 613 F.3d 220, 227-228 (D.C. Cir. 2010) (finding due process violation); *see NCRI*, 251 F.3d at 208-209 (government failed same due process requirements in initially designating entity).

But the Department provided none of that—it failed to afford Hesai advance notice of its re-designation, the materials on which the agency proposed to rely, or any opportunity to rebut those materials or otherwise negate the proposition that Hesai is a "Chinese military company." Hesai consequently lacked "the benefit of meaningful adversary proceedings on any of the statutory grounds" before the redesignation.  *NCRI*, 251 F.3d at 197; *see Xiaomi Corp.*, 2021 WL

950144, at *8 n.8 (noting, in context of 1237 List, that Department's actions raised "serious" constitutional due process questions); *Luokung Tech. Corp.*, 538 F. Supp. 3d at 191 n.13 (similar).

No exigency precluded the Department from affording Hesai these basic protections. The Department has been in contact with Hesai (through DOJ counsel) throughout this litigation. Nothing about this matter presented the sort of "extraordinary situation[]" that could justify postponing notice and opportunity for hearing until after deprivation. *Fuentes v. Shevin*, 407 U.S. 67, 90 (1972) (noting that such situations "must be truly unusual); *see also Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 76 (D.D.C. 2002) (to justify postponing notice and opportunity to respond, government must show "the deprivation was necessary to secure an important governmental interest," "a special need for very prompt action," and "the party initiating the deprivation was a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular interest" (citing *Calero-Toledo v. Pearson Yacht Leasing Co*., 416 U.S. 663, 679-80 (1974))), *aff'd*, 333 F.3d 156 (D.C. Cir. 2003). Indeed, the only "exigency" appeared to be the possibility that the Court might rule on the legality of the Original Designation after the Department no longer wished to defend it. *See* ECF No. 30 (seeking three-week postponement to "render the original determination inoperative").

Had the Department complied with the Constitution by giving Hesai an opportunity to address the purported facts underlying its re-designation, Hesai could have explained why none supported the 1260H Listing, and helped the Department avoid its mistakes. Instead, Hesai (twice) has been forced to ask this Court to intervene. In addition to vacating the Amended Designation, this Court should order the Department to afford Hesai due process.

## CONCLUSION

Plaintiffs respectfully ask the Court to grant summary judgment in their favor, vacate Defendants' final actions, and order Defendants to remove Hesai from the 1260H List.

Respectfully submitted,

*s/ James E. Tysse*

Dated:  December 9, 2024

James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com


*Counsel to Plaintiffs Hesai Technology Co., Ltd. and Hesai Inc.*

# ADDENDUM

# TABLE OF CONTENTS

Note to 50 U.S.C. § 1701, Application of Authorities Under the International
Emergency Economic Powers Act to Communist Chinese Military Companies ..............Add. 1

Section 1260H of the William M. ("Mac") Thornberry National Defense
Authorization Act for Fiscal year 2021 (Public Law 116-283), codified at 10 U.S.C.
§ 113 note..........................................................................................................................Add. 3

**Note to 50 U.S.C. § 1701**

**Application of Authorities Under the International Emergency Economic Powers Act to Communist Chinese Military Companies**

Pub.L. 105-261 , Div. A, Title XII, § 1237, Oct. 17, 1998, 112 Stat. 2160, as amended Pub.L. 106-398 , § 1 [Div. A, Title XII, § 1233], Oct. 30, 2000, 114 Stat. 1654, 1654A-330; Pub.L. 108-375, Div. A, Title XII, § 1222, Oct. 28, 2004, 118 Stat. 2089, provided that:

"(a) PRESIDENTIAL AUTHORITY.—

"(1) IN GENERAL.—

The President may exercise IEEPA authorities (other than authorities relating to importation) without regard to section 202 of the International Emergency Economic Powers Act (50 U.S.C. 1701) in the case of any commercial activity in the United States by a person that is on the list published under subsection (b).

"(2) PENALTIES.—

The penalties set forth in section 206 of the International Emergency Economic Powers Act (50 U.S.C. 1705) apply to violations of any license, order, or regulation issued under paragraph (1).

"(3) IEEPA AUTHORITIES.—

For purposes of paragraph (1), the term 'IEEPA authorities' means the authorities set forth in section 203(a) of the International Emergency Economic Powers Act (50 U.S.C. 1702(a)).

