**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

HESAI TECHNOLOGY CO., LTD, *et al.*,

                            *Plaintiffs*,

v.                                        Civ. Action No. 1:24-cv-01381

U.S. DEPARTMENT OF DEFENSE, *et al.*,

                            *Defendants*.

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION**
**FOR SUMMARY JUDGMENT AND OPPOSITION TO**
**<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

I.      The United States' Concerns About Chinese Military-Civil Integration ........................... 2

II.     The Hesai Group ................................................................................................................. 4

III.    The William M. ("Mac") Thornberry National Defense Authorization Act for
        Fiscal Year 2021 (Public Law 116-283)............................................................................ 5

IV.     DoD's Placement of Hesai on the Section 1260H List ...................................................... 5

V.      The Present Litigation......................................................................................................... 6

STANDARD OF REVIEW .................................................................................................... 7

ARGUMENT .......................................................................................................................... 9

I.      Substantial Evidence Supports DoD's Conclusion that Hesai Is a "Military-Civil
        Fusion Contributor" to the Chinese Defense Industrial Base ............................................ 9

        A.      Hesai is "Affiliated With" MIIT ............................................................................. 9

                1.      The Plain Meaning of the Phrase "Affiliated With" ................................. 10

                2.      Substantial Evidence Supports the Finding that Hesai is "Affiliated
                        With" MIIT ................................................................................................. 15

        B.      DoD Reasonably Determined That Hesai Knowingly Received Science
                and Technology-Related Assistance from the Government of China ................. 21

        C.      DoD Acted Within Its Authority in Designating Hesai as "Residing in or
                Affiliated With a Military-Civil Fusion Enterprise Zone".................................... 27

        D.      Substantial Evidence Supports DoD's Determination that Hesai Advertises
                on a Nongovernmental Military Equipment Procurement Platform..................... 30

II.     DoD Was Not Required to Independently Show That Hesai Contributed to the
        Chinese Defense Industrial Base, But It Made that Showing Anyway............................. 32

        A.      The Department's Determination Falls Within Its Statutory Authority ............... 32

        B.      The Department's Finding Is Supported by Substantial Evidence ....................... 35

III.    DoD Acted Reasonably in Applying Section 1260H's Statutory Terms to Its
        Factual Determinations Regarding Hesai .......................................................................... 37

i

IV.    The Department Considered Hesai's Submissions in Making Its October 2024
       Determination That Hesai Is a "Chinese Military Company" ......................................... 39

       A.    DoD Considered Submissions From Hesai in Its Re-Listing Decision ............... 40

       B.    Hesai's Additional Arguments Are Meritless ........................................................ 44

V.     There is No Due Process Violation ...................................................................................... 47

CONCLUSION ................................................................................................................................ 50

## INTRODUCTION

The United States Government has determined that the Chinese Communist Party's symbiotic relationships with certain Chinese technology companies present a national security threat. In response, and consistent with Congress's mandate in Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283), § 1260H(a), 134 Stat. 3388 (2021) ("FY2021 NDAA") to submit to Congress a list of companies identified as "Chinese military companies" ("Section 1260H List" or "the List"), the Deputy Secretary of Defense notified Congress that the Department of Defense ("DoD" or the "Department") had identified Hesai Technology Co., Ltd., ("Hesai") as a "Chinese military company." Hesai and its wholly owned subsidiary Hesai Group, Inc. (collectively, "Plaintiffs") challenge this determination, disavowing any relationship with the Chinese government. The administrative record provides substantial evidence that Hesai is a "military-civil fusion contributor to the Chinese defense industrial base" because it (1) "knowingly receives assistance from the Government of China . . . through science and technology efforts initiated under the Chinese military industrial planning apparatus," (2) is "affiliated with the Chinese Ministry of Industry and Information Technology ["MIIT"], including research partnerships and projects," (3) "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone," and (4) "advertise[s] on a nongovernmental military equipment procurement platform."

Each of those four rationales alone are enough to place Hesai on the 1260H List. But Plaintiffs would also have the Court ignore the combined weight of the substantial evidence before the Department. At bottom, while this Court need not agree with all of DoD's determinations, the Department has nonetheless shown that its analysis with respect to each rationale, and certainly in combination, based on all evidence before it, was reasonable. Plaintiffs advance three primary

1

arguments throughout their briefing, none of which has merit.

*First*, Plaintiffs contend that DoD's findings are not based on substantial evidence. But as Defendants demonstrate below, DoD considered (unpersuasive) contrary evidence and a wide range of probative evidence from a variety of sources to support its underlying factual determinations that placed Hesai on the Section 1260H List.

*Second*, Plaintiffs contend that DoD exceeded its statutory authorities. They fault DoD for not applying an articulable standard in reaching its conclusions, arguing that something more than DoD's use of the plain meaning of the statutory terms in Section 1260H is required. But as always, where the text of a statute is clear, no further interpretation is necessary. DoD is not required to fashion a more complicated standard. DoD permissibly applied the plain meaning of the language Congress used to determine that Hesai is a "Chinese military company."

*Third*, Plaintiffs ask the Court to declare a constitutional due process violation despite having suffered no injury to any protected liberty or property interest. Their claim of a future injury to a future liberty interest based on a future prohibition is unripe for review. To the extent they have endured any reputational harm, that harm is insufficient to state a due process claim.

For these reasons, the Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

## STATEMENT OF FACTS

### I.    The United States' Concerns About Chinese Military-Civil Integration

The United States Government has long expressed significant concerns about the national security threat posed by the relationship between Chinese technology companies and the Chinese state. In the National Defense Authorization Act ("NDAA") for Fiscal Year 1999, Congress directed the President to create a list identifying entities that meet the statutory definition of a

Communist Chinese Military Company ("CCMC"). *See* National Defense Authorization Act for Fiscal Year 1999 ("FY99 NDAA"), § 1237(a), (b), 112 Stat. 2160 (Oct. 17, 1998). In 2005, Congress expanded the definition of a CCMC because the then-existing definition, which depended on a company's relationship to the Chinese People's Liberation Army, was too narrow— it "exclud[ed] a class of firms engaged in Chinese military modernization." H.R. Rep. No. 108-491 at 367 (2004).

These concerns have persisted up to the present day. In its 2011 Annual Report to Congress, the Department of Defense observed that "China's defense industry has benefited from integration with a rapidly expanding civilian economy and science and technology sector, particularly elements that have access to foreign technologies." Off. of the Sec'y of Def., Ann. Rep. to Cong.: Mil. & Sec. Devs. Involving the PRC, at 42 (2011) ("2011 DoD Ann. Rep.").[1] "Information technology companies in particular . . . maintain close ties to the [People's Liberation Army]." *Id.* A decade later, DoD again noted that China's strategy seeks to "fuse[] . . . China's defense industrial base and its civilian technology and industrial base." Off. of the Sec'y of Def., Ann. Rep. to Cong.: Mil. and Sec. Devs. Involving the PRC, at 18 (2020) ("2020 DoD Ann. Rep.").[2] The U.S.-China Economic and Security Review Commission ("U.S.-China Commission")[3] has articulated similar concerns, noting that "[t]he Chinese government's military–civil fusion policy

---

[1] Dep't of Def., Office of the Sec'y of Def., Military and Security Developments Involving the People's Republic of China, 2011, https://dod.defense.gov/Portals/1/Documents/pubs/2011_CMPR_Final.pdf.

[2] Dep't of Def., Office of the Sec'y, of Def., Military and Security Developments Involving the people's Republic of China, 2020, https://media.defense.gov/2020/Sep/01/2002488689/-1/-1/1/2020-DOD-CHINAMILITARY-POWER-REPORT-FINAL.PDF.

[3] The U.S.-China Commission, established by statute in the NDAA for FY 2001, Pub. L. No. 106-398, 114 Stat. 1654 (2000), is intended "to monitor, investigate, and report to Congress on the national security implications of the bilateral trade and economic relationship between the United States and the People's Republic of China [PRC]," 22 U.S.C. § 7002(b)(2).

aims to spur innovation and economic growth through an array of policies . . . while leveraging the fruits of civilian innovation for China's defense sector." *See* U.S.-China Econ. & Sec. Rev. Comm'n, 2018 Ann. Rep., Ch. 3 § 2 – Emerging Technologies and Military-Civil Fusion: Artificial Intelligence, New Materials, and New Energy ("U.S. China Comm'n 2018 Rep.").[4]

## II.    The Hesai Group

Plaintiffs are part of the Hesai Group, "a NASDAQ-listed company with operations around the world, including in the United States." First Amend. Compl. ("FAC") ¶ 2, ECF No. 41; *see id.* ¶ 21 (noting that Plaintiff Hesai Technology Col., Ltd. "is wholly owned by Hesai Hong Kong Limited, which in turn is wholly owned by Hesai Group"); *id.* ¶ 22 (explaining that Plaintiff Hesai Inc. is a "wholly owned subsidiary" of Plaintiff Hesai Technology Co., Ltd.). Plaintiffs allege that the Hesai Group "is the world's leading manufacturer of Light Detection and Ranging ('LiDAR') technology for commercial—primarily automotive—uses." *Id.* ¶ 2. LiDAR "is a method for determining the distance of an object or surface via lasers," *id.* ¶ 29, that creates "a real-time, highly accurate 3D representation of physical surroundings, enabling autonomous systems to navigate complex environments in a wide variety of driving conditions." *Id.* ¶ 2. Through its military-civil fusion efforts, China has sought to support LiDAR innovation, as allowing autonomous systems to track, map, understand, and navigate complex environments "has value to

---

[4] USCC, Section 2: Emerging Technologies and Military-Civil Fusion: Artificial Intelligence, New Materials, and New Energy, https://www.uscc.gov/sites/default/files/2019-11/Chapter%203%20Section%202%20-%20Emerging%20Technologies%20and%20Military-Civil%20Fusion%20-%20Artificial%20Intelligence,%20New%20Materials,%20and%20New%20Energy.pdf.

not just associated car manufacturers, but also the [People's Liberation Army (PLA)]." *See* Re-Certified New Admin. Rec. ("NDAR") 1715.

## III.    The William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)

The FY 2021 NDAA  provides for the identification of "each entity the Secretary [of Defense] determines, based on the most recent information available, is operating directly or indirectly in the United States . . . that is a Chinese military company." (Public Law 116-283), § 1260H(a), 134 Stat. 3388 (2021). A "Chinese military company" includes those entities "identified as a military-civil fusion contributor to the Chinese defense industrial base . . . engaged in providing commercial services, manufacturing, producing, or exporting." *Id.* § 1260H(d)(1)(B)(II). In turn, Congress defined "military-civil fusion contributor" to include (as relevant here):

- "[e]ntities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus," *id.* § 1260H(d)(2)(A);

- "[e]ntities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects," *id.* § 1260H(d)(2)(B);

- "[e]ntities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone," *id.* § 1260H(d)(2)(E); and

- "[e]ntities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China." *Id.* § 1260H(d)(2)(G).

## IV.    DoD's Placement of Hesai on the Section 1260H List

On January 18, 2024, the Deputy Secretary of Defense notified Congress that DoD had identified Hesai on the Section 1260H List for 2023. In the accompanying press release, DoD explained that "[u]pdating the Section 1260H list of 'Chinese military companies' is an important continuing effort in highlighting and countering the PRC's Military-Civil Fusion strategy. The

PRC's Military-Civil Fusion strategy supports the modernization goals of the People's Liberation Army (PLA)[.]"[5] On October 29, 2024, DoD delisted Hesai from the Section 1260H List. *See* NDAR 5. That same day, DoD re-listed Hesai on the Section 1260H List, based on a new analysis and report. NDAR 3-5.

DoD's internal report setting out the bases for listing the company ("Hesai Group report"), dated September 17, 2024, provides additional details about the basis for Hesai's placement on the 1260H List. NDAR 6-24. DoD explained in the report that Hesai functions as a military-civil fusion contributor to the Chinese defense industrial base, *see* NDAR 10 (citing § 1260H(d)(1)(B)(i)(II)), for four independent reasons: (1) it "knowingly receives assistance from the Government of China . . . through science and technology efforts initiated under the Chinese military industrial planning apparatus," *see* § 1260H(d)(2)(A); (2) it is "affiliated with the Chinese Ministry of Industry and Information Technology ["MIIT"], including research partnerships and projects," *see* § 1260H(d)(2)(B); (3) it "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone," *see* § 1260H(d)(2)(E) and (4) it "advertise[s] on a nongovernmental military equipment procurement platform," § 1260H(d)(2)(G). *See* NDAR 11-17. As described in more depth below, the Hesai Group report outlined the factual bases for each of these statutory authorities to place Hesai on the Section 1260H List. *Id.*

## V.    **The Present Litigation**

On May 13, 2024, Plaintiffs initiated this lawsuit, challenging DoD's determination that Hesai is a Chinese military company under Section 1260H. *See* ECF No. 1. The Court adopted the

---

[5] U.S. Dep't of Def., Release, DOD Releases List of People's Republic of China (PRC) Military Companies in Accordance with Section 1260H of the National Defense Authorization Act for Fiscal Year 2021, Jan. 31, 2024, https://www.defense.gov/News/Releases/Release/Article/3661985/dod-releases-list-of-peoplesrepublic-of-china-prc-military-companies-in-accord/.

parties' joint summary judgment briefing schedule. *See* ECF No. 13. Before the Court held a hearing on the Parties' cross-motions for summary judgment, the Court granted Defendants' opposed motion to postpone oral argument to allow DoD to issue a new decision, rendering its original Section 1260H listing inoperative. After this Court's September 17, 2024 grant of Defendants' motion, DoD on October 16, 2024, de-listed and immediately re-listed Hesai as a Chinese military company based on a modified record and expanded rationale.

The Court reset the briefing schedule to allow Plaintiffs to amend their complaint and set new merits briefing deadlines. *See* Scheduling Order, ECF No. 38. Defendants filed a certified list of the contents of the new administrative record and transmitted to Plaintiffs the new administrative record on November 8, 2024. *See* ECF No. 40. On November 15, 2024, Plaintiffs filed their First Amended Complaint, *see* ECF No. 41, and on December 9, 2024, Plaintiffs filed their Motion for Summary Judgment, *see* ECF No. 42 ("Hesai MSJ"). On January 6, 2025, Defendants filed a re-certified list of the contents of the administrative record and submitted to Plaintiffs a revised administrative record.[6] *See* Re-Cert. of New Admin. Record, ECF No. 45.

## STANDARD OF REVIEW

Under the APA's deferential arbitrary-and-capricious standard, an agency's decision is presumed valid, and a court reviews only whether that decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). An agency's decision may be deemed arbitrary and capricious only in circumstances where the agency "has relied on factors which Congress has

---

[6] As explained in ECF No. 45, DoD filed a re-certified list of the contents of the new administrative record because it learned that an inadvertent administrative error occurred when assembling the initial version of the administrative record. *See* ECF No. 45-2 (Amended Certification of the Contents of the Administrative Record, Decl. of Peter Atherton).

not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or its decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court may not "substitute its judgment for that of the agency"; the agency's decision should be affirmed as long as it is supported by a rational basis. *Id.*

The APA's substantial evidence standard erects a "low bar." *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pham v. Nat'l Transp. Safety Bd.*, 33 F.4th 576, 581 (D.C. Cir. 2022) (citation omitted). The standard "requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Bloomberg, L.P. v. SEC*, 45 F.4th 462, 475 (D.C. Cir. 2022) (citation omitted). The agency's factual findings "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Dillmon v. Nat'l Transp. Safety Bd.*, 588 F.3d 1085, 1089 (D.C. Cir. 2009) (citation omitted).

This general deference under the APA is further heightened in cases such as this one that involve national security and foreign affairs. *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("[O]ur review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential."). When "litigation implicates sensitive and weighty interests of national security and foreign affairs," the Supreme Court has instructed courts to grant this heightened deference even when considering constitutional claims. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010). A case, such as this, involving DoD's statutory obligation to identify Chinese military companies is no exception. *See Luokung*

*Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 182 (D.D.C. 2021) ("Courts are to afford heightened deference to an agency's determination when it concerns national security, as is the case here." (citing *Islamic Am. Relief Agency*, 477 F.3d at 734)); *Xiaomi v. Dep't of Def.*, Case No. 21-0280, 2021 WL 950144, *4 (D.D.C. March 12, 2021) (same).

## ARGUMENT

I.     **Substantial Evidence Supports DoD's Conclusion that Hesai Is a "Military-Civil Fusion Contributor" to the Chinese Defense Industrial Base.**

DoD identified four statutory bases to place Hesai on the Section 1260H List as a military-civil fusion contributor, each supported by substantial evidence in the record: Hesai (1) is "affiliated with the Chinese Ministry of Industry and Information Technology ["MIIT"], including research partnerships and projects," *see* § 1260H(d)(2)(B); (2) "knowingly receives assistance from the Government of China . . . through science and technology efforts initiated under the Chinese military industrial planning apparatus," *see* § 1260H(d)(2)(A); (3) "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone," *see* § 1260H(d)(2)(E); and (4) "advertise[s] on a nongovernmental military equipment procurement platform," § 1260H(d)(2)(G). Each rationale in the Hesai Group report appropriately defines the applicable standard according to its plain meaning and provides substantial evidence that Hesai meets the standard. Any one of these bases is sufficient to find that DoD properly included Hesai on the 1260H List, and viewed in their totality, they paint a compelling portrait of Hesai as a military-civil fusion contributor.

### A.     Hesai is "Affiliated With" MIIT.

DoD determined that Hesai is a military-civil fusion contributor to the Chinese defense industrial base, as defined in Section 1260H, "because it is affiliated with the MIIT." NDAR 13. Contrary to Plaintiffs' assertions, DoD both appropriately interpreted the phrase "affiliated with" and supported its conclusion with substantial evidence.

9

### 1.    The Plain Meaning of the Phrase "Affiliated With."

At the time of Hesai's listing, Section 1260H did not define the phrase "affiliated with" in subsection (d)(2)(B).[7] A broad definition of that term is warranted given that the term's ordinary definition refers to associations "on the basis of a common purpose or of shared characteristics." *Affiliated*, Oxford English Dictionary, affiliated (adj.);[8] *see also* Merriam-Webster, affiliated (adj.) ("closely associated with another typically in a dependent or subordinate position").[9] This broad, context-dependent definition is supported by the only Supreme Court case that appears to have grappled with the phrase "affiliated with," albeit in a different context. *Killian v. United States*, 368 U.S. 231 (1961), recognized that "[t]he phrase[] 'affiliated with,' especially when applied to the relationship between persons and organizations that conceal their connection, cannot be defined in absolute terms." *Id.* at 258. Rather, "the ultimate fact of affiliation, though subjective, may be proved by evidence of objective facts and circumstances having a rational tendency to show, and from which the [factfinder] may rationally and logically find, the ultimate fact of affiliation." *Id.* at 257.

Section 1260H is a national security law designed to combat the practical threat posed by the purposely murky relationship between some Chinese technology companies and Chinese government ministries. As in *Killian*, this is a circumstance in which appropriate targets of the law

---

[7] Notably, the FY2025 NDAA, signed by the President on December 23, 2024, modifies the statutory text of Section 1260H to include, among other things, a definition for the term "affiliated with" (*i.e.*, "in close formal or informal association"). Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, § 1346, 138 Stat. 1773 (2024). Although this definition was not in place at the time DoD made the decision to re-list Hesai, it demonstrates Congress's intent that the term bears its plain meaning and not the specialized meaning Plaintiffs ascribe to it.

[8] *Affiliated*, Oxford English Dictionary,
https://www.oed.com/dictionary/affiliated_adj?tab=meaning_and_use#9323083.

[9] *Affiliated*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/affiliated#learn-more.

seek to hide their association. A logical understanding of the statute is that Congress intended to include those companies for whom the total context of their operations, funding, and associations (among other considerations) makes clear that they share a common purpose with the Chinese state, a dependency, or a set of characteristics with MIIT. Plaintiffs might prefer a "mathematical formula[]," but as Congress recognized in drafting this statute broadly, "such specificity is often impossible." *Id.* at 258.

Defendants acknowledge that a different court in this district interpreted "affiliated with"—in the context of a different statute, FY99 NDAA § 1237—to require "effective control." *See Luokung Tech. Corp.*, 538 F. Supp. 3d at 183-88; *Xiaomi*, 2021 WL 950144, *5-7. However, a prior decision by another member of this Court interpreting a different statute does not constitute binding precedent. *See Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

Relying substantially on these non-binding precedents, Plaintiffs mistakenly argue that Section 1260H's use of the term "affiliated with" requires Hesai to be "effectively controlled" by MIIT. Hesai MSJ at 24-29. "When a statute's language is plain, [the court] 'must enforce it according to its terms.'" *Bd. of Cnty. Comm'rs v. Fed. Hous. Fin. Agency*, 754 F.3d 1025, 1028–29 (D.C. Cir. 2014) (citation omitted). "Moreover, where a statute's terms are undefined, [the court's] interpretation is guided by the terms' 'regular usage.'" *Id.* (citation omitted). Especially here, where "Congress 'was dealing with a practical subject in a practical way'" the Supreme Court has instructed that courts should presume that Congress "intended the terms [in the statute] . . . to be understood in 'their ordinary and popular sense.'" *Amoco Production Co. v. Southern Ute Tribe*, 526 U.S. 865, 873 (1999) (citation omitted).

Tellingly, Plaintiffs would have the Court ignore the definition of the operative term, "affiliated with," instead relying on dictionary definitions of "affiliate," *i.e.*, the noun form of the word, not the adjective phrase. *See* Hesai MSJ at 25 (citing *Affiliate*, Black's Law Dictionary (12th ed. 2024); Webster's Third New Int'l Dictionary 35 (2002)). Plaintiffs similarly cite regulatory and statutory definitions of "affiliate," cobbled together from other sources. *See id.* (citing, *inter alia*, 32 C.F.R. §§ 117.3, 232.3(a); 12 U.S.C. § 5481 (Dodd-Frank Act); 21 U.S.C. § 379g (Federal Food, Drug, and Cosmetic Act); 16 U.S.C. § 618 (Federal Timber Contract Payment Modification Act); 47 U.S.C. § 153 (Telecommunications Act); 11 U.S.C. § 101(2)(A) (Bankruptcy Code)). And they point to a few out-of-circuit cases similarly defining "affiliate" in the context of telecommunications law. *Id.* (citing *Mey v. DIRECTV, LLC*, 971 F.3d 284, 289 (4th Cir. 2020) (telecommunications contract dispute); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (defining affiliate in the context of determining whether a company violated telecommunications law) (citation omitted)). But none of Plaintiffs' proffered definitions advance Plaintiffs' argument: those sources define the term-of-art "affiliate," a term found nowhere in Section 1260H. "Congress says what it means and means what it says[:]" here, Congress means "affiliated with," not affiliate. *See Banks v. Booth*, 3 F.4th 445, 449 (D.C. Cir. 2021).

Moreover, the phrase "affiliated with" must be read in the greater context of the statutory provision in which it resides. *See Deal v. United States*, 508 U.S. 129, 132 (1993) (a "fundamental principle of statutory construction (and, indeed, of language itself) [is] that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used"). Section 1260H provides that an entity can be "affiliated with" MIIT if it engages in "research partnerships or projects" with the organization. § 1260H(d)(2)(B). The statute thus captures a broad swath of entities that engage or partner with MIIT, a vastly wider reach than Plaintiffs' narrow definition.

*Id.* Indeed, a student at a university cannot be said to be "effectively controlled" by an academic institution where he is conducting dissertation research even though he or she is engaged in a project at the university and thus "affiliated with" that university. It would be a mistake to import a legal definition largely from telecommunications law into this national security statute aimed at providing DoD the flexibility to identify Chinese companies whose associations with various organs of the Chinese government make them a national security threat. *Cf. TikTok Inc. v. Garland*, No. 24-1113, 2024 WL 4996719, at *14 (D.C. Cir. Dec. 6, 2024) (citations omitted)), *cert. granted*, No. 24-656, 2024 WL 5148087 (U.S. Dec. 18, 2024) (recognizing that "even putatively private companies based in China do not operate with independence from the government" and are often used as "part of the [Chinese government's] broader geopolitical and long-term strategy to undermine U.S. national security." (internal quotations and citations omitted)).

Plaintiffs' narrow definition would also render another provision within Section 1260H illogical. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *see also Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932) (explaining that "identical words used in different parts of the same act are intended to have the same meaning"). The statute defines "military-civil fusion contributor," *inter alia*, as "[e]ntities residing in or affiliated with a military-civil fusion enterprise zone[.]" § 1260H(d)(2)(E). Adopting Plaintiffs' definition of "affiliated with" would thus mean that a "military-civil fusion contributor" under § 1260H(d)(2)(E) would encompass an entity that is "effectively controlled" by a geographic location, *i.e.* an "enterprise zone." But a piece of real property cannot "effectively control" an entity. The more logical reading of this provision is that

an entity can be a "military-civil fusion contributor" by being associated with an enterprise zone for the common purpose of advancing particular technologies.

In addition, Congress incorporated the term "control" into the definition of Chinese military company when it intended to do so, which it purposely did not do in subsection 1260H(d)(2)(B). *See Ziglar v. Abbasi*, 582 U.S. 120, 143-44 (2017) (observing that "the silence of Congress is relevant" and that "[t]his silence is notable because it is likely that high-level policies will attract the attention of Congress"). In a different Section 1260H provision, the statute defines "Chinese military company" to include entities "directly or indirectly owned, *controlled*, or beneficially owned by," among others, "any other organization subordinate to the Central Military Commission of the Chinese Communist Party[.]" § 1260H(d)(1)(B)(i)(I) (emphasis added). If Congress had intended the definition of Chinese military company to encompass only an entity that is "effectively controlled" by MIIT—*i.e.,* Plaintiffs' preferred "affiliated with" definition—it would have simply said as much. Congress's silence is notable here because it used the term "controlled" in another Section 1260H provision in an overall statutory scheme involving "high level policies" of national security significance. *Ziglar*, 582 U.S. at 144. In short, Congress has expressly used the term "control" in contexts when it wanted to do so. This is not one of them.

Finally, Plaintiffs mistakenly argue that interpreting Section 1260H in the manner proposed by DoD violates the constitutional avoidance canon, as Defendants' interpretation would "cover virtually all Chinese (and many international) companies," raising due process and non-delegation "concerns." Hesai MSJ at 28-29. These concerns are unfounded. DoD identified approximately forty-five (45) companies in 2023 pursuant to the congressional mandate thrust on DoD, a tiny fraction of companies incorporated in China. And for good reason—only those companies for

whom the Department's analysis shows a close association with MIIT (among the other statutory prerequisites) fall within subsection 1260H(d)(2)(B)'s reach.

> **2. Substantial Evidence Supports the Finding that Hesai is "Affiliated With" MIIT.**

The administrative record contains sufficient evidence to support DoD's factual determination that Hesai is an entity "affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects." § 1260H(d)(2)(B). Record evidence shows that MIIT: (1) administers the "Little Giants" program of which Hesai is an officially recognized company; (2) administers and supports several research programs and projects in which Hesai participates; (3) established and oversees an industry partnership in which Hesai participates; and (4) provided an administrative license to Hesai. NDAR 13-15.

*First*, Hesai's inclusion in the "Little Giants" program administered by MIIT, *see* NDAR 13, 1432, shows that it has a common purpose and shared characteristics with MIIT. The Little Giants program is "a subsidy . . . a grant . . . an honor . . . a stamp of approval" that is "key to the [Chinese] Communist Party's ambitious strategy to reposition the country's technology industry." NDAR 1429. The program "target[s] strategically important sectors like robotics, quantum computing and semi-conductors." NDAR 1428. Participation in the program "has become a valued measure of government endorsement, a signal for investors and employees that the companies are insulated from regulatory punishment." NDAR 1429. It is a part of the Chinese government's effort to "ma[k]e clear that the technology industry must realign to conform with government priorities." NDAR 1429.

Hesai's argument that its inclusion in the "Little Giants" program in and of itself does not justify the company's inclusion on the 1260H List, *see* Hesai MSJ at 34, is immaterial. The fact that MIIT included Hesai in this program is not a single factor to be considered in isolation but

one of several datapoints that, taken together, furnish substantial evidence to support DoD's factual determination that Hesai is affiliated with MIIT. It is also irrelevant, *see id.*, that MIIT may have included companies in the "Little Giants" program that lack a military or defense connection when the commercial services that Hesai provides *do* have just such a connection. Plaintiffs' attempt to downplay the reward MIIT gave Hesai as part of the Little Giants program is unavailing, as is the contention that private founders "retain control over their companies even if they participate" in the program. *Id.* (citing NDAR 13, 41, 1431). The point, again, is not that Hesai is *controlled* by MIIT, but that Hesai's receipt of rewards from MIIT shows a common purpose.

*Second*, Hesai participates in research programs and projects facilitated and supported by MIIT. The record shows that Hesai partners with Tsinghua University—China's leading science and technology university and a significant Chinese security threat—on a National Key Research and Development Program project. NDAR 13, 1440, 1503. As Hesai itself has promoted, it worked with Tsinghua University on a project titled "Key Technologies and Applications of Intelligent Vehicle Environmental Perception," *see id.* at 1442, which is supported by MIIT's 13th Five-Year Plan Special Project, NDAR. at 1451. Hesai even won Chinese government awards for that research project and partnership. NDAR 14, 1438-1453. Nor is this the only MIIT-supported research project and partnership Hesai undertook. It also performed in-depth testing at the Shanghai Jiading Intelligent Connected Vehicle Demonstration Zone and achieved important results in improving the accuracy of laser radar scanning. NDAR 14. That research project took place in an MIIT-promoted, supported, and approved facility. NDAR 14; *see also* NDAR 1525-1555. And in Hesai's own prospectus of its Shanghai Stock Exchange public offering, NDAR 826-1085 (English translation), Hesai identified four programs and projects in which it participates that MIIT administers:

- The Internet of Vehicles (Intelligent Connected Vehicles) Industry Development Action Plan ("IoV Plan")

- The Medium- and Long-Term Development Plan for the Automobile Industry ("Automobile Industry Plan")

- The Three-Year Action Guide for the Smart Sensor Industry ("Smart Sensor Guide")

- The Action Plan to Accelerate the Development of Sensors and Intelligent Instruments ("Sensors and Intelligent Instruments Plan")

*See* NDAR 14-15; 983. Hesai is thus affiliated with MIIT through research projects and partnerships—exactly the sort of connection that the statute contemplates.

Moreover, given that one of the key purposes of a company's prospectus is to inform potential investors considering purchasing its stock offerings, it is reasonable to understand Hesai's discussion of these programs in its prospectus as highlighting its close relationship with the Chinese government. Potential benefits to Hesai of this close relationship include lucrative incentives such as tax cuts, loans, and direct funding. NDAR 1429 (designation in "Little Giants" program typically includes incentives such as "tax cuts, generous loans and favorable talent acquisition policies"), NDAR 1430 (priority "Little Giants" participants receive direct government funding). A reasonable factfinder could determine that the availability of such incentives provides further evidence that Hesai would gain from being affiliated with MIIT.

Plaintiffs misread the statute to argue that these research projects and partnerships are insufficient to show that Hesai is affiliated with MIIT. They claim that the statute "requires evidence of 'research partnerships and projects *with MIIT*,'" apparently adding a requirement that MIIT be more intimately involved in the research partnerships and projects. Hesai MSJ at 29 (citing NDAR 13) (emphasis in original). That is not what the statute requires. The statute defines the research partnerships and projects that qualify broadly, and the Department reasonably

concluded that research partnerships and projects supported, funded, approved, or facilitated by MIIT are sufficient to form yet another datapoint demonstrating that Hesai is affiliated with MIIT.

*Third*, record evidence shows that MIIT has established and oversees an industry partnership—the National Automotive Standardization Committee ("Committee")—that is intended to promote standardization in China's automotive industry, *see* NDAR 1586-99, and that Hesai acts as a part of this partnership, NDAR 1608. *See also* NDAR 14, 1573. Hesai's affiliation with this partnership is demonstrated by the company's (1) status as one of the main drafting entities of an automotive standard under the jurisdiction of the MIIT Committee, NDAR 1582-84, 1608, and (2) participation in a conference organized by the Committee, NDAR at 1586-99.

The record shows that the Committee was "organized and guided by" MIIT, *id*. at 1573, that the Committee exercises jurisdiction over the national standard plan entitled "Performance Requirements and Test Methods for Automotive LiDAR," NDAR 1608, and that Hesai's subsidiary is listed first among the "main drafting units" of this national standard plan, *id*. It also demonstrates that Zhao Xin, the director of the Safety and Quality Engineering Department of Hesai's subsidiary, participated in the Sixth International Exchange Conference on Intelligent Connected Vehicle Technology, Standards and Regulations, which was "jointly organized" by the MIIT Committee and another entity. NDAR 1591, 1598. Taken together with the other evidence marshalled by DoD, as the main drafter of a national standard plan under the Committee's jurisdiction, and a participant in a conference co-organized by the Committee, Hesai is closely associated with MIIT in a subordinate position and shares a common purpose with MIIT.

Hesai's attempts to minimize the weight of this evidence are not persuasive. *See* Hesai MSJ at 31-32. Record evidence shows that the MIIT Committee's "professional scope" includes the responsibility for "national terminology, product classification, technical requirements, and testing

of trucks, off-road vehicles, dump trucks, tractor-trailers, special-purpose vehicles, passenger cars, cars and trains (including semitrailers and full trailers), motorcycles and electric vehicles." NDAR 1573. The Committee is thus both a qualifying "research partnership" and a "project" of the MIIT. § 1260H(d)(2)(B). Nor is it relevant that the record evidence does not list any specific Hesai executive, employee, or board member as a Committee member. The statute does not require such membership. Contrary to Hesai's representation, the record pages it cites, *see* Hesai MSJ at 43, do not show that Hesai merely recommended draft standards from the broader automotive industry; rather, they show that Hesai was foremost among the actual "main drafting units" of MIIT's national standard plan. *See* NDAR 1608.

Plaintiffs also devote considerable time to observing that other entities whose representatives participated in the conference that was co-organized by the Committee were not included on the 1260H list, and that other organizations also listed as drafters of the Committee's plan were not included on the 1260H list. Hesai MSJ at 31-32. But these observations are largely beside the point. DoD's factual determination that Hesai is affiliated with the Committee is not based on this single piece of evidence, taken in isolation. So too, because DoD is not relying solely on Hesai's involvement as one of the main drafters of an MIIT plan as evidence of its affiliation with MIIT, it is immaterial that other organizations also listed as drafters of that plan—or that other organizations that have participated in the drafting of similar plans—were not included on the 1260H list. Rather, it is the combined weight of the totality of the record evidence, rather than any single item, that supports DoD's factual determination. Moreover, Hesai has not explained why the other entities that it lists as having participated in the conference are similarly situated with respect to all of the other factors that supported DoD's factual determination.

19

*Fourth*, Hesai's application for and receipt of a Radio Transmitting Equipment Model Approval administrative license from MIIT, *see* NDAR 14, constitutes further evidence that Hesai is closely associated with MIIT in a dependent or subordinate position. A reasonable finder of fact who considered this evidence—not alone, but in conjunction with the other record evidence cited by DoD—could reasonably conclude that Hesai is affiliated with MIIT.

Hesai's attempts to downplay the weight of this additional evidence are unpersuasive. Hesai MSJ at 33. As an initial matter, Hesai is wrong that Congress, by explicitly identifying entities that received "military production licenses" as "military-civil fusion contributors," must necessarily have intended to *exclude* as military-civil fusion contributors other entities that received different types of licenses. The *expressio unius* canon applies only when "circumstances support a sensible inference that the term left out must have been meant to be excluded." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (citation omitted). No such inference is sensible here. Section 1260H identifies by name only one type of license (a military production license) issued by only one named entity (the Government of China). *See* § 1260H(d)(2)(F). But the statute otherwise defines the term "military-civil fusion contributor" broadly, and it is not reasonable to infer that Congress intended to exclude receiving other types of licenses, for instance as constituting an "affiliat[ion] with" an arm of the Chinese state. "In any event, an equally pertinent canon of interpretation states that a congressional decision to prohibit certain activities does *not* imply an intent to disable the relevant administrative body from taking similar action with respect to activities that pose a similar danger." *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 694 (D.C. Cir. 1991).

Furthermore, the fact that the license MIIT issued to Hesai was for the approval of "gas sensor products," Hesai MSJ at 33 (citing ECF No. 17 at 38), does not diminish the weight that

should be afforded to that license's issuance. Because Hesai "specializes in manufacturing LiDAR sensor products for automobiles," NDAR 17, the license approved products that serve as the core of the commercial services that Hesai provides and that could be used to contribute to the Chinese defense industrial base.

Put simply, DoD's argument is not that "*any relationship whatsoever* with the MIIT . . . can satisfy Section 1260H(d)(2)(B)," Hesai MSJ at 27; rather, it is that a series of MIIT-driven subsidies, tax cuts, grants, rewards, recognitions, research partnerships, certifications, and projects objectively demonstrate a sufficiently common purpose between Hesai and MIIT to establish that Hesai is affiliated with MIIT. The record evidence compiled by DoD, taken as a whole, more than suffices to allow a reasonable factfinder to conclude that Hesai is affiliated with MIIT. Especially in light of the "low bar" of the substantial-evidence standard, *La. Pub. Serv. Comm'n*, 20 F.4th at 7, the record contains sufficient evidence to support Hesai's inclusion on the 1260H List.

### B.    DoD Reasonably Determined That Hesai Knowingly Received Science and Technology-Related Assistance from the Government of China.

Congress requires DoD to place on the Section 1260H List entities that are "identified as a military-civil fusion contributor to the Chinese defense industrial base," which includes "[e]ntities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus." § 1260H(d)(1)(B)(II), (d)(2)(A). DoD has determined that Hesai knowingly received science and technology-related assistance from the Government of China, and that this assistance was initiated under China's military industrial planning apparatus. NDAR 11-13. Accordingly, this determination falls within the Department's statutory authority, and as shown below, it is supported by substantial evidence.

Initially, Plaintiffs are mistaken in their contention that in addition to requiring that an entity "knowingly receiv[ed] assistance from the Government of China or the Chinese Communist Party through science and technology efforts," Congress also required DoD to show that an entity knew that such assistance was initiated under the Chinese military industrial planning apparatus. Hesai MSJ at 35. Plaintiffs' sole purported support for this contention, *Rehaif v. United States*, 588 U.S. 225 (2019), is specifically limited to the criminal context and inapplicable here. *See id.* at 229, 230 (explaining that because of the interpretive "presumption in favor of scienter" in criminal statutes, as "'a matter of ordinary English grammar,' [courts] normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime") (citation omitted). Section 1260H is not a criminal statute and this interpretive presumption does not govern. Instead, § 1260H(d)(2)(A) is a "complex sentence in which it is important to determine from the sentence itself whether the adverb denoting the actor's intent applies to every characteristic of the sentence's direct object." *Flores-Figueroa v. United States*, 556 U.S. 646, 659 (2009) (Alito, J., concurring). "Context is a primary determinant of meaning," Scalia & Garner, *Reading Law* 167 (2012), and here, context strongly suggests that Congress focused on whether an entity knew what it had received (science and technology-related assistance) and from whom (the Chinese government or the Chinese Communist Party). Because it is of no moment whether such an entity is aware or not whether the assistance it received had been initiated under China's military industrial planning apparatus, it makes little sense to believe Congress worried about the degree of such knowledge.

And because Congress chose not to define the statutory term "initiated under the Chinese military industrial planning apparatus," the text bears its plain meaning. "Planning" is "the act or process of making or carrying out plans[;] specifically: the establishment of goals, policies, and procedures for a social or economic unit." *Planning*, Merriam-Webster's Collegiate Dictionary,

merriam-webster.com/planning. "Apparatus" means "[t]he totality of means by which a designated function is performed or a specific task executed, as in a system of government." *Apparatus*, Am. Heritage Dictionary (5th ed. 2020) (definition 2.a). Thus, in Section 1260H, assistance that is "initiated under the Chinese military industrial planning apparatus" means that it has been provided in accordance with the totality of means by which China carries out its goals, policies, and procedures for the use of manufactured products that help support its military establishment.

And the Department has connected the relevant facts it has found to its determination that Hesai knowingly received science and technology-related assistance from the Government of China, and that this assistance was initiated under China's military industrial planning apparatus. *Contra* Hesai MSJ at 36-39. DoD has identified three grounds for its determination.

*First*, Hesai received approximately RMB 17 million[10] in subsidies from Chinese government entities. NDAR 11, 736 (certified translation at ECF No. 42-1 at 39). The entities providing these subsidies include the Shanghai Municipal Commission of Commerce, Jiading Industrial Zone Science and Technology Committee, Jiading Industrial Zone Management Committee, and the Shanghai Municipal Commission of Commerce. NDAR 11, 736. Other Chinese government subsidies include an Intellectual Property Patent Subsidy, Little Giant Program Award, and a Smart City Special Subsidy. NDAR 11, 736. As explained below, *see infra* II.B, the Chinese government is engaged in efforts to reduce U.S. dominance in the development of LiDAR technology through the provision of generous state subsidies. Because "any progress

---

[10] Regrettably, the Hesai Group report contains a clerical error, listing the Chinese government subsidies as RMB 77 million, rather than 17 million. *Compare* NDAR 11 *with* NDAR 736 (certified translation at ECF No. 42-1 at 39). This clerical error does not change the basic fact that Hesai was receiving millions of renminbi (or dollars) of science and technology-related assistance initiated under the Chinese military planning apparatus. There is no minimum amount set out in Section 1260H.

towards autonomous capabilities inherently has military applications," under China's policy of military-civil fusion, advancing the development of LiDAR technology in the private sector has the goal of developing fully realized autonomous vehicles, with "massive applications for the intelligent systems at the center of . . . Chinese military plans." NDAR 1714. DoD has thus shown that these government subsidies represent science and technology-related assistance from the Government of China initiated under China's military industrial planning apparatus.

*Second*, Hesai has also received science and technology-related assistance from China's National Development and Reform Committee ("NDR Committee") and from its Ministry of Science and Technology. *See* NDAR 11-12, 20, 1051. From November 2017 to June 2020, the Committee served as a "project-level management unit" assisting Hesai with the development of LiDAR technology: specifically, it sponsored the production of low-cost LiDAR based on a high-speed signal processing module. NDAR 1051. This NDR Committee-sponsored project yielded significant research and development results (including the development of a high-performance laser radar system, a multi-channel ASIC chip,[11] a multi-channel laser driver chip, and a laser radar-dedicated algorithm module). NDAR 1051. Similarly, from May 2018 to February 2021, the Ministry of Science and Technology served as a project-level management unit assisting Hesai with the development of LiDAR technology, sponsoring the development of mechanical rotating and solid-state multi-line LiDAR for use in autonomous vehicles. NDAR 1051.

The NDR Committee and the Ministry both serve as part of China's military industrial planning apparatus. The NDR Committee's 2020 Intelligent Vehicle Innovation and Development

---

[11] ASICs (Application-Specific Integrated Circuits) are computer chips that combine several different circuits on a single chip, allowing the chip to be custom programmed to combine several related functions to execute an overall task. *See* BAE Systems, *What Are ASICS?*, https://www.baesystems.com/en-us/definition/what-are-asics#:~:text=ASICs%20(Application%2DSpecific%20Integrated%20Circuits,out%20a%20specific%20overall%20task

Strategy seeks the development of autonomous vehicle systems to strengthen China's national defense, and the collaboration of China's military and civilian sectors to tackle key problems. *See* NDAR 1100 (announcing goals of "carry[ing] out joint military and civilian research and accelerat[ing] the development of Beidou satellite navigation,"[12] promoting the "[t]ransformation and application of military technologies with independent intellectual property rights, such as inertial navigation systems, to strengthen autonomous driving," and "[b]uild[ing] an advanced and complete smart car infrastructure system"). A 2024 report explained that the NDR Committee plans to "formulate policies and measures for advancing high-quality development of defense mobilization," including "improv[ing] the system and layout of defense-related science, technology, and industry," "actively support[ing] defense and military modernization" and "enhanc[ing] military-civilian coordination on major infrastructure construction." NDAR 1174.

The Ministry is also a key player in China's military industrial planning apparatus, promoting integration of China's military and civil sectors with respect to scientific and technical research. NDAR 1182. According to its website, the Ministry endeavors to "promote military-civilian integration," "takes the lead in establishing a unified national platform for S&T [science and technology] management and a mechanism for fund allocation, evaluation and supervision of research projects," "put[s] forward policy recommendations for optimizing the allocation of S&T resources," "coordinate[s], manage[s] and oversee[s] the implementation of S&T systems (projects and funds) financed by [China's] central government," "organizes and coordinates national projects on basic research and application-oriented basic research," "formulates plans for major

---

[12] China's BeiDou Navigation Satellite System is a global navigation satellite system built to rival the U.S. Global Positioning System ("GPS"). Andrew Jones, China Launches New Beidou Satellites, Rocket Booster Lands Near House, *Space News* (Dec. 26, 2023), https://spacenews.com/china-launches-new-beidou-satellites-rocket-booster-lands-near-house/

national S&T projects and oversees their implementation," and "coordinates the [research and development] and innovation of key generic technologies [and] cutting-edge frontier technologies," and "takes the lead in formulating plans [and] policies . . . for the [research and development] and industrial application of high and new technologies." NDAR 1184-85.

The NDR Committee's and the Ministry's assistance to Hesai in the form of sponsoring the development of LiDAR technology represents science and technology-related assistance from the Government of China initiated under China's military industrial planning apparatus.

*Third*, Hesai disclosed on a 2023 Securities and Exchange Commission form that "the PRC government has significant authority in regulating our operations and may influence or intervene in our operations at any time." NDAR 1188. The Department cited this disclosure to show that there is a substantial likelihood that the Chinese government will again provide science and technology assistance to Hesai. Although Plaintiffs attempt to minimize the weight of this evidence, *see* Hesai MSJ at 38-39, their arguments miss the mark because DoD is not citing this 2023 disclosure in isolation but as part of a pattern. The Government of China has already provided science and technology related assistance to Hesai, and it retains the right to do so in the future. Accordingly, Plaintiffs' attempt to downplay China's recent sponsorship of Hesai's development of LiDAR technology, Hesai MSJ at 37, has no merit. Moreover, DoD's placement of this 2023 disclosure within a broader context distinguishes the present case from *Luokung Tech. Corp.*, which, in interpreting a different statute, explained that it is not sufficient to assert in conclusory fashion that the business might be "potential[ly] affiliat[ed]" with a particular Chinese governmental entity (the PRC National Police) to demonstrate actual affiliation with that entity. 538 F. Supp. 3d at 189.

26

C.    **DoD Acted Within Its Authority in Designating Hesai as "Residing in or Affiliated With a Military-Civil Fusion Enterprise Zone."**

Congress requires DoD to place on the Section 1260H List entities "residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such" a zone. §1260H(d)(2)(E). The Department's determination that Hesai constitutes such an entity falls within DoD's statutory authority and is supported by substantial evidence.

Because Congress did not define the term "military-civil fusion enterprise zone," its terms bear their plain meaning. "Enterprise" means a "unit of economic organization or activity[,] especially: a business organization." *Enterprise*, Merriam-Webster's Collegiate Dictionary https://www.merriam-webster.com/dictionary/enterprise (definition 2.a). And a "zone" is a "section of an area or territory established for a specific purpose, as a section of a city restricted to a particular type of building, enterprise, or activity." *Zone*, Am. Heritage Dictionary (5th ed. 2020) (definition 2). Hence, a "military-civil fusion enterprise zone" is a section of territory established by the Chinese government for the purpose of advancing its policy of military-civil fusion through economic activity.

The Chongqing Economic Development Zone plainly qualifies as a "military-civil fusion enterprise zone" because it has been established by China to advance military-civil fusion through scientific and technological innovation in industry. In 2022, the Na'an District Science and Technology Bureau stated that under the Chinese Communist Party's Fourteenth Five-Year Plan, the city of Chongqing was to "accelerate the construction of a nationally influential scientific and technological innovation center." NDAR 1623. The Bureau explained that the Na'an District and Chongqing Economic Development Zone have "always adhered to the innovation-driven development strategy, emphasizing that the innovation chain guides the industrial chain and the industrial chain promotes the development of the innovation chain." NDAR 1623. The Five-Year

27

Plan envisions that by 2025, "technological innovation will be effectively promoted to lead the economic and social development of the whole district." NDAR 1624. Among other steps, the Plan "has implemented" a "science and technology enterprise growth project" and has "cultivated a group of innovating leading enterprises." NDAR 1625. The primary "key task" of the Plan for the zone is to "promote the research of key core technologies for industrial development." NDAR 1626. Another "key task" is to "deepen open cooperation in scientific and technological innovation" by, *inter alia*, "promot[ing] scientific and technological *military-civilian integration* innovation." NDAR 1627 (emphasis added). The Plan also makes clear that to promote the zone's scientific and technological development, it will be necessary "to strengthen monitoring and evaluation," which will include "regularly monitor[ing] the progress of the Chongqing Economic and Technology Development Zone." NDAR 1628.

The Jiading Industrial Zone similarly qualifies as a "military-civil fusion enterprise zone." China created the zone to further the integration of its military and civil sectors through scientific and technological innovation in industry. The Jiading Industrial Zone Civil-Military Integration Industry Alliance was established in 2019. NDAR 1650. Under its auspices, a newly-established industrial park in Jiading Industrial Zone was "committed to opening up the military-civilian integration industry channel." NDAR 1650. "The establishment of the military-civilian integration industry alliance in the Jiading Industrial Zone" is "a specific measure to connect with the national strategy of military-civil integration." NDAR 1650. Within Jiading District, "the military industry" has "a number of major core technologies in major national science and technology projects." NDAR 1650. Jiading Industrial Park was specifically designated to "take the establishment of" the civil-military integration industrial alliance "as an opportunity to help enterprises in the park carry out exchanges and cooperation in the field of military-civilian integration." NDAR 1651.

28

DoD's determination that Hesai "resides in or is affiliated with" these zones, NDAR 15-16, is supported by substantial evidence. Hesai has agreed to build its Technology Software Global R&D Headquarters, set up an "innovation incubation center," and create a LiDAR "industrial park" in the Chonqing Economic Development Zone. NDAR 1614; *see also* Lei Kang, LiDAR-Maker Hesai to Set Up Software R&D Headquarters in Chongqing, *CnEVPost* (Mar. 27, 2023) (same).[13] And Hesai has also built the Hesai Maxwell Intelligent Manufacturing Center, covering an area of 40 acres, in Jiading Industrial Zone. NDAR 1630. Among the functions with which the center is tasked are research, production, and vehicle standard testing of LiDAR technology. NDAR 1642. The Center maintains the world's leading LiDAR research and development and intelligent manufacturing technology, and combined with Hesai's self-built automated LiDAR production factory, its operations "can ensure" that LiDAR "can achieve large-scale mass production while maintaining a high level of quality." NDAR 1645.

Plaintiffs thus err in arguing that the Department has not acted within the scope of Section 1260H in determining that Hesai is "resid[ing] in or affiliated with a military-civil fusion enterprise zone," and that its determination is not grounded in substantial evidence. Hesai MSJ at 39-41. As an initial matter, it is immaterial that these zones might be larger in area than Arlington County, Virginia, *see* Hesai MSJ at 39, because the size of a military-civil fusion zone is entirely within China's control, and Congress made no attempt to foresee how large or small such zones might be. Plaintiffs also cite no authority to support their contention that Section 1260H requires DoD to create "an established list" of military-civil fusion enterprise zones. *Id*. at 39.

---

[13]    *Available at* https://cnevpost.com/2023/03/27/hesai-to-set-up-software-rd-headquarters-in-chongqing/. The version of this article at NDAR 1616-21 inadvertently omits relevant text.

Further, it is reasonable for DoD not to determine that other entities (such as Amazon and Volvo) have a "presence" in these zones, *id.* at 40, because the national security risk associated with a company that is not developing, producing, or supplying military or dual-use products does not rise to the level of a company (such as Hesai) that produces dual-use products. DoD's focus on entities that produce military supplies or products that have a dual use is consistent with the structure of 1260H(d)(1)(b)(II) and (d)(2), which focus on various types of connections between the relevant entity and the Chinese defense industrial base. Finally, as explained below, *see infra* III, the Department may permissibly interpret Section 1260H through a series of agency decisions, applying a totality-of-the-circumstances standard. DoD has also supported its designation of Hesai as residing in or being affiliated with a military-civil fusion enterprise zone with substantial evidence, as demonstrated above.

### D. Substantial Evidence Supports DoD's Determination that Hesai Advertises on a Nongovernmental Military Equipment Procurement Platform.

DoD has reasonably determined that Hesai is a military-civil fusion contributor to the Chinese defense industrial base because it "advertises its products on Beijing Huawei Testing Technology Co., Ltd.'s (Beijing Huawei Technology) website." NDAR 16 (citing Section 1260H(d)(2)(G)). Contrary to Plaintiffs' assertions, DoD both appropriately interpreted relevant statutory language and supported its determination with substantial evidence.

The record evidence compiled by DoD suffices to allow a reasonable factfinder to conclude that Hesai "advertise[s] on . . . a non-governmental military equipment procurement platform in the People's Republic of China." § 1260H(d)(2)(G). DoD found that several Hesai products are advertised on Beijing Huawei Technology's website. NDAR at 16, 1652. It further found that Beijing Huawei Testing "sells, and provides technical service to hi-tech products which are mainly used in aviation, aerospace, weapons, electronics, ships, transportation, and university systems."

30

NDAR 17 (citing NDAR at 1654). There can be no serious disagreement that a private website selling "new products in high-tech fields" for use in, among other things, "weapons," *see* NDAR 1654, qualifies as a "nongovernmental military equipment procurement platform" under the plain meaning of that phrase. And there can be no dispute that Beihang University, a major Chinese defense university designated and overseen by MIIT as one of "Seven Sons of National Defense," *see* NDAR 17, 1660-61, purchased three Hesai Group LiDARs from Beijing Huawei Technology. NDAR 1656-59. According to the information on which DoD relied, "[t]he depth of the Seven Sons' integration with the military suggests that it would be more accurate to describe them as defence universities rather than civilian universities." NDAR 1660. The universities describe themselves as "'defence science, technology and industry work units' or parts of the 'defence system.'" NDAR 1660. These universities "stand at the forefront of defence research in China" and are a key node in the Chinese "military-civil fusion" strategy. NDAR 1662. It is thus reasonable for DoD to rely on this evidence to conclude that Hesai advertised on a nongovernmental military procurement website in China.

None of this is a "tenuous chain of inferences," as Plaintiffs argue. Hesai MSJ at 42. Rather, a leading Chinese defense university, overseen by the Chinese government and closely integrated into China's military industrial base, purchased Hesai's products advertised on a procurement website that holds itself out to the Chinese defense industry. It is irrelevant to an APA analysis that, months after DoD compiled its report on Hesai and designated it as a Chinese military company, Beijing Huawei Technology disclaimed Hesai having advertised on its website. *See* ECF No. 42-1 at 42 (Ex. D) (certified translation of statement). "It must be emphasized that the Court's review is limited to the administrative record, which 'includes all materials compiled by the agency that *were before the agency at the time the decision was made*.'" *Calloway v. Harvey*, 590 F. Supp.

2d 29, 36 (D.D.C. 2008) (quoting *James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1095 (D.C. Cir. 1996)) (emphasis added). Setting aside the unestablished reliability of the self-serving statement, it simply was not known to the Deputy Secretary of Defense at the time she rendered her decision.

Even accepting Plaintiffs' reading of the statute that Hesai itself must have advertised on the website, *see* Hesai MSJ at 42-43; *see also* § 1260H(d)(2)(G), the Department reasonably concluded that it did so. *See* NDAR 16. Beijing Huawei Technology does not appear to be a third-party reseller platform akin to eBay, as Plaintiffs analogize. Hesai MSJ at 43. It would impose an extra-statutory burden on DoD that Congress did not intend were it required to verify the actual advertising entity for every seller on every Chinese military procurement website. And such verification is practically infeasible. Rather, DoD reasonably looked at a nongovernmental military equipment procurement platform, saw that Hesai's products were listed and advertised there, and gathered evidence that the products were sold to a leading defense research university. The Department thus supported its conclusion with substantial evidence that Hesai advertises on a nongovernmental military equipment procurement platform.

## II.    DoD Was Not Required to Independently Show That Hesai Contributed to the Chinese Defense Industrial Base, But It Made that Showing Anyway.

### A.    The Department's Determination Falls Within Its Statutory Authority.

Section 1260H requires DoD to identify each entity determined to be a "Chinese military company," § 1260H(a). In defining "Chinese military company," Congress requires DoD to place on the Section 1260H List entities that are "identified as a military-civil fusion contributor to the Chinese defense industrial base" and "engaged in providing commercial services, manufacturing, producing, or exporting." § 1260H(d)(1)(B)(i)(I), (d)(1)(B)(ii). DoD concluded that Hesai contributes to the Chinese defense industrial base because it is a military-civil fusion contributor engaged in providing commercial services. NDAR 11. Specifically, DoD determined that Hesai

furthers Chinese military-civil fusion by developing dual-use technologies with substantial applications in both the civilian and military sectors. NDAR 11. This conclusion falls within the Department's statutory authority and is supported by substantial evidence.

Contrary to Plaintiffs' argument, *see* Hesai MSJ at 19-22, Congress did not require DoD to demonstrate that an entity separately meets the definition of "a military-civil fusion contributor," *and* "contribut[es] to the Chinese defense industrial base." To the contrary, in defining "Chinese military company," Congress requires DoD to place on the Section 1260H List entities: (1) "identified as a military-civil fusion contributor to the Chinese defense industrial base" (the identification requirement); (2) that are "engaged in providing commercial services, manufacturing, producing, or exporting" (the conduct requirement). § 1260H(d)(1)(B)(i)(I), (d)(1)(B)(ii). In other words, Section 1260H(d)(1)(B)(i)(I) identifies the entities that DoD must assess for placement on the List, while Section 1260H(d)(1)(B)(ii) articulates the requisite conduct. Plaintiffs, by contrast, conflate the identification and conduct requirements, in contravention of Congress' intent. Had Congress intended to adopt Plaintiffs' preferred reading, it could have done so by phrasing Section 1260H(d)(1)(B)(i)(II) differently, *e.g.*, by defining Chinese military companies as entities "identified as a military-civil fusion contributor that supply materiel to the Chinese defense industrial base." The more logical statutory interpretation is that the two parts of Section 1260H(d)(1)(B)(i)(II), ostensibly bifurcated by Plaintiffs, are inextricably intertwined: an entity contributes to the Chinese defense industrial base by virtue of it being a *military*-civil fusion contributor.

It is also beside the point whether the phrase "defense industrial base" does or does not have a commonly understood meaning, *see* Hesai MSJ at 20, because Congress did not require the Department to establish that an entity must contribute to the Chinese defense industrial base. The

relevant determination is rather whether an entity contributes to Chinese *military*-civil fusion. If DoD makes such a determination, then by definition, in contributing to Chinese military-civil fusion, an entity contributes to the Chinese defense industrial base by furthering the goals of integrating the Chinese military and civilian industrial sectors. There is thus no logical need to make a separate finding that an entity contributed to the Chinese defense industrial base, nor did Congress impose any such requirement.

Plaintiffs also mistakenly fault DoD for not making a finding that Hesai "supplies the Chinese government or military with materials, products, and services for defense purposes." Hesai MSJ at 21 (internal punctuation omitted). Section 1260H(d)(1)(B) does not contain any requirement that materiel be supplied to the Chinese military. Rather, it merely requires that DoD demonstrate that Hesai, as a military-civil fusion contributor, "engaged in providing commercial services, manufacturing, producing, or exporting." And as explained above, the Department has readily made this demonstration. *See supra* pages 32-33.

Finally, there is a manifest difference between, on the one hand, a company producing everyday items such as "paper [or] batteries [or] gasoline [or] canned food" that both civilians and military personnel use because they are everyday items, Hesai MSJ at 21, and on the other hand, an entity that develops advanced laser technology that is recognized as a dual-use technology with substantial applications in the civilian and military sectors, making it a valuable asset for the Chinese military. NDAR 11. As the D.C. Circuit has recognized, the Government of China "endeavors strategically to pre-position commercial entities in the United States that the [Chinese government] can later co-opt. These pre-positioning tactics can occur over the span of several years of planning and implementation, and they are one part of the [Chinese government's] broader geopolitical and long-term strategy to undermine U.S. national security." *TikTok Inc.*, 2024 WL

34

4996719, at *14 (internal quotations and citations omitted. The development of advanced laser technology in the commercial sector thus assists Chinese military-civil fusion in a way that the mere production of mundane items such as paper or batteries does not.

**B.    The Department's Finding Is Supported by Substantial Evidence.**

Although DoD was not required to make an independent finding that Hesai contributed to the defense industrial base, DoD nevertheless made such a finding and its so doing can be considered merely an abundance of caution. *See* NDAR 11. Substantial evidence supports its conclusion that Hesai advances China's policy of military-civil fusion by manufacturing LiDAR technology. The Department received information that Hesai is engaged in the development, manufacture, and sales of LiDAR, which enables a broad spectrum of applications across passenger or commercial vehicles with advanced driver assistance systems, autonomous vehicle fleets providing passenger and freight mobility services, and other applications such as last-mile delivery robots, street sweeping robots, and logistics robots in restricted areas. *See* NDAR 11 n.13.[14] DoD thus determined that Hesai develops LiDAR products that enable applications across passenger and commercial vehicles and that are used in robotics. NDAR 11. Based on information that LiDAR, including Hesai's products, has become "the main 'eyes' for self-driving vehicles and driver assistance systems in both military and civilian vehicles," NDAR 1715, DoD concluded that LiDAR is recognized as a dual-use technology with substantial applications in the civilian and military sectors. NDAR 11. And based on information that "China is . . . pushing ahead with the 'eyes'" of autonomous vehicles "that send the signals to the computer to interpret," and that "[a]t the front line of this race towards fully-realized autonomous vehicles is the push to dominate the

---

[14]  The document cited, *Pitchbook, Hesai Technology* (NAS: HSAI), is available at https://pitchbook.com/profiles/company/125781-31#overview.

market for LiDAR (light detection and ranging) systems," NDAR 1715, DoD concluded that LiDAR is a valuable asset for the Chinese military. NDAR 11.

The Department also received information that "[u]nder China's policy of Military-Civil Fusion," the Chinese Academy of Sciences' Shanghai Institute of Microsystems and Information Technology ("SIMIT") has made technological breakthroughs by improving the ability of autonomous vehicles "to map and track targets," which "has value to not just associated car manufacturers, but also the PLA;" that "beyond these developments in the 'brain' of autonomous vehicles, China is also pushing ahead with the 'eyes' that send the signals to the computer to interpret;" and that '[a]t the front line of this race towards fully-realized autonomous vehicles is the push to dominate the market for LiDAR," which "became the main 'eyes' for self-driving vehicles and driver assistance systems in both military and civilian vehicles." NDAR 1715. Additionally, the Department has information that "U.S. companies controlled the LiDAR market until relatively recently, when Chinese companies rose seemingly out of nowhere to dethrone U.S. dominance through state subsidies and other support" and that "[i]n particular, PRC documents from 2020 note that numerous government organs were directed to surge their aid for 'intelligent vehicles' and 'establishing an integrated sensory system' for urban environments." NDAR 1715. Based on this information, DoD concluded that the dual-use nature of LiDAR aligns with China's policy of military-civil fusion, and that that policy is aimed at modernizing China's defense capabilities. Based on reporting that the People's Liberation Army is "developing autonomous vehicles," NDAR 1715, and that LiDAR is used in these vehicles, NDAR 1715, the Department concluded that the PLA uses LiDAR in its development of autonomous vehicles, and that these vehicles can have military applications. NDAR 11.

36

DoD has thus supported its determination that Hesai contributes to the Chinese defense industrial base with substantial evidence.[15]

### III. DoD Acted Reasonably in Applying Section 1260H's Statutory Terms to Its Factual Determinations Regarding Hesai.

In enacting Section 1260H, Congress chose to leave some statutory terms undefined, including "affiliated with" MIIT, § 1260H(d)(2)(B); "Chinese military industrial planning apparatus," § 1260H(d)(2)(A); "nongovernmental military equipment procurement platform," § 1260H(d)(2)(G) and "military-civil fusion enterprise zone," § 1260H(d)(2)(E). As shown above, DoD has explained its construction of these phrases, as well as the manner in which it has applied its factual findings to its construction of these terms. Moreover, in determining whether an entity falls within the strictures of Section 1260H's provisions, the Department is free to apply a totality-of-the-circumstances standard.

Because DoD has acted reasonably in applying Section 1260H's statutory terms to its factual findings regarding Hesai, Plaintiffs err in arguing that DoD has engaged in arbitrary and capricious decisionmaking. Hesai MSJ at 17-19. To the contrary, agencies may permissibly "appl[y] an all-things-considered standard to implement a statute that confers broad discretionary authority." *PDK Labs. Inc. v. DEA*, 438 F.3d 1184, 1195 (D.C. Cir. 2006). An agency is not "obliged to issue a comprehensive definition" of an undefined statutory term "all at once," but

---

[15] Moreover, Plaintiffs err in contending that DoD's findings contradict either its prior findings or evidence in the administrative record, *see* Hesai MSJ at 23. DoD previously found that Hesai's products have a broad range of applications to passenger and commercial vehicles; it now concludes that Hesai's LiDAR products have "applications across passenger and commercial vehicles," NDAR 11, *and* also that LiDAR, including Hesai's products, "is recognized as a dual-use technology with substantial applications in the civilian and military sectors." NDAR 11. No contradiction exists between these two statements. The earlier determination's silence regarding whether Hesai LiDAR products' dual-use applications is not tantamount to expressly finding that these products lacked such applications. And as explained below, *see infra* at IV, Hesai's March and April 2024 materials do not contradict the Department's findings.

instead, when "fleshing out the contours" of such terms, are "entitled to proceed case by case." *Id*. at 1194 (citation omitted). Agencies may also elect to "provide[] no clear 'line of demarcation' to define an open-ended term, instead choosing to establish the term's contours through a series of [agency decisions]." *Id*. (quoting *Chippewa & Flambeau Improvement Co. v. FERC*, 325 F.3d 353, 359 (D.C. Cir. 2003)); *see also Catawba Cnty. v. EPA* 571 F.3d 20, 39 (D.C. Cir. 2009).

The Department thus can be viewed as proceeding through a series of agency decisions, adopting a totality-of-the-circumstances standard to implement Section 1260H, a national security statute conferring broad discretion to implement its provisions. Indeed, it is often infeasible to specify in advance all of the factors that may be salient when assessing a potential national security threat under a statute such as Section 1260H. *Cf. Schall v. Martin*, 467 U.S. 253, 279 (1984) ("a prediction of future criminal conduct is 'an experienced prediction based on a host of variables' which cannot be readily codified") (citation omitted).

Plaintiffs thus misplace their reliance on cases such as *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), and *Tripoli Rocketry v. ATF*, 437 F.3d 75 (D.C. Cir. 2006). The D.C. Circuit in *ACA* held that an FCC order designating the scope of an "automatic telephone dialing system" for a federal robocall ban was unreasonable because it was either impermissibly broad (sweeping in all smartphones under its scope) or too narrow (by not explaining why smartphones would be excluded but not browsers). *ACA Int'l*, 885 F.3d at 697, 700. And *Tripoli Rocketry* found unreasonable an ATF classification of a specific fuel as a regulated "explosive" because it "deflagrates," 437 F.3d at 77, where the agency had reserved "unbounded" discretion to define  the term "deflagrate." *Id*. at 81. The court in *Tripoli Rocketry* specifically acknowledged that "it may be necessary" for agencies to make "flexible" definitions, "accounting for gray areas where expert

discretion is necessary to characterize" when statutory terms apply to a particular situation, *id.*, which is what DoD has done here.[16]

Cases such as *ACA* and *Tripoli Rocketry* belong to a line of cases originating with *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999), but *Pearson* itself faulted an agency for failing to provide "some definitional content" to a particular regulatory term it enforced. *Id.* at 660. By contrast, as shown above, DoD has provided definitional content to statutory terms such as "Chinese defense industrial base" and "Chinese military industrial planning apparatus." Plaintiffs' argument that the Department has failed to articulate rational grounds for its decisionmaking therefore has no merit.[17]

## IV.  The Department Considered Hesai's Submissions in Making Its October 2024 Determination That Hesai Is a "Chinese Military Company."

The Department considered submissions from Hesai when it decided to re-list the company. Even if the Court were to conclude that DoD has not considered these submissions, any error would be harmless, and the appropriate remedy would be remand without vacatur. *Contra* Hesai MSJ at 13-17.

---

[16] *See also Iaccarino v. Duke*, 327 F. Supp. 3d 163, 177 (D.D.C. 2018) (stating that the APA requires only that "an agency's explanation" "contain 'a rational connection between the facts found and the choice made'") (quoting *State Farm*, 463 U.S. at 43); *Pac. Nw. Newspaper Guild v. NLRB*, 877 F.2d 998, 1003 (D.C. Cir. 1989) (requiring only that an agency's order, to be enforceable, "be based on an adequate explanation of why the [regulated entity's] conduct violated the law"); *Homer v. Roche*, 226 F. Supp. 2d 222, 226 (D.D.C. 2002) (explaining that "to prevail," the agency "'must give a reason that the Court can measure, albeit with due deference,' against the standard of the APA") (citation omitted).

[17] In any event, if the Court were to disagree and instead determine that DoD failed to provide an adequate explanation for its actions, then the appropriate remedy would be remand without vacatur, *see infra* IV.B, as even caselaw cited by Plaintiffs acknowledges. *See, e.g.*, *Tripoli Rocketry v. ATF*, 437 F.3d 75, 84 (D.C. Cir. 2006) (remanding without vacatur "for further consideration consistent with [the court's] decision"); *Mori v. Dep't of Navy*, 731 F. Supp. 2d 43, 49 (D.D.C. 2010) (remanding to agency without vacatur for fuller explanation).

**A.    DoD Considered Submissions From Hesai in Its Re-Listing Decision.**

In the Hesai Group Report contained in the administrative record, NDAR 6-24, DoD expressly stated that "Hesai Group provided information for the Department's consideration in a March 8, 2024 request for reconsideration," and that "[t]he Department considered this information during its analysis" of whether Hesai is a "Chinese military company." NDAR 10. The March 8, 2024 request for reconsideration included both the March 2024 letter, NDAR 371-86, and the Li declaration, NDAR 387-95. Further, in April 2024, Defendants informed Plaintiffs that the Department would "consider . . . all the information provided thus far in [its] ongoing assessment of whether Hesai should remain on, or be removed from, the Chinese military company list as required by Section 1260H," including specifically the April 2024 letter regarding Hesai's communications with the Congressional Research Service. NDAR 1711. Thus, contrary to Hesai's contentions, DoD specifically stated that it considered these materials when making its determination whether to include Hesai on the Section 1260H List. And in making its determination, DoD decided that despite the statements made in these materials, there is substantial evidence that Hesai is a "Chinese military company."

Contrary to Hesai's argument, under the substantial-evidence standard, there is "no rigid requirement that [an agency decisionmaker] specifically refer to every piece of evidence in [its] decision." *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017) (citation omitted). Rather, "[u]nder the APA, the agency 'need only *consider* the evidence;' it need not mention every piece of evidence it considered." *Smith v. Garland*, 103 F.4th 1244, 1253 (7th Cir. 2024) (citation omitted). Courts applying the APA's deferential review standard will "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned'" where "the agency's rationale

and its reasonableness can be perceived readily enough." *Xcel Energy Servs. Inc. v. FERC*, 41 F.4th 548, 557 (D.C. Cir. 2022) (citation omitted).

Under the substantial-evidence standard, it suffices that an agency "expressly state[]" that it "considered" relevant evidence, and that it "implicit[ly] reject[ed]" that evidence in its "choice to give weight to" other evidence sufficient to support its decision. *Krzywicki v. Del Toro*, __ F. Supp. 3d __, 2024 WL 4598338, at *8 (D.D.C. Oct. 29, 2024). Because that is what DoD did here, its determination should be upheld. Plaintiffs place mistaken reliance on inapposite case law, including *Eagle County v. Surface Transportation Board*, 82 F.4th 1152 (D.C. Cir. 2023), to argue that DoD's express statements that it considered the relevant evidence—specifically including the materials at issue—is not sufficient. Because the court in *Eagle County* was analyzing an agency's obligations under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq*. ("NEPA"), the agency was required to "take a 'hard look' at the environmental consequences of [its] actions, and provide for broad dissemination of relevant environmental information." Because NEPA's "hard look" standard does not apply here, *Eagle County* is inapposite. So too is *Getty v. Federal Savings & Loan Insurance Corp*., 805 F.2d 1050 (D.C. Cir. 1986). At issue in *Getty* was an agency decision that failed to consider factors that a specific statute, 12 U.S.C. § 1730a(m), required the agency to consider. *See Getty*, 805 F.2d at 1051, 1054-57. Because Plaintiffs do not raise claims that DoD failed to consider some factor that Congress specifically required it to consider in reaching its decision, *Getty*'s applicability is negligible at best. Moreover, unlike the agency in *Water Quality Insurance Syndicate v. United States*, 225 F. Supp. 3d 41 (D.D.C. 2016), here, DoD has neither "ignored factual matters" nor "fail[ed] to respond adequately" to contrary arguments. *Id*. at 68. As explained above, DoD has actually considered the materials submitted by Hesai in making its determination, and as explained below, even if the arguments presented in Plaintiffs' materials are

credited, substantial evidence would still support DoD's decision. In any event, the agency decision in *Water Quality Insurance Syndicate*—whether the captain of a vessel that caused an oil spill had acted with gross negligence—turned on the weight afforded by the agency to determinations of witness credibility, *see id*. at 68-71, a factor wholly absent from this case.[18]

Regardless, any purported agency error stemming from an alleged failure to consider Plaintiffs' submissions is harmless. "The APA provides that, in reviewing agency action, the court 'shall' take account of 'the rule of prejudicial error,' that is, whether the error caused prejudice." *Nevada v. Dep't of Energy*, 457 F.3d 78, 90 (D.C. Cir. 2006) (quoting 5 U.S.C. § 706). Here, even if the Court were to find that DoD had not considered Plaintiffs' submissions, the error would be harmless because its decision is still supported by substantial evidence. *See Dillmon*, 588 F.3d at 1089 (agency's factual findings "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view") (citation omitted).

*First*, DoD has determined that the LiDAR products developed by Hesai are recognized as a dual-use technology with substantial applications in the civilian and military sectors. NDAR 11. As it has also explained, LiDAR's dual-use nature aligns with China's policy of military-civil fusion, which is aimed at modernizing its defense capabilities; for example, the People's Liberation Army of China uses LiDAR in its development of autonomous vehicles, which can have military applications. NDAR 11. Thus, Hesai contributes to the Chinese defense industrial base through its development of LiDAR products that are used in military equipment. NDAR 11.

---

[18] Plaintiffs also misplace their reliance on language quoted from *Water Quality Insurance Syndicate*'s summary of two cases from this Circuit, *Nat'l Ass'n of Clean Water Agencies v. EPA*, 734 F.3d 1115 (D.C. Cir. 2013), and *Dillmon v. Nat'l Transp. Safety Bd*., 588 F.3d 1085 (D.C. Cir. 2009). *See Water Quality*, 225 F. Supp. 3d at 68. Neither case is applicable here, as both turned on the issue of the relative weight afforded to the agency's determination of a witness's credibility. Unlike *Dillmon* and *Water Quality Insurance Syndicate*, this case does not involve any alleged failure to afford due weight to statements by a fact witness in the face of contradictory testimony.

In light of these determinations, it is immaterial that one of Hesai's submissions asserts that Hesai's technology is not designed, evaluated, or validated for military specifications. By its nature, LiDAR has substantial dual-use applications in both military and civilian settings. Nor, for the same reason, is it material that a Hesai submission alleges that Hesai does not sell its equipment for military use. Because LiDAR has both military and civilian applications, NDAR 11, it is of little weight whether Hesai specifically sells that equipment for military use when it may be converted to such use. And regardless of Hesai's representation that its products' specifications are at present below battlefield standards for military use, it remains the case that by their very nature, these products have substantial uses in the military sector. *See id.* Any alleged failure by the agency to consider Hesai's materials would thus constitute harmless error because regardless of the statements in these materials, substantial evidence remains to support DoD's determination that Hesai is a "Chinese military company."

*Second*, Hesai stated in a 2023 financial disclosure form that "the PRC government has significant oversight and discretion over our business operation, and it may influence or intervene in our operations at any time as part of its efforts to enforce PRC law." NDAR 13. Based on this statement, DoD concluded that the PRC Government could assist or require Hesai to make business decisions that benefit the PRC militarily. NDAR 13.

In light of this determination, it is beside the point that in one of Hesai's submissions, it avers that the statement in its 2023 financial disclosure form "merely informs investors of the general risks of investing in companies based in China." NDAR 392. It remains the case that the Chinese government could require Hesai to make business decisions that benefit the PRC militarily. It is similarly immaterial that one of Hesai's submissions represents that to date, "[n]either the Chinese government, the [PLA], nor any other organization subordinate to the

Central Military Commission of the Chinese Communist Party has interfered with, or had any control over, Hesai's operations and management." NDAR 389. Regardless of the veracity of this representation, it remains true that the Chinese government could in the future assist Hesai to make decisions. Therefore, it was reasonable for DoD to conclude that Hesai is a contributor to the Chinese defense industrial base, irrespective of Hesai's submissions.

### B.    Hesai's Additional Arguments Are Meritless.

Hesai advances two additional arguments under this rubric: (1) that DoD has not sufficiently acknowledged its change of course under *FCC v. Fox Television Stations, Inc*., 556 U.S. 502 (2009), and (2) that vacatur would be the appropriate remedy if the Court were to determine that DoD had not considered Hesai's submissions. *See* Hesai MSJ at 13-14, 16-17. Neither argument has merit.

*First*, it is not clear that *Fox* even applies to the present situation, where DoD has re-listed a specific entity on the Section 1260H List under a different rationale. At issue in *Fox* was whether "agency action that changes prior *policy*" "requir[es] a more substantial explanation" than a decision made in the first instance. *Fox*, 556 U.S. at 514 (emphasis added). This case does not challenge a broad change in overall agency policy. Instead, it involves DoD's application of a statute to a specific entity on two occasions, both of which reached the same conclusion (that the entity should be included on the Section 1260H List), albeit the latter on broader grounds. But there is no discernable policy shift at issue in this case akin to the FCC's broad policy change in *Fox* regarding the nature of its enforcement of the ban against expletives in television broadcasting.

In any event, even if *Fox* did apply here, DoD's decision passes muster. The Supreme Court in *Fox* found "no basis in the [APA] or in our opinions for a requirement that all agency change be subjected to more searching review" or any "heightened standard." *Id*. On the contrary, when an

agency changes course, it must simply "display awareness that it *is* changing position" and show that its "new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates." *Id*. at 515. "This means that the agency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id*.

These requirements are satisfied here. DoD displayed awareness that it was changing position when it removed Hesai from the Section 1260H List and simultaneously re-listed the company under a modified rationale. *See* 89 Fed. Reg. 86,230 (de-listing and re-listing Hesai). This "conscious change of course" "adequately indicates" that DoD believes that its decision to re-list Hesai is "better" than its prior designation of Hesai on the Section 1260H List. *Fox*, 556 U.S. at 515. And the administrative record demonstrates that Hesai's inclusion on the Section 1260H List is both "permissible under the statute" and that there are "good reasons" for the Department to designate Hesai according to the rationales it has presented. *Id*.

These requirements, which DoD has thus satisfied, are all that *Fox* generally requires of an agency that has made a policy change. It is true that *Fox* requires an agency to provide a "more detailed justification than what would suffice for a new policy created on a blank slate" "when, for example, its new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account." *Id*. at 515 (citation omitted). But neither circumstance is presented here. Although DoD has made new factual findings, Hesai has not shown that those findings contradict those that

45

underlay its prior determination. Nor has Hesai shown that DoD's prior determination has created any serious reliance interests.[19]

*Second*, even if the Court were to conclude that DoD had failed to consider Hesai's submissions and that such error was not harmless, remand without vacatur would be the appropriate remedy. It is well settled that "[i]f the record before the agency does not support the agency action [or] if the agency has not considered all relevant factors, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Erwin v. FAA*, 23 F.4th 999, 1007 (D.C. Cir. 2022) (citation omitted). Courts in this Circuit thus have discretion "to leave agency action in place while the decision is remanded for further explanation." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1051 (D.C. Cir. 2021). Two factors guide this discretion: "the seriousness of the action's deficiencies" and "the likely disruptive consequences of vacatur." *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 518 (D.C. Cir. 2020) (citations and internal punctuation omitted). "The 'seriousness' of a deficiency . . . is determined at least in part by whether there is 'a significant possibility that the [agency] may find an adequate explanation for its actions' on remand." *Standing Rock*, 985 F.3d at 1051 (citation omitted).

Here, both factors would weigh in favor of remand without vacatur if the Court were to decide that the Department erred by failing to consider Hesai's submissions. Case law suggests that when a court remands to an agency to clarify the reasons supporting its decision, remand is appropriate without vacating the agency's order. *U.S. Postal Serv. v. Postal Regulatory Comm'n*,

---

[19] Nor, contrary to Hesai's suggestion, is there any reason why the administrative record should have included DoD's prior designation of Hesai on the Section 1260H List. *See* Hesai MSJ at 17. Because that prior designation is not being challenged here, it has no place in the administrative record. The Department is also not required to include this prior designation in the record in order for it to demonstrate its "awareness" that it is changing position. *Fox*, 566 U.S. at 515.

785 F.3d 740, 756 (D.C. Cir. 2015). Because the alleged error would simply reflect a deficiency in explanation, there would be a substantial chance that DoD could remedy the alleged error by providing additional explanation why the information in Hesai's submissions does not warrant de-listing Hesai. Additionally, the serious national security concerns underlying Congress's creation of the Section 1260H List evidence the dangerous consequences of erroneously de-listing an entity determined by the Department to be a Chinese military company. Thus, if the Court were to conclude that DoD had not considered Hesai's submissions and that any concomitant error was not harmless, the appropriate remedy would be remand without vacatur.

## V.    There is No Due Process Violation.

Plaintiffs incorrectly argue that DoD violated procedural due process by identifying them on the Section 1260H List. *See* Hesai MSJ at 43-45. Generally, to state a due process claim, "the plaintiff must show the Government deprived [the plaintiff] of a 'liberty or property interest' to which she had a 'legitimate claim of entitlement,' and that 'the procedures attendant upon that deprivation were constitutionally [in]sufficient.'" *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (citation omitted). But Plaintiffs neither show that the Government deprived them of a constitutionally protected liberty or property interest nor that any process was lacking.

Plaintiffs first contend that their designation on the 1260H List will, beginning in 2026, prevent them from pursuing DoD contracts that they admit having no present intention to pursue. Hesai MSJ at 43. This claim is unripe. "A claim is premature and therefore unripe for judicial review if it depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023) (citation omitted). To determine ripeness, the Court evaluates "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* (internal quotation and

citation omitted). Plaintiffs cannot show now that they will be banned from bidding on DoD contracts in 2026—especially when they disclaim any present intention to do so—but instead ask the Court to impermissibly adjudicate a "hypothetical set of facts." *Id.* at 307. Because they have no intention to bid on DoD contracts, there is no hardship to Plaintiffs by withholding consideration of this purely hypothetical claim.[20]

Nor is caselaw concerning due process injuries to *individuals* prevented from pursuing their chosen line of work relevant to this corporation's ability to seek government contracts in the future. Hesai MSJ at 43-44 (citing *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995), *opinion amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995)). The line of cases on which Hesai relies involve a person's "constitutionally protected right to follow a chosen trade or profession." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994) (internal quotation and citation omitted). Nothing in the case law suggests that it extends to corporations with no history or intention of seeking contracts from a particular government agency. A contracting ban in 2026 simply is not a deprivation of a protected liberty or property interest here.

Plaintiffs next contend that they have suffered reputational harm, asserting that they should have been afforded pre-deprivation notice before Hesai's identification. Hesai MSJ at 44-45. Allegedly, this reputational harm has affected Hesai's ability to raise capital and solicit U.S. investment. *Id.* at 44. It is well established that reputational harm alone is not sufficient to demonstrate a deprivation of a liberty or property interest such that they should be afforded due process rights. *See Paul v. Davis*, 424 U.S. 693, 712 (1976) (concluding that harm to reputation

---

[20] Likewise, the effect of Hesai's listing on the 1260H List on its ability to obtain grants, loans, contracts, or other benefits from the Department of Energy, see 42 U.S.C. §§ 18912, 19235, or under the Chips Act, see 42 U.S.C. §§ 18912(a)(3), (c)(1), 1923, remains purely hypothetical and unfit for judicial review.

alone does not implicate any "liberty" or "property" interests sufficient to invoke the procedural protection of the due process clause). Although Plaintiffs raise the specter of lost capital and investment opportunities to try to bridge the gap, Hesai's placement on the 1260H List did not forbid any investor from doing business with Hesai nor Hesai doing business with any investor. In other words, the Government has not effected any deprivation of property or liberty here. "To prove constitutional injury, the plaintiff must show not only that the government has imposed some stigma upon him, but also that it has worked some change in his status under law." *Taylor v. Resol. Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir.), *opinion amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995) (citing *Paul*, 424 U.S. at 711–12). Hesai did not suffer any change in status under law here. For this reason, Plaintiffs' strained analogies to the sanctions context are unavailing. Hesai MSJ at 44 (citing *People's Mojahedin Org. of Iran ("Mojahedin") v. U.S. Dep't of State*, 613 F.3d 220, 227-28 (D.C. Cir. 2010); *Nat'l Council of Resistance of Iran ("NCRI") v. Dep't of State*, 251 F.3d 192, 208-09 (D.C. Cir. 2001)). In *NCRI*, for example, the D.C. Circuit explained that in addition to "mere stigmatization," the plaintiffs were "deprived of the previously held right to—for example— hold bank accounts, and to receive material support or resources from anyone within the jurisdiction of the United States." *NCRI*, 251 F.3d at 204; *see also Mojahedin*, 613 F.3d at 223 (describing "three consequences" of the designation to include the Treasury Department freezing assets, bars on entry to the United States, and criminal prosecution to those who knowingly provide material support to the designated entity). The only possible harm Plaintiffs have suffered traceable to the Government is to their reputation. No cognizable deprivation has occurred.

In any event, "due process is flexible and calls for such procedural protections as the particular situation demands." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 317 (D.C. Cir. 2014). Pre-deprivation notice is not necessarily required when, as here, national security

and foreign policy concerns are at stake. *See, e.g.*, *Lopez Bello v. Smith*, 651 F. Supp. 3d 20, 40 (D.D.C. 2022), *aff'd sub nom.*, *Bello v. Gacki*, 94 F.4th 1067 (D.C. Cir. 2024) (pre-deprivation notice is not required when declining to do so advances an important governmental interest such as preventing asset flight when implementing economic sanctions). If DoD had decided to afford pre-deprivation notice in this context, Chinese military companies could alter their corporate structure, change their names, remove evidence of their affiliation with China from the public record, or otherwise obfuscate their identities to avoid being placed on the List.

In sum, Hesai has not identified a deprivation of a protected interest nor any insufficient "procedures attendant upon that deprivation." *Roberts*, 741 F.3d at 161 (citation omitted).[21]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

Dated: January 8, 2024                      BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            LAUREN A. WETZLER
                                            Deputy Director, Federal Programs Branch

                                            */s/ Daniel Riess*
                                            DANIEL RIESS (TX Bar No. 24037359)
                                            SAMSON COHEN (DC Bar No. 9004821)

---

[21] Plaintiffs have declined to meaningfully pursue the equal protection claims in the FAC; the Court should consider them abandoned. *See Aragon v. Tillerson*, 240 F. Supp. 99, 108 n.4 (D.D.C. 2017) (concluding that the plaintiff abandoned a constitutional claim because it was not addressed in the briefing) (citing cases); *see also 3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (identifying "two essential elements to an equal protection claim: (1) disparate treatment of similarly situated parties (2) on no rational basis"); *Fraternal Order of Police v. United States*, 152 F.3d 998, 1002 (D.C. Cir. 1998), *reh'g granted on other grounds*, 173 F.3d 898 (D.C. Cir. 1999) ("Equal protection analysis is substantially identical under the Fifth Amendment and the Fourteenth."). Plaintiffs do not show that Defendants treated Hesai differently from similarly situated companies. *See* FAC ¶¶ 119, 120, 124 (failing to identify similarly situated companies). The substantial evidence supporting Hesai's placement on the 1260H List plainly provides a rational basis for its listing.

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel: (202) 353-3098
E-mail: daniel.riess@usdoj.gov
*Attorneys for Defendants*