**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civ. Action No. 1:24-cv-01381-PLF |
| U.S. DEPARTMENT OF DEFENSE, *et al.* | |
| *Defendants*. | |

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile:  (202) 887-4288
jtysse@akingump.com

*Counsel to Plaintiffs Hesai Technology Co., Ltd.
and Hesai Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................3

I.    THE DEPARTMENT EXCEEDED ITS AUTHORITY IN DESIGNATING HESAI WITHOUT ESTABLISHING THAT HESAI CONTRIBUTES "TO THE CHINESE DEFENSE INDUSTRIAL BASE" ................................................3

      A.    The Amended Designation Fails To Substantiate The Critical "Defense Industrial Base" Finding ................................................3

      B.    The Department Cannot Salvage Its Failure To Make The Required Finding ................................................................6

          1.    *The Department's Late-Breaking Reliance On New Evidence Is Procedurally Improper And Unpersuasive* ................6

          2.    *The Department Cannot Delete The Statutory Requirement That Designated Entities Contribute "To The Chinese Defense Industrial Base"* ................8

II.    THE DEPARTMENT'S EXPLANATIONS ARE UNLAWFUL ....................13

      A.    The Department Erred In Failing To Consider Contradictory Evidence ................................................................13

      B.    Defendants' Invented Totality-Of-The-Circumstances Standard Does Not Justify The Department's Ad Hoc Approach ............................15

      C.    Defendants' Novel Constructions Are Unclear And Unreasonable ..........19

III.    THE DEPARTMENT'S FINDING THAT HESAI IS A "MILITARY-CIVIL FUSION CONTRIBUTOR" IS UNLAWFUL ................................................20

      A.    The Finding That Hesai Is "Affiliated With" The MIIT Is Unlawful ................................................................20

      B.    The Department's Finding That Hesai Knowingly Received Assistance Under China's Military Industrial Planning Apparatus Is Unlawful ................................................................26

      C.    The Department's Finding That Hesai Resides In Or Is Affiliated With A Military-Civil Fusion Enterprise Zone Is Unlawful ....................29

      D.    The Department's Finding That Hesai Advertises On Military Equipment Procurement Platforms Is Unlawful ........................................31

IV.    THE DEPARTMENT FAILED TO PROVIDE HESAI BASIC DUE PROCESS ..........32

V.    THE COURT SHOULD SET ASIDE THE DEPARTMENT'S UNLAWFUL DECISION AND VACATE HESAI'S DESIGNATION ................................................35

CONCLUSION ................................................................................................36

# TABLE OF AUTHORITIES

<u>CASES</u>:

*Abbott Lab's v. Gardner*,
387 U.S. 136 (1967) ................................................................................................34

*Allina Health Servs. v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) ............................................................................35

*Autodesk, Inc. v. ZWCAD Software Co.*,
No. 14-cv-1409-EJD, 2015 WL 1928184 (N.D. Cal. Mar. 27, 2015) ...................22

*Bridgeport Hosp. v. Becerra*,
108 F.4th 882 (D.C. Cir. 2024) .............................................................................35

*Butler v. Barnhart*,
353 F.3d 992 (D.C. Cir. 2004) ..............................................................................14

*City of New Orleans v. SEC*,
969 F.2d 1163 (D.C. Cir. 1992) ............................................................................31

*City of Port Isabel v. FERC*,
111 F.4th 1198 (D.C. Cir. 2024) ...........................................................................36

*Corner Post, Inc. v. Board of Govs.*,
603 U.S. 799 (2024) ..............................................................................................35

*Davis v. Shalala*,
862 F. Supp. 1 (D.D.C. 1994) ...............................................................................16

*Department of Com. v. New York*,
588 U.S. 752 (2019) .................................................................................................7

*Department of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) .....................................................................................................7

*Dickinson v. Zurko*,
527 U.S. 150 (1999) ...............................................................................................22

*Dillmon v. National Transp. Safety Bd.*,
588 F.3d 1085 (D.C. Cir. 2009) ............................................................15, 17, 35

*District Hosp. Partners, L.P. v. Burwell*,
786 F.3d 46 (D.C. Cir. 2015) ...............................................................................31

*District of Columbia v. U.S. Dep't of Agric.*,
496 F. Supp. 3d 213 (D.D.C. 2020) ....................................................................7, 8

*Duncan v. Walker*,
    533 U.S. 167 (2001).................................................................................................3, 9

*Garnett v. RLX Tech. Inc.*,
    632 F. Supp. 3d 574 (S.D.N.Y. 2022)...........................................................................22

*Glen v. Trip Advisor LLC*,
    529 F. Supp. 3d 316 (D. Del. 2021)..............................................................................27

*Haping v. 17 Educ. & Tech. Grp. Inc.*,
    No. 22-cv-09843-LAK-SDA, 2023 WL 8716895 (S.D.N.Y. July 20, 2023)................22

*Killian v. United States*,
    368 U.S. 231 (1961)......................................................................................................20

*LeMoyne-Owen Coll. v. N.L.R.B.*,
    357 F.3d 55 (D.C. Cir. 2004)..............................................................................16, 17, 18

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)......................................................................................................12

*Luokung Tech. Corp. v. Department of Def.*,
    538 F. Supp. 3d 174 (D.D.C. 2021)..................................................................... *passim*

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)......................................................................................................34

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)..................................................................................................17, 19

*National Council of Resistance of Iran v. Department of State*,
    251 F.3d 192 (D.C. Cir. 2001)......................................................................................35

*Nevada v. Department of Energy*,
    457 F.3d 78 (D.C. Cir. 2006)........................................................................................15

*New Life Evangelistic Ctr., Inc. v. Sebelius*,
    672 F. Supp. 2d 61 (D.D.C. 2009)....................................................................14, 15, 35

*PDK Labs. Inc. v. DEA*,
    438 F.3d 1184 (D.C. Cir. 2006)..............................................................................17, 18

*People's Mojahedin Org. of Iran v. U.S. Dep't of State*,
    613 F.3d 220 (D.C. Cir. 2010)................................................................................33, 35

*Ramaprakash v. FAA*,
    346 F.3d 1121 (D.C. Cir. 2003)....................................................................................20

*Rehaif v. United States,*
    588 U.S. 225 (2019)................................................................................27, 28

*SEC v. Chenery Corp.,*
    332 U.S. 194 (1947)........................................................................................19

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943)...........................................................................................7

*Taylor v. Resolution Tr. Corp.,*
    56 F.3d 1497 (D.C. Cir. 1995) ......................................................................33
    66 F.3d 1226 (D.C. Cir. 1995).......................................................................33

*TikTok Inc. v. Garland,*
    122 F.4th 930 (D.C. Cir. 2024)......................................................................12

*Transcontinental Gas Pipe Line Corp. v. FERC,*
    907 F.2d 1211 (D.C. Cir. 1990).....................................................................16

*U.S. ex rel. Totten v. Bombardier Corp.,*
    380 F.3d 488 (D.C. Cir. 2004).....................................................................9, 10

*Van Loon v. Department of Treasury,*
    122 F.4th 549 (5th Cir. 2024) ........................................................................12

*Water Quality Ins. Syndicate v. United States,*
    225 F. Supp. 3d 41 (D.D.C. 2016) .................................................................13

*Xiaomi Corp. v. Department of Def.,*
    No. 21-cv-280, 2021 WL 950144 (D.D.C. Mar. 12, 2021) .................11, 12, 20, 22

**STATUTES AND REGULATIONS:**

5 U.S.C.
    § 706...............................................................................................................12
    § 706(2)..........................................................................................................35

31 U.S.C.
    § 3729(a)(2) .....................................................................................................9

42 U.S.C.
    § 18912...........................................................................................................33
    § 19235...........................................................................................................33

Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, § 536, 138
    Stat. 460, 622 .................................................................................................34

Pub. L. No. 118-31, 137 Stat. 136, 315 (2023)
§ 805 ............................................................................................................... 34

William M. (Mac) Thornberry National Defense Authorization Act for Fiscal
Year 2021, Pub. L. No. 116-283, 134 Stat. 3388
§ 1260H.................................................................................................. *passim*
§ 1260H(b)(3) ................................................................................................. 14
§ 1260H(d)(1)(B)(i)(I) ................................................................................ 4, 21
§ 1260H(d)(1)(B)(i)(II) ....................................................................... 3, 4, 9, 13
§ 1260H(d)(2) .......................................................................................... 3, 9, 18
§ 1260H(d)(2)(A) ................................................................................. 27, 28, 29
§ 1260H(d)(2)(B) ..................................................................................... 19, 25
§ 1260H(d)(2)(E) ............................................................................... 10, 21, 31
§ 1260H(d)(2)(G) ........................................................................................... 31
§ 1260H(d)(3) ................................................................................................. 21

15 C.F.R.
Part 774, Supplement No. 1 ............................................................................. 5

89 Fed. Reg. 79,088 (Sept. 26, 2024) ................................................................... 26

*Notice of Availability of Designation of Chinese Military Companies*, 90 Fed.
Reg. 1105 (Jan. 7, 2025) ........................................................................... 11, 18

## OTHER AUTHORITIES:

Autoliv, *Autoliv and Volvo Cars to team up with NVIDIA to develop advanced
systems for self-driving cars* (last visited Jan. 27, 2025) ............................... 12

Beijing Jingwei Hirain Techs. Co., Inc., *Prospectus for Initial Public Offerings of
Stock and Listing on the Science and Technology Innovation Board* (last
visited Jan. 27, 2025) ..................................................................................... 24

Brunner, Jordan & Emily Weinstein, *Chinese Military-Civil Fusion and Section
1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4,
2021) ................................................................................................................ 3

Chongqing Municipal People's Government, Introduction of Chongqing
Economic and Technological Development Zone (Sept. 12, 2024), ................... 30

Continental, *Autonomous Mobility* (last visited Jan. 27, 2025) ........................... 11

Cubic Sensor & Instrument Co., Ltd., *Prospectus for Initial Public Offerings of
Stock and Listing on the Science and Technology Innovation Board* (last
visited Jan. 27, 2025) ..................................................................................... 24

Defense One, *About Defense One* (last visited Jan. 27, 2025) ............................... 6

GovExec, *About* (last visited Jan. 27, 2025) ..................................................6

*Industrial zone propels Jiading's innovative development*, Official English
    Website of Jiading District, Shanghai (Jan. 6, 2021), ...............................30

Int'l Econ. & Tech. Coop. Ctr. of Ministry of Indus. & Info. Tech., *Notice on
    Organizing the Application for Research Projects in the Field of International
    Advanced Manufacturing Clusters* (June 11, 2024) ..................................23

Ministry of Industry and Information Technology (MIIT) (工业和信息化部),
    Westlaw Practical Law UK Glossary, 1-552-9335(last visited Jan. 27, 2025)......................22

Nakashima, Ellen & Cate Cadell, *Pentagon to blacklist China's largest EV
    battery and tech firms*, THE WASH. POST (Jan. 7, 2025) ..........................11

Nicastro, Luke A., CONG. RSCH. SERV., *The U.S. Defense Industrial Base:
    Background and Issues for Congress* (2024) ...............................................3

Orbbec Inc., *Prospectus for Initial Public Offerings of Stock and Listing on the
    Science and Technology Innovation Board* (last visted Jan. 27, 2025) ......24

Oxford English Dictionary ...............................................................................20

SCALIA, ANTONIN & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF
    LEGAL TEXTS (2012) .................................................................................28

UNI-TREND TECH. (CHINA) CO., LTD., *Prospectus for Initial Public
    Offerings of Stock and Listing on the Science and Technology Innovation
    Board* (last visited Jan. 27, 2025) .............................................................25

U.S. Dep't of Commerce, Bureau of Industry & Security, *Dual Use Export
    Licenses* (last visited Jan. 29, 2025)...........................................................5

Volvo Autonomous Solutions, *Transforming The Movement Of Goods* (last
    visited Jan. 27, 2025) ................................................................................11

## INTRODUCTION

Defendants' response confirms that the Department of Defense has no evidence—and made no finding—that the NASDAQ-traded Hesai, which supplies vehicle parts to many of the largest passenger automobile manufacturers on the planet, is in any way connected to the Chinese *military*. The Department completely fails to link Hesai, as Section 1260H requires, to the "Chinese defense industrial base"—which the Department does not dispute comprises entities that supply the Chinese military with materials, products, and services "for defense purposes." The Department's failure is so complete that it not only abandons the lone evidence on which the Amended Designation relied, but attempts an eleventh-hour injection of *new* evidence—and even asks the Court to ignore the statutory requirement altogether.

Defendants nevertheless insist that the Department is free to designate a company a "military-civil fusion contributor"—and thus a "Chinese military company"—as long as its products are "dual use," *i.e.*, if they "can have military applications." But any product "can" have military applications; the proper question under the statute is whether Hesai develops or supplies its products—which the U.S. Department of Commerce deems suitable for export *without legal restriction*—for defense purposes. Accepting Defendants' open-ended theory would give the Department *carte blanche* to label essentially any commercial entity in China, including hundreds of American and international companies, a "military" company. Defendants do not even dispute that fact; instead, they ask to be trusted to pick and choose which among the innumerable commercial companies making "dual use" items deserve blacklisting.

But the statute does not give the Department such uncabined discretion. Nor has the Department shown that it deserves it. The Department's process in this case has been anything but rigorous. *See* ECF No. 47, at 7 n.6 ("Opp'n") ("inadvertent administrative error"); *id.* at 23 n.10 ("Regrettably … clerical error"); *id.* at 29 n.13 ("inadvertently omits relevant text"); *id.* at 32

1

("simply was not known to the Deputy Secretary of Defense at the time she rendered her decision"); *id.* ("verification is practically infeasible"); *id.* at 39 ("any error would be harmless"); *id.* at 42 ("harmless"); *id.* at 43 ("harmless"); *id.* at 46 ("harmless"); *id.* at 47 ("harmless"). The Department forced Hesai to file this lawsuit just to discover the listing rationale and has forced Hesai to chase a moving target ever since. And after its last-minute abandonment of the faulty Original Designation, the Department even resorted to a *second* designation and a *second* (and subsequently supplemented) administrative record, forcing the parties and the Court to restart from scratch. Yet despite all the incentives the Department had to fix its original mistake, the Department still couldn't get it right.

In today's political environment, publicly traded global companies like Hesai suffer extraordinary financial and reputational harm from the public opprobrium of being an accused "military" company. Given the stakes, the least they should be able to expect from the U.S. government is a fair process, in which facts are carefully evaluated to determine if they justify a reasoned conclusion that a company either is owned or controlled by the Chinese military, or contributes to the Chinese defense industrial base. What Hesai has received instead, however, is a conclusion in search of a factual justification. It has faced not only an opaque and constantly evolving *rationale*, but an evolving *record* as well—indeed, one that has continued to evolve even after Hesai filed its summary judgment motion.

That is not the way the government is supposed to operate. The Court should grant Hesai summary judgment, vacate Hesai's designation, and require the Department to finally provide Hesai basic process before it ever attempts to add the company to the Section 1260H List again.

## ARGUMENT

### I.    THE DEPARTMENT EXCEEDED ITS AUTHORITY IN DESIGNATING HESAI WITHOUT ESTABLISHING THAT HESAI CONTRIBUTES "TO THE CHINESE DEFENSE INDUSTRIAL BASE"

#### A.    The Amended Designation Fails To Substantiate The Critical "Defense Industrial Base" Finding

Hesai should be removed for a simple reason:  the government failed to establish that Hesai contributes "to the Chinese defense industrial base."  Section 1260H requires the Department to find that a company is a "[i] military-civil fusion contributor [ii] to the Chinese defense industrial base[.]"    §  1260H(d)(1)(B)(i)(II).    Congress  specifically  defined  the  first  requirement. § 1260H(d)(2) ("The term 'military-civil fusion contributor' includes *** [.]").  But Congress did not define the second part, *i.e.*, what it means for a company to contribute "to the Chinese defense industrial base."   Thus, under ordinary principles of statutory construction, that term means something different from "military-civil fusion contributor."  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (explaining "duty" to "give effect, if possible, to every clause and word of a statute" so no term is rendered "superfluous" (citation omitted)).   Moreover, the government does not dispute that the "straightforward" (ECF No. 23, at 18) and "commonly understood meaning" (Opp'n 33) of that term requires that an entity contribute "to the Chinese *military*," *i.e.*, that it supplies the Chinese government or military "with materials, products, and services for defense purposes."  ECF No. 42, at 20 ("Mot.") (quoting Luke A. Nicastro, Cong. Rsch. Serv., *The U.S. Defense Industrial Base: Background and Issues for Congress* (2024)).

Determining that a company contributes to the "Chinese defense industrial base" thus serves a critical purpose:  it supplies the connection with the Chinese *military* that Section 1260H requires.  Section 1260H has a "particular[] concern[] about the Chinese military and its operations in the United States, rather than the Chinese state broadly."  Jordan Brunner & Emily Weinstein,

3

*Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021).[1]  Congress sensibly specified that a company could be considered a "Chinese military company" only if the Department could first establish an actual Chinese "military" connection—whether through ownership or control by the Chinese military, § 1260H(d)(1)(B)(i)(I), or through some other contribution to the defense industrial base, § 1260H(d)(1)(B)(i)(II).  Were it otherwise, virtually any participant in the Chinese economy, including prominent subsidiaries of American and international companies, could be deemed a "Chinese military company" under Defendants' capacious statutory interpretation (which they contend requires only a vaguely defined "association" with China's chief industrial regulator, *see infra*, pp. 20-26).

Defendants' Amended Designation fails to establish the required connection.  Although the Department purported to find that Hesai contributed to the "Chinese defense industrial base" because "LiDAR, including Hesai Group's products, is recognized as a dual-use technology with substantial applications in the civilian and military sectors," NDAR11, Defendants do not contend that the *Amended Designation* supports that conclusion.  Indeed, Defendants have abandoned their sole evidentiary support for that proposition—namely, an article from "AZoOptics.com," an internet content-farm and search-engine-optimization site, which was cited four times in the Amended Designation, *see* NDAR11, but zero times in their opposition brief.

Nor do Defendants argue that anything cited in the Amended Designation substantiates the finding that "*Hesai's products*" have "substantial applications" in "military sectors."  Opp'n 35 (emphasis added); *see Luokung Tech. Corp. v. Department of Def.*, 538 F. Supp. 3d 174, 188-189

---

[1]  https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congress-incorporates-defense-contributors (last visited Jan. 27, 2025).

(D.D.C. 2021) (evidence that autonomous technologies generally are "critical and used for modern military purposes and operations" does not substantiate that a particular entity "involved in the development" of such technology "design[s] or manufacture[s] any military or defense products" (internal alterations and quotation marks omitted)).

Not only does the Amended Designation fail to substantiate its findings, neither the Amended Designation nor Defendants' opposition offers *any response whatsoever* to the contrary evidence in the administrative record. Most significantly, the record shows (and Defendants do not dispute) that Hesai's LiDAR products "have been designated as EAR99 by the U.S. Department of Commerce, a category consisting of mostly consumer goods that do not require an export license in most situations" (*i.e.*, absent export to an embargoed country, to a prohibited end-user, or for a prohibited end-use) because they are not designed for military use. NDAR390.[2] Although "[d]ual use export licenses are required [by Commerce] in certain situations involving national security, foreign policy, short-supply, nuclear non-proliferation, missile technology, chemical and biological weapons, regional stability, crime control, or terrorist concerns," such licenses *are not required for Hesai's products.*[3]

Likewise, uncontradicted evidence shows that Hesai's products are not covered by the Chinese government's list of sensitive or strategic technologies restricted from export, either. NDAR1709. And the record shows that not only does Hesai not "supply its products for military

---

[2] In contrast, certain advanced forms of LiDAR technology—such as those that are "space-qualified" or "[d]esigned for carrying out airborne bathymetric littoral surveys"—*are* restricted by Commerce. CCL 6A008.j, 15 C.F.R. Part 774, Supplement No. 1. That underscores the arbitrariness of the Department's finding that *Hesai's products*, which are not so restricted, "have substantial uses in the military sector." Opp'n 43.

[3] U.S. Department of Commerce, Bureau of Industry & Security, *Dual Use Export Licenses*, https://www.bis.doc.gov/index.php/all-articles/2-uncategorized/91-dual-use-export-licenses (last visited Jan. 29, 2025).

use, it could not do so" because "all of Hesai's existing products are strictly designed and manufactured at civilian specifications for commercial and passenger vehicles, which are significantly below battlefield standards for any country's military" (*e.g.*, "they have a lower internal component temperature range, they have a lower vibration/shock endurance, they are not radiation proof, etc.")—making it "impossible to use Hesai's products on the battlefield." *Id.*

The government's brief (like the Amended Designation) offers no acknowledgement, let alone a response, to any of this contrary evidence. Defendants' total failure to substantiate the critical factual finding that Hesai contributes "to the Chinese defense industrial base" means that the Amended Designation is unlawful and should be vacated.

### B.     The Department Cannot Salvage Its Failure To Make The Required Finding

Defendants try to salvage this fatal flaw in the Amended Designation in two ways:  (1) by relying on newly discovered evidence, and (2) by arguing that the phrase "Chinese defense industrial base" has no legal effect.

#### 1.     *The Department's Late-Breaking Reliance On New Evidence Is Procedurally Improper And Unpersuasive*

Defendants' eleventh-hour reliance on new evidence is too late (and too little). Three weeks *after* Hesai filed its summary judgment brief, and days before Defendants filed their cross-motion and opposition, Defendants purported to discover an article the Department had apparently "directly or indirectly" considered earlier (but neglected to cite or mention to anyone). ECF No. 45-2, at 2. The article is from a publication called "Defense One," which advertises itself as "part of GovExec," "the leading sales and marketing intelligence company serving the public sector."[4] Defendants' brief now depends *exclusively* on the new article (cited more than half a dozen times)

---

[4] Defense One, *About Defense One*, https://www.defenseone.com/about/?oref=d1-nav (last visited Jan. 27, 2025); GovExec, *About*, https://about.govexec.com/company/about/ (last visited Jan. 27, 2025).

for every key finding regarding the supposed "dual-use" nature of LiDAR technology—even though that article appeared nowhere in the Amended Designation, was not included in the administrative record certified in November as "true, correct, and complete" following the re-listing, ECF No. 40-2 at 2, and was not produced in time for Hesai to address it in its summary judgment brief.  Defendants also decline to offer any explanation for their late discovery.  *See* ECF No. 45 (vaguely claiming "administrative error").

Because the article was "not recounted or even referenced as justification" for the Department's re-listing decision, it is "not properly considered."  *District of Columbia v. U.S. Dep't of Agric.*, 496 F. Supp. 3d 213, 240 (D.D.C. 2020).  It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action."  *Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (citation omitted); *see SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.").  And "a court is ordinarily limited to evaluating the agency's *contemporaneous* explanation in light of the *existing* administrative record."  *Department of Com. v. New York*, 588 U.S. 752, 780 (2019) (emphases added).  Those sensible rules "ensur[e] that parties and the public can respond fully and in a timely manner to an agency's exercise of authority," and help avoid the problem of "forcing both litigants and courts to chase a moving target."  *Regents*, 591 U.S. at 23.

Requiring an agency to defend its decision based on the evidence identified in the decision also serves to allay any doubts about whether the evidence was, in fact, "directly or indirectly" considered in a timely way.  After all, if this article were truly the only support for the key factfinding in question (as Defendants now represent), "the omission of any reference to [it] in the

[Amended Designation] is even more puzzling." *District of Columbia*, 496 F. Supp. 3d at 240 n.18. Such questions are reasonable here, considering the mysterious circumstances surrounding the Department's fortuitous discovery of the article, which was published just 14 days before the Amended Designation became final, and, unlike most other websites in the record, is noticeably missing an access date. The Court should decline to consider it.

In any event, the article—which focuses primarily on the computer systems (the "brain[s]") found in autonomous vehicles, not LiDAR products (the "eyes"), NDAR1714-1716—fails to substantiate "*Hesai LiDAR products'* dual-use applications." Opp'n 37 n.15 (emphasis added). In fact, the only relevant reference to Hesai is that *the Department placed Hesai on the 1260H List in January 2024*. NDAR1715.[5] The agency obviously cannot bootstrap its (now-abandoned) Original Designation to justify Hesai's re-listing. Even if "properly considered," the new article simply does not substantiate the necessary finding that *Hesai* contributes to the Chinese defense industrial base by supplying "materials, products, and services for defense purposes."

      2.   *The Department Cannot Delete The Statutory Requirement That Designated Entities Contribute "To The Chinese Defense Industrial Base"*

In a last-ditch effort, Defendants argue that "Congress *did not require* the Department to establish that an entity must contribute to the Chinese defense industrial base," Opp'n 33 (emphasis added), stating that the Department "made such a finding *** merely [out of] an abundance of caution," Opp'n 35. In their view, the Department's identification of Hesai as a "military-civil fusion contributor" negates any need to separately determine that the company contributes "to the

---

[5] The article also alleges that Hesai was "found to have connections to the China Electronics Technology Group Corporation," NDAR1715—but the administrative record already explains why that allegation is severely misleading, NDAR383, NDAR392-393, and Defendants do not rely on it.

Chinese defense industrial base," § 1260H(d)(1)(B)(i)(II), which can be ignored as mere statutory surplusage.[6]

Fundamental principles of statutory interpretation prohibit the agency from redlining the statute in that way.  Because Congress defined only half the statutory phrase—*i.e.*, Congress supplied a definition of "military-civil fusion contributor" alone, § 1260H(d)(2), not the statutory phrase "military-civil fusion contributor *to the Chinese defense industrial base*," *id.* § 1260H(d)(1)(B)(i)(II) (emphasis added)—the court has a "duty" to give the additional phrase some meaning.  *Duncan*, 533 U.S. at 174.  For example, in *U.S. ex rel. Totten v. Bombardier Corporation,* the D.C. Circuit interpreted a provision within the False Claims Act that prohibited making "a false record or statement to get a false or fraudulent claim paid or approved *by the Government*[.]"  380 F.3d 488, 498 (D.C. Cir. 2004) (quoting 31 U.S.C. § 3729(a)(2)).  While the False Claims Act generally imposed liability for defrauding the government, the Court held that the specific phrase "by the Government" must have independent meaning requiring that the defendant defrauded the Government itself (and not just a third party handling federal funds).  *Id.* at 498-499.  Any broader construction would have suffered from the "fatal flaw" of "yield[ing] exactly the same meaning that would result if [the statute] did not contain the words 'by the Government' at all."  *Id.* at 498.

Defendants' proffered interpretation of Section 1260H suffers from the same "fatal flaw."  Under their view, Congress could have completely omitted the phrase "to the Chinese defense

---

[6]    Confusingly, pages earlier Defendants concede that the "structure of 1260H(d)(1)[B](i)(II) and (d)(2)" *does* "focus on various types of connections between the relevant entity and the Chinese defense industrial base."  Opp'n 30.  Defendants do not attempt to reconcile these seemingly contradictory positions.

industrial base"—and the statute would have "exactly the same meaning[.]" *Totten,* 380 F.3d at 498. Defendants have no response.

Defendants contend instead (Opp'n 33) that because the term "military-civil fusion" has the word "military" in it, that term is "inextricably intertwined" with—and apparently the same as—contributing "to the Chinese defense industrial base." But Defendants cannot believe their own words. If they did, they would have to conclude that each of the 12,000+ companies supposedly "affiliated with" the MIIT through receipt of a "Little Giants" award (including those selling textiles, watches, and animal husbandry services, *see* ECF No. 42, at 34) contributes to the "Chinese defense industrial base," too. *But see* Opp'n 16 (conceding that many such companies "lack a military or defense connection"). Or, to take another example, Defendants would have to conclude that any entity "residing in *** a military-civil fusion enterprise zone" (as the Department broadly defines it, *see infra*, pp. 29-31), § 1260H(d)(2)(E)—including the Chinese subsidiaries of Amazon Web Services and Volvo—also contribute "to the Chinse defense industrial base." Defendants protest that those entities are "not developing, producing, or supplying military or dual-use products," Opp'n 30—but that is the whole point. In Defendants' own words, "produc[ing] *military* supplies" (*id.* (emphasis added)) is the relevant "conduct requirement" (Opp'n 33) that differentiates ordinary commercial companies from "Chinese *military* companies"—and is precisely why Congress mandated the "Chinese defense industrial base" finding.

The government also argues that it should be excused from making the "Chinese defense industrial base" finding based on the supposed "manifest difference" between LiDAR technology and the "mere production of mundane" and "everyday" items capable of both civilian and military use. Opp'n 34-35. But that just begs the question of which "dual use" items qualify as inherent

contributions to the defense industrial base—and highlights the *ad hoc* nature of the Department's claimed authority to pick-and-choose on a case-by-case basis.  As noted, the U.S. Department of Commerce believes "*most* commercial items" are "dual use," Mot. 21 (emphasis added)—thus permitting Defendants to deem *most* commercial companies contributors to the "Chinese defense industrial base."  The "lack of any limiting princip[le]" on their definition of what qualifies as a "dual use" item "result[s] in a situation where any Chinese company involved in technology that has alternative military uses"—"even U.S. technology companies with Chinese subsidiaries"—"could be designated."  *Xiaomi Corp. v. Department of Def.*, No. 21-cv-280, 2021 WL 950144, at *8 (D.D.C. Mar. 12, 2021).

Proving the point, days after describing batteries as prototypical "mundane items," Opp'n 35, the Department added "China's largest EV battery" manufacturer to the updated list of "Chinese military compan[ies]."  Ellen Nakashima & Cate Cadell, *Pentagon to blacklist China's largest EV battery and tech firms*, THE WASH. POST (Jan. 7, 2025);[7] *see Notice of Availability of Designation of Chinese Military Companies*, 90 Fed. Reg. 1105, 1106 (Jan. 7, 2025) (listing Contemporary Amperex Technology Co., Ltd. (CATL)).  Meanwhile, the companies Defendants characterize as "not developing, producing, or supplying" products that "have a dual use," Opp'n 30, in fact develop the very "autonomous vehicles" technology Defendants classify as "a valuable asset for the Chinese military," *id.* at 35-36; *see, e.g.*, Volvo Autonomous Solutions, *Transforming The Movement Of Goods* (discussing Volvo's development of "autonomous vehicles" for "on- and off-road applications");[8] Continental, *Autonomous Mobility* (discussing Continental's development of "self-driving vehicles, equipped with advanced sensors, artificial intelligence, and

---

[7]     https://www.washingtonpost.com/national-security/2025/01/06/pentagon-blacklist-china-technology-ev/ (last visited Jan. 27, 2025).

[8] https://www.volvoautonomoussolutions.com/en-en/ (last visited Jan. 27, 2025).

machine learning algorithms");[9] Autoliv, *Autoliv and Volvo Cars to team up with NVIDIA to develop advanced systems for self-driving cars* (discussing Autoliv's and Volvo's partnership to "develop next generation self-driving car technologies").[10]

Finally, Defendants' general appeals to deference (Opp'n 8-9) should be rejected. The Department receives none in interpreting the statute. *See Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 406-407 (2024) (APA prohibits "yielding to an agency the express responsibility, vested in 'the reviewing *court,*' to 'decide all relevant questions of law' and 'interpret *** statutory provisions'" (ellipsis in original) (quoting 5 U.S.C. § 706)). That is especially so because this dispute concerns "the scope of [the Department's] own power—perhaps the occasion on which abdication in favor of the agency is *least* appropriate." *Id.* at 401; *see Van Loon v. Department of Treasury*, 122 F.4th 549, 553, 563 (5th Cir. 2024) (explaining, in case involving an agency determination of "threat to America's national security," that courts "determine the 'best' reading of a statute"). And even in the government's pre-*Loper Bright* authority (*see* Opp'n 8-9), the Court did not permit the Department to cast aside or override the plain meaning of statutory language. *Luokung Tech. Corp.,* 538 F. Supp. 3d at 182 (rejecting Department's erroneous interpretation even while applying pre-*Loper Bright* deference related to issues of "national security" involving predecessor to Section 1260H); *Xiaomi Corp.*, 2021 WL 950144, at *4 (same).[11]

---

[9]      https://www.continental.com/en/products-and-innovation/innovation/automated-driving/ (last visited Jan. 27, 2025).

[10]    https://www.autoliv.com/press/autoliv-and-volvo-cars-team-nvidia-develop-advanced-systems-self-driving-cars-1500169 (last visited Jan. 27, 2025).

[11]    Defendants' citation of *TikTok Inc. v. Garland*, 122 F.4th 930 (D.C. Cir. 2024), is a red herring. *See* Opp'n 34-35; *see also* Opp'n 13. Unlike the present question of *statutory* construction—in which courts "interpret statutes, no matter the context, based on the traditional tools of statutory construction" without deference to the government, *Loper Bright*, 603 U.S. at 403—the *constitutional* question in *TikTok* concerns whether a statute "serves a compelling government interest," for which the Court "afford[s] great weight to the Government's evaluation of the facts," 122 F.4th at 952-953 (internal quotation marks omitted).

***

At bottom, Defendants cannot dispute that virtually every product "*can* have military applications." NDAR11 (emphasis added). If that were the test, the Department could designate any Chinese manufacturer. But "[t]here is no indication that Congress intended to provide the Department of Defense with this sort of unfettered discretion," with "almost no limiting princip[le]." *Luokung Tech. Corp.*, 538 F. Supp. 3d at 187-188. Only Hesai's reading of Section 1260H(d)(1)(B)(i)(II)—requiring the Department to find an actual contribution to the "Chinese defense industrial base" because the entity supplies materials, products, or services *for defense purposes*, *see* Mot. 20-22—properly cabins a designation authority that would otherwise sweep in every company with operations in China, subject to Defendants' "unfettered discretion." Because the Department failed to establish that Hesai contributes to the Chinese defense industrial base, the Court should grant summary judgment to Hesai and vacate without further inquiry.

## II.    THE DEPARTMENT'S EXPLANATIONS ARE UNLAWFUL

Beyond the Department's actions in excess of its authority, the agency independently erred in various respects.

### A.    The Department Erred In Failing To Consider Contradictory Evidence

All parties agree that the Department was required to "consider Plaintiff's submissions." Opp'n 42; *see, e.g.*, *id.* at 40 (acknowledging agency need "*consider* the evidence" (citation omitted)). Despite nitpicking factual distinctions in Hesai's cases, *id.* at 40-42, Defendants ultimately concede that the APA does not permit the Department either to "'ignore[] factual matters' []or 'fail[] to respond adequately' to contrary arguments," *id.* at 41 (quoting *Water Quality Ins. Syndicate v. United States*, 225 F. Supp. 3d 41, 68 (D.D.C. 2016)). In fact, Defendants acknowledge that this administrative-law principle applies with particular force where "Congress specifically required" the agency to consider particular evidence "in reaching its decision," Opp'n

13

41—as is the case here, where the statute mandates that the Department's "additions or deletions" to the 1260H List must be "based on the latest information available," § 1260H(b)(3); *see also* ECF No. 25, at 4-5 n.1 (Court's order explaining Department was "obligated to consider [Hesai's] documents when evaluating Hesai's [removal] request"); *contra* Opp'n 41 (arguing incorrectly that "Plaintiffs do not raise claims that DoD failed to consider some factor that Congress specifically required it to consider in reaching its decision").

The Department obviously failed to meet that standard. With respect to the April 2024 letter, Defendants point only to an email stating—months *before* the re-listing—that "the Department *would* 'consider *** all the information provided[.]'" Opp'n 40 (ellipsis in original) (emphasis added) (quoting NDAR1711). That is far from "specifically stat[ing] that it *considered* these materials when making its determination" *months later. Id.* (emphasis added); *see Butler v. Barnhart*, 353 F.3d 992, 1002 (D.C. Cir. 2004) (agency must indicate that "evidence was rejected rather than simply ignored"). In fact, the Department did not even include the April 2024 letter in the administrative record until weeks after Hesai filed its motion pointing out that very omission. *See* ECF No. 45. And although the Amended Designation at least briefly acknowledges the March 2024 letter and sworn declaration by Hesai's CEO, NDAR10, that barebones sentence hardly "examine[s]," much less "articulate[s] a satisfactory explanation" concerning, the evidence and arguments that run counter to the Department's findings. *New Life Evangelistic Ctr., Inc. v. Sebelius*, 672 F. Supp. 2d 61, 73-74 (D.D.C. 2009) (citation omitted) (holding that agency's decision "must be vacated" because, *inter alia*, it credited some record materials "without addressing the additional, contradictory data included in the organization's application").

Tellingly, Defendants pivot swiftly to arguing that the Department's error was "harmless." Opp'n 39, 42, 43, 46, 47. But they do not cite a single case applying the APA's prejudicial error

14

standard to an agency's refusal to grapple with contradictory evidence and arguments in a substantive adjudication. One of Defendants' cases concerns an agency's failure to "comply precisely with NEPA procedures" that the agency had already corrected through a rulemaking "in the Federal Register." *Nevada v. Department of Energy*, 457 F.3d 78, 90-91 (D.C. Cir. 2006). In the other case, the D.C. Circuit *rejected* the government's plea not to vacate an order because "the Board's decision is supported by substantial evidence." *Dillmon v. National Transp. Safety Bd.*, 588 F.3d 1085, 1092 (D.C. Cir. 2009). Echoing Defendants' harmlessness argument here, the government's contention in *Dillmon* was rejected as a "thinly-veiled attempt to rehabilitate the Board's decision by suggesting it reached the right destination, even though it chose the wrong path to get there." *Id.* So too here: "Although [the Department] now proffers an explanation why this additional information does not affect its decision," because the Amended Designation "is entirely silent on this point," "vacatur of the decision" is warranted. *New Life Evangelistic Ctr., Inc.*, 672 F. Supp. 2d at 75.[12]

### B. Defendants' Invented Totality-Of-The-Circumstances Standard Does Not Justify The Department's Ad Hoc Approach

As to the materials the Amended Designation actually addresses, at various points Defendants implicitly acknowledge the independent weakness of each disparate piece of evidence relied on, but argue that the individual record deficiencies are "immaterial" because "it is the

---

[12] In any event, as explained throughout this brief, litigation counsel's attempts to minimize Hesai's submissions as "immaterial" (Opp'n 43) fall flat. At best, the Department's *post hoc* responses merely speculate that "the People's Liberation Army of China uses LiDAR" generally (without any connection to Hesai or its technology), or that "the PRC Government *could* assist or require Hesai to make business decisions," "*could* require Hesai to make business decisions that benefit the PRC militarily," or "*could* in the future assist Hesai to make decisions." Opp'n 42-44 (emphases added). But that is "not the correct standard." *Luokung Tech. Corp.*, 538 F. Supp. 3d at 189 ("'potential affiliation' is not the correct standard" when statute requires "an actual affiliation").

combined weight of the totality of the record evidence, rather than any single item, that supports DoD's factual determination."  Opp'n 19; *see, e.g., id.* (determination "not based on this single piece of evidence, taken in isolation"); *id.* at 15-16 (cited fact "is not a single factor to be considered in isolation"); *id.* at 37 ("the Department is free to apply a totality-of-the-circumstances standard").  But Defendants' "totality-of-the-circumstances standard" (Opp'n 30) appears nowhere in the Department's Amended Designation, which assesses each Section 1260H factor independently.  NDAR11-17; *e.g.*, NDAR13 ("Hesai Group is a military-civil fusion contributor to the Chinese defense industrial base *** because it is affiliated with the MIIT."); NDAR15 (same for residence in "military-civil fusion enterprise zones").

Even assuming the Defendants' "know-it-when-I-see-it" approach complies with the statute, it plainly deprives the Court of any way to evaluate the reasonableness of the Department's decision.  *See Transcontinental Gas Pipe Line Corp. v. FERC,* 907 F.2d 1211, 1214 (D.C. Cir. 1990) ("Before [reviewing court] can accord *** factors any weight, the [agency] must explain, based on the record evidence, how they influence the analysis[.]"); *Davis v. Shalala,* 862 F. Supp. 1, 4, 5 (D.D.C. 1994) (decision fails "substantial evidence" standard where decisionmaker does not "explain sufficiently the weight he has given to particular items of probative evidence").  It also deprives regulated entities of any sense of the circumstances that are the agency's actual focus in making designations.  *See LeMoyne-Owen Coll. v. N.L.R.B.*, 357 F.3d 55, 61 (D.C. Cir. 2004) ("[W]hen an agency is applying a multi-factor test through case-by-case adjudication," the requirement that the agency explain "which factors are significant and which less so, and why," is "particularly acute" to allow for "predictability and intelligibility[.]").  Unlike in Defendants' lead case, where the agency acknowledged the "relative significance of the evidence before it" by "explain[ing]" in its decision under review that a particular piece of evidence "was by itself

sufficient to justify" the agency's conclusion, *PDK Labs. Inc. v. DEA*, 438 F.3d 1184, 1194 (D.C. Cir. 2006), here the Court and Hesai are left guessing as to the relative significance of each statutory factor and each piece of cited evidence.

To be clear, the problem is not (only) that the agency failed to "specify *in advance*" the standard that would govern the evidence it credited, Opp'n 38 (emphasis added)—the Amended Designation *itself*, which simply lists various factual findings based on internet searches, fails to articulate the standards that guide the agency's evaluation of the record. That is the opposite of a "thorough, careful, and consistent application of a multi-factor test" that "allow[s] relevant distinctions between different factual configurations to emerge." *PDK Labs Inc.*, 438 F.3d at 1194 (quoting *LeMoyne-Owen Coll.*, 357 F.3d at 61).

Moreover, the Department's failure even to acknowledge, let alone explain, discrepancies between the Amended Designation and the Original Designation, further exemplifies the Department's *in*consistent application of the statutory factors. *See* Mot. 16-17. Defendants' only response is that this case does not concern "a broad change in overall agency policy." Opp'n 44. But as Defendants' own case makes clear, the requirement that the agency "supply a reasoned analysis" for why it is "changing its course" applies to "rulings and practices even in an adjudicatory setting." *Dillmon*, 588 F.3d at 1089 (citations omitted); *see Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious if it "fail[s] to consider an important aspect of the problem"). Especially because most of the evidence the Department relied on predates the *Original* Designation, the Amended Designation's omission of any explanation for the Department's flip-flopping makes it

impossible to know whether the changes were motivated by discovery of new evidence, lobbying or political pressure, or some other factor.[13]

Ultimately, the Department's unexplained new decision and artificial line-drawing risk "becom[ing] simply a cloak for agency whim—or worse." *PDK Labs Inc.*, 438 F.3d at 1194 (quoting *LeMoyne-Owen Coll.*, 357 F.3d at 61). In fact, Defendants marshal their totality-of-the-circumstances standard not only to designate Hesai but also to brush aside as "irrelevant" the Department's failures to account for other (unlisted) entities that present the same circumstances as Hesai under the Section 1260H factors considered. *See, e.g.*, Opp'n 16 ("irrelevant" that thousands of unlisted companies are in "Little Giants" program because of unspecified "datapoints that, taken together," indicate "lack [of] military or defense connection" under other unstated statutory factors); *id.* at 19 ("immaterial that other organizations" participate in same industry partnerships because agency depends on "combined weight of the totality of the record evidence, rather than any single item"). Whether those unlisted entities qualify under the same "combination" of factors should not matter if each of the four cited rationales under section 1260H(d)(2) "alone [is] enough to place Hesai on the 1260H List," Opp'n 1—*i.e.*, the construction Defendants advance on the first page of their brief but never actually apply to the record. Defendants do not even deny that the breadth of the discretion they claim would allow the Department to list every Chinese company, but rather only note that (apparently as a matter of executive grace) it has chosen to blacklist only some. *See, e.g.*, Opp'n 14-15 (noting that the Department added only 45 companies in 2023); *cf. Notice of Availability of Designation of Chinese*

---

[13] In August 2024, Hesai filed a Freedom of Information Act request with the Department seeking non-privileged, non-deliberative third-party communications between Hesai's competitors and the Department. To date, the Department has refused to produce a single document or even to provide a timeline for production, citing "equities" from other component offices necessitating further review.

*Military Companies*, 90 Fed. Reg. 1105 (Jan. 7, 2025) (listing 134 companies). That is cold comfort to the companies subject to the Department's caprice.

### C.  Defendants' Novel Constructions Are Unclear And Unreasonable

The Department's failure to articulate its guiding standards infects not only its weighing of the evidence but also its construction of the substantive terms it applied to that evidence. *See* Mot. 17-19. Throughout their brief, Defendants offer new definitions of various terms that are critical to Hesai's listing, yet those made-for-litigation interpretations appear nowhere in the Amended Designation itself. Such "*post hoc* rationalizations" by counsel cannot justify the agency's decision. *State Farm*, 463 U.S. at 50 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Even if Defendants could now fill the gaps in the Department's legal reasoning, the novel standards offered are unclear and unreasonable. For example, Defendants offer a fuzzy construction of "affiliated with" that appears to require "a sufficiently common purpose" or set of "shared characteristics." Opp'n 15, 21 (construing § 1260H(d)(2)(B)). But Defendants never explain what qualifies as a "sufficient[]" purpose or "shared characteristics" with MIIT, other than to note that their definition encompasses a "broad swath of entities[.]" *Id.* at 12. Even worse, Defendants cannot even commit to that single definition, asserting elsewhere that an affiliation can be shown by a "close association with MIIT." *Id.* at 15; *see also id.* at 18, 20 ("closely associated with MIIT in a dependent or subordinate position"). Which is it—a close connection, a common purpose, a set of shared characteristics—or all three? The Department does not commit.

The result is that, as with the boundless "dual use" standard that governs which entities contribute to the Chinese defense industrial base, Defendants' new construction of "affiliated with" (among other key terms such as "Chinese military industrial planning apparatus" and "military-civil fusion enterprise zone") exemplifies the sort of "ad hocery" underlying the "prohibition of

arbitrary or capricious agency action." *Ramaprakash v. FAA*, 346 F.3d 1121, 1130 (D.C. Cir. 2003) (citation omitted); *see infra*, pp. 20-32.

## III.   THE DEPARTMENT'S FINDING THAT HESAI IS A "MILITARY-CIVIL FUSION CONTRIBUTOR" IS UNLAWFUL

### A.   The Finding That Hesai Is "Affiliated With" The MIIT Is Unlawful

**1.** Defendants point to zero on-point authority for their "broad definition" of "affiliated with" that "refers to associations 'on the basis of a common purpose or of shared characteristics.'" Opp'n 10 (quoting Oxford English Dictionary). That definition undisputedly sweeps far beyond the effective-control meaning that is supported by the overwhelming weight of caselaw involving relationships between entities (including in the entity-designation context and from this Court specifically), analogous statutory examples (including in the same statute containing Section 1260H), and the Department's own regulations. Mot. 24-26. Plainly, the "context-dependent definition" (Opp'n 10) that is applicable here should come not from a case about jury instructions outlining an individual's criminal liability for "falsely swearing" during the Red Scare, *Killian v. United States*, 368 U.S. 231, 254 (1961), but from the on-point, entity-related, and defense-specific authorities discussed in Hesai's motion.[14]

None of the various reasons Defendants offer for straying from that "plain and common meaning" of "affiliated with," *Xiaomi Corp.*, 2021 WL 950144, at *6 (citation omitted), is

---

[14] Defendants' primary case supports *Hesai*. The jury instructions the Supreme Court approved in *Killian* require more than sharing "a common purpose," "a dependency," or "a set of characteristics" to establish an affiliation. Opp'n 11; *see Killian*, 368 U.S. at 254 n.13 ("A person may be found to be 'affiliated' with an organization *** when there is shown to be a close working alliance or association between him and the organization, *together with a mutual understanding or recognition that the organization can rely and depend upon him to cooperate with it, and to work for its benefit, for an indefinite future period upon a fairly permanent basis.*" (emphasis added)). Needless to say, the Department did not establish a "mutual understanding" that the MIIT could "depend" on Hesai to "work for its benefit, for an indefinite future"—or, put another way, that the MIIT "effectively controlled" Hesai.

persuasive.  For example, Defendants argue that, absent a broad definition, Hesai could "seek to hide" connections to MIIT.  Opp'n 10-11.  But that accusation appears nowhere in the Amended Designation (or the Original Designation), and there is not a shred of evidence to support the covert activity Defendants suggest.  Defendants also argue that the statutory phrase is "affiliated with," not "affiliate"—but this Court has rightly rejected that very argument.  *See Luokung Tech. Corp.*, 538 F. Supp. 3d at 184-185 (noting that "'affiliate' and 'affiliated with' are simply 'different forms of the same word, and the substantive meaning of the terms is the same," and that "Defendants cite no support for their assertion that a broader reading due to the adjectival form is required").  And Defendants' argument about enterprise zones in Section 1260H(d)(2)(E), *see* Opp'n 13, discounts that just as a term (such as "the Pentagon" or "the United States") may refer to both a geographic area and a political entity, so too can the term "enterprise zone" refer to both a geographic area and its governing authorities, *see also* ECF No. 26, at 8-9 (responding to same arguments).

Accepting the Department's logic would also lead to absurd results.  *See* Mot. 27-28.  It would make it far easier for an entity to qualify as a "Chinese military company" based on its associations with the *MIIT* (a sprawling executive branch agency) than with the *People's Liberation Army* (*i.e.,* China's "land, naval, and air military services").  § 1260H(d)(1)(B)(i)(I), (3).  That is, under Defendants' construction, having a "close association with MIIT" (Opp'n 15) makes a company a "military-civil fusion contributor," while the same "close association" with the *Chinese military itself* does not.  Congress could not have intended that incongruous result.

Indeed, Defendants do not dispute that the "vastly wider reach" of their definition would capture the "broad swath of entities that engage or partner with MIIT" by virtue of being subject to its wide regulatory jurisdiction.  Opp'n 12-13.  That universe would encompass virtually every

technology company (and most non-technology companies) operating in China.[15]  And because Hesai's "behavior is no different than American technology companies" with a Chinese footprint, *Luokung Tech. Corp.,* 538 F. Supp. 3d at 189-190, the Department's "sweeping inference" would capture "even U.S. technology companies with Chinese subsidiaries[,]" such as Apple, as well as non-technology companies, such as Pepsi, *Xiaomi Corp.,* 2021 WL 950144, at *8.  The fact that the Department has actually designated only "a tiny fraction" of companies (Opp'n 14) just underscores Defendants' claim of total discretion.  *See Xiaomi Corp.,* 2021 WL 950144, at *4 (when agency explanation is "'so implausible that it could not be ascribed to a difference in view or the product of agency expertise,' courts must cast the action aside as arbitrary and capricious" (quoting *Dickinson v. Zurko,* 527 U.S. 150, 164 (1999))).

**2.** Even if the Department had free rein to adopt its concededly "broad definition," Opp'n 10, the record lacks substantial evidence that Hesai "has a common purpose and shared characteristics with MIIT" or is otherwise "closely associated" with it, *id.* at 15, 18.

*First*, Defendants' arguments concerning "research programs and projects" (Opp'n 16) underscore the *indirect* connections on which the Department relies.  Defendants continue to lean

---

[15] Defendants do not dispute that the MIIT's regulatory jurisdiction spans countless industries that lack any connection to the military.  *See* Ministry of Industry and Information Technology (MIIT) (工业和信息化部), Westlaw Practical Law UK Glossary, 1-552-9335, https://next.westlaw.com/Document/Id45b3a3047f311e498db8b09b4f043e0/View/FullText.html?originationContext=document&transitionType=DocumentItem&ppcid=a7b4d49bce054661a79f906bebb9a910&contextData=(sc.Default) (MIIT is "[a] central government ministry sitting under the State Council to oversee areas including the internet, telecommunications, broadcasting, postal delivery, computer and other electronic hardware and software management.") (last visited Jan. 27, 2025); *see also, e.g., Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 591 (S.D.N.Y. 2022) (MIIT regulation of "e-cigarettes and other new tobacco products"); *Haping v. 17 Educ. & Tech. Grp. Inc.*, No. 22-cv-09843-LAK-SDA, 2023 WL 8716895, at *6 (S.D.N.Y. July 20, 2023) (MIIT regulation of "After-school Tutoring and Educational Apps"); *Autodesk, Inc. v. ZWCAD Software Co.*, No. 14-cv-1409-EJD, 2015 WL 1928184, at *5 (N.D. Cal. Mar. 27, 2015) (MIIT issuance of "nonbinding data privacy guidelines").

on Hesai's purported links to third parties—a university and an industry-testing facility used by dozens and dozens of global companies such as BMW—that Defendants say in turn received "support[]" or "approv[al]" from MIIT (unrelated to Hesai). *Id.* at 16-17. But Defendants make no attempt to refute the attenuated nature of the inferences the Department's finding requires, *see* Mot. 30; explain how those second- and third-order connections establish "common" purposes or characteristics with MIIT, Opp'n 16; or reconcile that analysis with other provisions of the statute where Congress expressly contemplated indirect relationships, *see* Mot. 29-30. Instead, Defendants fault Hesai for "misread[ing] the statute" to "require[] evidence of 'research partnerships and projects *with MIIT*[.]'" Opp'n 17. But that quotation comes directly from the Amended Designation itself. And Defendants themselves elsewhere acknowledge that entities are listed when "the Department's analysis shows a close association *with MIIT*[.]" *Id.* at 15 (emphasis added).[16]

The Department's failure to point to a "close association" between Hesai and MIIT is presumably why Defendants re-injected the finding that "Hesai's own prospectus *** identified four programs and projects in which it participates that MIIT administers." Opp'n 15-17. But those purported "programs and projects," which were the primary bases for the *Original* Designation, are missing from the *Amended* Designation's "affiliated with" explanation (as Hesai

---

[16] Public sources readily show that the MIIT does engage in research projects directly with entities under circumstances that are not present here. *See, e.g.*, Int'l Econ. & Tech. Coop. Ctr. of Ministry of Indus. & Info. Tech., *Notice on Organizing the Application for Research Projects in the Field of International Advanced Manufacturing Clusters* (June 11, 2024), https://miit-iie.com/h-nd-407.html (translated into English at https://miit--iie-com.translate.goog/h-nd-407.html?_x_tr_sl=auto&_x_tr_tl=en&_x_tr_hl=en-US&_x_tr_pto=wapp) (last visited Jan. 27, 2025) (example of "research projects" MIIT engages in with entities that affirmatively submit "application for research" to be conducted pursuant to research "requirements" set by MIIT, under condition that "intellectual property rights of the final research results of the project belong to" MIIT).

pointed out, *see* Mot. 17, 24, 29).  So were those part of the Department's justification or not? Hesai is again forced to aim at a moving target.

Even if the (abandoned) *Original* Designation's findings remain relevant, as Hesai explained previously (and the Department ignores), *see* ECF No. 17, at 31-33; ECF No. 26, at 11-12, these are not "programs" in which Hesai could "participate"; they are expressly described as government "policies" and "regulations" in the very document on which the Department relies, NDAR981 (prospectus describing the "[m]ajor laws, regulations, and policies in the industry and their impact on the issuer's business development"); *see also* ECF No. 17-1, at Ex. A (certified translation).  Those statements are obviously meant to explain to investors the "[n]ational policies," from a variety of government entities, that relate to the LiDAR industry.  NDAR981; *see* NDAR984 (summarizing that "governments at all levels have issued a number of policies to clarify the development of vehicle-mounted sensor technology").  Notably, such disclosures were mandated by the securities regulations that were in force at the time Hesai issued its prospectus— which is presumably why materially similar language about identical MIIT policies can be found in the prospectuses of other (non-Section 1260H) companies with a global footprint in the manufacturing industry.[17]  The sworn declaration by Hesai's CEO made that point clear, *see* NDAR392, but the Department ignored it.

---

[17] *See, e.g.*, Beijing Jingwei Hirain Techs. Co., Inc., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 177-79, https://static.sse.com.cn/stock/information/c/202106/3eaf3a5774c74e0f9a2d29881058702f.pdf (discussing Internet of Vehicles and Medium- and Long-Term Development Plan for the Automobile Industry) (last visited Jan. 27, 2025); Orbbec Inc., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 177, https://static.sse.com.cn/stock/information/c/202106/92c6353841ac4cc1beb731ecb1b2b1f9.pdf (last visited Jan. 27, 2025) (discussing Internet of Vehicles and Three-Year Action Guide for the Smart Sensor Industry); Cubic Sensor & Instrument Co., Ltd., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 120,

S*econd*, Defendants' acknowledgement that the "National Automotive Standardization [Technical] Committee" ("NASTC") is an "industry partnership," Opp'n 18, reinforces that any shared purpose or characteristics reflected by the NASTC are *among* industry participants, not with the MIIT.  While the MIIT might have established the NASTC, the NASTC was the entity that organized conferences or standard-drafting efforts that Hesai occasionally participated in.  Nothing in the record establishes that Hesai is "closely associated with *MIIT*" through such indirect, third-order interactions.  *Id.* (emphasis added).  Indeed, Hesai is not even a member of the NASTC itself (as Defendants concede, *see id.* at 19).  Moreover, Defendants' attempt to categorize Hesai's minor involvement in an industry conference and a standard drafting process as evidence of a "'*research* partnership' and a 'project' of the MIIT" is also unsupported.  *Id.* (emphasis added) (quoting § 1260H(d)(2)(B)).  The record evidences that the NASTC is concerned with commonplace international technical standard-setting, not "research."  Tellingly, instead of disputing that scores of foreign governments and global companies (including General Motors and Toyota) have the exact same "relationship" with MIIT, Defendants argue only that it is "immaterial" because of "*other* factors that supported DoD's factual determination."  *Id.* (emphasis added).

*Third,* the fact that Hesai received a regulatory license is plainly insufficient to establish a common purpose or a shared set of characteristics between Hesai and the MIIT.  Defendants cite nothing to support their claim that receipt of a generic, technical, non-military license is evidence

---

https://www.sse.com.cn/disclosure/listedinfo/bulletin/star/c/688665_20210204_1.pdf (last visited Jan. 27, 2025) (discussing Three-Year Action Guide for the Smart Sensor Industry); UNI-TREND TECH. (CHINA) CO., LTD., *Prospectus for Initial Public Offerings of Stock and Listing on the Science and Technology Innovation Board* 124–125, https://static.sse.com.cn/disclosure/listedinfo/bulletin/star/c/688628_20210126_2.pdf (last visited Jan. 27, 2025) (discussing Action Plan to Accelerate the Development of Sensors and Intelligent Instruments).

of an "affiliation" with the MIIT.  The uncontested fact that Apple, like countless other global companies, received the *exact same license for its iPhones* (*see* Mot. 33), reveals the absurdity of that sweeping assertion.[18]

*Finally*, the Department largely retreats from defending its decision on the basis of Hesai's "Little Giants" designation, asserting only that the Chinese government's support for the technology industry should be thrown into the soup of "several datapoints" that the Department has identified.  Opp'n 15-16.  The hundreds of pages listing "Little Giants," from mundane fields like the animal husbandry and wristwatch industries, undermine any suggestion that the program focuses on "strategically important sectors" such as "the technology industry," let alone that it encompasses only those companies sharing a close association or common purpose with the MIIT. *Id.* at 15 (quoting NDAR1428-1429); *see* ECF No. 17, at 39-40.  Defendants' continued reliance on that commonplace award, given to over 12,000 entities (and counting), further undermines the rigor of the Department's factfinding.

## B.    The Department's Finding That Hesai Knowingly Received Assistance Under China's Military Industrial Planning Apparatus Is Unlawful

Defendants' attempt to bolster the Department's finding that Hesai "knowingly received science and technology-related assistance from the Government of China" that was "initiated

---

[18] Defendants' suggestion that the cited "license approved products that serve as the core of the commercial services that Hesai provides," Opp'n 21, underscores their confusion about the facts.  As the record demonstrates, this "radio transmission" license was for "gas sensor products," NDAR1069, a minor line of Hesai's business that is fully distinct from the LiDAR business that forms the purported basis for Hesai's listing, *see* NDAR10, 18-19.  Unlike Hesai's *gas sensor* products, Hesai's *LiDAR* products do not require this transmission license because Hesai's LiDAR products do not and cannot "store or wirelessly transmit any images or information"—a fact clearly explained in the sworn declaration from Hesai's CEO and third-party certifications that the Department ignored.  NDAR389; *see* NDAR373 (independent testing-and-inspection authorities have certified that Hesai's products do not wirelessly transmit data); *see also* 89 Fed. Reg. 79,088, 79,092 (Sept. 26, 2024) ("technical analysis" by Commerce "found that LiDAR generally lacks the ability to transmit from the vehicle").

under China's military industrial planning apparatus," suffers from similar deficiencies, both legally and factually. Opp'n 21 (citing § 1260H(d)(2)(A)).

1.  As for its legal analysis, Defendants embrace a broad (and new) "totality of means" standard that deems any assistance provided "in accordance with" China's "military-civil fusion" "goals" and "policies," Opp'n 23-24, to be assistance "initiated under the Chinese military industrial planning apparatus," *id.* (quoting § 1260H(d)(2)(A)). Defendants now rely on the same uncited article about dual-use products with "capabilities" that "inherently ha[ve] military applications." Opp'n 23-24 (quoting NDAR1714). In practice, that construction effectively covers Chinese government subsidies of any kind to any company—as shown by the Department's chain of unconnected inferences, which does not even purport to link Hesai with any military-related assistance. *See* Mot. 36.

Defendants compound that error by stripping away this subprovision's unique requirement that an entity "know[]" that the assistance it receives was "initiated under the Chinese military industrial planning apparatus." § 1260H(d)(2)(A). Although Defendants try to cabin *Rehaif*'s discussion of the same "knowingly" qualifier to that case's "criminal context," Opp'n 22, the conclusion that "Congress intended to require the Government to establish that the defendant knew he violated the material elements" was "a matter of ordinary English grammar," *Rehaif v. United States*, 588 U.S. 225, 230-231 (2019); *see also, e.g.*, *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 331-332 & n.16 (D. Del. 2021) (quoting *Rehaif* in civil context, alongside other non-criminal cases, in explaining that "the Court finds persuasive the analyses of numerous other courts that have interpreted statutes having specific knowledge requirements as requiring knowledge of all the elements listed in the statute" (footnote omitted)). The "presumption in favor of scienter" that Defendants say is "inapplicable here" (Opp'n 22) was an *additional* reason the Supreme Court

imposed the knowledge requirement, "[b]eyond the text" that Section 1260H(d)(2)(A) parallels. *Rehaif*, 588 U.S. at 231.

Defendants also fail to justify the arbitrary line they draw about what an entity must "know." The government agrees that the entity must know that it received assistance, that the assistance was from "the Chinese government or the Chinese Community Party," and that the assistance was "science and technology-related assistance." Opp'n 22. But Defendants claim that it "is of no moment whether such an entity is aware or not whether the assistance it received had been initiated under China's military industrial planning apparatus." *Id.* Arbitrarily cutting off application of the "knowingly" qualifier at that point—in the middle of the sentence, with no intervening punctuation—makes no sense. If anything, the relevant "context"—*i.e.*, the authority conferred on the Department to designate Chinese *military* companies—"strongly suggests that Congress focused" more on those entities that know the assistance they receive is actually connected to the Chinese "military industrial planning apparatus," rather than on those that know the assistance was merely "science and technology-related." *Id.*

**2.** Defendants' brief confirms that each of the Department's three sets of factual findings is also deficient. *First,* Defendants bury in a footnote their concession that the Department exaggerated by nearly five times the amount of subsidies the record actually reflects. Opp'n 23 n.10. Defendants do not show that Hesai is still "receiving" any of these years-old subsidies. § 1260H(d)(2)(A); *see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 140 (2012) ("Words are to be given the meaning that proper grammar and usage would assign them."). And rather than actually link any of the assistance Hesai received to China's military industrial planning apparatus, the Department merely invokes the same tired reasoning about the dual-use nature of LiDAR technology generally. Opp'n 23-24.

*Second*, Defendants never address that the projects the Department cites ended years ago, and never connect *those projects* with any kind of military industrial planning at all. NDAR11, 12. Defendants' assertions that the NDRC and MST were "assisting" or "sponsoring" Hesai's projects (Opp'n 23-24) appear nowhere in the Amended Designation—perhaps because Hesai's prospectus indicates only that the projects were subject to those ministries' regulatory jurisdictions (a fact that Defendants do not dispute). NDAR1051; *see* Mot. 37. And although Defendants spend pages trying to tie the NDRC and MST to military matters, Opp'n 24-26, Defendants do not contest that these ministries' broad regulatory jurisdictions extend over many non-military matters, *see* Mot. 37-38. Nothing in the record suggests that Hesai's (wholly commercial) projects relate to the former rather than to the latter.

*Third*, the standard that Defendants apply to Hesai's 2023 SEC Form F-1 disclosure—*i.e.*, that it supports a finding that Hesai is affiliated with the MIIT because it shows a "substantial *likelihood*" the Chinese government "*will* *** provide" assistance, Opp'n 26 (emphases added)— cannot be squared with the statutory language requiring *actual* "knowing[] recei[pt]" of qualifying assistance, § 1260H(d)(2)(A); *cf. Luokung Tech. Corp.*, 538 F. Supp. 3d at 189 ("'potential affiliation' is not the correct standard"). That reading is also at odds with the Department's own cited evidence. That SEC disclosure specifically classifies China's oversight as an operational "risk" rather than the type of "benefit" that Defendants claim. NDAR118. And Defendants' finding once again contradicts sworn evidence that Defendants never address. *See* Mot. 38-39.

## C.    The Department's Finding That Hesai Resides In Or Is Affiliated With A Military-Civil Fusion Enterprise Zone Is Unlawful

Defendants belatedly purport to supply the definition of the term "military-civil fusion enterprise zone" that is missing from the Amended Designation itself: any "section of territory established by the Chinese government for the purpose of advancing its policy of military-civil

fusion through economic activity." Opp'n 27. It is hard to believe that Congress intended that term to encompass whatever areas any local Chinese government office or official happened to promote using the phrase "military-civil fusion." Yet that is exactly what the Department relies on—2022 and 2019 announcements by a "District Bureau" and an "Industrial Alliance" mentioning "military civil fusion" goals. Such statements hardly show that the decades-old Chongqing Economic Development Zone and Jiading Industrial Zone (let alone the entirety of them) were "established" to promote China's military-civil fusion agenda.[19]

More importantly, the government does not dispute that at least a substantial bulk—if not the vast majority—of these sprawling "economic" and "industrial" zones has nothing to do with military-civil fusion. *E.g.*, Opp'n 27-28 (acknowledging that military-civil integration is limited to a "newly-established industrial park *in* Jiading Industrial Zone" (emphasis added)). All of Arlington County is not a "military-civil fusion" zone just because the Department is located there.

Proving the point, Defendants acknowledge that many international consumer-facing companies, including Volvo and Amazon Web Services, reside in these zones. Opp'n 30. Defendants just say that (somehow) they do not actually have a "presence" there, ostensibly "because the national security risk associated with a company that is not developing, producing, or supplying military or dual-use products does not rise to the level of a company (such as Hesai)" that supposedly does. *Id.* But as a factual matter, Defendants cannot explain (as noted, *supra*, pp. 10-12) why Hesai's products are any more "dual use" than those companies' "autonomous

---

[19] *See, e.g.*, Chongqing Municipal People's Government, Introduction of Chongqing Economic and Technological Development Zone (Sept. 12, 2024), https://www.cq.gov.cn/zt/yhyshj/zsyz/zqcyyq/naq/202409/t20240912_13623119.html (Chongqing Economic and Technological Development Zone was established in 1993); *Industrial zone propels Jiading's innovative development*, Official English Website of Jiading District, Shanghai (Jan. 6, 2021), http://english.jiading.gov.cn/2021-01/06/c_709590.htm (Jiading Industrial Zone was established in 1992).

vehicles" and other products. And as a legal matter, the Department's justification is totally non-responsive. Subsection 1260H(d)(2)(E)'s applicability has nothing to do with whether the company's products are "dual use." Nor does that provision carve out exemptions for companies that are located in military enterprise zones but do not "produce military supplies or products that have a dual use." Opp'n 30. The absurd result that potentially thousands of international consumer-facing companies such as Amazon Web Services, Volvo, Qualcomm, Autoliv, and Continental qualify as "military-civil fusion contributors" under Defendants' view confirms that Defendants' statutory construction or factual conclusions (or both) are wrong.

**D.      The Department's Finding That Hesai Advertises On Military Equipment Procurement Platforms Is Unlawful**

The Department no longer appears to defend its finding that Hesai "advertises" on a military equipment platform, as Section 1260H(d)(2)(G) requires. Instead, Defendants' brief (like the Amended Designation) mainly uses the passive voice—*e.g.*, that "several Hesai products *are advertised* on Beijing Huawei Technology's website" and "Hesai's products *were listed* and *advertised*." Opp'n 30-32 (emphasis added). But that is not what the statute says.

Essentially conceding the point, Defendants claim that it would have been "practically infeasible" for the Department to confirm whether "Hesai itself" advertised on the website. Opp'n 32. That is a startling thing for a U.S. government agency to say. It is the Department's job to make accurate factual findings, in compliance with statutory criteria, and based on the latest information available. *See, e.g.*, *District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 56-59 (D.C. Cir. 2015) (explaining that "agencies do *not* have free rein to use inaccurate data"); *City of New Orleans v. SEC*, 969 F.2d 1163, 1167 (D.C. Cir. 1992) ("[A]n agency's reliance on a report or study without ascertaining the accuracy of the data contained in the study or the methodology used to collect the data is arbitrary." (internal quotation marks omitted)). That is especially important

in the context of a U.S. government blacklist, where the government wields enormous power to damage the reputation and business interests of global companies.  If it "simply was not known to the Deputy Secretary of Defense at the time she rendered her decision" (Opp'n 32) whether Hesai advertised its products on military equipment procurement platforms, the Department simply should not have made that finding.

The Department's casual approach is even more troubling because, months before the re-designation, Hesai repeatedly explained to the Department (under oath) that the company does *not* sell its equipment for military purposes either "directly or indirectly"—and it could and would not do so because "Hesai's technology has never been designed for, evaluated for, or validated to military specifications."  NDAR375; NDAR390; NDAR1705-06.  Hesai also explained why it did not meet any of the statutory criteria.  NDAR378-381; NDAR390.  Had the Department simply asked Hesai—which had repeatedly requested an opportunity for meaningful dialogue to clarify the agency's misunderstandings before it re-designated Hesai, *see, e.g.*, NDAR371; NDAR1702— it could have easily avoided the mistake.  The Department never explains why doing so was "practically infeasible."[20]

## IV.   THE DEPARTMENT FAILED TO PROVIDE HESAI BASIC DUE PROCESS

Defendants effectively concede that the Department's redesignation process failed to afford Hesai "the procedural safeguards required by [D.C. Circuit] precedent," including notice "of the unclassified material" upon which the agency "proposed to rely" and "the opportunity to

---

[20] Defendants also say "Beijing Huawei Technology does not appear to be a third-party reseller platform," Opp'n 32—but that seems to be exactly what it is.  As Beijing Huawei's own public statement suggests, it listed Hesai's "relevant products, materials and promotion" on its website despite Hesai never authorizing it to do so.  *See* ECF No. 42-1, Exhibit D.  Defendants' characterization of that clarification statement as "self-serving" (Opp'n 32) is difficult to understand:  Beijing Huawei (not Hesai) issued the statement, and its commercial reputation is reason enough for it to make truthful public statements.

present, at least in written form, such evidence as it may be able to produce to rebut the administrative record or otherwise negate the proposition that" it is a Chinese military company. *People's Mojahedin Org. of Iran ("PMOI") v. U.S. Dep't of State*, 613 F.3d 220, 227 (D.C. Cir. 2010) (alterations omitted) (emphasis added).  Defendants weakly argue that if the Department *had* provided constitutional process, Hesai might have "alter[ed] [its] corporate structure, change[d] [its] name[], remove[d] evidence of [its] affiliation with China from the public record, or otherwise obfuscate[d] [its] identit[y] to avoid being placed on the List." Opp'n 50.  That makes no sense:  Hesai is publicly traded on NASDAQ with "open and transparent" financials and leadership that are subject to close investor scrutiny and corporate-governance oversight. NDAR372.  And, of course, Hesai initiated this litigation well before the re-listing.  Hesai could not simply have changed its name (or taken even more drastic steps to alter or hide its identity) had the Department given it a bare "[o]pportunity to rebut the unclassified portion of the record the [agency] was compiling." *PMOI*, 613 F.3d at 227.

That is why Defendants devote the bulk of their due-process defense to arguing that Hesai's claim is "unripe" or otherwise not "cognizable." Opp'n 47-49.  But as Defendants acknowledge, an agency action that "has imposed some stigma" and "has worked some change in *** status under law" triggers due process protections.  Opp'n 49 (quoting *Taylor v. Resolution Tr. Corp.*, 56 F.3d 1497, 1506 (D.C. Cir.), *amended on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995)).  Defendants concede that Hesai has suffered reputational harm because of the re-listing.  *Id.*  And the redesignation of Hesai unmistakably effectuated a change in its legal status.  Hesai's designation restricts the company from *presently* accessing grants, loans, contracts, and other benefits, as Defendants themselves point out.  *Id.* at 48 n.20 (citing 42 U.S.C. §§ 18912, 19235).  That change in status took effect immediately when the Chips Act was enacted in 2022.  Other restrictions also

33

apply *today*.  *See, e.g.*, Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, § 536, 138 Stat. 460, 622 ("No Federal funds made available to the Department of Homeland Security may be used to enter into a procurement contract, memorandum of understanding, or cooperative  agreement with, or make a grant to, or provide a loan or guarantee to, any entity identified under section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283) or any subsidiary of such entity."). And Defendants acknowledge that, because of its section 1260H listing, Hesai is restricted from bidding on the Department's contracts beginning next year.  *See* Pub. L. No. 118-31, § 805, 137 Stat. 136, 315 (2023).

None of those restrictions is "contingent" on anything.  Opp'n 47 (citation omitted). Hesai's change in legal status already happened at the time of Hesai's redesignation—both the present restrictions and those that will go into legal effect next year.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (requiring that "injury be concrete, particularized, and actual or imminent").  Moreover, the issues are fit for resolution now, and Hesai will suffer serious hardship if it is forced to wait longer to receive the process it is due.  *See generally Abbott Lab's v. Gardner*, 387 U.S. 136, 148-49 (1967).

All of this confirms that—beyond the undisputed facts that the 1260H redesignation has impaired Hesai's ability to raise capital, hampered its ability to conduct business in the United States (including U.S.-incorporated Plaintiff Hesai Inc.), and severely damaged its global reputation—Hesai has in fact "suffer[ed] a[] change in status under law."  Opp'n 49.  Under Defendants' own authority and arguments, Hesai was thus both harmed in its reputation *and* deprived of a constitutionally protected liberty interest.  Accordingly, the Court should not only vacate Hesai's listing, but order that any future redesignation attempts be accompanied by the due

process guaranteed by this Court's precedent.  *See PMOI*, 613 F.3d at 227-228; *National Council of Resistance of Iran v. Department of State*, 251 F.3d 192, 208-209 (D.C. Cir. 2001).

## V.    THE COURT SHOULD SET ASIDE THE DEPARTMENT'S UNLAWFUL DECISION AND VACATE HESAI'S DESIGNATION

"When an agency's action is unlawful, 'vacatur is the normal remedy.'"  *Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024) (quoting *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014)).  "That's because Congress directed [courts] to 'hold unlawful and set aside'" such action.  *Id.*; *see* 5 U.S.C. § 706(2).  "[T]o 'set aside' a rule is to vacate it." *Bridgeport Hosp.*, 108 F.4th at 890 (quoting *Corner Post, Inc. v. Board of Govs.*, 603 U.S. 799, 830 (2024) (Kavanaugh, J., concurring) (alteration in original)); *see Corner Post, Inc.*, 603 U.S. at 830 (Kavanaugh, J., concurring) ("The APA prescribes the same 'set aside' remedy for all categories of 'agency action,' including agency adjudicative orders[.]").  Thus, if the Court finds that Hesai's designation as a Chinese military company exceeds the Department's authority under Section 1260H, is arbitrary and capricious, is unsupported by substantial evidence, or deprived Hesai of due process, the designation should be held unlawful and vacated.

Defendants largely do not dispute that conclusion, with limited exceptions:  they argue that "remand without vacatur would be the appropriate remedy" only "if the Court were to conclude that DoD had failed to consider Hesai's submissions" or "failed to provide an adequate explanation for its actions."  Opp'n 46, 39 n.17.  But even with respect to those errors, Defendants are not entitled to such an "exceptional remedy."  *Bridgeport Hosp.*, 108 F.4th at 890 (citation omitted); *see, e.g.*, *New Life Evangelistic Ctr., Inc.*, 672 F.Supp.2d at 73-74 (vacating agency decision because it "failed to address contradictory evidence submitted by [plaintiff]"); *Dillmon*, 588 F.3d at 1092 (vacating agency decision after rejecting that agency's "substantial evidence argument" could justify its "failure to address" underlying issue).  While Defendants seek to minimize the

Department's failures, the D.C. Circuit has explained that "[w]hen an agency bypasses a fundamental procedural step," courts considering remand-without-vacatur must analyze "not whether the ultimate action could be justified, but whether the agency could, with further explanation, justify its decision to skip that procedural step." *City of Port Isabel v. FERC*, 111 F.4th 1198, 1218 (D.C. Cir. 2024).  The Department cannot meet that standard:  despite the ongoing litigation, political pressure, and other incentives it had to get its Amended Designation right, the Department "has yet again come up with insufficient support" for its decision.  *Id.*

Nor will the Department suffer any cognizable harm from vacatur of Hesai's designation. Defendants cite vague "national security concerns" without identifying any concrete disruption, let alone actual harm, that would be posed by Hesai's particular removal from the list.  Opp'n 47. The Court should not permit the Department to keep moving the target while Hesai remains blacklisted.

## CONCLUSION

The Court should grant Hesai summary judgment, deny Defendants' cross-motion, vacate Defendants' designation of Hesai as a Chinese military company, order Defendants to remove Hesai from the 1260H List, and order Defendants to provide Hesai due process prior to any future listing.

Respectfully submitted,

_s/ James E. Tysse_

Dated:  January 29, 2025      James E. Tysse
  D.C. Bar No. 978722
Caroline L. Wolverton
  D.C. Bar No. 496433
Lide E. Paterno
  D.C. Bar No. 166601
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
jtysse@akingump.com

*Counsel to Plaintiffs Hesai Technology Co., Ltd.
and Hesai Inc.*