**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| HESAI TECHNOLOGY CO., LTD, *et al.*, |
| *Plaintiffs*, |
| v. |
| U.S. DEPARTMENT OF DEFENSE, *et al.*, |
| *Defendants*. |

Civ. Action No. 1:24-cv-01381

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 2

I.    Substantial Evidence Supports DoD's Conclusion that Hesai Is a "Military-Civil
Fusion Contributor" to the Chinese Defense Industrial Base. ............................. 2

        A.    Hesai is "Affiliated With" MIIT.................................................................. 2

               1.    The Plain Meaning of the Phrase "Affiliated With." .................... 2

               2.    Substantial Evidence Supports the Finding that Hesai is "Affiliated
With" MIIT.................................................................................... 5

        B.    DoD Reasonably Determined That Hesai Knowingly Received Science
and Technology-Related Assistance from the Government of China. ................... 7

        C.    DoD Acted Within Its Authority in Determining That Hesai "Resid[es] in
or [Is] Affiliated With a Military-Civil Fusion Enterprise Zone." ......................... 9

        D.    Substantial Evidence Supports DoD's Determination that Hesai Advertises
on a Nongovernmental Military Equipment Procurement Platform.................... 10

II.    DoD Has Articulated Rational Grounds for Applying Section 1260H's Statutory
Terms to Its Factual Findings Regarding Hesai. ............................................. 12

III.    Section 1260H Does Not Require DoD to Independently Show That Hesai
Contributed to the Chinese Defense Industrial Base, But DoD Made that Showing
Anyway. ........................................................................................................ 16

        A.    The Court Should Not Impose an Illusory Statutory Obligation. ......................... 16

        B.    The Department Supported Its Finding With Substantial Evidence. .................... 20

        C.    Plaintiffs Have Not Provided a Valid Justification to Strike a Document
from the Administrative Record.......................................................................... 22

IV.    The Department Considered Hesai's Submissions in Making Its October 2024
Determination That Hesai Is a "Chinese Military Company."........................... 24

V.    There Is No Due Process Violation................................................................... 26

VI.    In Any Event, Any Relief Should Be Limited to Remand Without Vacatur. .................... 28

CONCLUSION................................................................................................................... 29

i

## <u>INTRODUCTION</u>

Substantial evidence demonstrates that Plaintiffs (1) "knowingly receive assistance from the Government of China . . . through science and technology efforts initiated under the Chinese military industrial planning apparatus," (2) are "affiliated with the Chinese Ministry of Industry and Information Technology ["MIIT"], including research partnerships and projects," (3) "reside in or are affiliated with a military-civil fusion enterprise zone," and (4) "advertise on a nongovernmental military equipment procurement platform."[1] Any one of these factors would have been enough for the Department of Defense ("Department" or "DoD") to identify Hesai as a Chinese military company pursuant to Section 1260H; viewed together, they leave no doubt that Hesai was properly identified.

Plaintiffs' contrary arguments fail. First, ample evidence supports each of the Department's bases for identifying Hesai as a Chinese military company; when the evidence is viewed in its totality, the identification is especially persuasive. Second, DoD permissibly applied the plain meaning of the language Congress used to determine that Hesai is a "Chinese military company." Third, Section 1260H does not require DoD to establish that Hesai independently satisfies the definition of a "military-civil fusion contributor" *and* contributes to the "Chinese defense industrial base"—by satisfying the definition of a military-civil fusion contributor, Hesai *necessarily* contributes to the Chinese defense industrial base. Fourth, DoD abided by its obligation to assess Plaintiffs' March 2024 and April 2024 submissions, and found them unpersuasive. And lastly, Hesai's due process rights have not been violated.

---

[1] Abbreviations in this brief are the same as those in Defendants' Cross-Motion for Summary Judgment (Dkt. No. 46-1) ("Defs.' MSJ").

For these reasons and those addressed in Defendants' opening brief, Defendants respectfully request that the Court enter summary judgment in their favor.

## ARGUMENT

**I.    Substantial Evidence Supports DoD's Conclusion that Hesai Is a "Military-Civil Fusion Contributor" to the Chinese Defense Industrial Base.**

DoD identified and appropriately interpreted four statutory bases to place Hesai on the Section 1260H List as a military-civil fusion contributor, each supported by substantial evidence in the record: Hesai (1) is "affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects," *see* § 1260H(d)(2)(B); (2) "knowingly receives assistance from the Government of China . . . through science and technology efforts initiated under the Chinese military industrial planning apparatus," *see* § 1260H(d)(2)(A); (3) "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone," *see* § 1260H(d)(2)(E); and (4) "advertise[s] on a nongovernmental military equipment procurement platform," § 1260H(d)(2)(G). Any one of these bases is sufficient to find that DoD properly included Hesai on the 1260H List, and viewed in their totality, they paint a compelling portrait of Hesai as a military-civil fusion contributor.

### A.    Hesai is "Affiliated With" MIIT.

As Defendants previously explained, Defs.' MSJ at 9-21, DoD both appropriately interpreted the phrase "affiliated with" to mean exactly what it says and supported its conclusion that Hesai is affiliated with MIIT with substantial evidence. NDAR 13; *see also* § 1260H(d)(2)(B).

#### 1.    The Plain Meaning of the Phrase "Affiliated With."

The Court should reject Plaintiffs' attempt to inject an overly restrictive, narrow definition of "affiliated with" that ignores the plain meaning of the statute. At the time of Hesai's listing, Section 1260H did not define the phrase "affiliated with" in subsection (d)(2)(B). "When a statute's

2

language is plain, [the court] 'must enforce it according to its terms.'" *Bd. of Cnty. Comm'rs of Kay Cnty., Okla. v. Fed. Hous. Fin. Agency*, 754 F.3d 1025, 1028 (D.C. Cir. 2014) (citation omitted). "Moreover, where a statute's terms are undefined, [the court's] interpretation is guided by the terms' 'regular usage.'" *Id.* at 1029 (citation omitted). As of December 2024, however, Congress defined the phrase "affiliated with" in Section 1260H to mean: "in close formal or informal association." *See* Servicemember Quality of Life Improvement & National Defense Authorization Act for Fiscal Year 2025, Pub. L. No. 118-159, § 1346, 138 Stat. 1773, 2124 (2024). While this definition does not control here, it clarifies Congress' intent that the term bear its plain meaning and not the specialized, restrictive meaning Plaintiffs ascribe to it. Indeed, Congress' definition is markedly similar to the broader, context-dependent dictionary definitions Defendants urge the Court to adopt. *See Affiliated*, Merriam-Webster, affiliated (adj.) ("closely associated with another typically in a dependent or subordinate position");[2] *see also Affiliated*, Oxford English Dictionary, affiliated (adj.) ("on the basis of a common purpose or of shared characteristics.").[3]

Plaintiffs' argument for their preferred definition—"effective control"—is unpersuasive for all the reasons explained in Defendants' opening brief, including that it would render other provisions of Section 1260H illogical, *see* Defs.' MSJ at 13, and that it contrasts with the subsections of Section 1260H where Congress did explicitly incorporate the term "control," *see id.* at 14. And Defendants reiterate that the Court is not bound by another district court's interpretation of a different statute. *See Luokung Tech. Corp. v. Dep't of Def.*, 538 F. Supp. 3d 174, 184-85 (D.D.C. 2021); *Xiaomi Corp. v. Dep't of Def.*, Civ. A. No. 21-280 (RC), 2021 WL 950144

---

[2] *Affiliated*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/affiliated#learn-more.

[3] *Affiliated*, Oxford English Dictionary, https://www.oed.com/dictionary/affiliated_adj?tab=meaning_and_use#9323083.

at *6 (D.D.C. Mar. 12, 2021). But especially problematic for Plaintiffs is that their interpretation conflicts with the very purpose of the statute at issue here: to provide DoD the flexibility to identify Chinese companies whose associations with various organs of the Chinese government make them a potential national security threat. Especially here, where "Congress 'was dealing with a practical subject in a practical way'" the Supreme Court has instructed that courts should presume that Congress "intended the terms [in the statute] . . . to be understood in 'their ordinary and popular sense'"—exactly what Defendants propose. *Amoco Prod. Co. v. S. Ute Indian Tribe*, 526 U.S. 865, 873 (1999) (citation omitted); *TikTok Inc. v. Garland*, 122 F.4th 930, 954 (D.C. Cir. 2024) (recognizing that "even putatively private companies based in China do not operate with independence from the government" and are often used as "part of the [Chinese government's] broader geopolitical and long-term strategy to undermine U.S. national security." (citations omitted)), *aff'd, TikTok Inc. v. Garland*, 145 S. Ct. 57, 69 (2025) ("And Chinese law enables China to require companies to surrender data to the government, 'making companies headquartered there an espionage tool' of China." (citation omitted)).

Plaintiffs' remaining arguments fare no better. Plaintiffs posit that it would be absurd for Congress to make it easier for an entity to qualify as a "Chinese military company" based on its associations with the MIIT than with the Chinese military itself. Hesai Opp. to Defs.' MSJ at 21, ECF No. 49 ("Hesai Opp.") (citing § 1260H(d)(1)(B)(i)(I)). But that was the precise intent, and it is not this Court's task to second-guess Congress' judgments or to rewrite Congress' language. The Court should instead apply the plain language Congress used to this situation.

Nor is it relevant that other companies could, theoretically, qualify as Chinese military companies under the plain definition of "affiliated with" that Congress used. Hesai Opp. at 21-22. As noted previously, "an agency is not 'necessarily required to define an open-ended term in its

4

initial general regulation—or indeed obliged to issue a comprehensive definition all at once'"—but is instead "entitled to proceed case by case" in determining whether a given entity fulfills a statutory definition. *PDK Lab'ys Inc. v. U.S. DEA*, 438 F.3d 1184, 1194 (D.C. Cir. 2006) (quoting *Pearson v. Shalala*, 164 F.3d 650, 661 (D.C. Cir. 1999); *see also id.* at 1195 (approving of an agency "over time . . . identif[ying] 'a series of relevant factors' that it 'balanc[es] in light of the facts of the [particular] case.'" (quoting *Chippewa & Flambeau Improvement Co. v. FERC*, 325 F.3d 353, 358 (D.C. Cir. 2003))). Here, DoD assessed the facts of this particular case and determined that this Chinese LiDAR company with numerous connections to MIIT (discussed further below) qualified for listing under § 1260H(d)(2)(B). Far from showing the unbridled discretion Plaintiffs fear, this assessment and determination shows that DoD carefully evaluates the unique circumstances of a company on a case-by-case basis.

### 2. Substantial Evidence Supports the Finding that Hesai is "Affiliated With" MIIT.

DoD supported its conclusion that Hesai is "affiliated with" MIIT with substantial evidence in the record, certainly evidence sufficient for a "reasonable mind [to] accept as adequate" DoD's finding under subsection (d)(2)(B). *Pham v. Nat'l Transp. Safety Bd.*, 33 F.4th 576, 581 (D.C. Cir. 2022) (citation omitted). Plaintiffs' argument that their "research programs and projects" connected to MIIT are too indirect is belied by the nature of the connections and the language of the statute itself. *See* Hesai Opp. at 22-23; *see also* § 1260H(d)(2)(B). Defendants do not wish to belabor the evidence outlined in earlier briefing, *see* Defs.' MSJ at 15-21, but will reiterate briefly some key evidence on which DoD relied. Hesai's inclusion in the "Little Giants" program administered by MIIT, *see* NDAR 13, 1432, shows that it has a common purpose and shared characteristics with MIIT, as it is a Chinese government "stamp of approval" and "a valued measure of government endorsement[.]" NDAR 1428-30. Hesai participates in research programs

and projects facilitated by MIIT at major Chinese defense universities and elsewhere. *See* NDAR 13-15, 983, 1438-53, 1503, 1525-55. It obtains licenses from and works in partnerships overseen by MIIT. NDAR 1573, 1582-99, 1608. Such connections plainly show a common purpose, shared characteristics, or a close association with MIIT. And Hesai's objection that its prospectus formed part of the basis for DoD's decision is also hard to understand. Hesai MSJ at 23-24. There is "no rigid requirement that [an agency decisionmaker] specifically refer to every piece of evidence in [its] decision." *Goodman v. Colvin*, 233 F. Supp. 3d 88, 109 (D.D.C. 2017) (citation omitted). Rather, "[u]nder the APA, the agency 'need only *consider* the evidence;' it need not mention every piece of evidence it considered." *Smith v. Garland*, 103 F.4th 1244, 1253 (7th Cir. 2024). The prospectus formed part of the record that DoD considered. NDAR 826-1085 (English translation).

In short, Hesai attempts to minimize and downplay the numerous threads connecting it to MIIT as commonplace or attenuated. Hesai Opp. at 22-26. But there is no requirement in the statute that "second- and third-order connections" to MIIT, Hesai Opp. at 23, or connections to MIIT shared by other companies, *id*. at 25-26, cannot show an affiliation with MIIT if, in DoD's judgment, the sum weight of those connections in this particular instance amounts to a common purpose, shared characteristics, or a close association with MIIT. And here, DoD reasonably determined that a series of MIIT-driven subsidies, tax cuts, grants, rewards, recognitions, research partnerships, certifications, and projects objectively demonstrates a sufficiently common purpose and close association between Hesai and MIIT. This record evidence, taken as a whole, more than suffices to allow a reasonable factfinder to conclude that Hesai is affiliated with MIIT. Especially in light of the "low bar" of the substantial-evidence standard, *La. Pub. Serv. Comm'n v. FERC*, 20 F.4th 1, 7 (D.C. Cir. 2021), the record contains sufficient evidence to support Hesai's inclusion on the 1260H List under subsection (d)(2)(B).

**B.    DoD Reasonably Determined That Hesai Knowingly Received Science and Technology-Related Assistance from the Government of China.**

DoD found that Hesai "knowingly receiv[ed] assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus." § 1260H(d)(2)(A). This separate finding falls within DoD's statutory authority and is supported by substantial evidence. Defs.' MSJ at 21-26.

Plaintiffs' contrary arguments lack merit. Hesai Opp. at 26-29. Hesai's knowing receipt of millions of dollars in subsidies and assistance in LiDAR product development from Chinese government entities is precisely the type of assistance that China provides to support its military establishment. Further, Hesai misplaces its reliance on *Rehaif v. United States*, 588 U.S. 225 (2019), in arguing for a presumption that § 1260H(d)(2)(A)'s "knowingly" requirement requires DoD to show that an entity knew that the assistance it received was initiated under China's military industrial planning apparatus. The sentences truncated in Hesai's brief show that the presumption applied in *Rehaif* is limited to the element of intent in the criminal context. *See id.* at 230 ("As 'a matter of ordinary English grammar,' we normally read the statutory term 'knowingly' as applying to all the subsequently listed *elements of the crime*."), 231 ("Beyond the text, our reading of [the statutes] is consistent with a basic principle that *underlies the criminal law*, namely, the importance of showing what Blackstone called 'a vicious will.'") (citations omitted and emphases added). The fact that one out-of-circuit district court ignored *Rehaif*'s express limitation of its holding to criminal statutes should not counsel this Court to follow its example.

Thus, Hesai's preferred statutory presumption does not apply, and the Court's analysis instead involves, *inter alia*, statutory purpose, structure, and context. In enacting Section 1260H, Congress was concerned about symbiotic relationships between Chinese government entities and Chinese companies. The statutory structure of § 1260H(d)(2) further supports the conclusion that

7

Congress is focused on what an entity receives and from whom. Thus, § 1260H(d)(2)(C) inquires what the entity received ("assistance, operational direction or policy guidance") and from whom ("the State Administration for Science, Technology and Industry for National Defense"). Again, § 1260H(d)(2)(F) asks what the entity received (a "military production license[]") and from whom ("the Government of China"). Similarly, § 1260H(d)(2)(A) requires DoD to show that an entity knows what it receives (technology-related assistance) and from whom (the Chinese government or CCP). Hesai fails to explain why Congress might have wished for DoD to make a further showing: that the entity knows that the assistance it received was initiated under China's military industrial planning apparatus. Indeed, Hesai's argument that the relevant statutory context is "the *authority* conferred on the Department to designate Chinese military companies," Hesai Opp. at 28 (emphasis altered), suggests that this element is akin to a jurisdictional element which, even in criminal statutes, does not require a showing of knowledge by the criminal defendant. *See Torres v. Lynch*, 578 U.S. 452, 468 (2016). Requiring DoD to make this unnecessary showing would undermine Section 1260H's objectives. *Cf. United States v. Feola*, 420 U.S. 671, 676-84 (1975) ("effectuat[ing] the congressional purpose" of criminal statute did not require knowledge by criminal defendant of jurisdictional element).

Hesai's remaining arguments under this rubric are also meritless. Hesai Opp. at 28-29. First, had Congress intended to require DoD only to identify entities receiving assistance right now, it could have used the present continuous tense ("[e]ntities that are receiving assistance . . .") or a similar phrase (*e.g.*, "[e]ntities that currently receive assistance . . ."). But Congress did not do so, and the plain meaning of "receiving assistance" includes Hesai, which received various forms of assistance between 2017-21, 2017-20, and 2018-21. Second, DoD has shown that the assistance to Hesai was initiated under China's military industrial planning apparatus. Chinese government

8

entities gave Hesai millions of dollars in subsidies to help develop LiDAR technology as part of its effort to "dethrone U.S. dominance" in this market "through state subsidies and other support." NDAR 11, 1715. The National Development and Reform Commission and the Ministry of Science and Technology, which serve as part of China's military industrial planning apparatus, have assisted Hesai with significant developments in LiDAR technology. NDAR 11-12, 20, 1051, 1100, 1174, 1182, 1184-85. "At the front line of [China's] race towards fully-realized autonomous vehicles is the push to dominate the market for" LiDAR systems. NDAR 1715. LiDAR's importance in autonomous vehicles used by the PLA and its ability to "gather massive amounts of data" that "could easily be used to gather intelligence" has "profound" "security implications." NDAR 1715. Third, DoD is relying on Hesai's 2023 SEC disclosure form not in isolation but as part of a pattern. Defs.' MSJ at 26. Accordingly, Hesai's arguments have no merit.

## C.    DoD Acted Within Its Authority in Determining That Hesai "Resid[es] in or [Is] Affiliated With a Military-Civil Fusion Enterprise Zone."

In determining that Hesai "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone or receiv[es] assistance from the Government of China through such" a zone, DoD acted within its statutory authority and supported its determination with substantial evidence. Defs.' MSJ at 27-30; *contra* Hesai MSJ at 29-31.

Because the Chinese government has established the Chongqing Economic Development Zone and Jiading Industrial Zones for the purpose of advancing its policy of military-civil fusion through economic activity, they are military-civil fusion enterprise zones. Hesai has agreed to build, or has already built, major development centers in these zones. Thus, Hesai resides in or is affiliated with these zones. Record evidence belies Plaintiffs' contention that projects located outside a particular industrial park are not part of "the military-civilian integration industry alliance in Jiading Industrial Zone." *See* NDAR 1650 (noting that "[a]mong the 24 projects of the Jiading

Industrial Zone Civil-Military Integration Industry Alliance," only "14 projects have settled in the Tianzhou Rongzhi Civil-Military Integration Industrial Park"). Hesai erroneously contends that to designate a company "presen[t]" in one of these zones, DoD must designate all of them, regardless of the threat they pose (or do not pose) to national security. Under Hesai's strange theory, DoD would be required to designate companies like Amazon and Volvo, which do not produce military or dual-use products—and thus may not threaten national security—if it designates a company like Hesai, which does. Moreover, Hesai cites no authority supporting this contention. *See also TikTok*, 122 F.4th at 958 (rejecting argument that Congress legislated underinclusively in designating specific data-collecting entity as national security threat, despite the fact that other Chinese companies also collected data, where entity did not "identify any company operating a comparable platform in the United States with equivalent connections to the PRC[; n]or would it be dispositive if TikTok had done so because the political branches are free to 'focus on their most pressing concerns'" (citation omitted)); *TikTok*, 145 S. Ct. at 70 ("[T]he Government 'need not address all aspects of a problem in one fell swoop.'" (citation omitted)).

### D. Substantial Evidence Supports DoD's Determination that Hesai Advertises on a Nongovernmental Military Equipment Procurement Platform.

As explained in Defendants' opening brief, *see* Defs.' MSJ at 30-32, DoD reasonably determined based on substantial evidence that Hesai "advertises its products on Beijing Huawei Testing Technology Co., Ltd.'s (Beijing Huawei Technology) website," NDAR 16 (citing Section 1260H(d)(2)(G)). Defendants agree with Plaintiffs that it "is the Department's job to make accurate factual findings, in compliance with statutory criteria, and based on the latest information available." Hesai Opp. at 31. And that is exactly what happened here. The Department found that several Hesai products were advertised on Beijing Huawei Technology's website, NDAR at 16, 1652, and that Beijing Huawei Technology "sells, and provides technical service to hi-tech

products which are mainly used in aviation, aerospace, weapons, electronics, ships, transportation, and university systems," NDAR 17 (citing NDAR at 1654). Plaintiffs do not dispute that a private website selling "new products in high-tech fields" for use in, among other things, "weapons," NDAR 1654, qualifies as a "nongovernmental military equipment procurement platform" under the plain meaning of that phrase. Nor do they dispute that Beihang University, a major Chinese defense university designated and overseen by MIIT as one of "Seven Sons of National Defense," NDAR 17, 1660-61, purchased three Hesai Group LiDARs from Beijing Huawei Technology. NDAR 1656-59. It is reasonable to conclude from this evidence that Hesai advertised on a Chinese nongovernmental military equipment procurement website.

Neither case on which Plaintiffs rely to argue that DoD's decision was based on inaccurate data displaces the fundamental proposition that the "Court's review" in an APA case "is limited to the administrative record, which 'includes all materials compiled by the agency that *were before the agency at the time the decision was made*.'" *Calloway v. Harvey*, 590 F. Supp. 2d 29, 36 (D.D.C. 2008) (quoting *James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1095 (D.C. Cir. 1996)) (emphasis added); *see also Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) ("In evaluating agency action under the APA, our review must 'be based on the full administrative record that was before the Secretary' when she made her decision." (citation omitted)). *See also* Hesai Opp. at 31 (citing *Dist. Hosp. Partners, L.P.*, 786 F.3d 56-and *City of New Orleans v. S.E.C.*, 969 F.2d 1163, 1167 (D.C. Cir. 1992)). At the time DoD rendered its decision, the supposedly exculpatory, unsworn press release from Beijing Huawei Technology was not before the agency decisionmaker. The evidence that *was* before the agency was accurate—no one disputes that Hesai's products were advertised on a military procurement website nor that a major defense university purchased them. And again, Plaintiffs seek to impose an extra-statutory requirement that

DoD verify the actual advertising entity for every seller on every Chinese military procurement website, even though those websites have no incentive to provide DoD accurate information. Rather, DoD reasonably viewed a Chinese nongovernmental military equipment procurement platform, saw that Hesai's products were listed and advertised there, and gathered evidence that the products were sold to a leading defense research university. As part of that evaluation, and as demonstrated in the administrative record, NDAR 375, 378-81, 390, 1705-06, DoD considered Hesai's contrary information and found it insufficient to outweigh the other evidence. The Department thus supported its conclusion with substantial evidence that Hesai advertises on a nongovernmental military equipment procurement platform.

## II.    DoD Has Articulated Rational Grounds for Applying Section 1260H's Statutory Terms to Its Factual Findings Regarding Hesai.

In drafting Section 1260H, a national security statute, Congress conferred broad discretion on DoD to implement its provisions. DoD has explained its construction of undefined statutory terms and the manner in which it has applied its factual findings to its construction. In its implementation of Section 1260H, DoD has properly proceeded through a series of agency decisions, adopting a totality-of-the-circumstances approach. Defs.' MSJ at 37-39; *contra* Hesai Opp. at 15-20.

Hesai misunderstands Defendants' explanation to mean that DoD evaluates the totality of the circumstances in determining whether each individual listing criterion is met. Hesai Opp. at 16. Defendants have been consistent in explaining that substantial evidence supports *each* criterion, painting a full picture of this single listed entity: one that knowingly receives assistance from the Chinese government's military industrial planning apparatus, is affiliated with MIIT, resides in a military-civil fusion enterprise zone, advertises on military procurement websites, and is thus a Chinese military company under Section 1260H.

12

In rejecting the principle that under the APA, an agency may "appl[y] an all-things-considered standard to implement a statute that confers broad discretionary authority," *PDK Lab'ys*, 438 F.3d at 1195, Plaintiffs misplace their reliance on the caselaw they cite. Neither *Transcontinental Gas Pipe Line Corp. v. FERC*, 907 F.2d 1211 (D.C. Cir. 1990) (per curiam), *Davis v. Shalala*, 862 F. Supp. 1 (D.D.C. 1994), nor *LeMoyne-Owen College v. NLRB*, 357 F.3d 55 (D.C. Cir. 2004), even mention the APA, much less purport to apply its provisions. Instead, they involve, respectively, a petition for review under the Natural Gas Act, 15 U.S.C. § 717 *et seq*.; a denial of disability benefits under Titles II and XVI of the Social Security; and a petition for review under the National Labor Relations Act. *See Transcontinental Gas Pipeline Corp*., 907 F.2d at 1212-13; *Davis*, 862 F. Supp. at 3-4; *LeMoyne-Owen*, 357 F.3d at 56, 60.[4]

Hesai also cites no authority supporting its contention that an agency must specify all factors that may be salient when assessing a potential national security threat under a statute such as Section 1260H. Although *PDK Laboratories* notes that over time, an agency must "allow relevant distinctions between different factual configurations to emerge," 438 F.3d at 1194 (citation omitted), that case does not require an agency to articulate all potentially relevant factors in applying a new statute, without the benefit of prior agency decisions for guidance. To the contrary, "an agency is not 'necessarily required to define an open-ended term in its initial general regulation—or indeed obliged to issue a comprehensive definition all at once'" but is instead "entitled to proceed case by case." *Id*. (quoting *Pearson*, 164 F.3d at 661) (internal punctuation omitted). Indeed, *PDK Laboratories* cites favorably *Chippewa & Flambeau Improvement Co. v.*

---

[4] In any event, the agency error in *LeMoyne-Owen* was that it had failed to distinguish its own past precedent. *See* 357 F.3d at 60 ("[T]he [NLRB] has not provided any explanation—let alone an adequate one—of how its disposition is consistent with its contrary holdings in [cases following *NLRB v. Yeshiva Univ*., 444 U.S. 672 (1980)] that appear to have presented similar facts.").

*FERC*, 325 F.3d 353 (D.C. Cir. 2003), where an agency "consider[ed] the totality of the circumstances" in applying a broad statutory term, noting that "*over time* the agency ha[d] identified 'a series of relevant factors' that it 'balances in light of the facts of the particular case.'" *PDK Lab'ys*, 438 F.3d at 1195 (quoting *Chippewa*, 325 F.3d at 358) (emphasis added) (internal punctuation omitted).

Nor is this a case "where the agency has failed to explain . . . the relative significance of the evidence before it." *Id.* at 1194. DoD has made clear that, for example, its finding that Hesai is affiliated with MIIT does not depend on any single piece of evidence but instead depends on the combined weight of all record evidence. Nothing prevents DoD from deciding that although in isolation, an individual datapoint may not be sufficient to find that Hesai is affiliated with MIIT, the combined sum of all evidence pointing to this conclusion does justify this finding. DoD has also explained that each separate finding—that Hesai is affiliated with MIIT; knowingly received technology-related assistance; resides in or is affiliated with a military-civil fusion enterprise zone; and advertises on a military equipment procurement platform—is by itself sufficient to justify its determination that Hesai is a Chinese military company. Moreover, as explained above, DoD may "provide[] no clear line of demarcation to define an open-ended term" but "instead choos[e] to establish the term's contours through a series of adjudications" over time. *Id*. at 1195 (citation omitted); *see also id*. (noting approvingly that *Chippewa* upheld an agency order requiring procurement of a license under certain circumstances although the agency "had never articulated the threshold above which licensing would be required"). While the factual bases of each designation over time will obviously differ, DoD reasonably looks at the totality of the facts before it to determine whether any given entity meets any of the statutory bases for listing under Section 1260H.

Further, because *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009), is inapplicable if a litigant is not challenging a broad change in overall agency policy, it too does not apply to DoD's re-designation of *Hesai*. In any event, *Fox*'s requirements are met here. *See* Defs.' MSJ at 44-46. *Dillmon v. National Transportation Safety Board*, 588 F.3d 1085 (D.C. Cir. 2009), does not suggest to the contrary. *Contra* Hesai Opp. at 17-18. As *Dillmon* explains, *Fox* prohibits an agency from "depart[ing] from a prior policy *sub silentio* or simply disregard[ing] rules that are still on the books." 588 F.3d at 1089 (citation omitted). *Dillmon* involved an agency reversal of prior policy; specifically, the agency reversed "unwavering" prior precedent deferring to administrative law judge's credibility findings. *Id.* at 1090. Here, DoD has neither departed from a prior policy nor disregarded any rule, but has instead twice reached the same conclusion as to the same entity.

None of the dictionary definitions Defendants proffer are "'*post hoc* rationalizations.'" Hesai Opp. at 19 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). Indeed, Plaintiffs' confusion is somewhat hard to understand. Plaintiffs seek distinctions between the nearly synonymous definitions of "affiliated with"—"a sufficiently common purpose," a set of "shared characteristics," or "a close association." *Id.* (citing Defs.' MSJ at 12, 15, 18, 20, 21). How would two entities sharing a common purpose and characteristics *not* be closely associated? How would closely associated entities *not* share characteristics or a common purpose? Congress left certain phrases undefined because it meant to capture the broad and easily understood popular notion of affiliation, which its later amendment confirms. *See* Pub. L. No. 118-159, § 1346. Congress intentionally entrusted to DoD's discretion which facts, based on DoD's expertise and knowledge, suffice to make a showing that an entity is "affiliated with" MIIT. But just because DoD's discretion is broad does not mean it acted unreasonably—it applied the plain meaning of the statute to the facts. This Court should too.

15

III.    **Section 1260H Does Not Require DoD to Independently Show That Hesai Contributed to the Chinese Defense Industrial Base, But DoD Made that Showing Anyway.**

A.    **The Court Should Not Impose an Illusory Statutory Obligation.**

The Court should reject Plaintiffs' argument that Section 1260H imposes an additional statutory condition on DoD beyond what the text requires. *See* Hesai Opp. at 8-13. Section 1260H's definitions section provides that the term "military-civil fusion contributor" specifically includes eight types of entities. § 1260H(d)(2)(A)-(H). If DoD finds that an entity is one of these types of "military-civil fusion contributor," then it must "identif[y]" the entity "as a military-civil fusion contributor to the Chinese defense industrial base." § 1260H(d)(1)(B)(i)(II). That is, by virtue of being a *military*-civil fusion contributor, an entity is necessarily a "contributor to the Chinese defense industrial base." This is the statute's identification requirement. *See* Defs.' MSJ at 33-34. If DoD further finds that the entity is "engaged in providing commercial services, manufacturing, producing, or exporting," § 1260H(d)(1)(B)(ii), then the entity is a "Chinese military company," § 1260H(g)(2). This is the statute's conduct requirement. Defs.' MSJ at 33. Hesai is therefore mistaken in arguing that the statute obliges DoD to make separate findings that (i) an entity is a military-civil fusion contributor (ii) to the Chinese defense industrial base. *See id*. at 33-34.

In contending otherwise, Plaintiffs misplace their reliance on *U.S. ex rel. Totten v. Bombadier Corp.*, 380 F.3d 488 (D.C. Cir. 2004). The relevant issue in *Totten* was if a phrase in the False Claims Act—"a false record or statement to get a false or fraudulent claim paid or approved *by the Government*"—required the federal government itself to be defrauded or if it sufficed that a federal funding recipient was defrauded. *Id*. at 498 (citation omitted). Although the court concluded that the term "by the Government" would be rendered superfluous if violators could fraudulently use federal funds disbursed by a federal funding recipient, it largely based that conclusion on the act's unique legislative history. *Id*. at 499. Specifically, Congress added the

16

phrase "by the Government" when it amended the statute. *Id*. By contrast, Congress has retained the phrase "military-civil fusion contributor to the Chinese defense industrial base" despite amending the statute in 2024. § 1260H(d)(1)(B)(ii); *see also* Pub. L. No. 118-159, § 1346. And the term "Chinese defense industrial base" has not been rendered superfluous. Entities such as Hesai necessarily contribute to the Chinese defense industrial base by virtue of satisfying the statutory definition of a "*military*-civil fusion contributor," meaning that they are a Chinese *military* company.[5]

Plaintiffs' remaining arguments are equally unpersuasive. *See* Hesai Opp. at 10-12. Initially, Hesai renews its hyperbolic argument that without its preferred statutory reading, Section 1260H would strip DoD of discretion not to designate, *e.g.*, every company receiving an MIIT "Little Giants" award as being "affiliated with" MIIT. But the fact that MIIT included Hesai in this program is not a single factor considered in isolation but one of several datapoints. *See* Defs.' MSJ at 15-16. Similarly, absent Hesai's preferred reading, DoD is not required to identify companies such as Amazon and Volvo as Chinese military companies because the national security risk associated with such companies with a mere "presence" in military-civil fusion enterprise zones does not rise to the level of a company (such as Hesai) that produces dual-use products with substantial applications in the civilian and military sectors. *See id*. at 30.

There is a common-sense difference between, on the one hand, a company producing everyday items that both civilians and military personnel happen to use, and on the other hand, an entity that develops advanced laser technology that is recognized as a dual-use technology with substantial applications in the military sector that make it a valuable asset for the Chinese military.

---

[5] In any event, because "redundancies are common in statutory drafting," the Supreme Court "has often recognized: 'Sometimes the better overall reading of the statute contains some redundancy.'" *Barton v. Barr*, 590 U.S. 222, 239 (2020) (citation omitted).

*See id*. at 34. Hesai's contention that DoD's interpretation of Section 1260H would "deem *most* commercial companies contributors to the Chinese defense industrial base," Hesai Opp. at 11, is belied by the relatively small number of entities (57, excluding subsidiary companies) on its most recent list. Notice of Availability of Designation of Chinese Military Companies, 90 Fed. Reg. 1105 (Jan. 7, 2025). Hesai also misplaces its reliance on *Xiaomi Corporation*, 2021 WL 950144. Because *Xiaomi* construed a different (and now-defunct) statute, Plaintiffs err in attempting to apply isolated phrases from that case here as if Section 1260H were the same statute.

Hesai also errs in conflating a newspaper article's description of an entity with DoD's rationale for designating that entity. Nothing in DoD's designation of Contemporary Amperex Technology Co., Ltd. supports Hesai's tacit contention that DoD's sole basis for listing that entity is because it is "'China's largest EV battery' manufacturer." Hesai Opp. at 11 (citation omitted). Further, Plaintiffs' apparent contention that DoD's designation of Hesai is unreasonable unless DoD also designates other entities that Hesai deems similar is no more persuasive than TikTok's contention in *TikTok Inc. v. Garland*, 122 F.4th 930 (D.C. Cir. 2024), that Congress' identification of TikTok as a foreign-adversary-controlled application was not credible because "other companies with operations in China collect data in the United States." *Id*. at 957. The mere fact that the statute identifying TikTok "does not fully solve the data collection threat posed by the PRC does not mean it was not a step in the right direction." *Id*. at 958. "Moreover," like Hesai here, TikTok did not "identify any company operating a comparable platform in the United States with equivalent connections to the PRC[; n]or would it be dispositive if TikTok had done so because the political branches are free to 'focus on their most pressing concerns.'" *Id*. (citation omitted); *see also*

*TikTok*, 145 S. Ct. at 70 ("[T]he Government 'need not address all aspects of a problem in one fell swoop.'" (citation omitted)).[6]

Finally, Hesai errs in contending that the principle that judicial review under the APA's substantial evidence standard is very deferential in cases involving national security and foreign affairs is no longer valid after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). That case held that "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id*. at 413. But so-called *Chevron* deference is not the same as deference given to evidence presented by the federal government in foreign affairs and national security cases. This latter form of deference, *see* Defs.' MSJ at 8-9, remains valid after *Loper Bright*. *TikTok*—decided months after *Loper Bright*—reaffirmed this principle. *See TikTok*, 145 S. Ct. at 70 ("afford[ing] the Government's 'informed judgment' substantial respect" under a law "aris[ing] in a context in which 'national security and foreign policy concerns arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess.'" (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010))); *see also TikTok*, 122 F.4th at 953 (citing *Pac. Networks Corp.*

---

[6] Hesai's attempt to distinguish *TikTok* on the grounds that the case involved a constitutional rather than a statutory question, Hesai Opp. at 12 n.11, is not persuasive. The relevant portion of *TikTok* assessed the validity of an "objection[] to [the government's] national security justification"—the threat posed by TikTok's efforts to collect data about American users—that "because other companies with operations in China collect data in the United States, [TikTok's] data collection is not the Government's real concern. *TikTok*, 122 F.4th at 955, 957; *cf. TikTok*, 145 S. Ct. at 70. Both the D.C. Circuit and the Supreme Court rejected TikTok's objection to this justification because TikTok had not identified a similar entity with equivalent connections to the Chinese government, and because even if it had done so, the political branches may proceed case-by-case. This analysis is thus relevant to this Court's assessment of Hesai's similar objection that DoD's designation of Hesai is irrational because the agency's national security justification should have required it to list other allegedly similar entities.

*v. FCC*, 77 F.4th 1160 (D.C. Cir. 2023), as "declining to second-guess the Executive's judgment regarding a national security threat posed by the PRC").

**B.      The Department Supported Its Finding With Substantial Evidence.**

In any event, although Section 1260H does not require DoD to make an independent finding that Hesai contributed to the Chinese defense industrial base, DoD nevertheless concluded that Hesai advances China's policy of military-civil fusion by manufacturing LiDAR technology, and DoD supported this conclusion with substantial evidence. *See* Defs.' MSJ at 35-36.

None of Plaintiffs' arguments undermine this conclusion. *See* Hesai Opp. at 3-6. Initially, although Hesai might prefer that Congress had limited DoD to designating only entities that "suppl[y] the Chinese government or military 'with materials, products, and services for defense purposes,'" *id*. at 3 (citation omitted), the statute contains no such requirement. Had Congress wished to circumscribe DoD's authority, it could easily have done so by phrasing Section 1260H(d)(1)(B)(i)(II) differently, *e.g.*, by defining "Chinese military company" in relevant part as an entity that is "identified as a military-civil fusion contributor *by supplying materiel or services to the Chinese military*." But Congress did not thus restrict the agency's authority and did not do so in its recent amendment to the statutory language. It instead used broader language, defining "Chinese military company" as an entity "identified as a military-civil fusion contributor to the Chinese defense industrial base." § 1260H(d)(1)(B)(i)(II). Plaintiffs' reference to commentary in an Internet article, Hesai Opp. at 4, cannot replace the statutory text.

Moreover, substantial evidence supports DoD's finding that Hesai contributes to the defense industrial base—*i.e.*, advances the goals of integrating the Chinese military and civilian industrial sectors—by manufacturing LiDAR technology. *See* Defs.' MSJ at 35-36. DoD's internal report explains the bases for listing Hesai. NDAR 6-24. That report provides substantial evidence

that LiDAR, including Hesai's products, is recognized as a dual-use technology with substantial applications in both the civilian and military sectors, and notes that "[i]f Chinese companies succeed in solidifying their dominance of the autonomous vehicle and LiDAR markets, the security implications are profound." *See* NDAR 11, 1715-16. And as acknowledged below, while endnotes in that report mistakenly omitted cites to the relevant source, once DoD realized its error, it provided the missing source to Plaintiffs and amended the administrative record. *See infra* III.C. Plaintiffs thus err in contending that substantial evidence does not support DoD's findings. *See* Hesai Opp. at 4-5, 8.[7]

It is irrelevant that one of Hesai's submissions to DoD asserts that Hesai's LiDAR technology is not designed for military specifications. By its nature, this technology has substantial dual-use applications in both military and civilian settings. *See* Defs.' MSJ at 43. For the same reason, it is immaterial that one of Hesai's submissions asserts that the Commerce Department has designated Hesai's LiDAR products as EAR99, a category of products not requiring an export license in most situations because they are not designed for military use. *See* Hesai Opp. at 5. In any event, in enacting Section 1260H, Congress did not exclude DoD from considering such products, and "exporters of EAR99 items still need to perform careful due diligence to ensure the item is not going to an embargoed or sanctioned country, a prohibited end-user, or used in a prohibited end-use."[8]

---

[7] Nor does *Luokung Technology Corporation* advance Hesai's argument. The portion of that case Hesai cites—involving construction of a different statute—found that evidence relied on by DoD to find that an entity was "'effectively controlled' by the PRC or [PLA]" was "not enough" to make that finding. *Luokung*, 538 F. Supp. 3d at 189. Because the relevant evidence here instead pertains to DoD's determination that Hesai contributed to the Chinese industrial base, this part of *Luokung* is irrelevant.

[8] U.S. Dep't of Commerce, Int'l Trade Admin., *Export Control Classification # (ECCN) and (EAR99)*, https://www.trade.gov/eccn-and-export-administration-regulation-ear99

### C.   Plaintiffs Have Not Provided a Valid Justification to Strike a Document from the Administrative Record.

Although Hesai seeks to strike a document from the administrative record, *see* Hesai Opp. at 6-8, it does not present a valid reason for doing so. "The full administrative record consists of 'all documents and materials that the agency directly or indirectly considered' in making its decision." *Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 68 (D.D.C. 2020) (citation omitted). "[A]n agency is entitled to a strong presumption of regularity, that it properly designated the administrative record." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006). Therefore, the court assumes "that an agency has properly designated the administrative record absent clear evidence to the contrary." *Nat'l Ass'n of Chain Drug Stores v. HHS*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009).

This case's circumstances do not warrant an exception to these fundamental principles. Defendants provided Hesai with the administrative record on November 7, 2024, and filed the certified list of contents with the Court a day later. ECF No. 40. After reviewing Hesai's summary judgment motion, filed on December 9, 2024, Defendants realized that due to an administrative error during preparation of the record, three documents had been inadvertently omitted. Defendants transmitted these three documents to Plaintiffs on December 31, 2024, and filed an amended certified list of contents with the Court on January 6, 2025. ECF No. 45.

Although Hesai now seeks to exclude one of these documents—a September 3, 2024 news article in *Defense One* entitled "China claims breakthroughs in autonomous vehicles"—it has failed to overcome the strong presumption of regularity that the agency has properly designated the record. The record properly includes this article because DoD directly or indirectly considered it in its designation of Hesai under Section 1260H in October 2024. Although the internal report prepared by DoD explaining its designation originally included endnotes citing this article, due to

22

an inadvertent administrative error during the report's finalization, the final document omitted these endnotes. Thus, when DoD originally compiled the administrative record that included, *inter alia*, the report and documents cited in the report's endnotes, the *Defense One* article was incorrectly not included because it had not been listed in the report's endnotes. Once Defendants had realized their mistake, they promptly amended the administrative record and provided the article to Plaintiffs. Defendants sincerely regret this error.

However, Defendants' inadvertent error, made in good faith, does not warrant the exclusion of this document from the administrative record, in violation of basic principles of administrative law. No case law cited by Plaintiffs suggests to the contrary. At issue in *District of Columbia v. USDA*, 496 F. Supp. 3d 213 (D.D.C. 2020), a rulemaking challenge, was an agency inspector general report that the agency had never mentioned in the rule being challenged, and which the court had in a prior ruling determined to be a "post hoc rationale" for the rule. *See id*. at 240 n.18; *Dist. of Columbia v. USDA*, 444 F. Supp. 3d 1, 28 n.16 (D.D.C. 2020). But this case does not challenge agency rulemaking and the article is not a post hoc justification for DoD's action. Similarly, *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020), involved an agency memorandum prepared nine months after the agency had rendered the challenged decision, which had been remanded to the agency. *Id*. at 20. The Court explained that because the agency had had a choice between offering a fuller explanation of the agency's reasoning at the time it acted and taking new agency action, and it chose the former, it could not rely on the subsequently-prepared memorandum to support its prior decision. *Id*. at 20-21. And the Court's admonition in *Department of Commerce v. New York*, 588 U.S. 752 (2019), that a court is ordinarily limited to evaluating an agency's contemporaneous explanation in light of the existing administrative record, *id*. at 780, simply "reflects" the principle that "further judicial inquiry into 'executive motivation'" beyond

assessing the administrative record "should normally be avoided," *id*. at 780-81 (citation omitted); it does not prevent agencies from filing amended records. Because the article was considered by DoD at the time it made its decision, the article is part of the agency's contemporaneous explanation of that decision.

## IV.    The Department Considered Hesai's Submissions in Making Its October 2024 Determination That Hesai Is a "Chinese Military Company."

As Defendants explained in their opening brief, *see* Defs.' MSJ at 39-44, DoD specifically evaluated the contrary evidence that Hesai wrongly claims was left unconsidered, *see* Hesai Opp. 20-22. There is no requirement that DoD do more than "expressly state[]" that it did or would "consider[]" relevant evidence, and it suffices that DoD "implicit[ly] reject[ed]" that evidence in its "choice to give weight to" other evidence sufficient to support its decision. *Krzywicki v. Del Toro*, --- F. Supp. 3d ---, 2024 WL 4598338, at *8 (D.D.C. Oct. 29, 2024). As noted already, there is "no rigid requirement that [an agency decisionmaker] specifically refer to every piece of evidence in [its] decision." *Goodman*, 233 F. Supp. 3d at 109 (citation omitted). Rather, "[u]nder the APA, the agency 'need only *consider* the evidence;' it need not mention every piece of evidence it considered." *Smith*, 103 F.4th at 1253 (citation omitted). And under the APA's deferential review standard, courts must "'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned'" where "the agency's rationale and its reasonableness can be perceived readily enough." *Xcel Energy Servs. Inc. v. FERC*, 41 F.4th 548, 557 (D.C. Cir. 2022) (citation omitted).

At bottom, Plaintiffs' dissatisfaction is simply that their contrary evidence was unpersuasive to the Department. DoD's rationale and reasonable consideration of the evidence is readily discernable. The Hesai Group Report expressly stated that "Hesai Group provided information for the Department's consideration in a March 8, 2024 request for reconsideration,"

and that "[t]he Department considered this information during its analysis" of whether Hesai is a "Chinese military company." NDAR 10. And in April 2024, Defendants assured Plaintiffs that the Department would "consider . . . all the information provided thus far in [its] ongoing assessment of whether Hesai should remain on, or be removed from, the Chinese military company list as required by Section 1260H," including specifically the April 2024 letter regarding Hesai's communications with the Congressional Research Service. NDAR 1711. That April 2024 submission forms part of the administrative record on which DoD based its decision, even if the Hesai Group Report itself does not directly mention the April 2024 submission. *Id.* Of course, the agency "must 'disclose the basis' of its action." *Dep't of Com.*, 588 U.S. at 780 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–69 (1962)). Here, DoD has done so in both the Hesai Group Report and the administrative record on which it is based. The Department assured Plaintiffs that it would consider the April 2024 submission, which is accurately reflected in the administrative record the agency provided. *See Nat'l Ass'n of Chain Drug Stores*, 631 F. Supp. 2d at 27 (court assumes "that an agency has properly designated the administrative record absent clear evidence to the contrary."). Thus, contrary to Hesai's contentions, Hesai Opp. at 14, DoD specifically stated that it considered these materials when deciding to place Hesai on the Section 1260H List. Ultimately, DoD decided that despite the statements made in these materials, there is substantial evidence to support multiple findings that Hesai is a "Chinese military company."

Moreover, for the reasons Defendants explained in their opening brief, Defs.' MSJ at 42-44, even if DoD had not considered the March and April 2024 submissions—which it did—that error would be harmless because its decision is still supported by substantial evidence on which the agency relied. "The APA provides that, in reviewing agency action, the court 'shall' take account of 'the rule of prejudicial error,' that is, whether the error caused prejudice." *Nevada v.*

*Dep't of Energy*, 457 F.3d 78, 90 (D.C. Cir. 2006) (quoting 5 U.S.C. § 706); *see also Dillmon*, 588 F.3d at 1089 (agency's factual findings "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view" (citation omitted)). Plaintiffs' renewed reliance on *Dillmon* is unpersuasive. Hesai Opp. at 15. There, the court rejected "appellate counsel's *post hoc* rationalizations for agency action," *Dillmon*, 588 F.3d at 1092 (citation omitted), because they differed from the agency's stated rationale for making its decision. In other words, for *Dillmon* to apply here, undersigned counsel would need to argue that evidence *not* cited by the agency actually formed its rationale. Conversely here, not only has DoD expressly stated that it did or would consider the evidence Plaintiffs claim was ignored, but DoD's rationale for placing Hesai on the List is *consistent* with the substantial evidence Defendants describe in this briefing.[9] Thus, any error regarding the March and April 2024 submissions would have been harmless, had it occurred.

## V.    There Is No Due Process Violation.

The various due process injuries Plaintiffs purport to have suffered remain unripe for judicial review. "A claim is premature and therefore unripe for judicial review if it depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Saline Parents v. Garland*, 88 F.4th 298, 306 (D.C. Cir. 2023) (citation omitted). To determine ripeness, the Court evaluates "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* (citation omitted). Plaintiffs cannot show now that

---

[9] Nor does *New Life Evangelistic Center., Inc. v. Sebelius*, 672 F. Supp. 2d 61 (D.D.C. 2009), support Plaintiffs' argument. While the court there found that the agency erred in ignoring contradictory evidence, *id.* at 73–74, the court was concerned that the agency's decision "[was] entirely silent on [the contrary evidence.]" *Id.* at 73. Here, of course, DoD's Hesai Group Report explicitly mentions the March 2024 submission, and DoD included the April 2024 submission in the administrative record of material it considered in reaching its decision.

they will be banned from bidding on DoD contracts in 2026—especially when they disclaim any present intention to do so—but instead ask the Court to impermissibly adjudicate a "hypothetical state of facts." *Id.* at 307 (citation omitted). Nor do Plaintiffs claim any intent to obtain any currently restricted benefits from the Department of Energy, Department of Homeland Security, or under the Chips Act. Hesai Opp. at 33-34. Because they have no intention to seek such benefits, there is no "hardship" to Plaintiffs by withholding consideration of this purely "hypothetical" claim. *Saline Parents*, 88 F.4th at 306-07 (citations omitted). Stated differently, Plaintiffs should not be allowed to claim a deprivation of a property or liberty interest that they have never claimed or sought to obtain.

Plaintiffs' continued analogies to sanctions cases are misplaced. Hesai Opp. at 34-35 (citing (citing *People's Mojahedin Org. of Iran ("PMOI") v. U.S. Dep't of State*, 613 F.3d 220, 227- 28 (D.C. Cir. 2010); *Nat'l Council of Resistance of Iran ("NCRI") v. Dep't of State*, 251 F.3d 192, 208-09 (D.C. Cir. 2001)). The parties in *NCRI* and *PMOI* faced deprivations of bank accounts, bars on entry to the United States, frozen assets, and criminal prosecutions of material supporters. Those sorts of legal changes and consequences are a far cry from the deprivation of, for example, a hypothetical bid on a Department of Energy contract.

In any event, the D.C. Circuit has emphasized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 317 (D.C. Cir. 2014) (quoting *NCRI*, 251 F.3d at 205). Even if Hesai had been deprived of a cognizable interest here—which it was not—pre-deprivation notice is not necessarily required when national security and foreign policy concerns are at stake. *See, e.g.*, *Lopez Bello v. Smith*, 651 F. Supp. 3d 20, 40 (D.D.C. 2022) (concluding that pre-deprivation notice is not required when declining to do so advances an important governmental interest such as

preventing asset flight when implementing economic sanctions), *aff'd sub nom. Bello v. Gacki*, 94

F.4th 1067 (D.C. Cir. 2024). Indeed, "[a] long-established principle of due process jurisprudence

is that Government must sometimes be allowed to act promptly to avoid public harm." *Cassim v.*

*Bowen*, 824 F.2d 791, 797 n.2 (9th Cir. 1987) (citing authority). And DoD has implemented a

reconsideration process to allow for post-deprivation review. *See* Notice of Availability of

Designation of Chinese Military Companies, 90 Fed. Reg. 1105-02, 1106 (Jan. 7, 2025) (section

heading "Reconsideration Process"). Moreover, Hesai submitted materials for the agency to

consider in making its listing decision, which the agency evaluated, and which are part of the

administrative record here. To suggest that Plaintiffs have not been afforded an opportunity to rebut

the record is simply incorrect. Hesai Opp. at 33.

In sum, Hesai has not identified a deprivation of a protected interest nor any insufficient

"procedures attendant upon that deprivation." *Roberts v. United States*, 741 F.3d 152, 161 (D.C.

Cir. 2014) (citation omitted)

## VI.    In Any Event, Any Relief Should Be Limited to Remand Without Vacatur.

As set forth above, Hesai is not entitled to relief. However, if the Court were to conclude

that DoD had failed to provide an adequate explanation for its action or committed other error,

remand without vacatur would be the appropriate remedy. Defs.' MSJ at 39 & n.17, 46.

"The decision to vacate depends on two factors: the likelihood that 'deficiencies in an order

can be redressed on remand, even if the agency reaches the same result, and the 'disruptive

consequences' of vacatur." *Healthy Gulf v. FERC*, 107 F.4th 1033, 1047 (D.C. Cir. 2024) (citation

omitted). Because it is "reasonably likely" that remand would allow DoD to "redress [any] failure

of explanation," vacatur is not warranted. *Vecinos para el Bienestar de la Comunidad Costera v.*

*FERC*, 6 F.4th 1321, 1332 (D.C. Cir. 2021). Further, erroneously de-listing an entity determined

by DoD to be a Chinese military company would "caus[e] undue disruption" in light of the "national-security interests underlying" Congress' enactment of Section 1260H. *FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 342 (D.D.C. 2016) (citation omitted). Remand without vacatur would thus be the appropriate remedy if the Court were to find that DoD had failed to adequately explain its reasoning or had committed similar error.[10]

## **CONCLUSION**

For the reasons stated above and in Defendants' opening brief, the Court should deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

Dated: February 12, 2025

BRETT A. SHUMATE
Acting Assistant Attorney General

LAUREN A. WETZLER
Deputy Director, Federal Programs Branch

*/s/ Daniel Riess*
DANIEL RIESS (TX Bar No. 24037359)
SAMSON COHEN (DC Bar No. 9004821)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel: (202) 353-3098
E-mail: daniel.riess@usdoj.gov
*Attorneys for Defendants*

---

[10] *New Life Evangelistic Center, Inc. v. Sebelius*, 672 F. Supp. 2d 61 (D.D.C. 2009), does not counsel otherwise; that case does not show that any party raised the issue of whether remand without vacatur was appropriate, as no party in the case appears to have raised the issue. And as explained above, *see supra* at II & IV, Hesai misplaces its renewed reliance on *Dillmon*.