UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                       )
HESAI TECHNOLOGY CO., LTD, <u>et al.</u>,              )
                                                       )
                Plaintiffs,                            )
                                                       )
        v.                                             )        Civil Action No. 24-1381 (PLF)
                                                       )
U.S. DEPARTMENT OF DEFENSE, <u>et al.</u>,             )
                                                       )
                Defendants.                            )
_____)


<u>OPINION</u>

This matter arises from a challenge by the plaintiff technology companies

(collectively, "Hesai") to the decision by the Department of Defense ("DoD") to place Hesai on a

list of "Chinese military compan[ies]" pursuant to Section 1260H of the William M. (Mac)

Thornberry National Defense Authorization Act for Fiscal Year 2021 (the "1260H List").  <u>See</u>

Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965-66 (2021).  According to Hesai, the DoD

violated the Administrative Procedure Act ("APA") by placing it on the 1260H List without a

legitimate basis and further violated Hesai's due process rights by failing to provide meaningful

process.

The parties' cross-motions for summary judgment are now pending before the

Court.  The Court heard oral argument on these motions on March 20, 2025.  Upon careful

consideration of the parties' written submissions, their oral arguments, and the relevant

authorities, the Court denies Hesai's motion for summary judgment and grants the DoD's cross-motion for summary judgment.[1]

## I.    BACKGROUND

### A.    Statutory Background

Section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 1260H, 134 Stat. 3388, 3965-66 (2021), provides that the Department of Defense ("DoD") may designate an entity as a "Chinese military company" and place it on the "1260H List" if the DoD concludes that the entity meets certain statutory criteria.  The statute defines "Chinese military company" as follows:

> (1) CHINESE MILITARY COMPANY. – The term "Chinese military company" –
>
> > (A) does not include natural persons; and
> >
> > (B) means an entity that is –
> >
> > > (i)
> > >
> > > > (I) directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the

---

[1]    The Court has reviewed the following documents in connection with the pending motion:  First Amended Complaint for Declaratory and Injunctive Relief ("Am. Compl.") [Dkt. No. 41]; Plaintiffs' Motion for Summary Judgment ("Pls.' Mem.") [Dkt. No. 42]; Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Mem.") [Dkt. No. 46]; Plaintiffs' Combined Opposition to Defendants' Cross-Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Reply") [Dkt. No. 49]; Defendants' Reply ("Defs.' Reply") [Dkt. No. 52] and Joint Appendix ("NDAR") [Dkt. Nos. 53 to 53-4].

The parties filed two briefs that are identical to those listed directly above.  Docket Number 46 is identical to Docket Number 47, and Docket Number 49 is identical to Docket Number 50.

> > Central Military Commission of the Chinese
> > Communist Party; or
> >
> > (II) identified as a military-civil fusion
> > contributor to the Chinese defense industrial
> > base; and
> >
> > (ii) engaged in providing commercial services,
> > manufacturing, producing, or exporting.

Section 1260H(d)(1).[2]  The statute further defines the term "military-civil fusion contributor"

contained in Section 1260H(d)(1)(B)(II) as follows:

> > (2)  MILITARY-CIVIL FUSION CONTRIBUTOR – The term
> > "military-civil fusion contributor" includes any of the following:
> >
> > (A) Entities knowingly receiving assistance from the
> > Government of China or the Chinese Communist Party
> > through science and technology efforts initiated under the
> > Chinese military industrial planning apparatus.
> >
> > (B) Entities affiliated with the Chinese Ministry of Industry
> > and Information Technology, including research
> > partnerships and projects.
> >
> > (C) Entities receiving assistance, operational direction or
> > policy guidance from the State Administration for Science,
> > Technology and Industry for National Defense.
> >
> > (D) Any entities or subsidiaries defined as a "defense
> > enterprise" by the State Council of the People's Republic of
> > China.
> >
> > (E) Entities residing in or affiliated with a military-civil
> > fusion enterprise zone or receiving assistance from the
> > Government of China through such enterprise zone.
> >
> > (F) Entities awarded with receipt of military production
> > licenses by the Government of China, such as a Weapons
> > and Equipment Research and Production Unit Classified

---

[2]         The statute was amended on December 23, 2024.  <u>See</u> Pub. L. No. 118-159,
§ 1346 (Dec. 23, 2024).  The parties agree that because the DoD's re-designation of Hesai as a
"Chinese military company" occurred prior to the amendments, the Court should apply the
statute as it existed before the amendments.  <u>See</u> Defs.' Mem. at 10 n.7.

Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G) Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H) Any other entities the Secretary determines is appropriate.

Section 1260H(d)(2).

Once the DoD determines that an entity meets the definition of "Chinese military company," it places the company on the 1260H List, which the DoD then submits to Congress. See Section 1260H(b)(1). The effect of being placed on the list is a developing area of policy. At a minimum, placement on the list creates a "stigma" for an entity. See Pls.' Reply at 33. More concretely, placement on the list prevents an entity from accessing certain "grants, loans, contracts, and other benefits," see id., and will prevent the entity from pursuing contracts with the DoD beginning in 2026. See Defs.' Mem. at 47-48; National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, § 805, 137 Stat. 316 (2023).

Section 1260H(b)(3) requires that the DoD's 1260H List must be based on the "latest information available," thereby requiring ongoing revisions to the list as new information is gathered or received. See Section 1260H(b)(3) (providing that DoD "shall make additions or deletions to the most recent list . . . on an ongoing basis based on the latest information available").

### B. Factual Background

#### 1. Hesai Corporate Structure and Technology

Hesai Group is a NASDAQ-traded holding company incorporated under the laws of the Cayman Islands and headquartered in Shanghai, China.  See Am. Compl. ¶ 21.  Hesai Group has multiple offices in the United States, Germany, Japan, and South Korea, and conducts business in over 40 countries.  See id.  Hesai Group wholly owns plaintiff Hesai Technology Co., Ltd., which in turn wholly owns plaintiff Hesai Inc.  See id. ¶¶ 21-21.  Hesai Inc. is incorporated in California, and has offices in Palo Alto, California, and Detroit, Michigan.  Id.

Hesai is a global producer of three-dimensional Light Detection and Ranging ("LiDAR") technology for passenger and commercial vehicles.  See Joint Appendix ("NDAR") [Dkt. Nos. 53 to 53-4] at 00009.  LiDAR uses "laser pulses to create a real-time, accurate 3D representation of an object's physical surroundings."  Pls.' Mem. at 7.  The technology is primarily used in autonomous vehicles, allowing "autonomous or assisted driving systems to navigate complex environments in a wide variety of driving conditions . . . ."  Id.

#### 2. The DoD's Initial Listing and the Filing of the Instant Action

On January 31, 2024, the DoD placed Hesai on the 1260H List along with forty-five other companies.  See NDAR at 00376.[3]  In a decision memorandum dated November 2, 2023, the DoD concluded that Hesai met the definition of "Chinese military company" because it is a "military-civil fusion contributor" by nature of its "affiliation" with the

---

[3]     Press Release, U.S. Department of Defense, DOD Releases List of People's Republic of China (PRC) Military Companies in Accordance with Section 1260H of the National Defense Authorization Act for Fiscal Year 2021 (Jan. 31, 2024), https://www.defense.gov/News/Releases/Release/Article/3661985/dod-releases-list-of-peoplesrepublic-of-china-prc-military-companies-in-accord/.

Chinese Ministry of Industry and Information Technology ("Chinese MIIT").  See Original Joint Appendix [Dkt. No. 29] at 00009-00017 ("Original Decision").  In statutory terms, the DoD found that Hesai satisfied Section 1260H(d)(1)(B)(i)(II) – Hesai was "identified as a military-civil fusion contributor to the Chinese defense industrial base" – by nature of satisfying Section 1260H(d)(2)(B) – i.e., Hesai is a military-civil fusion contributor because it is "affiliated with the Chinese [MIIT] . . . ."  See Original Decision at 5.  Importantly, the DoD did not believe that Section 1260H(d)(1)(B)(i)(II) required it to make a separate finding that Hesai contributed "to the Chinese defense industrial base."  See Section 1260H(d)(1)(B)(i)(II).  Instead, it maintained that a finding that Hesai is a "military-civil fusion contributor" necessarily means that Hesai contributes "to the Chinese defense industrial base."  See Original Decision at 6; see also Defs.' Reply at 1.

Hesai became aware of its listing on the 1260H List after the list was publicly released.  See NDAR at 00376, 00371-00395.  Approximately two months later, on March 8, 2024, Hesai sent the DoD a detailed letter and sworn declaration from Hesai's CEO refuting the DoD's designation.  See NDAR at 00376, 00371-00395.  The "Notice of Availability of Designation of Chinese Military Companies" – the 1260H List – was published in the Federal Register on April 2, 2024; the 1260H List included Hesai.  See 89 FR 22698-01.

Hesai filed the instant action on May 13, 2024.  See Complaint for Declaratory and Injunctive Relief ("Compl.") [Dkt. No. 1].[4]  The parties completed briefing on their cross-

---

[4]      On July 3, 2024, Hesai filed a motion to complete or, in the alternative, supplement the record.  See Plaintiffs' Motion to Complete or, in the Alternative, Supplement the Administrative Record [Dkt. No. 16].  The primary purpose of the motion was to seek inclusion of the March 8, 2024 letter and Hesai's CEO's declaration in the administrative record, which Hesai had provided to the DoD following the public release of the 1260H List.  Hesai sought inclusion of these materials on two alternate grounds:  "first, to 'complete' the administrative record by providing evidence that DoD considered the documents but failed to

motions for summary judgment, see Plaintiffs' Motion for Summary Judgment [Dkt. No. 17]; Defendants' Opposition to Plaintiffs' Motion for Summary Judgment and Cross-Motion for Summary Judgment [Dkt. No. 24], and the Court scheduled oral argument on the cross-motions for September 24, 2024. See Order [Dkt. No. 13]. On September 13, 2024, the DoD moved to postpone the September 24, 2024 oral argument. See Motion to Postpone the September 24, 2024 Hearing [Dkt. No. 30]. The DoD represented that it had received new information relevant to Hesai's listing and expected to make a "new decision" on whether Hesai would remain on the 1260H List by October 8, 2024. Id. The Court granted the motion and rescheduled the oral argument to November 26, 2024. See Sept. 17, 2024 Minute Order; Sept. 23, 2024 Minute Order.

    On October 11, 2024, Hesai filed a motion seeking an order directing the DoD to show cause as to why the DoD failed to render a new decision on Hesai's listing. See Plaintiffs' Motion for an Order to Show Cause [Dkt. No. 34]. The DoD responded to the motion, requesting that the Court deny the motion because the DoD had issued a new decision – the DoD

---

include them in its submission to the Court; and second, to 'supplement' the administrative record because the Court should examine the documents in order to evaluate DoD's decision, even though the agency did not consider them." Hesai Tech. Co. v. U.S. Dep't of Def., Civil Action No. 24-1381, 2024 WL 3673574, at *1 (D.D.C. Aug. 5, 2024). The Court denied Hesai's motion. Id. at *3. As to Hesai's argument that the March 2024 letter and the declaration needed to be included to "complete the record," the Court determined that "[b]ecause the final agency action challenged by Hesai in this lawsuit occurred before the company submitted to DoD the documents it now seeks to add to the record, Hesai has not sufficiently shown that the documents were considered by the agency in reaching its decision." Id. at *2. As to Hesai's argument that the record should be supplemented with these materials, the Court concluded that Hesai had not shown that any of the circumstances justifying supplementing the record applied. Id. at *3; see City of Dania Beach v. FAA., 628 F.3d 581, 590 (D.C. Cir. 2010) ("[T]he record can be supplemented in three instances: (1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information was needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review.") (citation and internal quotation marks omitted).

delisted and then immediately relisted Hesai on the 1260H List.  See Defendants' Response to

Motion for an Order to Show Cause [Dkt. No. 35].  The Court therefore denied Hesai's motion

and instructed the parties to meet and confer over whether, in light of the DoD's new decision,

the parties needed to file new cross-motions for summary judgment.  See Hesai Tech. Co. v. U.S.

Dep't of Def., Civil Action No. 24-1381 (PLF), 2024 WL 5431465, at *1 (D.D.C. Oct. 22,

2024).  The parties agreed that new motions were required, see Joint Status Report [Dkt. No. 37],

and the Court therefore denied the parties' then-pending cross-motions for summary judgment as

moot.  See Order [Dkt. No. 38].  New motions, oppositions, and replies were subsequently filed.

### 3.   The DoD's Re-Listing of Hesai

The DoD's new reasoning for listing Hesai mirrors its initial reasoning in several

key respects but adds several bases and evidence to justify the listing.  Similar to its previous

decision, the DoD found that Hesai met the definition of "Chinese military company" by nature

of satisfying the definition in Section 1260H(d)(1)(B)(i)(II), (ii):  Hesai is "a military-civil fusion

contributor to the Chinese defense industrial base" that "engage[s] in providing commercial

services, manufacturing, producing, or exporting."  See NDAR 00006-00024 ("New Decision").

The justification for this conclusion is different from the DoD's original decision in two

important respects.

First, the DoD found that Hesai is a "military-civil fusion contributor" by nature

of satisfying four – rather than one – of the definitions of "military-civil fusion contributor"

listed in Section 1260H(d)(2).  Specifically, the DoD found that Hesai is a "military-civil fusion

contributor" because (1) Hesai "knowingly receiv[es] assistance from the Government of China

or the Chinese Communist Party through science and technology efforts initiated under the

Chinese military industrial planning apparatus," Section 1260H(d)(2)(A); (2) Hesai is "affiliated

with the Chinese [MIIT]," Section 1260H(d)(2)(B); (3) Hesai "resid[es] in or [is] affiliated with a military-civil fusion enterprise zone or receiv[es] assistance from the Government of China through such enterprise zone," Section 1260H(d)(2)(E); and (4) Hesai "advertise[s] on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China." Section 1260H(d)(2)(G); see New Decision at 6-12. Second, the DoD made two independent findings with respect to Section 1260H(d)(1)(B)(i)(II) – specifically, the DoD found that: (1) Hesai is a "military-civil fusion contributor" and (2) Hesai contributes "to the Chinese defense industrial base." See id. at 6.

Hesai filed an amended complaint following the DoD's redesignation decision. See Am. Compl. Hesai states four counts arising under the APA: (1) that defendants' "action [was] in excess of statutory authority, contrary to required procedure, and otherwise not in accordance with law," id. ¶¶ 94-102; (2) that defendants' determination was arbitrary and capricious, id. ¶¶ 103-111; (3) that defendants "unlawfully withheld" or "unreasonably delayed" the reevaluation of Hesai's status on the list in light of the new evidence provided to the DoD, id. ¶¶ 112-117; and (4) that defendants' "action [was] contrary to constitutional right, power, privilege, or immunity" – specifically, Hesai's procedural due process rights. Id. ¶¶ 118-125.

## II. LEGAL STANDARD

"[W]hen a party seeks review of agency action under the [Administrative Procedure Act ("APA")] . . . the district judge sits as an appellate tribunal." See Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)); Battineni v. Mayorkas, 752 F. Supp. 3d 195, 206 (D.D.C. 2024). The general standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure does not apply to a review of agency action. Summary judgment

nonetheless "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Sierra Club v. Mainella, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)); accord Mashpee Wampanoag Tribe v. Bernhardt, 466 F. Supp. 3d 199, 213 (D.D.C. 2020); Cottage Health Sys. v. Sebelius, 631 F. Supp. 2d 80, 89-90 (D.D.C. 2009). In other words, "[t]he entire case on review is a question of law." Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard is deferential; it requires that agency action simply be 'reasonable and reasonably explained.'" Communities for a Better Env't v. EPA, 748 F.3d 333, 335 (D.C. Cir. 2014) (quoting Nat'l Tel. Coop. Ass'n v. FCC, 563 F.3d 536, 540 (D.C. Cir. 2009)); see also Kennecott Greens Creek Min. Co. v. Mine Safety and Health Admin., 476 F.3d 946, 954 (D.C. Cir. 2007) ("[The] standard of review under the arbitrary and capricious test is only reasonableness, not perfection."). "[A] court is not to substitute its judgment for that of the agency" if the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Airmotive Eng'g Corp. v. Fed. Aviation Admin., 882 F.3d 1157, 1159 (D.C. Cir. 2018) (quoting Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

"The Court's review, however, must be 'searching and careful.'" Colo. River Cutthroat Trout v. Salazar, 898 F. Supp. 2d 191, 199 (D.D.C. 2012) (quoting Nat'l Env't. Dev.

Ass'n's Clean Air Project v. EPA, 686 F.3d 803, 810 (D.C. Cir. 2012)).  "An agency decision is

arbitrary and capricious if it 'relied on factors which Congress has not intended it to consider,

entirely failed to consider an important aspect of the problem, offered an explanation for its

decision that runs counter to the evidence before the agency, or is so implausible that it could not

be ascribed to a difference in view or the product of agency expertise.'"  Cablevision Sys. Corp.

v. FCC, 649 F.3d 695, 714 (D.C. Cir. 2011) (quoting Motor Vehicle Mfrs. Ass'n of U.S. v. State

Farm Mut. Auto. Ins. Co., 463 U.S. at 43); accord Agape Church, Inc. v. FCC, 738 F.3d 397, 410

(D.C. Cir. 2013).  Just as the Court may not "substitute [its] judgment for that of the agency" to

set aside an agency action, Rural Cellular Ass'n v. FCC, 588 F.3d 1095, 1105 (D.C. Cir. 2009), it

also may not "affirm an agency decision on a ground other than that relied upon by the agency."

Manin v. Nat'l Transp. Safety Bd., 627 F.3d 1239, 1243 (D.C. Cir. 2011).

III. DISCUSSION

A.  *The DoD's Decision was not Arbitrary and Capricious or Contrary to Law*

The DoD contends that it has proffered substantial evidence showing that Hesai

meets the definition of "Chinese military company" contained in Section 1260H(d)(1).  Put into

statutory terms, the DoD argues that Hesai is a "Chinese military company" because it is "a

military-civil fusion contributor to the Chinese defense industrial base."  See

Section 1260H(d)(1)(B).  Hesai's principal argument in response is that the DoD's interpretation

of the phrase "military-civil fusion contributor to the Chinese defense industrial base" is overly

broad, giving the DoD "carte blanche to label essentially any commercial entity in China,

including hundreds of American and international companies, a 'military' company."  See Pls.'
Reply at 1.

The Court therefore must address two separate issues of statutory interpretation:
first, the meaning of "military-civil fusion contributor," which is defined in Section 1260H(d)(2);
and second, the meaning of "military-civil fusion contributor to the Chinese defense industrial
base" in Section 1260H(d)(1)(B)(i)(II).  While the parties make numerous arguments related to
these two issues of statutory interpretation, the core of the parties' dispute centers on one primary
issue:  the extent to which Section 1260H requires the DoD to show that an entity has a sufficient
military connection such that the entity meets the definition of "Chinese military company."  See
Pls.' Mem. at 1 ("[The DoD's] new results-oriented decision . . . still cannot find a single
connection to the Chinese military or defense industrial base . . . .") (emphasis in original).

The Court addresses each portion of the statute separately.  In brief, the Court
concludes that the DoD has proffered substantial evidence showing that Hesai meets the
definition of "Chinese military company" in Section 1260H.

1.  "Military-Civil Fusion Contributor"

Section 1260H(d)(2) defines the term "military-civil fusion contributor" as "any
of the following:"

(A) Entities knowingly receiving assistance from the Government
of China or the Chinese Communist Party through science and
technology efforts initiated under the Chinese military industrial
planning apparatus.

(B) Entities affiliated with the Chinese Ministry of Industry and
Information Technology, including research partnerships and
projects.

(C) Entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense.

(D) Any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China.

(E) Entities residing in or affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone.

(F) Entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification.

(G) Entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China.

(H) Any other entities the Secretary determines is appropriate.

Section 1260H(d)(2). The DoD argues that it has proffered substantial evidence showing that Hesai meets four of these definitions: (1) Section 1260H(d)(2)(A); (2) Section 1260H(d)(2)(B); (3) Section 1260H(d)(2)(E); and (4) Section 1260H(d)(2)(G). See Defs.' Mem. at 9-32. Hesai contends that the DoD's findings are in error – both because they rely on overly broad interpretations of the criteria listed in Section 1260H(d)(2) and because the findings are not supported by substantial evidence. See Pls.' Mem. at 24-41. At oral argument, the parties agreed that finding that Hesai meets any one of the Section 1260H(d)(2) definitions is sufficient to conclude that Hesai is a "military-civil fusion contributor." See Transcript of Motion Hearing, Hesai Technology Co., LTD v. U.S. Dep't of Defense, Civil Action No. 24-1381 ("Tr.") [Dkt. No. 58] at 41:13-23.

The Court does not need to decide the multitude of issues presented by the parties related to each of the subsections of Section 1260H(d)(2) because it concludes that the DoD has presented substantial evidence that Hesai satisfies the definition of "military-civil fusion contributor" provided in Section 1260H(d)(2)(E) – that is, Hesai is an entity "residing in or affiliated with a military-civil fusion enterprise zone . . . ." The DoD determined that Hesai met this definition based on two "major development centers" Hesai has built or has planned to build in two Chinese "military-civil fusion enterprise zone[s]," Chongqing Economic Development Zone and Jiading Industrial Zone. See Defs.' Mem. at 27-28; see also New Decision at 10-11.

At the onset, the parties briefly argue over the meaning of "military-civil fusion enterprise zone" in Section 1260H(d)(2)(E). See Pls.' Reply at 29-30; Defs.' Mem. at 27. The DoD – applying the dictionary definitions of each of the words in the term – argues that a "military-civil fusion enterprise zone" is "a section of territory established by the Chinese government for the purpose of advancing its policy of military-civil fusion through economic activity." See Defs.' Mem. at 27. Hesai does not offer a competing interpretation of the term and instead argues that the DoD's expansive definition of the term leads to absurd results. See Pls.' Reply at 31. Setting this argument aside for the moment – it is addressed below, see infra at 16-17, 28 n.11 – the Court concludes that the DoD's interpretation reflects the plain meaning of the term.

There is substantial evidence in the administrative record reflecting that the Chongqing Economic Development Zone and Jiading Industrial Zone are "military-civil fusion enterprise zone[s]" within the meaning of Section 1260H(d)(2)(E). More specifically, the DoD relies on evidence from Chinese regional organizations and governmental entities stating that both zones are intended to promote economic activity and military cooperation. For example, a

"Policy Interpretation" document from the Nan'an District Science and Technology Bureau providing the "14th Five-Year Plan" for the Chongqing Economic and Technological Development Zone, states that one of the "key tasks" of the plan is to "deepen scientific and technological innovation cooperation in key regions, promote scientific and technological military-civilian integration innovation, and promote high-quality scientific and technological innovation with high-level open cooperation."  NDAR at 01627.  As for the Jiading Industrial Zone, the DoD provides an article entitled "The Civil-Military Integration Industry Alliance of Jiading Industrial Zone was established," which states in relevant part:

> The establishment of the military-civilian integration industry alliance in Jiading Industrial Zone is not only a specific measure to connect with the national strategy of military-civilian integration, but also a new starting point for the park to accelerate industrial transformation and upgrading and achieve high-quality economic development.  The relevant person in charge of Jiading District said that the military industry has gathered scientific research institutes, universities and other scientific research forces, and has a number of major core technologies in major national science and technology projects, with technological leading advantages; Local regions have resources such as space, capital, and talents, and the military and local governments have broad market prospects for making joint innovations and speeding up the industrialization of scientific and technological achievements by giving full play to their respective advantages.
>
> [. . .]
>
> In the future, Tianzhou Rongzhi Civil-Military Integration Industrial Park will build a "military-to-civilian and civilian-to-civilian" with the purpose of "scientific and technological innovation, industrial aggregation, and military-civilian docking". . . .  At the same time, Jiading Industrial Park will take the establishment of the industrial alliance as an opportunity to help enterprises in the park carry out exchanges and cooperation in the field of military-civilian integration, and promote the development

of integrated circuits, Internet of Things, intelligent manufacturing, new energy vehicles and other industries in the park.

NDAR at 01650-51.[5]

Hesai does not dispute that it has – or is building – facilities within the Chongqing Economic Development Zone and Jiading Industrial Zone. Nor does it meaningfully dispute that at least a portion of these zones are "military-civil fusion enterprise zone[s]."[6] Instead, Hesai contends that the DoD's interpretation of Section 1260H(d)(2)(E) leads to the "absurd result that potentially thousands of international consumer-facing companies such as Amazon Web Services, Volvo, Qualcomm, Autoliv, and Continental qualify as 'military-civil fusion contributors'" by merely "residing" in these zones. See Pls.' Reply at 31. In other words, Hesai argues that mere residence in a "military-civil fusion enterprise zone" is insufficient to conclude that an entity is a "military-civil fusion contributor" under Section 1260H(d)(2)(E).

---

[5]    Hesai argues that the evidence in the record only shows that a particular "sub-unit" within the Jiading Industrial Zone – the Tianzhou Rongzhi Civil-Military Integration Industrial Park – is "dedicated to the country's military-civil fusion national strategy," and that Hesai does not reside in this sub-unit. See Pls.' Mem. at 41 (citation omitted). This argument is unavailing. As the DoD points out, the article goes on to explain that only 14 of the 24 projects within the "Jiading Industrial Zone Civil-Military Integration Industry Alliance" dedicated to "the transformation of a number of military scientific and technological achievements" reside within the Tianzhou Rongzhi Civil-Military Integration Industrial Park sub-unit. See NDAR at 01650; Defs.' Reply at 9-10. It therefore is reasonable to conclude that the Tianzhou Rongzhi Civil-Military Integration Industrial Park is not the only sub-unit within the Jiading Industrial Zone containing military-civil integration projects. See Biestek v. Berryhill, 587 U.S. 97, 103 (2019).

[6]    Hesai briefly argued that the DoD's evidence does not support the conclusion that the entirety of these vast zones is dedicated to military-civil integration. See Pls.' Mem. at 41. The fact that "[n]othing in the [DoD's evidence] states or even implies that the entire 93 km$^2$ 'Economic Development Zone' is a 'military-civil fusion zone,'" see Pls.' Mem. at 41, does not mean that it is not "relevant evidence as a reasonable mind might accept as adequate to support" the DoD's conclusion. See Biestek v. Berryhill, 587 U.S. at 103. As discussed above, evidence in the record – including policy documents associated with these zones – reflect that part of the mission of these enterprise zones is to promote military-civil integration.

Hesai's argument is foreclosed by the plain statutory language of Section 1260H(d)(2)(E), which provides that, in fact, merely "residing in . . . a military-civil fusion enterprise zone" is sufficient to be deemed a "military-civil fusion contributor."  As will be discussed further below, see infra Section III.B, the Court is persuaded by the argument that the DoD must – at some point in its analysis – be required to find that a particular entity has a meaningful connection to the Chinese military before the DoD can list the entity as a "Chinese military company."  But the plain terms of Section 1260H(d)(2)(E) do not appear to contain such a requirement.  Indeed, Hesai appears to acknowledge as much, failing to point to a particular portion of Section 1260H(d)(2)(E) requiring the DoD to make a finding related to a specific contribution an entity makes to the Chinese military.  See Pls.' Reply at 30-31 ("Subsection 1260H(d)(2)(E)'s applicability has nothing to do with whether the company's products are 'dual use.'  Nor does that provision carve out exemptions for companies that are located in military enterprise zones but do not 'produce military supplies or products that have a dual use.'") (quoting Defs.' Mem. at 30).[7]

Hesai's final argument is that the Court must find the DoD's conclusion arbitrary and capricious because the DoD failed to "articulate[] the standards that guided its analysis."

---

[7]    Hesai argues that the DoD's finding was arbitrary and capricious because the DoD has not explained why other entities – such as Volvo – are not included on the Section 1260H List notwithstanding the fact that they also have facilities within these "military-civil fusion enterprise zones."  See Pls.' Reply at 30-31; see also Tr. at 40:7-17; ACA Int'l v. FCC, 885 F.3d 687, 700 (D.C. Cir. 2018) (stating that an agency's action is arbitrary and capricious "if an agency cannot satisfactorily explain why a challenged standard embraces one potential application but leaves out another, seemingly similar one").  As the DoD points out, it is not required to "designate a company 'presen[t]' in one of these zones" if it concludes that the company otherwise fails to satisfy the other statutory criteria – namely, if it does not contribute "to the Chinese defense industrial base."  See Defs.' Reply at 9-10.  Put differently, an entity's mere residence or affiliation with a "military-civil fusion enterprise zone" does not make the entity sufficiently "similar" to Hesai for purposes Section 1260H designation.  See ACA Int'l v. FCC, 885 F.3d at 700.

Pls.' Mem. at 39 (citing Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 437 F.3d 75, 81 (D.C. Cir. 2006)). As the above discussion illustrates, this argument is unavailing. In the New Decision, the DoD did not simply "parrot[ ] the language of a statute" as Hesai suggests. See Pls.' Mem. at 18 (quoting Xiaomi Corp. v. Dep't of Def., Civil Action No. 21-0280 (RC), 2021 WL 950144, at *5 (D.D.C. Mar. 12, 2021)). Rather, the DoD provided a detailed explanation setting forth evidence that demonstrates that the two enterprise zones in question – Chongqing Economic Development Zone and Jiading Industrial Zone – are focused in part on promoting military-civil fusion, and that Hesai has built or plans to build facilities in these enterprise zones. See New Decision at 10-11. In other words, the DoD provides "a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives, 437 F.3d at 81 (quoting PPL Wallingford Energy LLC v. FERC, 419 F.3d 1194, 1198 (D.C. Cir. 2005)). Given the DoD's explanation and the application of the plain meaning of the term "military-civil fusion enterprise zone," the Court cannot conclude that the DoD's "purported standard is indiscriminate and offers no meaningful guidance to affected parties," making Hesai's cited cases inapposite. See ACA Int'l v. FCC, 885 F.3d at 700 (citation and internal quotation marks omitted); see also Iaccarino v. Duke, 327 F. Supp. 3d 163, 177 (D.D.C. 2018) (finding that the agency "omitted a critical step" of "connecting the facts to the [agency's] conclusion") (citation omitted); Mori v. Department of Navy, 731 F. Supp. 2d 43, 49 (D.D.C. 2010) ("[T]he court is unable to . . . determine whether the Secretary's chosen standard was appropriate or whether the Secretary properly applied that standard.").

In sum, the Court concludes that the DoD has shown that Hesai meets the definition of "military-civil fusion contributor" provided in Section 1260H(d)(2)(E).

2.  "To the Chinese Defense Industrial Base"

Having determined that the DoD has presented substantial evidence showing that Hesai meets the definition of "military-civil fusion contributor" under Section 1260H(d)(2)(E), the issue becomes whether the DoD has proffered sufficient evidence that Hesai is a "military-civil fusion contributor <u>to the Chinese defense industrial base</u>." <u>See</u> Section 1260H(d)(1)(B)(i)(II) (emphasis added). In support of its position, the DoD makes two general arguments related to the statutory interpretation of Section 1260H(d)(1)(B)(i)(II). First, the DoD contends that the phrase "to the Chinese defense industrial base" in Section 1260H(d)(1)(B)(i)(II) does not have independent meaning. <u>See</u> Defs.' Mem. at 33. In other words, says the DoD, "an entity contributes to the Chinese defense industrial base by virtue of it being a <u>military</u>-civil fusion contributor." <u>Id</u>. (emphasis in original); <u>see</u> Defs.' Reply at 1 ("[B]y satisfying the definition of a military-civil fusion contributor, Hesai <u>necessarily</u> contributes to the Chinese defense industrial base.") (emphasis in original); Defs.' Reply at 33-34 (arguing that "Congress did not require the Department to establish that an entity must contribute to the Chinese defense industrial base"). Second, the DoD argues that if the phrase "to the Chinese defense industrial base" in fact has independent meaning, the phrase should be interpreted more broadly to allow "dual-use" products – <u>i.e.</u>, products that <u>can</u> have both commercial and military application – to be sufficient contributions "to the Chinese defense industrial base." <u>See id</u>. at 32-33.

The Court addresses each of these arguments before turning to whether the DoD has proffered substantial evidence supporting its conclusion that Hesai satisfies Section 1260H(d)(1)(B)(i)(II).

a.  Two Separate Findings Not Required

The DoD's first contention – that the phrase "to the Chinese defense industrial base" in Section 1260H(d)(1)(B)(i)(II) does not have independent meaning – must be rejected for the simple reason that it omits half of the statutory text.  "[I]t is a 'cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute.'" Window Covering Manufacturers Ass'n v. Consumer Prod. Safety Comm'n, 82 F.4th 1273, 1292 (D.C. Cir. 2023) (quoting Liu v. Sec. & Exch. Comm'n, 591 U.S. 71, 89 (2020)).  In doing so, the Court must consider "the object and policy of the entire statutory scheme in interpreting a provision within that scheme."  United States v. Fahnbulleh, 742 F. Supp. 2d 137, 146 (D.D.C. 2010).

The DoD's argument is that, when viewed in the context of the statutory structure, the phrase "to the Chinese defense industrial base" does not have any meaning standing by itself. More specifically, the DoD contends that the two subsections of Section 1260H(d)(1)(B) should be understood as containing two separate requirements:  an identification requirement (Section 1260H(d)(1)(B)(i)) and a conduct requirement (Section 1260H(d)(1)(B)(ii)).  See Defs.' Reply at 16.  As to Section 1260H(d)(1)(B)(i), the DoD argues that the statutory provision is only concerned with the "identity" of the entity – that is, whether the entity is a "military-civil fusion contributor."  See Section 1260H(d)(1)(B)(i).  As to Section 1260H(d)(1)(B)(ii), the DoD contends that the statutory provision can be fairly understood as a "conduct requirement" because it specifies that the entity must be engaged in a certain conduct – that is, "engaged in providing commercial services, manufacturing, producing, or exporting."  See Section 1260H(d)(1)(B)(ii).  Starting with this premise – that subsection (i) is an identification requirement while subsection (ii) is a conduct requirement – the DoD then argues that

20

interpreting "to the Chinese defense industrial base" as having independent meaning would disrupt its asserted statutory structure by imposing "an additional . . . condition" into the statute, specifically, an additional "conduct requirement."  See Defs.' Reply at 16.  According to the DoD, it would need to make three findings, rather than two:  that Hesai is a "military-civil fusion contributor" (identity requirement) that "contribut[es] to the Chinese defense industrial base" (conduct requirement) and that "engage[s] in providing commercial services, manufacturing, producing, or exporting" (conduct requirement).  See id.

        The DoD does not provide any authority supporting this argument.  And for good reason.  The DoD's interpretation of Section 1260H(d)(1)(B)(i)(II) would effectively render the entire provision meaningless because under its reading, an entity that satisfies the definitions of "military-civil fusion contributor" in Section 1260H(d)(2) necessarily would satisfy Section 1260H(d)(1)(B)(i)(II).  Indeed, the DoD itself acknowledges this.  See Defs.' Mem. at 33 ("[A]n entity contributes to the Chinese defense industrial base by virtue of it being a military-civil fusion contributor.") (emphasis in original).  The DoD's interpretation of Section 1260H(d)(1)(B)(i)(II) therefore would require the Court to conclude that Congress's addition of a full statutory phrase – the phrase "to the Chinese defense industrial base" – following a defined term is without meaning.

        In sum, the DoD's argument that "Congress did not require the Department to establish that an entity must contribute to the Chinese defense industrial base" must be rejected because such an interpretation omits half of the statutory provision.  See Defs.' Mem. at 33-34.  This interpretation must be rejected because "Congress did not write the statute that way."  See Corley v. United States, 556 U.S. 303, 315 (2009) (citation omitted).

b.  <u>Hesai's Interpretation:  Military Supplier</u>

Having determined that the phrase in Section 1260H(d)(1)(B)(i)(II) – "to the Chinese defense industrial base" – must be given independent meaning, the Court must now interpret the phrase.  The parties argue over whether a finding that an entity's product has a "dual-use" – <u>i.e.</u>, the product <u>can</u> have both commercial and military application – is sufficient to conclude that an entity contributes "to the Chinese defense industrial base."  The DoD maintains that such a finding is sufficient.  <u>See</u> Defs.' Mem. at 32-34.  Hesai contends that in order to find that an entity contributes "to the Chinese defense industrial base," the DoD must find that the entity "supplies the Chinese government or military 'with materials, products, and services for defense purposes.'"  <u>See</u> Pls.' Reply at 3 (citation omitted).

Neither the term "Chinese defense industrial base" nor the term "defense industrial base" is defined in the statute.  But Hesai points out that the DoD itself has defined the term "defense industrial base" in its Dictionary of Military & Associated Terms, which defines the term as "the Department of Defense, Government, and private sector worldwide industrial complex with capabilities to perform research and development, design, produce, and maintain military weapon systems, subsystems, components, or parts to meet military requirements." Dep't of Def., DOD DICTIONARY OF MILITARY & ASSOCIATED TERMS 64 (Mar. 2017); 32 C.F.R. § 236.2; <u>see</u> Pls.' Mem. at 20.  The DoD does not suggest that it would be unreasonable to apply this definition here, and it does not provide a competing definition.[8]

---

[8]    At oral argument, the DoD briefly argued that the definition was inappropriate because the definition is the context of the U.S. defense industrial base, not the Chinese defense industrial base.  <u>See</u> Tr. at 17:14-18:8.  While the Court acknowledges that there are likely difference between the U.S. and Chinese defense industrial bases, the DoD fails to explain exactly how it would define the term differently.  Moreover, the DoD's argument that the Court should apply the "plain meaning" of "each word" would likely result in a substantially similar definition of the term.

The Court agrees that the definition of "defense industrial base" proffered by Hesai is a reasonable interpretation of the term.  The Court cannot agree, however, with Hesai's argument that this definition means that <u>only</u> entities that "suppl[y] the Chinese government or military 'with materials, products, and services for defense purposes'" are contributors "to the Chinese defense industrial base."  <u>See</u> Pls.' Reply at 3.  The DoD definition itself puts emphasis on "private sector" entities "with capabilities to perform" certain activities rather than focusing solely on those entities that have some contractual relationship to supply a government with military products or services.  Furthermore, requiring such a direct relationship – such as being a military supplier – appears inconsistent with concerns surrounding "military-civil fusion" identified by the DoD.  <u>See</u> Defs.' Mem. at 3-4 ("The U.S.-China Economic and Security Review Commission . . . has articulated similar concerns, noting that '[t]he Chinese government's military-civil fusion policy aims to spur innovation and economic growth through an array of policies . . . while leveraging the fruits of civilian innovation for China's defense sector.'") (quoting U.S.-China Econ. & Sec. Rev. Comm'n, 2018 Ann. Rep., Ch. 3 § 2 – <u>Emerging Technologies and Military-Civil Fusion:  Artificial Intelligence, New Materials, and New Energy</u> (hereinafter, "U.S. China Comm'n 2018 Rep.")); <u>see also</u> Tr. at 22:5-10 (explaining that the "specific type of conduct that Congress is after" is "China trying to fuse its military and civilian sectors").  And the Court finds it significant that the two cases on which Hesai primarily relies throughout its summary judgment briefing involved a statute that was <u>not</u> expressly concerned with military-civil fusion.  <u>See</u> <u>Xiaomi Corp. v. Dep't of Def.</u>, Civil Action 21-0280 (RC), 2021 WL 950144, at *1 (D.D.C. Mar. 12, 2021); <u>Luokung Tech. Corp. v. Dep't of Def.</u>, 538 F. Supp. 3d 174, 178, 183-84 (D.D.C. 2021).  This further demonstrates that Hesai's interpretation of Section 1260H(d)(1) ignores the unique problem of military-civil fusion that the

statute was designed to address.  See Pls.' Mem at 3-4, 21-22; Pls.' Reply at 11-12, 20-22; see also Tr. at 22:2-10 (noting that "military-civil fusion" is "not mentioned" in Section 1237 – the statute at issue in Xiaomi and Luokung).[9]  Hesai's overly narrow interpretation of Section 1260H(d)(1)(B)(i)(II) as requiring some direct relationship with the Chinese military must be rejected.[10]

### c.  DoD's Interpretation:  "Dual-Use"

According to the DoD, any entity that produces a "dual-use" product – i.e., a product that can have both commercial and military application – contributes "to the Chinese

---

[9]    The statute at issue in Xiaomi and Luokung did not explicitly reference "military-civil fusion."  Specifically, the statute in those cases defined "Communist Chinese military company" as any "person that:"

> (i) is owned or controlled by, or affiliated with, the People's Liberation Army or a ministry of the government of the People's Republic of China or that is owned or controlled by an entity affiliated with the defense industrial base of the People's Republic of China; and
>
> (ii) is engaged in providing commercial services, manufacturing, producing, or exporting.

Section 1237(b)(4)(B) of the National Defense Authorization Act for Fiscal Year 1999, Pub. L. 105-261, 112 Stat. 2160 (Oct. 17, 1998) (as amended).  Furthermore, the issue in those cases primarily centered around the interpretation of "affiliated with" in Section 1237(b)(4)(B)(i).  See Luokung Tech. Corp. v. Dep't of Def., 538 F. Supp. 3d at 183-88.

[10]    Hesai also cites to a report by the Congressional Research Service, see Pls.' Mem. at 20; Pls.' Reply at 3-4, which states that "defense industrial base" means "organizations, facilities, and resources that supply the U.S. government – principally, but not exclusively, the Department of Defense (DOD) – with materials, products, and services for defenses purposes."  See Luke A. Nicastro, CONG. RSCH. SERV., The U.S. Defense Industrial Base:  Background and Issues for Congress (2024).  While the Congressional Research Service report does emphasize "supplying" or "providing" a government or the military with a particular good or service, it goes on to state that the term "defense industrial base" "encompasses both those suppliers with a direct contractual relationship with the government . . . and those that provide prime contractors with the goods and services necessary to perform defense contracts."  See id.

defense industrial base."  See Defs.' Mem. at 32-34.  The Court has little doubt that the definition of "Chinese military company" was intended to cover – and does cover – producers of "dual-use" products, not just producers of purely military equipment.  Indeed, the concerns surrounding "military-civil fusion" appear to be directly related to "leveraging the fruits of civilian innovation for the China's defense sector."  See U.S. China Comm'n 2018 Rep.

The Court concludes that the DoD's argument that it satisfies Section 1260H(d)(1)(B)(i)(II) anytime it shows that an entity produces a "dual-use" product is an overly broad reading of the statute.  As Hesai points out, "virtually every product" can have both commercial and military applications.  See Pls.' Mem. at 21.  The DoD's interpretation of "to the Chinese defense industrial base" therefore would essentially render the statutory phrase meaningless because an entity's commercial product could always have a potential military use. And "it is a 'cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute.'"  See Window Covering Manufacturers Ass'n v. Consumer Prod. Safety Comm'n, 82 F.4th at 1292 (quoting Liu v. Sec. & Exch. Comm'n, 591 U.S. at 89). Because the DoD's broad interpretation of contributions "to the Chinese defense industrial base" captures any producer of any product, the interpretation effectively renders the statutory phrase meaningless.  It therefore must be rejected.  See Xiaomi Corp. v. Dep't of Def., Civil Action No. 21-0280 (RC), 2021 WL 950144, at *8 (D.D.C. Mar. 12, 2021) (rejecting similar argument that merely finding that a product as both a civilian and military application was insufficient to sustain a finding under a similar statute defining "Communist Chinese military companies").

The appropriate interpretation of the phrase "to the Chinese defense industrial base" lies somewhere between Hesai's overly narrow interpretation – that an entity must exclusively be a military supplier, see Pls.' Reply at 3 – and the DoD's overly broad

interpretation – that an entity need only produce a "dual-use" product in order to qualify. See Defs.' Mem. at 32-34. Once again, the accepted definition of "defense industrial base" is instructive. The definition of "defense industrial base" is concerned with "capabilities" that allow for direct or indirect military contributions. See Dep't of Def., DOD DICTIONARY OF MILITARY & ASSOCIATED TERMS 64 (Mar. 2017). Put differently, the "defense industrial base" does not just cover those entities that directly contribute to the military – such as military suppliers – but extends to entities that provide goods and services that benefit the military. The issue of whether an entity is within or contributes to the "defense industrial base" therefore must center on how substantially an entity contributes to the military.

The Court concludes that an entity contributes "to the Chinese defense industrial base" if it produces a product or technology that has substantial military application, even if the entity's particular product is not directly supplied or used by the Chinese military and even if it also has commercial uses. This interpretation resolves many of the problems the Court has identified with respect to the parties' competing interpretations. First, it provides a limit on the DoD's overly broad interpretation by requiring it to identify a substantial military application for a particular product or technology, rather than some possible or hypothetical military use. Such a requirement prevents the DoD from effectively nullifying the statutory requirement that an entity must contribute "to the Chinese defense industrial base" by merely pointing to some de minimis or incidental contribution. See Wisconsin Dep't of Revenue v. William Wrigley, Jr., Co., 505 U.S. 214, 231 (1992) ("[T]he venerable maxim de minimis non curat lex ('the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept."); see also Defs.' Reply at 17 (arguing that producers of dual-use products with

"substantial application in the military" sufficiently contribute "to the Chinese defense industrial base").

Second, the interpretation comports with the concerns identified by Congress related to "military-civil fusion" and the "defense industrial base" by being properly inclusive of contributions that are more commercial in nature. As the DoD has explained, the concerns motivating the statute are not just related to military technology advancements but more generally to leveraging the private sector for military advantage. See Defs.' Mem. at 3-4; Tr. at 7:3-12 ("So the concern about Chinese military-civil fusion that's motivating the statute, it isn't so much we're worried about China getting ahead of us militarily, the concern really is we receive so many goods from China, we have to protect the government supply chain from a specific threat."); see also TikTok Inc. v. Garland, 122 F.4th 930, 970 (D.C. Cir. 2024) (noting the "PRC's hybrid commercial threat to U.S. national security" through the commercial operation of the TikTok platform), aff'd, 145 S. Ct. 57 (2025). Furthermore, Congress's use of the term "defense industrial base" reflects a concern not just with military suppliers, but with entities that have a broader set of "capabilities to research and develop . . . military weapon systems, subsystems, components, or parts to meet military requirements." See Dep't of Def., DOD DICTIONARY OF MILITARY & ASSOCIATED TERMS 64 (Mar. 2017); 32 C.F.R. § 236.2. Interpreting contributions "to the Chinese defense industrial base" to include only those contributions that are directly military in nature – such as the development of a military product or the sale of a product to the military – therefore is at odds with the concerns surrounding the statutory terms "military-civil fusion" and the "defense industrial base."

In sum, the Court concludes that an entity contributes "to the Chinese defense industrial base" if it produces a product or technology that has substantial military application or benefit.[11]

### d. Substantial Evidence

The Court now must determine whether the DoD has proffered substantial evidence showing that Hesai contributes "to the Chinese defense industrial base" by producing a product or technology that has substantial military application or benefit.

"When an agency action is 'bound up with a record-based factual conclusion' the reviewing court is tasked with determining if the agency's conclusion is supported by 'substantial evidence.'" Luokung Tech. Corp. v. Dep't of Def., 538 F. Supp. 3d at 188 (quoting Dickinson v. Zurko, 527 U.S. 150, 164 (1999)). Substantial evidence "means – and means

---

[11]    Throughout its briefing, Hesai argues that the interpretation of the statute must exclude the possibility that any "prominent subsidiar[ies] of American and international companies" could be listed as a "Chinese military company." See Pls.' Reply at 4; see also supra Section III.A.1 (discussing argument in the context of the DoD's finding that Hesai is a "military-civil fusion contributor"). While this argument has some logical appeal, it must be rejected. There is nothing in the text of the statute that seems to preclude the possibility that "prominent subsidiar[ies] of American and international companies" could be designated as "Chinese military compan[ies]." The statute itself does not explicitly limit the definition of "Chinese military company" only to Chinese companies. And none of the definitions of "military-civil fusion contributor" in Section 1260H(d)(2) – which include, among other things, "advertising" on certain platforms, see Section 1260H(d)(2)(G), "receiving" certain governmental assistance, see Section 1260H(d)(2)(A), or being "awarded" certain "production licenses," see Section 1260H(d)(2)(F) – appear to foreclose the possibility. Finally, the phrase "to the Chinese defense industrial base" does not appear to prohibit the designation of subsidiaries of American and international companies. Indeed, Hesai's preferred interpretation of the phrase as only including military suppliers does not foreclose the designation of such companies. See Pls.' Reply at 3; see also Dep't of Def., DOD DICTIONARY OF MILITARY & ASSOCIATED TERMS 64 (Mar. 2017) (including in the definition of "defense industrial base" "private sector worldwide industrial complex"). In sum, there is nothing in the text of the statute that suggests that Congress intended to foreclose the possibility that the DoD may designate subsidiaries of American or international companies as "Chinese military compan[ies]" if the conditions of the statute are otherwise met.

only" – 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" Biestek v. Berryhill, 587 U.S. at 103 (quoting Consol. Edison Co. of New York v.

NLRB., 305 U.S. 197, 229 (1938)); see Dickinson v. Zurko, 527 U.S. at 162. The substantial

evidence standard is a "low bar," see Louisiana Pub. Serv. Comm'n v. FERC, 20 F.4th 1, 7 (D.C.

Cir. 2021); it "requires more than a scintilla, but can be satisfied by something less than a

preponderance of the evidence." Bloomberg, L.P. v. SEC, 45 F.4th 462, 475 (D.C. Cir. 2022)

(citation omitted). "[I]n an area at the intersection of national security, foreign policy, and

administrative law," the Court's normal deference under the APA and the substantial evidence

standard becomes "extremely deferential." See Islamic Am. Relief Agency v. Gonzales, 477

F.3d 728, 734 (D.C. Cir. 2007). With that said, "the principle has its limits. Deference does not

mean acquiescence." Presley v. Etowah Cnty. Comm'n, 502 U.S. 491, 508 (1992); see Water

Quality Ins. Syndicate v. United States, 225 F. Supp. 3d 41, 68 (D.D.C. 2016)).

      The DoD argues that it has proffered substantial evidence demonstrating that

Hesai's LiDAR technology has substantial military application. See Defs.' Mem. at 35.

Specifically, the DoD identifies two potential military applications or benefits of LiDAR: first,

LiDAR is critical to the development of autonomous driving vehicles which have substantial

military use; see Defs.' Mem. at 23-25, 35-36; and second, LiDAR can "collect and pass

information to unknown sources" – such as "foreign adversaries" – which becomes a significant

national security concern if such technology enters the United States government's supply chain.

See Tr. at 7:3-12.

      The DoD primarily relies on three pieces of evidence to support its findings

concerning LiDAR. The first two piece of evidence provide minimal support for the DoD. First,

the DoD cites to Hesai's corporate profile at Pitchbook (a commercial database of companies),

which does not even mention the word "military."  See NDAR at 00041-00077.  Second, the

DoD cites to an article from a website called "AZO Optics," which does not mention Hesai and

only discusses how a particular laser used in some LiDAR products has military application.  See

NDAR at 00396-00399.

     The DoD's final piece of evidence is by far its strongest.  The public-source

article from a website called "Defense One" provides background on LiDAR competition

between the United States and the People's Republic of China, explains the military application

of LiDAR – particularly as it relates to autonomous vehicles – discusses the "substantial gains"

Hesai has made in the LiDAR market, and briefly suggests a connection between Hesai and

"China Electronics Technology Group Corporation (CETC), a company founded to supply

advanced electronics to the [People's Liberation Army]."  See NDAR at 01714-01716 ("Defense

One Article").  Furthermore, the article explains some of the concerns around LiDAR's

collection of "massive amounts of data . . . which could easily be used to gather intelligence."

See Defense One Article at 2.  Finally, the article identifies a U.S. House committee report that

outlined concerns around Chinese LiDAR companies and "asked the U.S. government to

investigate PRC LiDAR firms, their relationship with the PRC government, and the possibility of

PRC LiDAR products entering U.S. government supply chains."  See id.  This single piece of

evidence is central to the DoD's finding.  Indeed, when the Court asked the DoD's counsel at

oral argument whether "there [was] other evidence in the record that suggests that Hesai

contributes to the Chinese defense [industrial] base" other than the Defense One Article, counsel

responded that the DoD's "finding is primarily concerned with that article."  See Tr. at 56:16-

57:13; see also Tr. at 18:16-22 ("Did Hesai contribute to the basic underlying elements of

China's defense establishment as they relate to industry?  Yes, it did.  And this is all in the record, [that] is [the Defense One Article].").

While the parties' arguments primarily relate to the three abovementioned pieces of evidence, the DoD also proffered evidence that Hesai worked on "two national-level projects related to the defense industrial base that were supported by the Chinese government."  See New Decision at 6.  The first project was on the development of "low-cost, high-speed LiDAR" technologies for the "National Development and Reform Commission and Shanghai Development and Reform Commission" from November 2017 to November 2020.  See id.  The DoD provides evidence reflecting that the National Development and Reform Commission ("NDRC") has sought to promote military-civil integration, including a 2020 report where the NDRC "called for developing autonomous driving systems for the country's national defense and military industries and for the military and civilian sectors to jointly tackle key problems." Id. at 6-7.  The second project was a LiDAR initiative with the China Ministry of Science and Technology from May 2018 to February 2021.  Id.  The DoD offers evidence – including statements from the China Ministry of Science and Technology's website and a 2017 guidelines document – showing that it is dedicated to promoting "military-civil integration."  Id.  Hesai does not dispute that it participated in these projects.  Rather, Hesai maintains that these projects were not specifically military-focused, and that evidence of these projects is insufficient to support the DoD's finding that Hesai satisfies Section 1260H(2)(A) – that is, that Hesai "knowingly receive[s] assistance from the Government of China . . . through science and technology efforts initiated under the Chinese military industrial planning apparatus."  See Pls.' Reply at 27-29.  While Hesai may be correct, this does not change the fact that the evidence with

respect to these projects is at least somewhat probative of Hesai's past cooperation with Chinese government agencies that are at least in part focused on military-civil integration.

The Court finds that the evidence offered by the DoD reflecting LiDAR's military application – particularly as it relates to the development of autonomous vehicles – the national security concerns around Chinese LiDAR manufacturers, and Hesai's cooperation with Chinese agencies that have some focus on military-civil integration is likely sufficient to support the DoD's finding that Hesai contributes "to the Chinese defense industrial base." See Biestek v. Berryhill, 587 U.S. at 102-03. In addition to the evidence in the record, the Court is mindful of the heightened level of deference it must give to the DoD in matters concerning national security. See Islamic Am. Relief Agency v. Gonzales, 477 F.3d at 734. This level of deference is particularly important here because central to the issue of Hesai's contribution "to the Chinese defense industrial base" is the question of LiDAR's "substantial" military application. See Defs.' Mem. at 32-33. In that regard, the Court must credit the DoD's finding that LiDAR technology has military application, particularly in view of the DoD's subject matter expertise in a more technical area like military technology. See Turlock Irr. Dist. v. FERC, 786 F.3d 18, 26 (D.C. Cir. 2015) ("[W]hen agency orders involve complex scientific or technical questions . . . [the court] [is] particularly reluctant to interfere with the agency's reasoned judgments.") (citation and internal quotation marks omitted).

To be clear, this is not to say that the Court will simply close its eyes and blindly accept the DoD's assertion that a particular technology has substantial military application. Rather, the Court will also consider the evidence in the record and the reasonableness of the DoD's expert judgment that LiDAR has "substantial applications in the military sector." See Defs.' Reply at 17-18. In the instant case, the DoD has determined that a technology that uses

"laser pulses to create a real-time, accurate 3D representation of an object's physical surroundings" that allows "autonomous or assisted driving systems to navigate complex environments in a wide variety of driving conditions" has military application. See Pls.' Mem. at 7. This hardly appears to be an unreasonable conclusion. In fact, evidence submitted by Hesai that is contained in the administrative record supports this conclusion, reflecting that LiDAR technology – albeit not Hesai's product specifically – is currently being used by the Russian and Chinese militaries. See NDAR at 01708 (noting that "LiDAR equipment manufactured by Hesai's U.S.-based competitor, Ouster, appears to have found its way onto modified Russian or Chinese military vehicles"). The Court therefore concludes that the DoD's finding that Hesai contributes "to the Chinese defense industrial base" is supported by substantial evidence in the record.

Hesai makes two arguments in opposition to this conclusion. Hesai's first argument is that the DoD's failure to include the Defense One Article in the administrative record until "[t]hree weeks after Hesai filed its summary judgment brief, and days before Defendants filed their cross-motion and opposition" means that it is procedurally improper for the Court to consider this evidence. See Pls.' Reply at 6-8 (emphasis in original). In further support of this argument, Hesai points to the fact that the Defense One Article "was 'not recounted or even referenced as justification' for the Department's re-listing decision." See id. at 7 (quoting District of Columbia v. United States Dep't of Agric., 496 F. Supp. 3d 213, 240 (D.D.C. 2020)). Although it is perplexing that the Defense One Article – which the DoD admits was critical to its finding that Hesai contributes "to the Chinese defense industrial base," see Tr. at 56:16-57:13 – was not included in the initial administrative record, the Court nevertheless concludes that it is appropriate for it to consider this evidence.

As an initial matter, the DoD explained in a sworn statement that the Defense One Article was in fact "directly or indirectly considered in connection with DoD's new decision," and that it was left out of the administrative record "[d]ue to an administrative error."  See Notice of Filing of Amended Certified List of The Contents of the Administrative Record [Dkt. No. 45]. While this explanation standing alone might be insufficient to justify considering the evidence, there is good reason to believe that the DoD "directly or indirectly considered" the evidence in its decision.  The primary contention that the DoD relies on in the Defense One Article is that LiDAR technology has substantial application in the military context.  See Defs.' Mem. at 35. This is the core contention that the DoD makes throughout its decision designating Hesai as a "Chinese military company."  See New Decision at 6 ("LiDAR, including Hesai Group's products, is recognized as a dual-use technology with substantial applications in the civilian and military sectors.").  In other words, while the Court would be skeptical of the DoD's explanation if the excluded evidence provided an entirely new basis for listing Hesai, there is good reason not to doubt the DoD's explanation where, as here, the excluded evidence goes to the heart of the previously articulated reasoning outlined in the DoD's New Decision.

Setting aside the DoD's explanation for failing to include the Defense One Article in the initial administrative record, the fact that the article merely affirms the DoD's core contention that it makes throughout the New Decision – that is, it supports the conclusion that LiDAR has substantial military application – is important in two other respects.  First, the fact that the Defense One Article does not offer a new basis for listing Hesai reduces the concern that the DoD is attempting to provide a post hoc rationalization for its decision.  This is the primary concern identified in the case law Hesai cites in support of remanding the decision back to the DoD for further consideration.  See Pls.' Reply at 7; Department of Homeland Sec. v. Regents of

the Univ. of Cal., 591 U.S. 1, 20 (2020) ("[T]he post hoc rationalizations of the agency . . .

cannot serve as a sufficient predicate for agency action.") (citation omitted); SEC v. Chenery

Corp., 318 U.S. 80, 94 (1943) (requiring "that the grounds upon which the administrative agency

acted by [be] clearly disclosed and adequately sustained"); Department of Com. v. New York,

588 U.S. 752, 780 (2019) ("[I]n in order to permit meaningful judicial review, an agency must

'disclose the basis' of its action.") (citation omitted).

   As Judge Kessler has explained:  "[W]hen an agency provides further explanation

of its decision in the course of litigation, it is not necessarily engaging in post hoc

rationalization. . . .  The rule against post-hoc rationalizations does not prevent a court from

considering a more detailed explanation of an agency's action in response to a legal challenge."

Nat'l Oilseed Processors Ass'n v. Browner, 924 F. Supp. 1193, 1204 (D.D.C. 1996), aff'd in part

and remanded on other grounds sub nom. Troy Corp. v. Browner, 120 F.3d 277 (D.C. Cir. 1997).

In other words, there is a difference between (1) an agency failing to explain the basis for its

decision "in any meaningful way" and then seeking to "amplif[y]" its reasoning "after the fact[]

for the purposes of litigation," and (2) an agency seeking to offer a "'clearer or more detailed

explanation' of the justification offered."  See District of Columbia v. United States Dep't of

Agric., 496 F. Supp. 3d 213, 240 n.18 (D.D.C. 2020) (citation omitted).  Given the fact that the

DoD asserted throughout the New Decision that LiDAR has "substantial applications in the

civilian and military sectors," see New Decision at 6; see also id. at 4, the case here appears to

fall into the latter category.  As a result, remanding to the DoD for purposes of including the

Defense One Article in the administrative record would not be particularly productive since the

underlying issues in the case following remand would likely be identical to those presented

here – principally, whether LiDAR has substantial military application.

Second, because the Defense One Article merely supports the DoD's core contention that LiDAR has substantial military application, Hesai cannot show that it is prejudiced by consideration of the Defense One Article.  See FBME Bank Ltd. v. Lew, 209 F. Supp. 3d 299, 311 (D.D.C. 2016) ("[W]hen an agency fails to disclose supporting documents or information, a plaintiff must show that error was prejudicial by indicating with reasonable specificity what portions of the documents or other supporting material it objects to and how it might have responded if given the opportunity.") (cleaned up).  Hesai does not identify "with reasonable specificity" what portions of the Defense One Article it objects to and "how it might have responded if given the opportunity."  Id.  Instead, it argues that the Defense One Article "simply does not substantiate the necessary finding that Hesai contributes to the Chinese defense industrial base . . . ."  See Pls.' Reply at 8.  Because Hesai was free to – and did – make arguments related to whether the Defense One Article provides substantial evidence supporting the DoD's finding, the Court cannot discern any prejudice Hesai suffered as a result of the Defense One Article not being included in the initial administrative record.

Hesai's second argument is that the DoD erred by failing to consider contradictory evidence in the record.  See Pls.' Mem. at 13-17.  More specifically, Hesai argues that the DoD's decision seemingly failed to consider its March 2024 and April 2024 letters, which included, inter alia, a sworn declaration from Hesai's CEO explaining that its LiDAR technology "has never been designed for, evaluated for, or validated to military specifications . . . ."  Id. at 14-15 (quoting NDAR at 00375).  While Hesai asserts that this evidence "contradict[s] various findings in the Amended Designation," see Pls.' Mem. at 14, Hesai fails to point to a direct contradiction.  As the DoD points out, it never found that Hesai's LiDAR product was designed for military application, which in the DoD's opinion is "irrelevant"

since the technology itself "has substantial dual-use applications in both military and civilian settings." See Defs.' Reply at 21. Although Hesai may disagree over the relevance of the evidence, this disagreement does not mean that the DoD simply ignored contradictory evidence. Ultimately, while the March 2024 and April 2024 letters provide support for Hesai's position that it is not a Chinese military company, Hesai has not pointed to a direct contradiction suggesting that the DoD simply "ignored" contradictory evidence contained in these letters.[12] Rather, it appears that the DoD reached a different conclusion during its review of the evidence in the administrative record. Under the deferential substantial evidence standard, "an agency decision may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." Morall v. Drug Enforcement Admin., 412 F.3d 165, 176 (D.C. Cir. 2005) (internal quotation marks omitted).[13]

---

[12] Hesai points out that the DoD failed to initially include its April 2024 letter in the administrative record, suggesting that it did not consider this evidence in its decision. See Pls.' Mem. at 15. As an initial matter, the DoD provides a sworn statement explaining that this letter was not included in the administrative record due to an "administrative error," which was later corrected upon the filing of the amended administrative record. See Notice of Filing of Amended Certified List of The Contents of the Administrative Record [Dkt. No. 45]. Moreover, Hesai does not point to any material within the April 2024 letter – which contains much of the same information contained in the March 2024 letter – that suggests the DoD would have reached a different result had it been considered in the decision, thereby failing to demonstrate prejudice from any error on the part of the DoD. See PDK Labs. Inc. v. DEA, 362 F.3d 786, 799 (D.C. Cir. 2004) (stating that, under the harmless error rule, "[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration").

[13] Hesai also argues that the DoD failed to acknowledge its "change of course" between its Original Decision and New Decision was an error. See Pls.' Mem. at 16-17. The doctrine Hesai relies on – which arises in cases where an agency fails to "display awareness that it is changing position" as to a particular policy, see FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009) – does not obviously apply to the instant cases. The DoD did not "depart" from a particular decision or policy. See National Ass'n of Home Builders v E.P.A., 682 F.3d 1032, 1038 (D.C. Cir. 2012) ("It is true, as the petitioners stress, that an agency changing course is sometimes obligated to 'provide a more detailed justification than what would suffice for a new policy created on a blank slate . . . – when, for example, its new policy rests upon factual

In light of the foregoing, the Court concludes that the DoD's finding that Hesai contributes "to the Chinese defense industrial base" is supported by substantial evidence because the evidence in the record viewed in light of the nature of LiDAR technology could lead "a reasonable mind might accept as adequate to support a conclusion."  See Biestek v. Berryhill, 587 U.S. at 103 (quoting Consol. Edison Co. of New York v. NLRB., 305 U.S. at 229).

### B.  Any Violation of Hesai's Due Process Rights was Harmless

The Due Process Clause of the Fifth Amendment requires that no person be deprived of life, liberty, or property without due process of law.  See Mathews v. Eldridge, 424 U.S. 319 (1976).  "'The fundamental requisite of due process of law is the opportunity to be heard' at 'a meaningful time and in a meaningful manner.'"  Alaska Commc'ns Sys. Holdings, Inc. v. Nat'l Lab. Rels. Bd., 6 F.4th 1291, 1298 (D.C. Cir. 2021) (quoting Goldberg v. Kelly, 397 U.S. 254, 267 (1970)).  The Fifth Amendment requires only that a person receive his or her due process, not every procedural device that he or she may claim or desire.  Kropat v. FAA., 162 F.3d 129, 132 (D.C. Cir. 1998).  Before assessing what process was due, the Court must "first determine whether constitutional safeguards apply at all, i.e., whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection."  Reeve Aleutian Airways, Inc. v. United States, 982 F.2d 594, 598 (D.C. Cir. 1993).

The parties' dispute centers on whether Hesai was entitled to pre-deprivation notice and an opportunity to be heard.  Much ink is spilled on this issue.  But the real question

---

findings that contradict those which underlay its prior policy.'") (quoting FCC v. Fox Television Stations, Inc., 556 U.S. at 515).  Rather, the DoD bolstered its reasoning and evidence for supporting its conclusion that Hesai is a "Chinese military company" – the same decision it had previously reached.  See Defs.' Reply at 15.

here is whether – even if such notice and opportunity to be heard might be required in other circumstances – Hesai suffered any prejudice given the facts of this case.  See Horning v. SEC, 570 F.3d 337, 347 (D.C. Cir. 2009) ("In the absence of any suggestion of prejudice, we cannot conclude that [plaintiff] was deprived . . . of procedural due process . . . .").  Section 706 of the APA instructs reviewing courts to take "due account . . . of the rule of prejudicial error."  5 U.S.C. § 706.  After all, "[i]f the agency's mistake did not affect the outcome, if it did not prejudice the [plaintiff], it would be senseless to vacate and remand for reconsideration."  PDK Labs. Inc. v. DEA, 362 F.3d at 799; see Gordon Coll. v. United States Small Bus. Admin., Civil Action No. 23-0614 (BAH), 2025 WL 1517208, at *18 (D.D.C. May 28, 2025).  "The burden to demonstrate prejudicial error is on the party challenging agency action."  Jicarilla Apache Nation v. U.S. Dep't of Interior, 613 F.3d 1112, 1121 (D.C. Cir. 2010).

        The Court concludes that Hesai has failed to show that it was prejudiced as a result of the DoD's purported procedural due process violation.  As an initial matter, Hesai does not explicitly point to any prejudice it has suffered.  Hesai does not, for example, argue that had it been afforded its desired process, it would have had an opportunity to include evidence in the record that would have "affect[ed] the outcome" of the DoD's decision-making process.  See PDK Labs. Inc. v. DEA, 362 F.3d at 799; see also Charlton v. Donley, 846 F. Supp. 2d 76, 89 (D.D.C. 2012).  Such an argument would be difficult to make since Hesai did in fact have an opportunity to submit evidence – the March 2024 and April 2024 letters – rebutting the DoD's core contentions in this case.  And the evidence was both considered by the DoD in connection with its New Decision and included in the administrative record.  See NDAR at 00371-00395 (March 2024 letter); id. at 01702-01710 (April 2024 letter).  Furthermore, Hesai does not identify any additional evidence it would have offered or additional argument it would have

made if given the opportunity.  See United States Telecom Ass'n v. FCC, 825 F.3d 674, 725 (D.C. Cir. 2016) ("A deficiency of notice is harmless if the challengers had actual notice of the final rule, or if they cannot show prejudice in the form of arguments they would have presented to the agency if given a chance.") (internal citations omitted).  Put simply, Hesai has not demonstrated that "on remand [it] can mount a credible challenge" to the DoD's evidence.  See Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin., 494 F.3d 188, 202 (D.C. Cir. 2007) (quoting Gerber v. Norton, 294 F.3d 173, 182 (D.C. Cir. 2002)).

        The nature of the issues involved in this action provide further support for the Court's conclusion that Hesai has failed to establish prejudice.  Critically, the heart of this case centers on issues related to the sufficiency of evidence and statutory interpretation rather than on complex factual disputes.  This is not a case, for instance, where the parties dispute the underlying facts of the DoD's decision such that the Court "cannot make any judgment whatsoever regarding whether the material before the Secretary is or is not true" in the absence of a competing factual record submitted by Hesai.  See People's Mojahedin Org. of Iran v. U.S. Dep't of State, 613 F.3d 220, 228-29 (D.C. Cir. 2010).  Rather, the primary issue in this case is about the sufficiency of the DoD's evidence and the interpretation of Section 1260H.  As a result, it is difficult to discern the prejudice suffered by Hesai because it was free to make any arguments related to the sufficiency of evidence in connection with the instant litigation, notwithstanding the fact that it may have been improperly deprived of the opportunity of making these arguments to the DoD prior to its designation.

        In sum, "[i]n the absence of any suggestion of prejudice, [the Court] cannot conclude that [Hesai] was deprived either of procedural due process or of appropriate notice and opportunity for a hearing."  Horning v. SEC., 570 F.3d at 347 (citation and internal quotation

marks omitted); see Chai v. Dep't of State, 466 F.3d 125, 132 (D.C. Cir. 2006) (recognizing that

a procedural due process violation, in an administrative adjudication, may be harmless in light of

"the particular circumstances" of the case); Zevallos v. Obama, 10 F. Supp. 3d 111, 131

(D.D.C. 2014) ("[T]he Court notes that even if it found a due process violation based on delay,

the error would nevertheless be harmless."), aff'd, 793 F.3d 106 (D.C. Cir. 2015); see also

Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination.").[14]

## IV. CONCLUSION

For these reasons, the defendants' Cross-Motion for Summary Judgment [Dkt.

No. 46] is hereby GRANTED and Hesai's Motion for Summary Judgment [Dkt. No. 42] is

DENIED.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

_Paul L. Friedman_

PAUL L. FRIEDMAN
United States District Judge

DATE: 7\11\25

---

[14]    As a final matter, the Court concludes that Hesai has not shown its entitlement to summary judgment on its claim that the DoD "unlawfully withheld or unreasonably delayed" an agency action. See Am. Compl. ¶¶ 112-17. First, neither of the parties provide any argument on this claim in connection with the instant motions. Second, for many of the same reasons explained in the context of Hesai's due process claim, the Court cannot conclude that Hesai has been prejudiced by any failure on the part of the DoD to consider additional evidence. See Zevallos v. Obama, 10 F. Supp. 3d at 131 ("[T]he Court notes that even if it found a due process violation based on delay, the error would nevertheless be harmless.").