"(b) DETERMINATION AND REPORTING OF COMMUNIST CHINESE MILITARY COMPANIES OPERATING IN UNITED STATES.—

"(1) INITIAL DETERMINATION AND REPORTING.—Not later than March 1, 2001, the Secretary of Defense shall make a determination of those persons operating directly or indirectly in the United States or any of its territories and possessions that are Communist Chinese military companies and shall submit a list of those persons in classified and unclassified form to the following:

"(A) The Committee on Armed Services of the House of Representatives.

"(B) The Committee on Armed Services of the Senate.

"(C) The Secretary of State.

"(D) The Secretary of the Treasury.

"(E) The Attorney General.

"(F) The Secretary of Commerce.

"(G) The Secretary of Energy.

"(H) The Director of Central Intelligence.

"(2) ANNUAL REVISIONS TO THE LIST.—

The Secretary of Defense shall make additions or deletions to the list submitted under paragraph (1) on an annual basis based on the latest information available and shall submit the updated list not later than February 1, each year to the committees and officers specified in paragraph (1).

"(3) CONSULTATION.—The Secretary of Defense shall consult with the following officers in carrying out paragraphs (1) and (2):

    "(A) The Attorney General.

    "(B) The Director of Central Intelligence.

    "(C) The Director of the Federal Bureau of Investigation.

"(4) COMMUNIST CHINESE MILITARY COMPANY.—For purposes of making the determination required by paragraph (1) and of carrying out paragraph (2), the term 'Communist Chinese military company' means—

    "(A) any person identified in the Defense Intelligence Agency publication numbered VP–1920–271–90, dated September 1990, or PC–1921–57–95, dated October 1995, and any update of those publications for the purposes of this section; and

    "(B) any other person that—

        "(i) is owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China or that is owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China; and

        "(ii) is engaged in providing commercial services, manufacturing, producing, or exporting.

"(c) PEOPLE'S LIBERATION ARMY.—

For purposes of this section, the term 'People's Liberation Army' means the land, naval, and air military services, the police, and the intelligence services of the Communist Government of the People's Republic of China, and any member of any such service or of such police."

**Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal year 2021 (Public Law 116-283), codified at 10 U.S.C. § 113 note**

**Sec. 1260H Public Reporting of Chinese Military Companies Operating in the United States**

(a) DETERMINATION.—The Secretary of Defense shall identify each entity the Secretary determines, based on the most recent information available, is operating directly or indirectly in the United States or any of its territories and possessions, that is a Chinese military company.

(b) REPORTING AND PUBLICATION.—

(1) ANNUAL REPORT.—Not later than April 15, 2021, and annually thereafter until December 31, 2030, the Secretary shall submit to the Committees on Armed Services of the Senate and the House of Representatives a list of each entity identified pursuant to subsection (a) to be a Chinese military company, in classified and unclassified forms, and shall include in such submission, as applicable, an explanation of any entities deleted from such list with respect to a prior list.

(2) CONCURRENT PUBLICATION.—Concurrent with the submission of each list described in paragraph (1), the Secretary shall publish the unclassified portion of such list in the Federal Register.

(3) ONGOING REVISIONS.—The Secretary shall make additions or deletions to the most recent list submitted under paragraph (1) on an ongoing basis based on the latest information available.

(c) CONSULTATION.—The Secretary may consult with the head of any appropriate Federal department or agency in making the determinations described in subsection (a) and shall transmit a copy of each list submitted under subsection (b)(1) to the heads of each appropriate Federal department and agency.

(d) DEFINITIONS.-In this section:

(1) CHINESE MILITARY COMPANY.—The term "Chinese military company"—

(A)  does not include natural persons; and

(B)  means an entity that is—

(i)(I) directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party; or

(II) identified as a military-civil fusion contributor to the Chinese defense industrial base; and

(ii) engaged in providing commercial services, manufacturing, producing, or exporting.

(2) MILITARY-CIVIL FUSION CONTRIBUTOR.—The term "military-civil fusion contributor" includes any of the following:

(A) Entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus.

(B) Entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects.

(C) Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D) Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E) Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F) Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G) Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H) Any other entities the Secretary determines is appropriate.

(3) PEOPLE'S LIBERATION ARMY.—The term "People's Liberation Army" means the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate.